# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02663

STAN LEE MEDIA, INC.

    Plaintiff,

v.

THE WALT DISNEY COMPANY,

    Defendant.

---

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

---

### INTRODUCTION

1.    Spider Man, Iron Man, The Incredible Hulk, Thor, The X-Men, The Fantastic Four, and most of The Avengers are among the best known comic book characters of all time and all were created by the comic book genius Stan Lee.  Motion pictures starring these characters released within the past three (3) years have generated box office receipts in excess of $3 billion.  Defendant The Walt Disney Company has represented to the public that it, in fact, owns the copyright to these characters as well as to hundreds of other characters created by Stan Lee.  Those representations made to the public by The Walt Disney Company are false.  The true facts are that Stan Lee Media, Inc. owns the copyrights to Stan Lee's creations.  Accordingly, Plaintiff Stan Lee Media, Inc. is entitled to the billions of dollars of profits that have been kept by Defendant Disney.

## THE PARTIES

2.  Stan Lee Media, Inc. ("SLMI") is a Colorado corporation authorized to sue to recover damages to its assets. The Walt Disney Company ("Disney") is a Delaware corporation which improperly claims ownership to the Stan Lee characters.

## JURISDICTION AND VENUE

3.  This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Laws of the United States, 17 U.S.C. §101 et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. § 1338 (a) jurisdiction over copyright actions). Venue is proper in Colorado under 28 U.S.C. § 1400 (a) because this Court has personal jurisdiction over Disney and because acts of copyright infringement concerning the Stan Lee characters occurred within the State of Colorado.

## COPYRIGHT OWNERSHIP

4.  In October, 1998 Stan Lee assigned in writing the copyrights and all other rights in the comic book characters (the "Characters") that he had previously created or would create in the future to Stan Lee Entertainment, Inc. ("SLEI") which is a predecessor to Plaintiff. The assignment was contained in a written agreement which was signed by Stan Lee individually and on behalf of SLEI by an SLEI Company representative (the "SLMI Copyright Assignment"). A true and correct copy of the SLMI Copyright Assignment is attached hereto as Exhibit A and incorporated herein by this reference.

5.  In or about April 1999, SLEI merged into and transferred all of its rights and interests to a Delaware corporation called Stan Lee Media, Inc. ("SLMI-DE"). In or about July 1999, SLMI-DE consummated a merger into, and transferred all of its rights and interests

(including the rights transferred from SLEI), to a publicly owned Colorado corporation called Boulder Capital Opportunities, Inc. ("BCOI").  Subsequently BCOI was renamed Stan Lee Media, Inc.

6. In October, 1999, Stan Lee signed a written agreement amending, modifying and confirming the validity of the 1998 SLMI Copyright Assignment (the "Amendment").  That Amendment was publicly filed with the United States Securities and Exchange Commission in March, 2000 as part of a form 10KSB also signed by Stan Lee as SLMI's Chairman of the Board.  A true and correct copy of the Amendment is attached hereto as Exhibit B and incorporated herein by this reference.

7. As part of the same form 10KSB, in March 2000, the SLMI Copyright Assignment was also publicly filed by SLMI with the United States Securities and Exchange Commission.  Thereafter, on November 28, 2006, the SLMI Copyright Assignment was publicly recorded with the United States Copyright Office.

8. Oddly, in November, 1998, Stan Lee signed a written agreement with Marvel Enterprises, Inc. in which he purportedly assigned to Marvel the rights to the Characters.  However, Lee no longer owned those rights since they had been assigned to SLEI previously.  Accordingly, the Marvel agreement actually assigned nothing.  A true and correct copy of the agreement between Stan Lee and Marvel Enterprises, Inc. is attached hereto as Exhibit C and is incorporated herein by this reference (the "Marvel Agreement").

9. Neither Marvel, nor Disney as Marvel's successor-in-interest as of December 31, 2009, has ever publicly recorded the Marvel Agreement with the United States Copyright Office.

10. Defendant Disney claims it has rights to the Characters by reason of the Marvel Agreement. Since no such rights were ever transferred pursuant to Exhibit C, Disney has no such rights.

11. Accordingly, pursuant to SLMI's copyright ownership rights under its publicly recorded SLMI Copyright Assignment SLMI is entitled, *inter alia*, to the billions of dollars that Disney has generated, or allowed others to generate, within the past three (3) years from motion pictures, and from other media and merchandising, starring the Characters that are owned by SLMI.

## THE PRIOR LITIGATION

12. During the past decade, there have been a number of cases filed and adjudicated involving Plaintiff, Stan Lee, Marvel and others. Various pieces of that litigation occurred in New York, California and Colorado. The somewhat tortured history of that litigation is set forth below. However, even assuming that each of the various prior rulings is effective (and some are not), none of those rulings limit in any sense Plaintiff's claims herein.

