**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-02663-WJM-KMT

STAN LEE MEDIA, INC.

    Plaintiff,

v.

THE WALT DISNEY COMPANY,

    Defendant.

---

**AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

---

**INTRODUCTION**

    1.    Spider Man, Iron Man, The Incredible Hulk, The X-Men, The Fantastic Four, and most of The Avengers are among the best known comic book characters of all time and all were created by the comic book genius Stan Lee. Motion pictures starring these characters released within the past three (3) years have generated box office receipts in excess of $3 billion. Defendant The Walt Disney Company has represented to the public that it, in fact, owns the copyright to these characters as well as to hundreds of other characters created by Stan Lee. Those representations made to the public by The Walt Disney Company are false. The true facts are that Stan Lee Media, Inc. owns the copyrights to Stan Lee's creations. Accordingly, Plaintiff Stan Lee Media, Inc. is entitled to the billions of dollars of profits that have been kept by Defendant Disney.

## THE PARTIES

2. Stan Lee Media, Inc. ("SLMI") is a Colorado corporation authorized to sue to recover damages to its assets. The Walt Disney Company ("Disney") is a Delaware corporation which has been improperly using the Stan Lee characters in media and merchandise without SLMI's consent.

## JURISDICTION AND VENUE

3. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Laws of the United States, 17 U.S.C. §101 et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. § 1338 (a) jurisdiction over copyright actions). Venue is proper in Colorado under 28 U.S.C. § 1400 (a) because, *inter alia*, (a) this Court has personal jurisdiction over Disney; (b) acts of copyright infringement concerning the Stan Lee characters occurred within the State of Colorado; (c) Disney knows (or should know) that Disney's willful infringement of SLMI's copyrights in the Stan Lee-created characters has injured SLMI, a Colorado corporation, within the State of Colorado; and/or (d) Disney has engaged in intentional conduct concerning the Stan Lee-created characters that Disney knows (or should know) has the effect of targeting the Colorado market to reap economic benefits for Disney.

## COPYRIGHT OWNERSHIP

4. In October 1998, Stan Lee assigned in writing the copyrights and all other rights in the comic book characters (the "Characters") that he had previously created or would create in the future to Stan Lee Entertainment, Inc. ("SLEI") which is a predecessor to Plaintiff. The assignment was contained in a written agreement which was signed by Stan Lee individually and on behalf of SLEI by an SLEI Company representative (the "SLMI Copyright Assignment"). A true and correct copy of the SLMI Copyright Assignment is attached hereto as Exhibit A and incorporated herein by this reference.

5. In or about April 1999, SLEI merged into and transferred all of its rights and interests to a Delaware corporation called Stan Lee Media, Inc. ("SLMI-DE"). In or about July 1999, SLMI-DE consummated a merger into, and transferred all of its rights and interests (including the rights transferred from SLEI), to a publicly owned Colorado corporation called Boulder Capital Opportunities, Inc. ("BCOI"). Subsequently BCOI was renamed Stan Lee Media, Inc.

6. In October 1999, Stan Lee signed a written agreement amending, modifying and confirming the validity of the 1998 SLMI Copyright Assignment (the "Amendment"). That Amendment was publicly filed with the United States Securities and Exchange Commission in March 2000, as part of a form 10KSB also signed by Stan Lee as SLMI's Chairman of the Board. A true and correct copy of the Amendment is attached hereto as Exhibit B and incorporated herein by this reference.

7. As part of the same form 10KSB, in March 2000, the SLMI Copyright Assignment was also publicly filed by SLMI with the United States Securities and Exchange Commission.

8. On December 16, 2000, Stan Lee, SMLI's Chairman of the Board, confirmed in writing that all he had created in the past and would create in the future belonged to SLMI.

9. Thereafter, on November 28, 2006, the SLMI Copyright Assignment was publicly recorded with the United States Copyright Office, in Volume 3544, as Document No. 426. The recordation, among other things, specifically lists transfer of ownership of copyrights in Spider Man, The Incredible Hulk, X-Men, Fantastic Four, Iron Man, Daredevil, Silver Surfer, Dr. Strange, and Stan Lee Presents. True and correct copies of the United States Copyright Office's Certificate of Recordation, along with the recorded documents, are attached hereto as Exhibit C and incorporated herein by this reference.

