IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02663-WJM-KMT

STAN LEE MEDIA, INC.

    Plaintiff,

v.

THE WALT DISNEY COMPANY,

    Defendant.

---

**THE WALT DISNEY COMPANY'S MOTION TO DISMISS THE AMENDED
COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12(b)(6)**

---

Defendant The Walt Disney Company ("TWDC") respectfully moves under Federal Rules 12(b)(2) and 12(b)(6) to dismiss Plaintiff's Amended Complaint with prejudice.

**INTRODUCTION AND STATEMENT OF CONFERRAL**

This action is the latest in a long series of attempts to assert non-existent rights over unspecified Marvel comic book characters allegedly stemming from a terminated 1998 agreement that on its face never granted any such rights in the first place. Faced with a motion to dismiss its initial complaint, Plaintiff filed an Amended Complaint, which fails even to address, much less remedy, the infirmities identified in that motion.[1] Numerous previous litigations have soundly rejected the copyright claim in Plaintiff's collaterally-estopped and time-barred Amended Complaint because Plaintiff cannot adequately allege, let alone establish, that it owns any copyright rights in these characters. Barred by *res judicata* from reiterating its claims against Marvel, Plaintiff now targets TWDC, a holding company that lacks minimum contacts

---

[1] Familiarity with TWDC's previous motion, however, is neither required nor presumed in connection with the instant motion, which sets forth all salient facts and legal authority necessary to dispose of this action.

with this forum and that has taken no action (infringing or otherwise) concerning the characters apparently at issue.

In accordance with Section III (D)(1) of WJM's Revised Practice Standards, counsel for the parties conferred on January 10, 2013, wherein TWDC explained that the Amended Complaint remedied none of the fatal flaws in the initial complaint, and that this action remained frivolous and without merit. TWDC again requested that Plaintiff withdraw its Amended Complaint and confer about expeditious dismissal in the hope of avoiding yet another motion to dismiss. Plaintiff's counsel responded that they believed SLMI has a valid claim against TWDC and declined to withdraw the Amended Complaint.

## FACTUAL ALLEGATIONS

On motions to dismiss, well-pled allegations are accepted as true, but conclusory statements are not entitled to such a presumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) (courts should not "credit a complaint's conclusory statements without reference to its factual context"); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012).[2]

Stan Lee Entertainment, Inc. ("SL Entertainment")[3] was formed in 1998 after Stan Lee, who was a full-time employee of Marvel and its predecessors for some forty years, ended his full-time employment with Marvel. *Lee v. Marvel Enters.*, 2011 WL 382986, at *2 (S.D.N.Y. Feb. 4, 2011); *see also* Amended Complaint ("Am. Compl.") ¶ 4 & Ex. A. Lee entered into an

---

[2] The facts below are drawn from the Amended Complaint, documents incorporated by reference, and documents as to which judicial notice may be taken. *Cohon v. N.M. Dep't of Health*, 646 F.3d 717, 724 (10th Cir. 2011) (court may consider documents referred to in the complaint); *Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1149 (10th Cir. 2008) ("courts may consider matters of which they can take judicial notice even if not mentioned in the complaint"). Certain judicially noticeable documents, which may be considered on a motion to dismiss without converting it to summary judgment, are attached as exhibits to the Declaration of Randi W. Singer, dated January 14, 2013 ("Singer Decl.").

[3] Plaintiff is the alleged corporate successor of SL Entertainment. *See* Am. Compl. ¶ 5.

2

agreement dated October 15, 1998 with SL Entertainment (the "1998 Agreement") pursuant to which Plaintiff contends it owns rights in unspecified "comic book characters (the 'Characters') that [Lee] had previously created or would create in the future." *Id.* ¶ 4.  Plaintiff contends the 1998 Agreement somehow conveyed rights in Iron Man, The X-Men, The Avengers and Spider-Man, characters created years earlier while Lee was a full-time Marvel employee.  *See id.* ¶¶ 1, 4, 9.  But if Lee had the ability to convey rights to Marvel-owned, work-made-for-hire characters (and he did not), Lee also had the right to reclaim any intellectual property so conveyed in the event of a material breach, *id.* Ex. A at ¶¶ 4(b) & (c),[4] and in fact, did so in a letter dated January 30, 2001, which terminated the 1998 Agreement on that basis.  Singer Decl. Ex. B.

