1                    IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF COLORADO

3       Case No. 12-CV-02663-WJM-KMT

4       _____

5       STAN LEE MEDIA, INC.,

6            Plaintiff,

7       vs.

8       THE WALT DISNEY COMPANY,

9            Defendant.

10      _____

11             Proceedings before KATHLEEN M. TAFOYA, United

12      States Magistrate Judge, United States District Court

13      for the District of Colorado, commencing at 9:14 a.m.,

14      Thursday, January 10, 2013, in the United States

15      Courthouse, Denver, Colorado.

16      _____

17             WHEREUPON, THE ELECTRONICALLY RECORDED
        PROCEEDINGS ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18      _____

19                              APPEARANCES

20           MR. ROBERT CHAPMAN, ESQ., MR. JON HILL, ESQ.,
             MR. MARK BARNES, ESQ., MR. JOHN MCDERMOTT, ESQ.
21                Appearing on behalf of the Plaintiff.

22           MS. RANDI SINGER, MR. FREDERICK BAUMANN, ESQ.,
                       MS. HOLLY LUDWIG, ESQ.
23                Appearing on behalf of the Defendant.

24      _____

25                         SCHEDULING CONFERENCE

```
 1              P R O C E E D I N G S
 2              (Whereupon, within the electronically recorded
 3    proceedings are herein transcribed, pursuant to order of
 4    counsel.)
 5              THE COURTROOM DEPUTY:  All rise.  Court is now
 6    in session.
 7              THE COURT:  Good morning, everyone.  Please be
 8    seated.
 9              UNKNOWN SPEAKER:  Good morning, Your Honor.
10              THE COURT:  Okay.  We're here this morning for
11    a scheduling conference.  The case is Civil Action No.
12    12-CV-2663.  Stan Lee Media, Inc., plaintiff, versus The
13    Walt Disney Company.  May I have appearances, please.
14    First for plaintiff.
15              MR. MCDERMOTT:  Good morning, Your Honor.
16    John McDermott from Brownstein, Hyatt, Farber, Schreck.
17    I am here on my left with Mark Barnes from Brownstein,
18    and on my right, from the Eisner law firm in
19    Los Angeles, John Hill, and to his right Robert Chapman.
20              THE COURT:  All right.  Good morning to all of
21    you.
22              MR. CHAPMAN:  Good morning.
23              MR. BAUMANN:  Good morning, Your Honor.  Fred
24    Baumann from Rothgerber, Johnson & Lyons.  With me is my
25    colleague, Holly Ludwig.  And I'd like to introduce to
```

1    the court Randi Singer from the Weil Gotshal firm in

2    New York.

3            THE COURT:  Okay.  Good morning to all of you.

4    This is quite a turnout for a scheduling conference, so

5    it's nice to see all of you.  These are fairly routine,

6    so let me know if you think that I'm skipping over

7    anything too fast here.

8            I did read your proposed order before I came

9    on the bench.  Actually, I read it yesterday.  So,

10   looking -- I'm turning, first, to Section 6 and the

11   initial disclosures under Rule 26.  It looks like

12   everybody was going to make them or did make them on

13   January 3rd.  Is that complete for plaintiffs?

14           MR. CHAPMAN:  Yes, Your Honor.

15           THE COURT:  All right.  And for defendant?

16           MS. SINGER:  Yes, Your Honor.

17           THE COURT:  All right.  And as I understand

18   it, have these two sides been in litigation before, so

19   you kind of know the issues or --

20           MS. SINGER:  Your Honor, subsidiary -- various

21   other Marvel companies and -- there has been litigation

22   between the plaintiffs and various people, that if there

23   were personal jurisdiction and if the proper defendant

24   had been sued would be on my side of the V.  But the

25   Walt Disney Company, as I think is set forth in some of

1    our papers, we don't believe is the proper defendant in

2    this action.  And I'd be happy to address that if Your

3    Honor would like to -- if Your Honor would like to hear

4    all that.

5             THE COURT:  I -- I don't think that's going to

6    be before me.

7             MS. SINGER:  Okay.

8             THE COURT:  I looked at the docket and it does

9    look like the motion to dismiss was denied, but only

10   because an amended complaint was filed.

11            MR. CHAMPMAN:  Correct.

12            THE COURT:  And the same thing happened with

13   the motion for stay.  We just -- that -- that was before

14   me and we denied that as moot as well.  So I assume that

15   you're going to re-file those.

16            MS. SINGER:  Yes, Your Honor.  The -- our --

17   as we -- as we said in our reply brief on our motion to

18   stay, Monday, January 14th, so this coming Monday is the

19   deadline for us to file a motion to dismiss the amended

20   complaint.  And as we said in the scheduling order and

21   as we said in our reply brief we are intending to do

22   that.  And at that point, I guess, however Your Honor

23   would like to proceed.  I mean, if it makes sense we'll

24   just file a new motion to stay and we can go forward

25   there.

 1              So it's -- this scheduling conference is a

 2      little bit of a quirk in the timing because it's fallen

 3      between motions to dismiss.  And our position will

 4      obviously be that the amended complaint doesn't actually

 5      cure any of the incurrable defects in the first

 6      complaint.