## THE COLORADO LITIGATION

13. The Colorado litigation took place from 2007 to 2011 and was a corporate governance dispute. The allegations in that action included, *inter alia*, that SLMI and approximately 1800 shareholders should be freed from the adverse domination, control and self-dealing of the prior management/shareholder group (the "Prior Control Group"). On May 27, 2010, the Court of Appeals of the State of Colorado issued a ruling that had the effect of authorizing a new board of directors, independent of the Prior Control Group, to act as SLMI's legally authorized representative to, among other things, recover SLMI's assets and to enforce

SLMI's copyright ownership rights and other intellectual property rights (the "Corporate Governance Ruling").

14. In October 2010, the Supreme Court of the State of Colorado denied a certiorari petition, filed on behalf of the Prior Control Group, seeking permission to appeal from the Corporate Governance Ruling.

15. In November 2010, the Court of Appeals of the State of Colorado issued its mandate, returning jurisdiction over SLMI's corporate governance to the District Court of the State of Colorado.

16. In January 2011, the District Court of the State of Colorado issued an order implementing and formally seating the new board of directors as SLMI's legally authorized representative.

## THE NEW YORK LITIGATION

17. The first New York litigation, in the United States District Court for the Southern District of New York, 09 Civ. 0715 (PAC) was an unauthorized shareholder derivative lawsuit filed on behalf of SLMI against Marvel Entertainment, Stan Lee and others. The derivative plaintiffs sought an accounting for profits in connection with certain ownership rights involving the Characters. In that action, the Honorable Paul A. Crotty found that the derivative plaintiffs did not have standing to bring the claims. However, he also stated that the claims set forth in the amended complaint filed in 2009 were time-barred.

18. A second piece of litigation in the United States District Court for the Southern District of New York was brought by Stan Lee against various Marvel entities, 02 Civ. 8945 (RWS). That litigation itself was in two parts. In the first part Lee sought certain contract

damages. The first action was filed on November 12, 2002. That action was ultimately settled and a Stipulation and Order dismissing the case was entered on April 27, 2005.

19. In July 2010, SLMI's newly authorized board became concerned that efforts may have been made in the closed 2005 case attempting to compromise SLMI's rights while SLMI was adversely dominated by the Prior Control Group. Therefore, in July 2010, SLMI's newly authorized board, out of an abundance of caution, sought to intervene and have the order of dismissal set aside in the closed 2005 case.

20. The Request to Intervene and to have the Order set aside was denied on the grounds that SLMI's copyright claims were not involved. In that Order of Denial the court held that Judge Crotty's ruling in the first New York action was *res judicata* as to statute of limitations, laches, and estoppel.

21. On March 21, 2012, the United States Court of Appeals for the Second Circuit affirmed the trial court's decision denying the Request to Intervene and to set aside the Order. The Second Circuit also expressly held that it would not reach and therefore chose not to affirm the *res judicata* rulings. Accordingly, the trial court's statements about the *res judicata* effect of Judge Crotty's time-bar rulings are null and void.

## THE CALIFORNIA LITIGATION

22. From approximately February 16, 2001 to a dismissal order issued on approximately November 14, 2006, the Prior Control Group pursued a Chapter 11 bankruptcy case for SLMI in the United States Bankruptcy Court for the Central District of California. During the bankruptcy, the Prior Control Group failed to notify approximately 1800 SLMI shareholders about the bankruptcy or to afford them an opportunity to protect their interests in SLMI and SLMI's assets. On or about January 9, 2007, Stan Lee commenced a lawsuit in the

- 6 -

United States District Court for the Central District of California, 07-CV-225 (SVW), on behalf of himself, and as a putative shareholder in a derivative case on behalf of SLMI, seeking a determination, *inter alia*, of intellectual property rights in various assets (the "2007 Case"). Subsequently, two other putative shareholder derivative cases were filed on behalf of SLMI in the California District Court and were assigned to the same judge handling the 2007 Case (the "Related Cases").

23. In January and February 2011, the United States District Court for the Central District of California issued orders (a) consolidating the Related Cases, and designating the 2007 case commenced by Lee, on behalf of SLMI and himself, as the lead case, (b) realigned SLMI as a plaintiff in the 2007 Case, now that SLMI was acting through a legally authorized representative by virtue of the Colorado Corporate Governance Ruling and (c) authorized SLMI to file a complaint in the 2007 Case against Stan Lee and his POW! Entertainment and QED Productions companies as realigned defendants.