10. Oddly, in November 1998, Stan Lee signed a written agreement with Marvel Enterprises, Inc. in which he purportedly assigned to Marvel the rights to the Characters. However, Lee no longer owned those rights since they had been assigned to SLEI previously. Accordingly, the Marvel agreement actually assigned nothing.

11. SLMI is informed and believes and, on that basis, alleges that Disney closed on its purchase of Marvel on December 31, 2009 (the "Disney-Marvel Purchase"). SLMI is informed and believes and, on that basis, alleges that, prior to the Disney-Marvel Purchase, (a) Marvel had never publicly recorded its purported copyright assignment to the Characters under the November 1998 agreement with the United States Copyright Office and (b) Marvel had never publicly filed that purported copyright assignment to the Characters with the United States Securities and Exchange Commission.

12. Accordingly, pursuant to SLMI's copyright ownership rights under its publicly recorded SLMI Copyright Assignment SLMI is entitled, *inter alia*, to the billions of dollars that Disney has generated, or allowed others to generate, within the past three (3) years from motion pictures, and from other media and merchandising, starring the Characters that are owned by SLMI.

## DISNEY'S INTEGRATED OPERATIONS

13. While, for litigation purposes, Disney labels itself as a passive "holding company," it is anything but. Disney and its subsidiaries work as a single business enterprise. Robert A. Iger, Disney's Chairman of the Board and Chief Executive Officer, publically stated, in connection with the acquisition of Marvel Entertainment, that Disney "plan[ned] to use all of Disney's global distribution and marketing resources to extend and increase the popularity of the Marvel brand." Mr. Iger commented that Disney and Marvel "were two companies and there were some licensing agreements that we had entered into that were quite attractive, but there is nothing better than being one. And that is what we look forward to here." Mr. Iger described the reason for integration as follows: "when you operate as one company and you vertically

4

integrate, you remove from the equation a lot of friction." Mr. Iger told the public that Disney's decision to buy Marvel stemmed from the "great opportunities to use the Disney global marketing team and the access we have to different markets" to leverage Marvel.

14. SLMI is informed and believes and, on that basis, alleges that from its position at the top of the corporate pyramid, Disney dictates the policies and practices of the entire conglomerate. More importantly, Disney actively controls the day-to-day operations of its subsidiaries through various means.

15. SLMI is informed and believes and, on that basis, alleges that one way Disney actively manages its subsidiaries is through use of a centralized legal department staffed by Disney personnel. Disney's legal department handles all aspects of the operations of Disney's subsidiaries, ranging from negotiation of film and television deals, to labor relations, and from real estate purchases and leases, to setting company-wide standards for privacy and data use. Disney publically states that its centralized "legal department supports and provides legal advice to The Walt Disney Company, including the theme parks, studio, media networks, consumer products and interactive media group." Also, "[t]he work of the group covers a wide array of specialization, including: litigation, intellectual property, transactions, regulatory compliance, business conduct, corporate affairs, contracts [and] privacy." Disney boasts that "[o]ur employees have an impact on legal affairs around the world."

16. Particularly relevant to the instant dispute, SLMI is informed and believes and, on that basis, alleges that Disney, through its centralized legal department, dictates all issues related to copyright use, copyright infringement and fair competition, for all of Disney's subsidiaries, affiliates and their employees. Through written "Standards Of Business Conduct" provided to Disney's subsidiaries and affiliates, Disney specifically instructs its employees to bring all questions concerning copyright infringement to Disney's centralized legal department for resolution.

5

17.     SLMI is informed and believes and, on that basis, alleges that Disney uses other centralized departments to dominate and control the operations of its subsidiaries.  These departments include:  (a) a human resources department, through which Disney controls company structure, defines job parameters, sets employee compensation and chooses personnel; (b) a finance department, through which Disney analyzes the enterprise's finances and prepares both short term and long term operating and capital plans; and (c) a real estate department, which manages Disney's vast real estate interests and holdings.

18.     SLMI is informed and believes and, on that basis, alleges that Disney uses its influence over its subsidiaries to create a cohesive, integrated business across its global operations.  Particularly relevant here, when Disney purchased Marvel, Disney publically stated that it planned to "integrate Marvel products into the combined company's various distribution channels."  Through the merger, Disney became the sole member of Marvel Entertainment, LLC.  A year later, Disney publically confirmed Marvel's integration into Disney's global operations, telling shareholders that "two Marvel epics . . . and Marvel TV shows, games, comics and merchandise [are] now flowing through our global marketing and distribution network."