Nevertheless, over the span of years, Plaintiff and others acting in its name initiated numerous meritless legal actions in several jurisdictions, contending Plaintiff owns copyright rights in the "Characters" based on the 1998 Agreement.  Every reviewing court has found these efforts fail as a matter of law.  Am. Compl. ¶¶ 27-34.  First, Hon. Paul A. Crotty in the Southern District of New York dismissed a shareholders' derivative action with prejudice, finding any claim that Plaintiff owned copyright ownership rights barred by the statute of limitations and the doctrines of laches and estoppel.  *See Abadin v. Marvel Entm't, Inc.*, 2010 WL 1257519, at \*7 (S.D.N.Y. Mar. 31, 2010) ("*Abadin I*").[5]  Citing the serial efforts of Plaintiff and those acting on its behalf to raise identical issues of copyright ownership in various federal and state courts, Judge Crotty admonished that the time had finally come to "bring this matter to a close":

---

[4] The 1998 Agreement explicitly referenced an agreement between Lee and Marvel that Plaintiff alleges also included a conveyance of certain intellectual property rights and acknowledged Lee's commitment to continue to work for Marvel.  Am. Compl. ¶ 10 & Ex. A at ¶ 2; *see also* Singer Decl. Ex. A at ¶ 5(a).  SL Entertainment was thus aware of that agreement and its terms when it signed the 1998 Agreement.

[5] Abadin filed a duplicative derivative suit in California, where all related proceedings were subsequently stayed pending resolution of *Abadin I* and the subsequent resolution of *Lee v. Marvel*.  *Id.* Exs. C-E.

3

> The transaction [underlying SLMI's claims] is now more than a decade old. Plaintiffs have been attempting to initiate the proceeding in this Court now for more than three years; in Colorado Supreme Court for more than half a decade; for three years in the U.S. District Court for the Central District of California; and in a bankruptcy proceeding involving SLMI, which began in February, 2001 and continued to December, 2006. There has also been class action litigation in the Central District of California involving these same parties, as well as a settlement thereof. Moreover, one of the princip[al] instigators of litigation involving SLMI is a convicted felon who manipulated SLMI's stock. Finally, the proposed amended pleading is the fourth such pleading dealing with SLMI's allegations against Marvel and Lee here in the Southern District [of New York]. . . . Given the pleading history . . . , it is now time to call a halt.

*Id.* at *4, *6 n.5. Notwithstanding this clear directive, Plaintiff tried again, asserting the same copyright ownership claim grounded in identical allegations in several more actions in New York and California, all of which were rejected on *res judicata* grounds based on *Abadin I*. *Lee*, 2011 WL 382986, at *13, *aff'd,* 471 F. App'x 14, 17 (2d Cir. 2012); *Stan Lee Media Inc. v. Lee*, 2012 WL 4048871, at *7 (C.D. Cal. Aug. 23, 2012) ("the public interest in *res judicata* is at its zenith in this case"). Indeed, the Amended Complaint in this action is precisely the type of seriatim pleading against which Judge Crotty warned nearly three years ago.