 7              THE COURT:  All right.

 8              MR. CHAMPMAN:  Your Honor, to answer your

 9      initial question, these sets of counsel have not dealt

10      with one another concerning these parties.  Prior

11      litigation doesn't deal with the issues in this case.

12              As to any upcoming motion to dismiss or motion

13      to stay, you know, we're certainly willing to deal with

14      that when it comes up.  But there is one issue that I

15      think is appropriate.  I don't want to get ahead of

16      myself, but to the extent the motion to dismiss does

17      raise jurisdictional issues, counsel and I have

18      discussed the question of jurisdictional discovery, and

19      I was wondering if Your Honor has any sort of system

20      where we could, for example, engage in jurisdictional

21      discovery, delay any sort of determination on the motion

22      to dismiss until that discovery is completed, and papers

23      can be filed based upon what's been, you know, obtained

24      in discovery.

25              THE COURT:  So, would you need -- would you

1    need the discovery before you could respond to any

2    motion to stay, for instance?  Or before you -- or is it

3    just before you can respond to the motion to dismiss?

4            MR. CHAMPMAN:  We can respond to the motion to

5    dis -- to stay without jurisdictional discovery unless

6    the court is inclined to grant the motion to stay

7    because there's a jurisdiction issue pending.  But we

8    don't think there's any basis for a stay of discovery.

9    I mean, motions to dismiss are filed all the time in

10   cases and the discovery moves forward.  And this isn't

11   anything -- or any situation that -- that's unique that

12   would require any sort of stay, and I think it would

13   just be interfering with the normal procedure.

14            We do have a particular issue in this case,

15   which is one of the witnesses who is going to be deposed

16   is Stan Lee.  And as Your Honor may have read, he's

17   90 years old and apparently, as we're told recently, has

18   had a pacemaker and has some health issues.  So we're

19   going to want to depose him to preserve that testimony

20   right away regardless of any sort of motions one way or

21   the other.  And perhaps Your Honor can just tell us if

22   that should go forward now no matter what.

23            THE COURT:  All right.

24            MS. SINGER:  We would -- as to the issue of

25   personal jurisdiction, I mean, I think that we would ask

 1    that Your Honor wait until the motions to dismiss is

 2    actually filed and briefed.  Because it is our position

 3    that, yes, this court lacks personal jurisdiction over

 4    the Walt Disney Company, which is a holding company and

 5    does not have any contacts or conduct any business in

 6    this forum.  But there is a number of other defects in

 7    the complaint that are also incurrable, separate and

 8    apart from the personal jurisdiction issue, that would

 9    necessitate dismissal; collateral estoppel, statute of

10    limitations on various grounds and -- as well as

11    failures to plead that cannot be -- cannot be cured.

12         The issue here is -- it's a copyright --

13    there's one single copyright infringement claim against

14    one single improper defendant.  So, this is not a case

15    where discovery would ordinarily go forward because this

16    motion to dismiss, on a number of different threshold

17    issues, will probably be dispositive as to this case.

18         And I think Your Honor has a number of cases,

19    and there's a lot of case law in this jurisdiction,

20    saying that where it looks like there's a dispositive

21    motion that's going to dispose of the whole case, it

22    really doesn't make sense, as a practical matter given

23    the burden on the parties, to go forward with discovery.

24         We would submit that in order to prove

25    copyright ownership -- and I know this won't be here,

 1    but they're going to need to prove that they own the

 2    copyrights.  And they're not going to be able to do that

 3    because ownership claim stems to something in 1998 that

 4    has been terminated and, in any event, didn't give the

 5    rights that they did.  So, to be here now suddenly in

 6    2013 saying we need to depose Stan Lee because he's --

 7    he's elderly, really seems to be putting the cart before

 8    the horse.

 9              THE COURT:  Well, except that particular cart

10    might not be available at -- I mean, really, as a

11    practical matter.  I mean, we all have parents who are

12    aging, so I don't mean to be disrespectful to age, but

13    you just never know when someone is 90 years old how

14    long they're going to live.

15              MS. SINGER:  He is.  But, Your Honor, we have

16    no reason to believe that he's in anything but good

17    health.  And to the extent that the court is inclined to

18    grant something like that, we would ask for the

19    opportunity to brief it rather than -- because this is a

20    third party.  You know, he has been the subject -- he's

21    been the defendant in a number of these prior

22    litigations, and all the claims as against him have been

23    dismissed.  So to try to sort of circumvent or end run

24    some of those other courts' decisions in this case, we

25    would ask for the opportunity to be heard more fully on

 1    that matter.

 2                THE COURT:  All right.  Well, let me -- let me

 3    tell both of you that I think today what we should do is

 4    get the dates settled.  And the reason I say that is

 5    because of your judge.  Judge Martinez is not real

 6    excited about stays.  He does not like them.  He

 7    doesn't -- he absolutely won't grant stays just

 8    because -- just because a motion to dismiss might

 9    resolve all the claims.

10                In his cases I primarily look for something

11    like qualified immunity where, you know, someone's

12    greatly prejudiced if they go forward, because they

13    shouldn't have to go forward, and jurisdiction.  Those

14    are the two areas where he is a little more lenient, if

15    you will, and will allow us to actually look at stays.

16    And it does you no good to convince me you need a stay

17    if he's just going to overturn it.  So that's why I care

18    about that.  So -- some of our judges are not

19    particularly that way.  All right.  So, I know him.  I

20    know what he -- how he feels about stays.