24. On August 23, 2012, the United States District Court for the Central District of California (07-CV-0225-(SVW) consolidated with Case Nos. 07-CV-4438-(SVW) and 09-CV-2340-(SVW)) granted a pre-answer Motion to Dismiss the Related Cases by according *res judicata* effect to Judge Crotty's time-bar ruling. SLMI has appealed that ruling to the United States Court of Appeals for the Ninth Circuit. Defendant Disney was not a party to the Related Cases or the New York Shareholder derivative case.

25. SLMI's copyright infringement claims in this lawsuit against Disney are based upon Disney's independently actionable conduct taking place subsequent to April 2009. All of Disney's infringements as alleged herein have occurred within three years prior to the commencement of this lawsuit. SLMI is entitled to proceed with this copyright infringement

lawsuit against Disney, based upon Disney's independently actionable conduct which occurred after April 2009, regardless of the outcome of SLMI's appeal to the Ninth Circuit in the 2007 Case.

## FIRST CLAIM FOR RELIEF
### (Federal Copyright Infringement)

26. Plaintiff incorporates by reference all the allegations of paragraph 1 through 25, inclusive as though set forth in full.

27. Within three (3) years of the date of filing of this complaint, Disney has used the Characters in motion pictures entitled Iron Man 2 (May, 2010), Thor (May, 2011), X-Men: First Class (June, 2011) Marvel's The Avengers (May, 2012) and The Amazing Spider Man (July, 2012). Those motion pictures have generated box office receipts to date in excess of $3.5 billion. In addition, Defendant has exploited the Characters in other media and merchandising including, but not limited to, the Broadway show Spiderman: Turn Off the Dark (2011). Plaintiff is informed and believed and based thereon alleges that Defendant has generated revenue in these other exploitations in an amount in excess of $2 billion.

28. Plaintiff has complied in all respects with 17 U.S.C. § 101 et seq. including recording the SLMI Assignment with the United States Copyright Office. SLMI has secured the exclusive rights and privileges in and to the copyrights of the Characters as set forth above. Plaintiff has been and still is the sole proprietor of all rights, titles and interests in and to the copyrights in the Characters.

29. Disney's exploitation and use of the Characters as set forth above, and Disney's allowing others to exploit and use the Characters as set forth above, without SLMI's consent

violates the exclusive rights belonging to Plaintiff as the owner of the copyrights in the Characters including without limitation Plaintiff's rights under 17 U.S.C § 106.

30. Plaintiff seeks an award of damages pursuant to 17 U.S.C. §§ 504 and 505.

31. Defendant's infringing conduct has also caused and is causing substantial and irreparable injury and damage to Plaintiff in an amount not capable of determination and, unless restrained, will cause further irreparable injury leaving Plaintiff without an adequate remedy at law.

32. On information and belief, Plaintiff alleges that Defendant has willfully engaged in and is willfully engaging in, the acts complained of with oppression, fraud and malice and in conscious disregard of the rights of Plaintiff. Plaintiff is, therefore, entitled to the maximum statutory damages allowable.

33. As a consequence of this dispute between the parties as to the right title and interest in the Characters and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Plaintiff also seeks a resolution of this ongoing controversy by a declaration by this Court as to the rights of the respective parties in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a) Declaring that Defendant's unauthorized conduct violates Plaintiff's rights under common law and the Federal Copyright Act;

b) Permanently enjoining Defendant, its officers, directors, agents, service employees, representatives, attorneys, related companies, successors, assigns and all others in active concert or participation with them from copying and republishing any of the Characters without consent or otherwise infringing Plaintiff's copyrights or other rights in any manner;

c) Ordering Defendant to account to Plaintiff for all gains profits and advantages derived by Defendant by their infringement of Plaintiff's copyrights or such damages as are proper and since Defendant intentionally infringed Plaintiff's copyrights, for the maximum allowable statutory damages for each violation;

d) Awarding Plaintiff actual and/or statutory damages for Defendant's copyright infringement in an amount to be determined at trial;

e) Awarding Plaintiff its costs, reasonable attorneys' fees and disbursements in this action pursuant to 17 U.S.C. § 505(n);

f) Awarding Plaintiff such other and further relief as is just and proper.

PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

Dated on this 9th day of October, 2012.

    *s/John V. McDermott*
John V. McDermott, #5384
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado  80202
Phone:  303.223.1100
Email: jmcdermott@bhfs.com

Robert S. Chapman
Jon-Jamison Hill
EISNER, KAHAN & GORRY
9601 Wilshire Boulevard , Suite 700
Beverly Hills, California  90212
Phone:  310.855.3200
Email: rchapman@eisnerlaw.com; jhill@eisnerlaw.com

Attorneys for Plaintiff

016226\0001\1740594.1