19.     SLMI is informed and believes and, on that basis, alleges that as part of that integration, Disney changed the way Marvel used SLMI-owned characters in film projects.  Disney boasted that Disney would begin to both produce and distribute Marvel films, including the 2012 blockbuster "The Avengers," itself, instead of Marvel entering into agreements with other studios.  Later, Disney touted to the public that "The Avengers" was "marketed and distributed by Disney."

20.     Disney's public comments also indicate that Disney directed and controlled infringing use of the SLMI-owned characters in other media.  For example, SLMI is informed and believes and, on that basis, alleges that Disney controls merchandising for the infringing films.  In materials it provided to its investors, Disney bragged about its "merchandise licensing operations" related to "the Marvel properties including Spider-Man and Iron Man."  SLMI is

informed and believes and, on that basis, alleges that Disney now sells infringing merchandise in its bricks-and-mortar Disney Stores, including those located in Colorado, and also through its online store found at www.disneystore.com, which ships merchandise to Colorado and throughout the United States and abroad.

21. Disney has publically confirmed that it directs Marvel to permit other Disney subsidiaries to use Marvel's characters, including Disney Publishing Worldwide, which "creates, distributes and licenses" print works based on "Marvel-branded franchises."

## THE PRIOR LITIGATION

22. During the past decade, there have been a number of cases filed and adjudicated involving Plaintiff, Stan Lee, Marvel and others. Various pieces of that litigation occurred in New York, California and Colorado. The somewhat tortured history of that litigation is set forth below. However, even assuming that each of the various prior rulings is effective (and some are not), none of those rulings limit in any sense Plaintiff's claims herein.

## THE COLORADO LITIGATION

23. The Colorado litigation took place from 2007 to 2011 and was a corporate governance dispute. The allegations in that action included, *inter alia*, that SLMI and approximately 1800 shareholders should be freed from the adverse domination, control and self-dealing of the prior management/shareholder group (the "Prior Control Group"). On May 27, 2010, the Court of Appeals of the State of Colorado issued a ruling that had the effect of authorizing a new board of directors, independent of the Prior Control Group, to act as SLMI's legally authorized representative to, among other things, recover SLMI's assets and to enforce SLMI's copyright ownership rights and other intellectual property rights (the "Corporate Governance Ruling").

24. In October 2010, the Supreme Court of the State of Colorado denied a certiorari petition, filed on behalf of the Prior Control Group, seeking permission to appeal from the Corporate Governance Ruling.

7

25. In November 2010, the Court of Appeals of the State of Colorado issued its mandate, returning jurisdiction over SLMI's corporate governance to the District Court of the State of Colorado.

26. In January 2011, the District Court of the State of Colorado issued an order implementing and formally seating the new board of directors as SLMI's legally authorized representative.

## THE NEW YORK LITIGATION

27. The first New York litigation, in the United States District Court for the Southern District of New York, 09 Civ. 0715 (PAC) was an unauthorized shareholder derivative lawsuit filed on behalf of SLMI against Marvel Entertainment, Stan Lee and others. The derivative plaintiffs sought an accounting for profits in connection with certain ownership rights involving the Characters. In that action, the Honorable Paul A. Crotty found that the derivative plaintiffs did not have standing to bring the claims and were not authorized to sue on behalf of SLMI. However, he also stated that the claims set forth in the amended complaint filed in April 2009 were time-barred.

28. A second piece of litigation in the United States District Court for the Southern District of New York was brought by Stan Lee against various Marvel entities, 02 Civ. 8945 (RWS). That litigation itself was in two parts. In the first part Lee sought certain contract damages. The first action was filed on November 12, 2002. That action was ultimately settled and a Stipulation and Order dismissing the case was entered on April 27, 2005.

29. In July 2010, SLMI's newly authorized board became concerned that efforts may have been made in the closed 2005 case attempting to compromise SLMI's rights while SLMI was adversely dominated by the Prior Control Group. Therefore, in July 2010, SLMI's newly authorized board, out of an abundance of caution, sought to intervene and have the order of dismissal set aside in the closed 2005 case.