As its claims against Marvel are barred, Plaintiff has sued TWDC, apparently based on the 2009 Marvel acquisition. This gamesmanship cannot disguise the fact that the underlying collaterally-estopped and time-barred claim is doomed because Plaintiff does not own the copyright rights it attempts to assert. The Court, however, need not even reach that issue because it lacks jurisdiction over TWDC – a corporate holding company with no connections with Colorado. *See* Declaration of Marsha L. Reed In Support Of The Walt Disney Company's Motion To Dismiss, dated January 14, 2013 ("Reed Decl.") ¶¶ 2-4. TWDC owns stock directly or indirectly in numerous corporations operating in various fields including entertainment,

4

recreation and consumer products, including Marvel Entertainment, but it does not itself produce, market or distribute motion pictures or merchandise featuring any Marvel character.[6] *Id.* ¶¶ 2, 6, 9.  TWDC is incorporated in Delaware and its principal place of business is in California; it is qualified to do business in California and New York, but is not qualified to and does not conduct business in Colorado.  *Id.* ¶¶ 2-4.  It has not incurred or paid taxes in Colorado; has no place of business or employees in Colorado; owns no real estate, bank accounts or assets in Colorado; and has not appointed an agent for the service of process in Colorado.[7]  *Id.* ¶ 4.

Accordingly, this lawsuit is frivolous and should be dismissed with prejudice.

## ARGUMENT

**I.  THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(2) BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER TWDC**

Although as we discuss below this action should be dismissed on its merits for a multitude of reasons, as a threshold matter this Court lacks personal jurisdiction over TWDC and the Amended Complaint should be dismissed for that reason alone.[8]  It is Plaintiff's burden to establish personal jurisdiction.  *Intercon, Inc. v. Bell Atl. Internet Sol., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).  The Amended Complaint adds some conclusory allegations with selective quotations from websites and SEC filings, but it does not come close to satisfying this Circuit's personal jurisdiction analysis, which considers whether: (1) any applicable statute authorizes

---

[6] The works referenced in the Amended Complaint were produced by numerous other entities, from many-times-removed indirect Marvel subsidiaries to licensed third-parties.  Reed Decl. ¶¶ 9-13.

[7] Plaintiff served the Complaint on TWDC through its designated agent in Delaware.  *Id.* ¶ 5.

[8] Because this action is collaterally estopped and time-barred, it should not go forward on any basis, in any jurisdiction.  Accordingly, the Court should not entertain any request by Plaintiff for jurisdictional discovery to overcome TWDC's Rule 12(b)(2) motion, for "there is a very low probability that the lack of [jurisdictional] discovery [will] affect[] the outcome of this case."  *Grynberg v. Ivanhoe Energy, Inc.*, 2012 U.S. App. LEXIS 14254, at *45-47 (10th Cir. July 12, 2012) (quoting *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004)).

service of process and (2) the exercise of such statutory jurisdiction comports with constitutional due process. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). Here, the analysis collapses into one inquiry because the Copyright Act does not provide for nationwide service and Colorado's long-arm statute is coextensive with the Due Process Clause. *See* Fed. R. Civ. P. 4(k)(1)(A); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004).

Before the Court can exercise jurisdiction consistent with due process, Plaintiff must show TWDC has "minimum contacts" with Colorado such that defending a lawsuit here would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts may be analyzed in terms of specific jurisdiction (where the claim arises from the defendant's contacts in the forum) or general jurisdiction (where a defendant has such "continuous and systematic" contacts with the forum that it is subject to jurisdiction there on any claim). *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). Neither is applicable here, as TWDC has no contacts with, and did not "purposefully avail itself of the privilege of conducting activities" in, Colorado. *Benton*, 375 F.3d at 1076.

TWDC has no "continuous and systematic" contacts that might subject it to general jurisdiction in Colorado because it has never conducted business or paid taxes, had an office or employees, owned real estate, bank accounts or other assets, or appointed an agent for the service of process in Colorado. *See* Reed Decl. ¶ 4. This Court likewise lacks specific jurisdiction because there are no allegations of any conduct by TWDC in Colorado that purportedly gave rise to Plaintiff's copyright infringement claim – nor could there be, as TWDC is a holding company