21                So, that said, this is a case where at least

22    one of the parts is jurisdictional.  So if that's -- if

23    you're going to raise that again, I just am warning you

24    that that's one of those areas where, you know, we would

25    more closely look at a stay in a case.  Because

1    jurisdictional -- if we don't have jurisdiction, we need

2    to get to that right away.

3            That would not preclude you, though.  That's

4    why I asked you, do you need -- do you need discovery

5    for the purpose of responding to the stay.  And then if

6    you say, well, not really, then the next step would be

7    if a stay is granted do you need discovery for any other

8    purpose; one of which might be preservation testimony;

9    one of which might be jurisdictional, right, to respond

10   to the motion to dismiss.  So we have to kind of take

11   those one at a time I think.

12           MR. CHAMPMAN:  We of course haven't seen the

13   motion yet.  We amended and raised some very particular

14   jurisdictional facts.  The burden is now on Disney to

15   show that with its vast empire that it's actually not

16   doing business, you know, here in Colorado.  Which,

17   given its chairman of the board's statement -- public

18   statements with shareholder and others, that they're a

19   vertically integrated company; and while Marvel and

20   Disney used to be two, now they're one and operating as

21   that, I think it would be -- it's going to be difficult

22   for Disney to convince a judicial officer of that

23   situation.

24           But nonetheless, we'll see what they have to

25   say, and we may well need to take discovery on

1    jurisdictional issues, which we'd like to do right away

2    so that we'd be able to respond.

3          That being said, with Mr. Lee I think that's a

4    separate situation.  He's 90 years old.  We understand

5    his health is not good.  Disney has represented that his

6    health is good.  He's 90.  No one denies that.  That is

7    an exigent circumstance to allow us to take that

8    deposition no matter what the -- what.  Because as Your

9    Honor indicated, anything could happen.  That testimony,

10   should this case go forward, is going to be critical.

11   He was the person who was there at the time, creating

12   these characters.

13         THE COURT:  Well, here's -- here's my

14   suggestion to both of you on this.  Today let's get a

15   schedule in place that probably won't stand up.  That's

16   my guess, is that your schedule is going to have to be

17   modified.  But let's get it down so we know what we're

18   modifying.

19         Then, because of the peculiar way that this

20   court tends to parse the work of getting a case through

21   the system, I would suggest that you file motions on any

22   of these things that you want heard, and that you say

23   whether or not they're expedited.

24         For instance, the motion to take preservation

25   testimony could be -- you could file that as an

1    expedited motion; that regardless of what else happens

2    there is a pending motion to stay, which obviously does

3    not stay anything, and you feel that this is -- is

4    necessary.  And the reason that I think you should file

5    separate motions, and I'm giving you -- both of you from

6    being out of state -- this hint is that in this district

7    the district judges look at the motions and they decide

8    motion by motion who's going to hear what.

9              So, in order to hear something, I have to get

10   a referral from Judge Martinez and he has to decide.

11   So, I'm not going to hear it without a referral from

12   him.  Usually that happens very quickly, and I know what

13   kind of things are going to come before me.  That's the

14   kind of thing that would come before me.  The stay will

15   come before me.  But if you noticed on the first set of

16   motions he kept the motion to dismiss, which is also

17   pretty common.

18             And because he does a lot of criminal work and

19   I don't do any, you usually get a quicker turnaround

20   from the magistrate judge in whatever you've got.  So I

21   would put all those things in motion so that we can get

22   everything settled.  I don't have to have hearings on

23   everything.  And for you out-of-state people, if you

24   want to appear by phone on some things let me know.

25   But -- but that's my suggestion to you.  Because I can't

1    rule on it right now.

2            MR. CHAMPMAN:  Your Honor, that raises another

3    issue just procedurally.  Would Your Honor be willing to

4    informally take telephone calls from all counsel to

5    resolve matters that are in some ways procedural?  One

6    thing I would think of, for example, is when we take

7    Mr. Lee's deposition, given his age and what we think is

8    his health, it may take more than seven hours to take

9    that deposition if he needs to take breaks, et cetera.

10   And if we couldn't agree on that, would Your Honor be

11   willing to take a telephone call just on something like

12   that issue?

13           THE COURT:  I'll have to tell you, it really

14   depends.  Mostly not.  Some of the magistrate judges

15   here do that.  Some don't.  I usually don't.  I want to

16   get something in writing from you on how you feel.

17           Now, with that said, during a deposition I

18   always take phone calls.  So if you've got a problem,

19   you're sitting in the middle of the deposition, always

20   call.  I will -- I will take it and I will hear you by

21   phone.

22           I think everybody has a better shot at getting

23   the right answer, whatever that is, if you give me a

24   little briefing and let me know what you think about it.