30. The Request to Intervene and to have the Order set aside was denied on the grounds that SLMI's copyright claims were not involved. In that Order of Denial the court held that Judge Crotty's time-bar ruling in the first New York action was *res judicata* as to statute of limitations, laches, and estoppel.

31. On March 21, 2012, the United States Court of Appeals for the Second Circuit affirmed the trial court's decision denying the Request to Intervene and to set aside the Order. The Second Circuit also expressly held that it would not reach and therefore chose not to affirm the *res judicata* rulings. Accordingly, the trial court's statements about the *res judicata* effect of Judge Crotty's time-bar rulings are null and void.

## THE CALIFORNIA LITIGATION

32. From approximately February 16, 2001 to a dismissal order issued on approximately November 14, 2006, the Prior Control Group pursued a Chapter 11 bankruptcy case for SLMI in the United States Bankruptcy Court for the Central District of California. During the bankruptcy, the Prior Control Group failed to notify approximately 1800 SLMI shareholders about the bankruptcy or to afford them an opportunity to protect their interests in SLMI and SLMI's assets. On or about January 9, 2007, Stan Lee commenced a lawsuit in the United States District Court for the Central District of California, 07-CV-225 (SVW), on behalf of himself, and as a putative shareholder in a derivative case on behalf of SLMI, seeking a determination, *inter alia*, of intellectual property rights in various assets (the "2007 Case"). Subsequently, two other putative shareholder derivative cases were filed on behalf of SLMI in the California District Court and were assigned to the same judge handling the 2007 Case (the "Related Cases").

33. In January and February 2011, the United States District Court for the Central District of California issued orders (a) consolidating the Related Cases, and designating the 2007 case commenced by Lee, on behalf of SLMI and himself, as the lead case, (b) realigned SLMI as a plaintiff in the 2007 Case, now that SLMI was acting through a legally authorized

9

representative by virtue of the Colorado Corporate Governance Ruling and (c) authorized SLMI to file a complaint in the 2007 Case against Stan Lee and his POW! Entertainment and QED Productions companies as realigned defendants.

34. On August 23, 2012, the United States District Court for the Central District of California (07-CV-0225-(SVW) consolidated with Case Nos. 07-CV-4438-(SVW) and 09-CV-2340-(SVW)) granted a pre-answer Motion to Dismiss the Related Cases by according *res judicata* effect to Judge Crotty's time-bar ruling. SLMI has appealed that ruling to the United States Court of Appeals for the Ninth Circuit. Significantly, the district court ruling does not adjudicate the merits of SLMI's position that SLMI is the copyright owner of the Characters. Defendant Disney was not a party to the Related Cases or the New York Shareholder derivative case.

35. SLMI's copyright infringement claims in this lawsuit against Disney are based upon Disney's independently actionable conduct taking place subsequent to April 2009. All of Disney's infringements as alleged herein have occurred within three years prior to the commencement of this lawsuit. SLMI is entitled to proceed with this copyright infringement lawsuit against Disney, based upon Disney's independently actionable conduct which occurred after April 2009, regardless of the outcome of SLMI's appeal to the Ninth Circuit in the 2007 Case.

**FIRST CLAIM FOR RELIEF**
**(Federal Copyright Infringement)**

36. Plaintiff incorporates by reference all the allegations of paragraph 1 through 25, inclusive as though set forth in full.

37. Within three (3) years of the date of filing of this complaint, Disney has used the Characters in motion pictures entitled Iron Man 2 (May, 2010), X-Men: First Class (June, 2011) Marvel's The Avengers (May, 2012) and The Amazing Spider Man (July, 2012). Each of the motion pictures was exhibited in Colorado and throughout the United States. Those motion

10

pictures have generated box office receipts to date in excess of $3.5 billion. In addition, Defendant has exploited the Characters in other media and merchandising including, but not limited to, the Broadway show Spiderman: Turn Off the Dark (2011), through print media sold and distributed throughout the United States, and through merchandise, including apparel, toys and collectables, sold in Disney's stores and elsewhere. Plaintiff is informed and believes and based thereon alleges that Defendant has generated revenue in these other exploitations in an amount in excess of $2 billion.