6

and conducts no business apart from holding stock in various subsidiaries.[9] *See, e.g.*, *SGI Air Holdings II LLC v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1199 (D. Colo. 2002) (dismissing action for lack of personal jurisdiction over holding company whose business "is not to direct the day to day activities of its subsidiaries, but instead to hold the stock of companies"); *CIVIX-DDI, LLC v. Microsoft Corp.*, 1999 U.S. Dist. LEXIS 15230 (D. Colo. Oct. 1, 1999) (dismissing action against holding company that had no contacts with Colorado).[10]

That TWDC is the ultimate parent of Marvel or other indirect subsidiaries that allegedly do business in Colorado is irrelevant. "[A] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity." *Benton*, 375 F.3d at 1081. Such circumstances are narrowly defined, and disregard of the corporate entity is justified only where "separation of the two entities has not been maintained and injustice would occur to third parties if the separate entity were recognized." *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974); *see also* Restatement (Second) of Conflicts of Laws § 52 cmt. b (The general rule is that "[j]udicial

---

[9] Numerous courts have granted motions to dismiss filed by TWDC, finding that the parent holding corporation itself had no contacts in the forum state sufficient to support personal jurisdiction. *See, e.g.*, *Rosato v. Walt Disney Co.*, 2012 U.S. Dist. LEXIS 137126 (D.N.J. Aug. 27, 2012); *Lahera v. Walt Disney Co.*, 2008 U.S. Dist. LEXIS 64726 (E.D. Mich. Aug. 22, 2008), *aff'd*, Order (6th Cir. July 28, 2009) (attached as Singer Decl. Ex. F); *Triune Star, Inc. v. Walt Disney Co.*, 2008 U.S. Dist. LEXIS 62305 (C.D. Ill. Aug. 14, 2008); *Rapp v. Walt Disney Co.*, 1998 U.S. Dist. LEXIS 13793 (E.D. Pa. Sept. 3, 1998); *Walt Disney Co. v. Nelson*, 677 So.2d 400 ( Fla. Dist. Ct. App. 1996).

[10] The "mere fortuity" that Plaintiff is incorporated in Colorado, Am. Compl. ¶ 2, does not translate to personal jurisdiction over TWDC in this forum. *See Shell v. Am. Family Rights Ass'n*, 2012 WL 4476641, at *9 (D. Colo. Sept. 28, 2012) ("[N]one of the activities purportedly giving rise to the harm alleged here was directed at Colorado, and the mere fortuity that [plaintiff] resides in Colorado (and thus suffers harm here) is insufficient to create personal jurisdiction."); *Allison v. Wise*, 621 F. Supp. 2d 1114, 1121 (D. Colo. 2007) (dismissing copyright complaint for lack of personal jurisdiction where only contact with forum was plaintiff's alleged injury).

7

jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation . . . even though the parent owns all of the subsidiary's stock.").

The Amended Complaint, at best, "present[s] nothing more than conclusory allegations to support the theories of agency [or] alter ego," *First Horizon Merchant Servs. v. Wellspring Cap. Mgmt., LLC*, 166 P.3d 166, 178 (Colo. Ct. App. 2007), and thus fail as a matter of law to establish jurisdiction.[11]  For example, Plaintiff alleges TWDC "and its subsidiaries work as a single business enterprise," Am. Compl. ¶ 13; "dictates the policies and practices of the entire conglomerate," *id.* ¶ 14; "actively manages its subsidiaries . . . through use of a centralized legal department," *id.* ¶ 15-16, and "dominate[s] and control[s] the operations of its subsidiaries," *id.* ¶ 17.  These allegations are patently insufficient to satisfy Plaintiff's burden to make a *prima facie* showing of alter-ego or agency jurisdiction.  *First Horizon*, 166 P.3d at 178; *Weilser v. Cmty. Health Inv. Co.*, 2012 U.S. Dist. LEXIS 139924, at *15-16 (D.N.M. Sept. 27, 2012) (parent's reference to subsidiary's business as being part of parent's business using "'we,' 'us,' 'our,' and 'the Company,'" do not "confer personal jurisdiction or serve to erase the substantive and legal distinctions between corporations"); *see* Reed Decl. ¶¶ 6-8 (explaining separateness of TWDC and subsidiaries Plaintiff apparently alleges engaged in infringing conduct).[12]  Further amendment here would be futile, as even identifying a subsidiary with contacts with Colorado could not support jurisdiction over TWDC based solely on its corporate relationships.