25   I see routine discovery things all the time, but they're

```
1    routine.  This doesn't seem as routine a case to me.

2    Usually copyright and patents aren't anyway.  So, I

3    prefer that you file something.

4            There's also this little blip, if you will,

5    about referral.  I mean, I'm not really supposed to rule

6    on anything unless Judge Martinez has said rule on it.

7    So if you call me, that means that I'm taking it into my

8    own hands and saying, yeah, this is discovery I'll take

9    it.  Which I -- I'll do.  So if there's something that

10   really is an emergency I'll do it, but I would prefer

11   you not.  That's -- that's the answer.

12           MR. CHAMPMAN:  Thank you, Your Honor.

13           THE COURT:  I would prefer that you say, we

14   think this can be briefed in two days, you know, and

15   give me a little schedule and then submit briefs.  And

16   I'll get to you quickly if you tell me, yeah, I really

17   need to.

18           MR. CHAMPMAN:  Thank you, Your Honor.

19           THE COURT:  All right.  So, okay.  That's the

20   long way around getting now to these other issues.  Let

21   me ask you, do you think this is going to be very

22   intensely electronic?  It looked like you didn't, or at

23   least one of you didn't because everything occurred so

24   long ago that it's not really electronic, but --

25           MR. CHAMPMAN:  Everything did not occur so
```

1    long ago.  This all has to do with infringement that

2    occurred within the last three years.

3              THE COURT:  Okay.

4              MR. CHAMPMAN:  Disney is taking the position

5    it doesn't have any documents electronically from back

6    in '98 when the copyright assignment occurred, but I

7    have no doubt Disney has electronic documents concerning

8    the movies and the infringements and the damages that

9    all took place within the last three years.  So, I'm

10   sure that that's there.  I mean, they file their 10-Ks,

11   they file their consolidated tax returns, et cetera.

12   So, I'm sure that's there, but I don't know.  I'm not

13   just --

14             MS. SINGER:  I think this raises another of

15   the issues that's in the scheduling order, Your Honor.

16   To the extent that this is a claim for copyright

17   infringement, and it's Disney's position both -- I won't

18   belabor the improper defendant any longer, but to the

19   extent that they are claiming copyright infringement

20   they're first going to have to prove copyright

21   ownership, and that does date back to whatever happened

22   in 1998, 2001.  But -- and they're going to need to

23   establish ownership and infringement.

24             And then at that point if they're able to meet

25   both -- make both of those showings, at that point we

1    would get to damages.  And it seems that in a case like

2    this if we were to reach damages, which we think is

3    highly unlikely, that is going to involve a tremendous

4    amount of third-party discovery because the movies and

5    the Broadway shows, and the various things that are

6    generally referred to, although not specifically

7    alleged, in the amended complaint.

8              Marvel has licensing deals.  These are not

9    motion pictures that are produced.  Most of them are not

10   distributed by Disney.  The Walt Disney Company is not

11   producing the Broadway show.  These are all -- some of

12   them are third parties.  It's Sony Studios, it's

13   Columbia.  Some of them are completely separate and

14   apart from Marvel.  Some of them are at a -- several

15   layers down in the corporate structure.

16             And to the extent we're talking about film

17   accounting -- if they are licensing deals, what we're

18   talking about is Hollywood accounting from third

19   parties.  So if you're talking about Hollywood

20   accounting from third parties I would imagine, yes,

21   there's probably going to be quite a bit of electronic

22   discovery, and that's probably going to be quite

23   burdensome and involve a lot of experts.  For a myriad

24   number of reasons we don't think you ever get there.

25             So we would propose that discovery proceed in

1   stages here.  You know, the threshold issue of

2   jurisdiction, if they're able to surmount that -- and to

3   be clear, we are not conceding that any discovery is

4   necessary on personal jurisdiction.  Obviously, they'll

5   make their motion and either Your Honor or Judge

6   Martinez will rule on that.

7           You know, if the case proceeds at that point

8   we would suggest that it makes more sense to talk about

9   ownership and liability, and do discovery on those

10  issues.  And if at that point it seems that the case is

11  going to proceed, then we would get into a damages

12  phase.  But to kind of do everything whole hog,

13  especially when there's going to be pending motions to

14  dismiss here, really seems to be highly inefficient for

15  everyone involved, particularly -- you know, the parties

16  and also the court, because as I think Your Honor is

17  starting to get a flavor, we will probably be spending

18  quite a bit of time here during discovery.

19          THE COURT:  Well, it does kind of strike me

20  that every -- I mean, I think what you're saying makes

21  sense.  I imagine you disagree, but it does make sense

22  to me to do that in phases.  But, every single time that

23  a court does that it starts a whole avalanche of, well,

24  this isn't that part of the discovery.  And you end up

25  saying, well, okay, I've got to ask this guy about

1    liability issues, and then I have to ask him about

2    certain monetary things later.  And, well, you object

3    because it's not that phase yet, and I -- it just begs a

4    lot of discovery problems that shouldn't be there.  So,

5    even though that makes sense to me, in a way it doesn't

6    for this court.  Because I don't want to have you here

7    every day arguing about whether this is this phase or

8    that phase or the other phase.  I'd rather you just do

9    it.

10             MS. SINGER:  Well, Your Honor, in this --

11             MR. CHAMPMAN:  Your Honor, if I --

12             MS. SINGER:  In this case, though, it's not

13    just us.  This is mostly third-party discovery that

14    we're talking about.  And that -- you don't even get to

15    those third parties unless there's a determination that

16    there's liability here.

17             THE COURT:  Right.

18             MR. CHAMPMAN:  Your Honor, every single

19    copyright case involves the issue of ownership, and then

20    it involves the issue of infringement and damages.  This

21    is no different.  Disney has raised this issue of this

22    idea of copyright ownership and statute of limitations

23    which, as a matter of law, doesn't apply to this case.