38. Plaintiff has complied in all respects with 17 U.S.C. § 101 et seq. including recording the SLMI Assignment with the United States Copyright Office. SLMI has secured the exclusive rights and privileges in and to the copyrights of the Characters as set forth above. Plaintiff has been and still is the sole proprietor of all rights, titles and interests in and to the copyrights in the Characters.

39. Disney's exploitation and use of the Characters as set forth above, and Disney's allowing others to exploit and use the Characters as set forth above, without SLMI's consent violates the exclusive rights belonging to Plaintiff as the owner of the copyrights in the Characters including without limitation Plaintiff's rights under 17 U.S.C § 106.

40. Disney's infringement is both knowing and intentional.

41. Infringing activities are carried out by Disney's subsidiaries, and as described earlier in this complaint, are directed and controlled by Disney. Disney directly benefits from the infringing activities of its subsidiaries, because monetary profits from those activities are funneled from the subsidiaries to Disney. Also, Disney reflects these profits as its own in publically distributed consolidated financial statements, which impact such things as Disney's stock price and credit rating.

42. Plaintiff seeks an award of damages pursuant to 17 U.S.C. §§ 504 and 505.

43. Defendant's infringing conduct has also caused and is causing substantial and irreparable injury and damage to Plaintiff in an amount not capable of determination and, unless

restrained, will cause further irreparable injury leaving Plaintiff without an adequate remedy at law.

44. On information and belief, Plaintiff alleges that Defendant has willfully engaged in and is willfully engaging in, the acts complained of with oppression, fraud and malice and in conscious disregard of the rights of Plaintiff. Plaintiff is, therefore, entitled to the maximum statutory damages allowable.

45. As a consequence of this dispute between the parties as to the right title and interest in the Characters and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Plaintiff also seeks a resolution of this ongoing controversy by a declaration by this Court as to the rights of the respective parties in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a) Declaring that Defendant's unauthorized conduct violates Plaintiff's rights under common law and the Federal Copyright Act;

b) Permanently enjoining Defendant, its officers, directors, agents, service employees, representatives, attorneys, related companies, successors, assigns and all others in active concert or participation with them from copying and republishing any of the Characters without consent or otherwise infringing Plaintiff's copyrights or other rights in any manner;

c) Ordering Defendant to account to Plaintiff for all gains profits and advantages derived by Defendant by their infringement of Plaintiff's copyrights or such damages as are proper and since Defendant intentionally infringed Plaintiff's copyrights, for the maximum allowable statutory damages for each violation;

d) Awarding Plaintiff actual and/or statutory damages for Defendant's copyright infringement in an amount to be determined at trial;

e)  Awarding Plaintiff its costs, reasonable attorneys' fees and disbursements in this action pursuant to 17 U.S.C. § 505(n);

f)  Awarding Plaintiff such other and further relief as is just and proper.

PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

Dated on this 26th day of December, 2012.

       *s/John V. McDermott*
John V. McDermott, #5384
Mark T. Barnes, #23091
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado  80202
Phone:  303.223.1100
Email: jmcdermott@bhfs.com

Robert S. Chapman
Jon-Jamison Hill
EISNER, KAHAN & GORRY, P.C.
9601 Wilshire Boulevard , Suite 700
Beverly Hills, California  90212
Phone:  310.855.3200
Email: rchapman@eisnerlaw.com

Attorneys for Plaintiff Stan Lee Media, Inc.

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of December, 2012, I electronically filed the foregoing **AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT** with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| Frederick J. Baumann | James W. Quinn |
| Holly C. Ludwig | R. Bruce Rich |
| ROTHGERBER JOHNSON & LYONS LLP | Randi W. Singer |
| One Tabor Center, Suite 3000 | WEIL, GOTSHAL & MANGES LLP |
| 1200 17th Street | 767 Fifth Avenue |
| Denver, CO 80202-5855 | New York, NY 10153 |
| Tel: (303) 623-9000 | Tel: (212) 310-8000 |
| Fax: (303) 623-9222 | james.quinn@weil.com |
| fbaumann@rothgerber.com | bruce.rich@weil.com |
| hludwig@rothgerber.com | randi.singer@weil.com |

*s/Penny G. Lalonde*
Penny G. Lalonde, Paralegal

14