---

[11] "For purposes of personal jurisdiction, agency and alter ego . . . often depend on the same facts when parent and subsidiary corporations are involved.  Particularly, facts concerning the amount of control exercised by the corporate parent over its subsidiary are relevant for both theories." *Id.* at 177.

[12] *See also Sprint Commc'ns v. Cox Commc'ns*, 2012 U.S. Dist. LEXIS 131116, at *23 (D. Kan. Sept. 14, 2012) ("Merely providing legal representation . . . to a subsidiary will not subject a parent company to personal jurisdiction."); *F. Hoffman-LaRoche v. Sup. Ct.*, 30 Cal. Rptr. 3d 407, 422 (Cal. Ct. App. 2005) (consolidated reporting and use of "we" or "the company" in media releases are typical and expected of affiliated or wholly-owned companies, and does not establish agency for purposes of jurisdiction).

In the absence of any contacts, the Court need not reach the second prong of the analysis, but it is clear that exercising jurisdiction over TWDC would be demonstrably unreasonable. *See Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal.*, 480 U.S. 102, 113 (1987) (setting forth "fairness" factors to be considered on due process inquiry); *Trujillo*, 465 F.3d at 1221 ("[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction.") The law does not require TWDC to undertake the burden of defending a suit in a forum where it has no contacts, and the Court need not give weight to Plaintiff's countervailing interest in convenient relief in Colorado, as it has by its own prior conduct acknowledged its preparedness to litigate the issues presented here in other jurisdictions. None of the alleged events giving rise to the Complaint occurred in Colorado, so notions of fair play and substantial justice dictate that TWDC is not subject to suit here.

## II. THE AMENDED COMPLAINT FAILS TO CURE ANY OF THE FATAL DEFICIENCIES THAT REQUIRE DISMISSAL PURSUANT TO RULE 12(B)(6)

Even were TWDC subject to jurisdiction here, the Amended Complaint still would warrant dismissal because it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678); *see Syrus v. Bennett*, 455 F. App'x 806, 808 (10th Cir. 2011). Plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The changes in the Amended Complaint still fail to "nudge[] [the] claims across the line from conceivable to plausible." *Id.* at 570. Plaintiff's futile attempts to amend the complaint have shown that these deficiencies are incurable, and the Amended Complaint should be dismissed with prejudice.

9

A.  **The Amended Complaint Should Be Dismissed Because Plaintiff Is Collaterally Estopped From Relitigating The Issue Of Its Purported Copyright Ownership Claims**

As the Amended Complaint acknowledges, at least three previous courts have rejected Plaintiff's claim of copyright ownership in certain Marvel characters based on the 1998 Agreement. *See* Am. Compl. ¶¶ 27-34. The Amended Complaint is therefore barred by the doctrine of collateral estoppel because: (1) the issue previously decided is identical to that presented in this action; (2) the prior action was finally adjudicated on the merits; (3) Plaintiff, the party against whom the doctrine is invoked, was a party (or in privity with a party) to the prior adjudication; and (4) Plaintiff had a full and fair opportunity to litigate the issue in the prior action. *See B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006). The purpose of collateral estoppel is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication" – in other words, to prevent needless relitigation and bring finality to litigation. *See SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990); *see also Sierra Club v. Two Elk Generation P'ners, L.P.*, 646 F.3d 1258 (10th Cir. 2011). The propriety of the doctrine's application is particularly acute here, as the issue of Plaintiff's alleged copyright ownership has been adjudicated repeatedly, and its filing of an Amended Complaint itself is confirmation that it intends to continue to litigate the issue indefinitely.