24    And we'll brief that, but it's -- it's a nonissue.

25             But every single defendant, and especially big

1  defendants, always want to bifurcate; always want to

2  bifurcate liability from damages.  The parties have

3  agreed in this case, this trial is going to be less than

4  10 days.  There's no purpose for bifurcation.  There are

5  going to be cross-over witnesses on liability and

6  damages.  I have handled any number of studio and

7  Hollywood accounting cases, and it can be done.  There

8  are experts.  They're not going to be a vast number of

9  experts.  There will be experts on issues of

10  merchandising and, you know, revenues, et cetera, but

11  there's absolutely no reason for any sort of bifurcated

12  discovery.

13          In our meeting of counsel, counsel suggested

14  that we even have a trial, and then if liability is

15  established then we start off another six months of

16  discovery, and then another jury and another trial,

17  which is something I've -- I've handled and I've tried

18  bifurcated cases before.  That's never done.  I mean,

19  once liability is established by the jury, even if there

20  is a bifurcation, the judge's first comment is call your

21  first damage witness.  You don't wait to take discovery.

22          In this case it doesn't make sense, with

23  respect, to bifurcate discovery in any sense.  Let's get

24  the discovery done.  Judge Martinez will rule on the

25  motion to dismiss when he rules on the motion to

1   dismiss.  But we should proceed on a normal schedule.

2   We should set the schedule, get our trial date, and

3   proceed accordingly.

4        This case is no different than any other

5   copyright infringement case.  If Disney as a matter of

6   defense can show that my client is not the copyright

7   holder, fine.  That's what every defendant tries to do.

8   But, this is a standard copyright infringement case.

9   The movies are bigger, the damages are bigger, but that

10  doesn't mean the issues are any different.

11       MS. SINGER:  With all due respect, though,

12  Your Honor, this case is a little different.  Because

13  most copyright cases you don't walk in with 10 years of

14  litigation history, and various other federal judges who

15  have already said they don't have any ownership rights.

16  They don't have any ownership rights against the

17  subsidiary and so now they're trying to bring an

18  infringement claim against the parent.  And this -- this

19  is a little bit different, Your Honor.

20       And I don't see at this point -- you know, to

21  the extent that what they're talking about is damages,

22  those are all calculable in money damages.  And if

23  they're going to be accruing, they're going to be

24  accruing.  So, to delay things a little bit here while

25  we talk about -- at least get the motions to dismiss

1    decided, I really don't see what the prejudice or the

2    harm is here.

3              THE COURT:  Well, I think -- I mean, what

4    you're arguing is the stay, and it's not even been filed

5    yet.

6              MS. SINGER:  Fair enough, Your Honor.

7              THE COURT:  So, I think we'll leave that for

8    when it's filed.

9              MS. SINGER:  Okay, Your Honor.

10             THE COURT:  I didn't read the motion to

11   dismiss and the stay, the previous stay.  I glanced at

12   it, but when -- when the amended complaint was filed, I

13   didn't really go through those very much.  So, I'll read

14   what's assigned to me and we'll talk about the stay.  My

15   preference though is against bifurcation, but I'm not

16   making any ruling.

17             You know, as a person I think that makes

18   sense, as an organized person.  But I don't -- it

19   doesn't seem to work very well to me in litigation.  It

20   just doesn't.  And it just invites a lot more

21   litigation, which is a lot more expensive for everybody.

22   And I think expense is always important.  Probably less

23   so when you have big companies fighting than when you

24   have two little people fighting, but it's still an

25   issue.  It's always an issue.  So, I don't want to

1   create that with -- and that's always something I think

2   about.

3            MR. CHAMPMAN:  Thank you.

4            THE COURT:  So let's -- let's move forward.

5   As I understand it then there probably is some issue

6   with electronically stored information.  I assume, even

7   though the defendant feels that it will prevail on the

8   motion to dismiss, obviously, that you have instituted

9   whatever litigation holds you think are appropriate,

10  right?  And what had been asked for by plaintiffs?

11           MS. SINGER:  Yes, Your Honor.

12           THE COURT:  All right.  So moving on then to

13  the discovery limitations.  You didn't really ask for

14  anything different than the standard case, right, as I

15  read this, which is -- would be 25 interrogatories per

16  side; 25 requests for production per side; 25 requests

17  for admissions; 10 depositions.  Is that right?

18           MS. SINGER:  That's correct, Your Honor.

19           MR. CHAMPMAN:  That's correct.  Although the

20  10 depositions would be exclusive of experts.

21           THE COURT:  All right.  I kind of assumed

22  that, but that was my next question.  So we will put 10

23  excluding experts.  You don't have anything other than

24  the seven hours.  I will tell you that my practice when

25  you bring it to me for counting the length of a

1    deposition is actual testimony time.  So, I don't count

2    breaks.  I don't count going to the bathroom.  I don't

3    count lunch, obviously.

4           The only -- the only time that I see an issue

5    is where you just kind of can't get to the point.