All elements of collateral estoppel are easily met here. First, the gravamen of the claim – that the 1998 Agreement conveyed copyrights to Plaintiff – is precisely that which underlay all of the previously dismissed actions. Second, *Abadin I*'s dismissal of the earlier claims with prejudice based, *inter alia*, on the statute of limitations and a failure to state a claim was on the

10

merits. *See Fed. Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 & n.3 (1981) ("[D]ismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"); *Nwosun v. Gen. Mills Rest., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) ("judgment for failure to comply with the statute of limitations is a judgment on the merits").[13]

The third element is also satisfied, for collateral estoppel requires only that "the party *against whom* [it] is invoked be a party, or in privity with a party, to the prior adjudication," and thus the doctrine "can be invoked *by* any third party." *Park Lake Res. LLC v. U.S. Dep't of Agr.*, 378 F.3d 1132, 1138 (10th Cir. 2004) (emphasis in original).[14] It is thus immaterial that TWDC was not a party to any of the prior cases, Am. Compl. ¶ 34, because, as two courts already have determined, Plaintiff – the party *against which* collateral estoppel is asserted – was in privity with the *Abadin I* plaintiffs.[15] *See Lee*, 2011 WL 382986, at *13 (parties are identical where "subsequent actions [are] brought by the corporation or other shareholders, including those who were not parties to the prior litigation, so long as the parties' interests were adequately represented in the prior action"); *Stan Lee Media*, 2012 WL 4048871, at *4 (privity found between *Abadin I* plaintiffs and Plaintiff due to parties' "overlapping economic interests"). The fourth element, which "centers on the fundamental fairness of preventing the party from

---

[13] The motion to dismiss was decided on a number of alternative grounds and "is an effective adjudication as to [each] and is collaterally conclusive as to [each]." *B-S Steel of Kan., Inc. v. Texas Indus., Inc.*, 327 F. Supp. 2d 1252, 1262 (D. Kan. 2004), *aff'd*, 439 F.3d 653 (10th Cir. 2006); *see also Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) ("[W]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum.").

[14] "To decide otherwise would be to permit repeated litigation of the same issue as long as the supply of unrelated defendants holds out, a practice that would reflect either the aura of the gaming table or a lack of discipline and of disinterestedness on the part of the lower courts." *Id.* This observation by the Tenth Circuit was prescient, as this is precisely the end Plaintiff seeks to accomplish in the instant lawsuit.

[15] Privity requires "at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *Lowell Staats Mining Co., Inc. v. Phila. Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir. 1989).

11

relitigating an issue [it] lost in a prior proceeding," *SIL-FLO, Inc.*, 917 F.2d at 1521, is also met as there were no procedural limitations in *Abadin I* and plaintiff had the opportunity and incentive to litigate the issue fully and indeed did so. *Id.*; *Nwosun*, 124 F.3d at 1257-58. The *Abadin I* plaintiffs plainly were aware "they were representing the interests of the corporation." *Stan Lee Media*, 2012 WL 4048871, at *5. Plaintiff's rights and interests were adequately represented in *Abadin I* by shareholders whose economic interests were aligned with Plaintiff.

In sum, collateral estoppel bars Plaintiff from relitigating an issue whose underpinnings have been rejected time and again. Having failed ever to have established *ab initio* that it owns the copyright ownership rights alleged to be infringed, Plaintiff cannot cure the deficiencies of its claim by naming TWDC as defendant. This is particularly so where the Amended Complaint itself make clear that the crux of Plaintiff's claim is the alleged conduct not of TWDC, but of its "subsidiaries," as to which Plaintiff is clearly barred by *res judicata* from directly pursuing any further claims. *See* Am. Compl. ¶ 41; *see also id.* ¶¶ 13-21.