6    Sometimes it is testimonial according to the court

7    reporter, but because of a person's age maybe or

8    infirmity or mental problems or whatever, you know, you

9    can't quite get there.  If that happens I sincerely hope

10   that both of you work it out.  Because my general

11   feeling, unless someone is being abusive, is I am going

12   to give you more time.  I want people to have as much

13   time as they need to really get the discovery, as long

14   as it's not abusive.  If people start repeating

15   questions and trying to come at things just a little bit

16   different way to get a different answer, that's when I

17   will put a stop to it.

18           So if you can agree, I encourage that.  If you

19   agree that one should be eight or nine hours of

20   testimony instead of seven, don't come back to me.  Just

21   agree, and do it.  It's only if you don't agree.  And

22   then tell me the real reason.  And that's how I'm going

23   to count it.  And that kind of thing will be referred to

24   me, so I -- I feel pretty comfortable telling you that.

25           All right.  So we'll leave it at seven hours

1    of testimony and the 25 for the request for production

2    of documents, and request for admissions.  Is that all

3    right?  That's not in the rules, so --

4           MR. CHAMPMAN:  As of now I think that's all

5    right, Your Honor.  If it turns out that it's not, we'll

6    come back.

7           THE COURT:  Right.  Okay.

8           MS. SINGER:  Yes, Your Honor.

9           THE COURT:  All right.  We'll put 25 of each

10   of those things, and 10 depositions exclusive of

11   experts.

12          Now, because the defendant proposed dates

13   based on the ruling on the motion to dismiss I'm going

14   to adopt the dates of plaintiff's proposed schedule.  I

15   cannot put a scheduling order together that says so many

16   days past ruling on the motion to dismiss.  That's just

17   not acceptable here.

18          MS. SINGER:  Understood, Your Honor.  The

19   only -- if you're going to work with the plaintiff's

20   dates, the only one that we would ask you to take a

21   special look at is the expert timing.  It has fact

22   discovery being cut off on August 2nd, and then putting

23   in expert disclosures August 16th; and then

24   approximately three weeks, including the last two weeks

25   of August and Labor Day, to do all the depositions and

1    get rebuttal experts in.  And so we would just ask that

2    that -- the date for the rebuttal reports be moved a

3    little bit later, and the expert discovery cutoff be

4    moved a little bit later.

5                THE COURT:  All right.  And you're doing this

6    in two phases, right?  So, affirmative experts first and

7    then rebuttal.

8                MR. CHAMPMAN:  Yes.

9                MS. SINGER:  Yes, Your Honor.

10               THE COURT:  All right.  And you want -- well,

11   what's proposed is about two months for that process.

12               MS. SINGER:  A little bit less than that, Your

13   Honor, but, yes.

14               THE COURT:  Okay.  So the -- the affirmative

15   expert date is -- you've set for -- or plaintiff has

16   proposed September 6th, right?

17               MS. SINGER:  Yes.

18               THE COURT:  For all affirmative experts.

19               MR. CHAMPMAN:  Correct.

20               THE COURT:  All right.  And then --

21               UNKNOWN SPEAKER:  No, it's the other way

22   around.

23               MS. SINGER:  No.  No.  The plaintiffs have

24   proposed all affirmative experts --

25               THE COURT:  I'm sorry, August 16th.

1          MS. SINGER:  -- August 16th.  And that's fine.

2     It's the September 6th date for rebuttal expert reports

3     that we would ask to be moved forward approximately

4     two weeks just because it's going to be very difficult

5     to deal with the expert reports, get everybody deposed,

6     and then get rebuttal reports in, as a practical matter,

7     in three weeks, two of which are the second half of

8     August.

9          MR. CHAMPMAN:  I have no objection.  Just from

10    a personal standpoint, Your Honor, right now I have a

11    trial scheduled in the Los Angeles Superior Court in the

12    middle of October.  So, I don't have an objection to

13    expanding the date, but I may be then unavailable.  I

14    think it's a three-week estimate.

15         THE COURT:  So, it seems to me like it would

16    require us setting out the expert discovery cutoff date

17    a few weeks as well.

18         MS. SINGER:  Yes, Your Honor.

19         THE COURT:  And then, obviously, the

20    dispositive motion deadline would go into, then,

21    November.  Is that going to work for you?

22         MR. CHAMPMAN:  That works for me, Your Honor.

23         THE COURT:  I mean, your time that you might

24    be working on it you're going to be in trial, but --

25         MR. CHAMPMAN:  If it's the latter part of

1    November I think I'll be okay.

2                THE COURT:  All right.  So, what's the --

3    what's the proposed date for rebuttal experts?

4                MS. SINGER:  September 20th, Your Honor.

5                THE COURT:  All right.  So, we'll have

6    rebuttal experts, this is in subsection 4 -- the 20th?

7    I'm sorry, is that what you said?

8                MS. SINGER:  Yes, Your Honor.

9                THE COURT:  I need to write these down.  I

10   can't remember from one minute to the next obviously.

11   All right.  And so then that would put the cutoff date

12   somewhere in mid October for expert cutoff.

13               MS. SINGER:  Yes.  Perhaps either October 11th

14   or October 18th.

15               THE COURT:  Either is okay?  I mean, that's

16   just your cutoff to get the -- I mean, you're going to

17   be in trial part of that, but --

18               MR. CHAMPMAN:  Yeah, so -- either date is

19   fine, Your Honor.

20               THE COURT:  All right.  So let's go with

21   October 11 for the expert cutoff.  And then you want

22   November -- the end of November for dispositive motions,

23   right?