### B.  Plaintiff's Copyright Claim Is Long Since Time-Barred

The Copyright Act's three-year statute of limitations is an equally fatal and independent ground for dismissal with prejudice. *See* 17 U.S.C. § 507(b). Under the Copyright Act, "a claim 'accrues' when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Home Design Servs., Inc. v. B & B Custom Homes, LLC*, 509 F. Supp. 2d 968, 972 (D. Colo. 2007). The statute of limitations applies equally to copyright ownership and infringement claims. *Kwan v. Schlein,* 634 F.3d 224, 230 (2d Cir. 2011).

Though labeled an infringement claim, the gravamen of Plaintiff's claim is copyright ownership – if Plaintiff owns no copyrights, no infringement claim lies. *See La Resolana*

*Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009). Thus, Plaintiff's allegations of infringement occurring within the last three years are irrelevant to whether the Complaint is time-barred; because Plaintiff's underlying ownership claim is barred, any claim of infringement (which in any event are not well-pled) are barred as well. *Tolliver v. McCants*, 2009 U.S. Dist. LEXIS 25233, at *26 (S.D.N.Y. Mar. 25, 2009) ("[W]here the gravamen of a plaintiff's copyright claim is ownership, and not infringement, the infringement claims are barred if the ownership claim is time-barred, even if the infringing acts occurred within the last three years.").

Here, Plaintiff's purported ownership claim accrued upon execution of the 1998 Agreement, which explicitly referenced Lee's employment agreement with Marvel and put Plaintiff on notice that there existed an adverse claim of ownership to the comic book characters. *See* Am. Compl. ¶ 4 & Ex. A. Moreover, Plaintiff had even further notice of its claim since Marvel has for decades made continuous open and notorious use of its intellectual property, including the comic book characters that appear to be the subject of Plaintiff's claim. *Abadin I*, 2010 WL 1257519, at *6 n.5 (plaintiffs had knowledge of their claim where Marvel's conduct "was neither secret nor clandestine; but rather open and notorious"); *see DeCarlo v. Archie Comic Publ'ns, Inc.*, 127 F. Supp. 2d 497, 507-508 (S.D.N.Y. 2001), *aff'd*, 11 F. App'x 26 (2d Cir. 2001) (copyright ownership claim time-barred where plaintiff knew defendant claimed ownership of comic book characters and did nothing). At the latest, Plaintiff had express notice of an adverse ownership claim when Lee terminated the 1998 Agreement in 2001 and expressly reclaimed any rights conferred in that agreement. Singer Decl. Ex. B.[16] Any ownership claim

---

[16] The *Abadin I* court also determined that under California law, which provides that "a contract to render personal service . . . may not be enforced against the employee beyond seven years from the commencement of service under it," Cal. Labor Code § 2855(a), Lee's obligations under the 1998

13

based on the 1998 Agreement expired no later than 2004 (three years after it was terminated) and should be dismissed as time-barred.[17]

### C. The Complaint Fails To State A Cause Of Action Against TWDC

Even were Plaintiff's claim not collaterally estopped and time-barred, it nevertheless would warrant dismissal because, having failed anywhere to allege any specific acts of unauthorized copying or distribution by TWDC of any specific work, the Amended Complaint fails in all respects to plead a plausible copyright infringement claim. A copyright claim must "specify each and every act of infringement," including the specific works alleged to have been infringed and "exactly how, when, and by whom . . . the alleged infringement occurred." *Shell*, 2012 WL 4476641, at *13; *see also Shepard's McGraw-Hill Inc. v. LegalSoft Corp.*, 769 F. Supp. 1161, 1166-67 (D. Colo. 1991). The Amended Complaint does not do so, nor does it allege any infringing conduct by TWDC in derogation of the exclusive rights afforded to copyright owners in the Copyright Act. *See* 17 U.S.C. § 106. Even Plaintiff's description of its "Claim for Relief" fails to state that TWDC has engaged in any unauthorized copying, distribution, or use of any kind of any protected works of expression, *see* Am. Compl. ¶¶ 36-45, and vague and conclusory allegations of "independently actionable conduct," *id.* ¶ 35, are patently insufficient to satisfy Plaintiff's pleading burden in this regard.[18] *See Marvullo v.*

---

Agreement were statutorily terminated no later than October 2005. "There can be no attempt to enforce this contract beyond the statutory term." *Abadin I*, 2010 WL 1257519, at *6.