24               MR. CHAMPMAN:  Yes, Your Honor.

25               THE COURT:  All right.  So let's pick a date

1    end of November.  Any preferences?  Maybe the --

2              MS. SINGER:  We're just trying --

3              THE COURT:  -- 25th.

4              MS. SINGER:  -- to figure out when

5    Thanksgiving is, Your Honor --

6              THE COURT:  Oh, yeah.

7              MS. SINGER:  -- so we don't make it that day.

8              THE COURT:  Is it the 28th?

9              THE COURTROOM DEPUTY:  It's the 28th, Your

10   Honor.

11             UNKNOWN SPEAKER:  28th.

12             MS. SINGER:  So perhaps before that.

13             THE COURT:  So maybe the -- do you want the

14   22nd?  That's a Friday.

15             MS. SINGER:  That's -- that works for us.

16             MR. CHAMPMAN:  That's fine, Your Honor.

17             THE COURT:  All right.  So we'll put

18   dispositive motion deadline the 22nd of November.  So,

19   just to make sure we're all on the same page then, the

20   joinder of parties, amendment of pleadings

21   February 22nd, 2013.  I know that that's affected by the

22   motion to dismiss, so that's just to -- where you don't

23   have to deal with Rule 16.  All right.  So, the fact

24   discovery cutoff, August 2nd, 2013; expert discovery

25   cutoff will be the October 11; and then dispositive

1    motion deadline, November 22nd.

2         Okay.  We've got our expert disclosure dates.

3    F and G we'll leave the same.  It just tracks so that we

4    don't have to deal with those again if you do have a

5    discovery cutoff date that's different.  So, 33 days

6    prior to discovery cutoff.

7         Now, I do need to set a final pretrial

8    conference, and I had a date selected but it was based

9    on the other dates.  It's usually about 60 days after

10   your November 22nd, so this is going to put us in

11   January of 2014.  Maybe -- how about January 23rd at

12   9:30?

13        MS. SINGER:  I'm pretty open in January, 2014,

14   so --

15        THE COURT:  I am too.  So, if you don't like

16   that date I have plenty of others.

17        MR. CHAMPMAN:  That's fine.

18        THE COURT:  That work?

19        MR. CHAMPMAN:  That date's fine with me.

20        THE COURT:  Okay.

21        UNKNOWN SPEAKER:  What time?

22        THE COURT:  9:30 a.m.  So January 23rd, 2014,

23   at 9:30.

24        Let's see, the other thing that I -- we

25   already talked about the -- these motions that will be

1    filed.  And I understand there's probably going to be

2    one extra that we didn't talk about, and that's the

3    deposition of Stan Lee, right?

4              MR. CHAMPMAN:  Yes, Your Honor.

5              THE COURT:  The preservation deposition.  So I

6    would expect those.  You said you're going to file your

7    motions by Monday?

8              MS. SINGER:  Our motion will be filed Monday.

9    I would ask, does it make sense, Your Honor, maybe to

10   put a status conference on the calendar.  The motion to

11   dismiss by our calculation should be fully briefed by

12   February 25th, and I assume that all the interim motions

13   could be fully briefed by then as well involving

14   personal jurisdiction or Mr. Lee's deposition, or our

15   motion to bifurcate.  Would it make sense to just have a

16   target?

17             THE COURT:  Well, I don't -- there's never any

18   problem with that, really.  I mean, you know, but --

19             MR. CHAMPMAN:  Well, Your Honor, I'm not --

20   you know, it's fine to have a status conference, but I'm

21   not sure for what.  I mean, we're going to need to see

22   what the court says about if there's going to be

23   jurisdictional discovery.  I don't know how long that's

24   going to take; what the briefing schedule is going to

25   be.

1          I mean, once the court rules one way or the

2     other on the motion to dismiss, motion to stay, we can

3     then contact the court about a status conference to see

4     if other dates need to be pushed or changed.  But until

5     we get the rulings we'll be in the same position.  Okay.

6     The papers are on file.  Why would we have a status

7     conference.  That doesn't seem to make any sense for

8     right now.

9          THE COURT:  I mean, the only thing is I think

10    the needing -- the need or no need for jurisdictional

11    discovery will be part of your response to the motion to

12    stay, right?  Isn't that the logical place for it?

13         MR. CHAMPMAN:  Yes.

14         THE COURT:  Okay.  So that's going to be

15    briefed before me in mid February.  Because of the

16    strictures of the reporting requirements on old motions,

17    it's a very busy time of the year.  I don't -- do you

18    know what I'm talking about?

19         MS. SINGER:  Yes.

20         THE COURT:  The six-month list for --

21         MS. SINGER:  Yes, Your Honor.

22         THE COURT:  -- judges.  So, our six-month list

23    is done a month before theirs, so mine is done by the

24    end of February.  So I'm fine, but I'm probably not

25    going to get very much work done on your motion to stay

1    until March.  Okay.  So that's probably when you can

2    expect a ruling from me.  I'm not promising you that,

3    but that's what I would do.  Because I've got to do

4    their motions that are on their six-month list first.

5    Right?

6              MR. CHAMPMAN:  Right.

7              THE COURT:  And then they have to get there's

8    done by the end of March.  So, I don't think you'll see

9    anything from Judge Martinez before the end of March,

10   but you might see something on the motion to stay.  And

11   perhaps what we should do is is think about a -- well, I

12   don't -- we may not need a hearing, right?