[17] To the extent Plaintiff had any claim that Lee's termination was improper, it would have been governed by California's four-year statute of limitations on contract claims, which as Judge Crotty held in *Abadin I* had expired as of 2005. *Abadin I*, 2010 WL 1257519, at *6.

[18] Even the Amended Complaint's "Prayer for Relief" amply illustrates that Plaintiff fails to appreciate its own pleading burden, for it requests a declaration that the unspecified conduct of TWDC "violates Plaintiff's rights *under common law*," which rights in any event are preempted by the Copyright Act. *See id.* at 12 (emphasis added); *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1146 (10th Cir. 2009).

*Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) ("plaintiff [must] plead with specificity the acts by which a defendant has committed copyright infringement"). Allegations that certain films featuring Marvel characters were exhibited in Colorado, or that merchandise featuring the characters Plaintiff claims to own was sold there, *see* Am. Compl. ¶ 37, are entirely immaterial, as they nowhere allege that TWDC itself had any part in such activities.

Additionally, Plaintiff persists in failing even to specify the works for which it claims to own copyrights, referring vaguely instead to "comic book characters . . . that [Lee] had previously created or would create." *See* Am. Compl. ¶ 4. A general averment as to hundreds of works to which Lee contributed is plainly insufficient to support an infringement claim, and neither naming a handful of "the best known comic book characters" in the Amended Complaint, *id.* ¶ 1, nor attaching a Copyright Office document cover sheet naming certain additional characters without specifying particular registrations, *id.* Ex. C, cures this deficiency.[19] *See Cole v. John Wiley & Sons, Inc.*, 2012 U.S. Dist. LEXIS 108612, at *36-37 (S.D.N.Y. Aug. 1, 2012) ("Courts have repeatedly rejected the use of the type of conclusory and vague allegations pleaded by Plaintiff as a substitute for allegations that specify the original works that are the subject of a copyright claim."). There accordingly can be no cognizable copyright infringement claim against TWDC.

## CONCLUSION

Accordingly, the Amended Complaint should be dismissed in its entirety with prejudice. DATED this 14th day of January, 2013.

---

[19] This is particularly so since at least one court has found Marvel owns the copyright rights in these very "best known comic book characters" as works made for hire, which means Lee never had rights in the characters to convey. *See Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720 (S.D.N.Y. 2011).

15

Respectfully submitted,

 /s/  James W. Quinn

James W. Quinn
R. Bruce Rich
Randi W. Singer
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
james.quinn@weil.com
bruce.rich@weil.com
randi.singer@weil.com

Frederick J. Baumann
Holly C. Ludwig
ROTHGERBER JOHNSON & LYONS LLP
One Tabor Center, Suite 3000
1200 17th Street
Denver, CO 80202-5855
Tel: (303) 623-9000
Fax: (303) 623-9222
fbaumann@rothgerber.com
hludwig@rothgerber.com

*Counsel for The Walt Disney Company*

# CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January, 2013, I filed electronically the foregoing **THE WALT DISNEY COMPANY'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12(b)(6)** with the Clerk of Court, using the CM/ECF system, which caused automatic electronic notification of such filing upon the following:

John V. McDermott
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202
Telephone: (303) 223-1100
E-mail: jmcdermott@bhfs.com

Robert S. Chapman
Jon-Jamison Hill
EISNER, KAHAN & GORRY
9601 Wilshire Boulevard, Suite 700
Beverly Hills, California 90212
Telephone: (310) 855-3200
Email: rchapman@eisnerlaw.com
    jhill@eisnerlaw.com


    */s/*  Holly C. Ludwig