13             MR. CHAMPMAN:  Right.

14             THE COURT:  Because if -- if the motion to

15   stay is granted and so is the jurisdictional discovery,

16   for instance -- and that's just one scenario that could

17   happen -- you'll just be going forward with your

18   jurisdictional discovery.

19             MR. CHAMPMAN:  Can I ask a practical question.

20   Right now there is no stay.  The motion to dismiss is

21   going to be filed.  Can't we just notice Mr. Lee's

22   deposition and go forward with it?

23             THE COURT:  I don't see why not.

24             MR. CHAMPMAN:  All right.

25             MS. SINGER:  And then it will be our motion to

1    quash, or our motion to stay and probably his motion to

2    quash.  So --

3              THE COURT:  I mean, that may just make that

4    issue come forward real quick.

5              MS. SINGER:  Yeah.

6              THE COURT:  But I don't see why not.  And I

7    don't see any strictures on that because, obviously, the

8    filing of a motion to stay doesn't stay anything.

9              MS. SINGER:  Understood.

10             THE COURT:  So don't -- don't rely on that.  I

11   mean, I've seen people do that and that's --

12             MS. SINGER:  Yes.

13             THE COURT:  -- going to be disastrous in this

14   case.  Because I'm going to expect you to go forward,

15   and now that I've told you, for sure.

16             MS. SINGER:  Yes.  I think --

17             MR. CHAMPMAN:  All right.

18             THE COURT:  So, yeah.  I mean, if you notice

19   that deposition, I don't see what the problem is.  Until

20   you get a motion to quash, right?

21             MS. SINGER:  Right.  Well, don't worry, judge.

22   We'll explain to you what the problem is.

23             THE COURT:  Okay.

24             MR. CHAMPMAN:  That's fine.

25             THE COURT:  All right.  Anything else that we

1    need to do today?  Or anything that I've made less clear

2    than it was before?

3              MS. SINGER:  I -- I guess the only question

4    would be -- it sounds like we're going to have an

5    expedited motion to -- it sounds like we're going to

6    have to deal with Mr. Lee's deposition in an expedited

7    manner, and my assumption is they will notice it in such

8    a way that it is scheduled to occur before the briefing

9    schedule on a motion to stay or, what I assume will be a

10   motion to quash from Mr. Lee's own counsel.  Because

11   he's not affiliate -- you know, he's not a party to this

12   action.  And Disney --

13             THE COURT:  He's not affiliated with you now?

14             MR. CHAMPMAN:  No.

15             MS. SINGER:  No.

16             THE COURT:  Okay.  All right.

17             MS. SINGER:  He's -- he's really a third party

18   in this action.  And I would ask that we maybe at least

19   set an expedited briefing schedule, or set something so

20   that we're not in the position that our motion becomes

21   moot simply because it's not briefed in time.  That --

22   that would really seem to be unfair.

23             THE COURT:  Well, that won't happen.  But you

24   do need to alert me when you file the motion to quash.

25   You know, emergency is what my law clerks will look at.

1           MS. SINGER:  Okay.

2           THE COURT:  And when they see emergency -- not

3    that I believe all of you that everything is an

4    emergency, but they will read it.

5           MS. SINGER:  Okay.

6           THE COURT:  And so they'll read it.  They'll

7    see that it's scheduled.  You'll say it's scheduled for

8    X date, we must have a ruling before that, and we'll do

9    something.  You know, we'll send you out a schedule.  If

10   you -- if you both agree that you're more comfortable

11   with a schedule, you might propose that.  Because

12   otherwise, you're both going to get what I think is

13   reasonable under the circumstances.

14          So, for instance, if you file your motion a

15   week before the thing is due to occur, you know, you're

16   probably going to get two days to respond, and you're

17   going to get a day to reply, and I'm going to set a

18   telephone conference.  That's --

19          MR. CHAMPMAN:  Understood.

20          THE COURT:  I mean, that's what I would try to

21   do.  So if that doesn't happen -- for all of you, if

22   that -- that's one of those things I will take a phone

23   call on, especially if you call together.  We have this

24   deposition scheduled; there is a motion to quash

25   pending; we called it emergency and we have not heard

1    from you; what do we do.  That's always -- that's

2    appreciated, actually, by me because it brings to my

3    attention something that I may not have seen.  I mean,

4    you never know when things fall through the cracks, and

5    you don't want that to happen.  So, we try very hard not

6    to do that.

7            MR. CHAMPMAN:  Thank you, Your Honor.

8            MS. SINGER:  Thank you, Your Honor.

9            THE COURT:  Okay.  Anything else?  All right.

10   We'll be in recess.

11           THE COURTROOM DEPUTY:  All rise.

12

13           (Whereupon, the within hearing was then in

14   conclusion at 9:55 a.m. on this date.)

15

16           I certify that the foregoing is a correct

17   transcript, to the best of my knowledge and belief

18   (pursuant to the quality of the recording) from the

19   record of proceedings in the above-entitled matter.

20

21

22

23       /s/ Kelly Mair            January 22, 2013

24   Signature of Transcriber        Date

25

AVERY/WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
303-825-6119        FAX 303-893-8305