IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02663-WJM-KMT

STAN LEE MEDIA, INC.

        Plaintiff,

v.

THE WALT DISNEY COMPANY,

        Defendant.

**STAN LEE MEDIA, INC.'S OPPOSITION TO DISNEY'S MOTION TO DISMISS**

This is an action for copyright infringement. Stan Lee Media, Inc. ("SLMI") claims that The Walt Disney Company ("Disney") infringed SLMI's copyrights in certain comic book characters by using those characters in motion pictures and merchandising.

Disney makes four arguments in response. First, it asserts that it is beyond this Court's jurisdiction because, it says, it does not do business in Colorado and did not engage in conduct here from which SLMI's claim arose. However, for purposes of this motion, it is established that Disney distributed the infringing film *The Avengers* and licensed infringing merchandise for sale in Colorado within the last three years. Furthermore, SLMI, the copyright holder, is a resident of Colorado and therefore suffered harm here. Therefore, this Court has jurisdiction over Disney.

Second, Disney argues that the First Amended Complaint ("FAC") should be dismissed on statute of limitations grounds because, it says, this case is one for copyright ownership, not copyright infringement. Disney is wrong. The cases relied on by Disney are limited to claims between co-owners or parties in a contractual relationship regarding the copyrights. Such

1

copyright ownership claims are "<u>distinct from claims of infringement</u>." *Zuill v. Shanahan,* 80 F.3d 1366, 1369 (9th Cir. 1996) (emphasis added). SLMI and Disney are not now, and have never been, co-owners of, or parties to a contract regarding, the subject copyrights. SLMI's copyright infringement claim is against Disney, a third party, for acts of infringement within the last three years, which is within the applicable statute of limitations.

Third, Disney argues that SLMI's claim is barred by collateral estoppel because the issue of SLMI's ownership was litigated in *Abadin I*. Tellingly, Disney has failed to submit the record from that case. As Disney knows, *Abadin I* was against Stan Lee regarding Lee's <u>contractual duties</u> to SLMI. The only copyright claim in *Abadin I* related to Lee's alleged infringement of specific characters created by Lee <u>after</u> 1998, none of which are at issue here. The court in *Abadin I* held that the claim against Lee was barred by the four-year statute of limitations for breach of contract under California law; there was no discussion of the statute of limitations under the Copyright Act. Disney does not purport to argue that the legal issues that governed resolution of *Abadin I* are applicable here. Accordingly, collateral estoppel does not apply.

Finally, Disney argues that there is a heightened pleading standard for copyright infringement actions. Disney's argument has been rejected by virtually every court to have considered it. This action is governed by the notice pleading standards under Fed. R. Civ. P. 8. SLMI's allegations are more than sufficient to provide Disney with fair notice of the elements of SLMI's claim. As such, SLMI's claim is properly pleaded.

Disney has failed to defeat SLMI's prima facie showing of jurisdiction. Its statute of limitations and collateral estoppel arguments are wrong as a matter of fact and law. The FAC properly pleads a copyright infringement claim. Therefore, Disney's motion should be denied

Case No. 1:12-cv-02663-WJM-KMT    Document 42    filed 02/07/13    USDC Colorado
pg 3 of 17

and this case should be allowed to proceed to trial.

## BACKGROUND

In October 1998, Stan Lee executed a written agreement (the "1998 Agreement") with Stan Lee Entertainment, Inc., a predecessor to SLMI. FAC, ¶ 4. The 1998 Agreement assigned all copyrights in Lee's comic book characters, including Spider Man, Iron Man, The Incredible Hulk, The X-Men, and most of The Avengers. *Id.*, ¶¶ 1, 4-9. Within the last three years, Disney has infringed SLMI's copyrights by using a number of these characters in its motion pictures entitled *Iron Man 2, X-Men: First Class, The Avengers*, and *The Amazing Spider Man*. *Id.*, ¶¶ 1, 37. Disney distributed *The Avengers* in Colorado and elsewhere. *Id.*, ¶¶ 19, 37. In addition, Disney has infringed SLMI's copyrights by exploiting, without SLMI's permission, SLMI-owned characters in other media and merchandising in Colorado and throughout the United States. *Id.*, ¶¶ 20-21, 37.

## LEGAL ARGUMENT

### I.     THIS COURT HAS PERSONAL JURISDICTION OVER DISNEY

#### A.     Disney is Subject to Personal Jurisdiction in Colorado

To establish jurisdiction, SLMI is only required to make a prima facie showing of personal jurisdiction over Disney. *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1983). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Id.* "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.*

Disney is subject to personal jurisdiction in Colorado if it has "certain minimum contacts with the jurisdiction such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *SGI Air Holdings II LLC v. Novartis Int'l AG ("SGI Air")*, 239 F.Supp.2d 1161, 1163 (D. Colo. 2003), *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "Minimum contacts" may be established by a prima facie showing of either specific or general jurisdiction. *Id.* Here, this Court has jurisdiction over Disney on both grounds.

**B.     Colorado Has Specific Jurisdiction Over Disney**

Specific jurisdiction exists if Disney has "purposefully directed" its activities at residents of Colorado and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). If SLMI makes a prima facie showing of these elements, the burden shifts to Disney to make a "compelling case" that the exercise of jurisdiction would be unreasonable. *Id.* at 477.

Disney asserts that it is not subject to specific jurisdiction in Colorado because, it claims, "there are no allegations of any conduct by [Disney] in Colorado that purportedly gave rise to [SLMI's] copyright infringement claim." Motion, p. 6. Disney is wrong. SLMI alleges that:

- Disney distributed infringing films in Colorado including, in particular, the 2012 blockbuster *The Avengers* (FAC, ¶¶ 19, 37);

- Disney licenses infringing merchandise for sale in its brick-and-mortar Disney Stores, including those located in Colorado (*Id.*, ¶ 20); and

- Disney licenses infringing merchandise for sale through its online store, which ships merchandise to Colorado (*Id.*).

4

The FAC alleges that the infringing distribution of *The Avengers* and the licensing of infringing merchandise for sale in Colorado was undertaken by defendant The Walt Disney Company itself, the named defendant in this lawsuit.[1] A portion of SLMI's damages are alleged to have been directly caused by these infringing acts in Colorado. Disney does not deny these allegations. As a matter of law, these allegations must be taken as true for purposes of this motion. *Behagen,* 744 F.2d at 733.

Tellingly, Disney's declarant, Marsha Reed, takes pains to specifically deny a number of the FAC's factual allegations, including allegations that Disney produced and distributed *Iron Man 2, X-Men: First Class,* and *The Amazing Spider-Man.* What is important, however, is what Ms. Reed does not deny. She does not deny that Disney licenses infringing merchandise for sale in Colorado. Furthermore, Ms. Reed does not specifically deny that Disney distributed *The Avengers* in Colorado, nor could she. Indeed, Disney's own CEO, Bob Iger, has publically stated in SEC filings that "*The Avengers* [is] the first Marvel film being marketed and distributed by Disney." *See* Accompanying Request for Judicial Notice ("RJN"), Exh. A at pp. 4 (emphasis added) and 22 ("Beginning with *The Avengers*, which is scheduled for release in May 2012, the Company will distribute all Marvel produced films.").

At best, Ms. Reed only generally denies that Disney has distributed movies "featuring any Marvel character." Reed Decl., ¶ 9. This general and conclusory assertion may not be fairly construed as a denial of SLMI's specific allegations,[2] especially in light of Ms. Reed's detailed denials regarding Disney's distribution of every movie other than *The Avengers.* In any event,

---

[1] These allegations readily distinguish this case from those district court cases cited by Disney where it was not subject to jurisdiction. None of those cases involved wrongful conduct by Disney itself within the forum.

[2] Moreover, Reed's own admissions demonstrate that she lacks personal knowledge of Disney's motion picture distribution and licensing operations. *See* Accompanying Evid. Objs., Nos. 5-7.

5

SLMI has submitted evidence demonstrating that Disney did, in fact, distribute *The Avengers.* RJN, Exh. A at pp. 4, 22.  Therefore, even if Ms. Reed's declaration is liberally (and improperly) construed as raising a factual dispute on this issue, the dispute must be resolved in SLMI's favor.

As a matter of law, Disney's distribution of *The Avengers* in Colorado and/or its licensing of infringing merchandise for sale here constitutes "purposeful direction" at Colorado.  *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984) (non-resident publisher's "general course of conduct in circulating magazines throughout the state was purposefully directed at [the state], and inevitably affected persons in the state."); *see also Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011) (infringing activity that "appeals to, and profits from, an audience in a particular state," is "expressly aimed" at that state); *Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 899 (9th Cir. 2002) (sale of infringing album throughout U.S., including California, constituted purposeful direction at California).

The case for personal jurisdiction here is actually much stronger than in *Keeton.*  Unlike the plaintiff in *Keeton*, SLMI is a resident of Colorado.  FAC, ¶ 2.  As the Ninth Circuit recently held, "[b]ecause the harm caused by an infringement of the copyright laws must be felt at least at the place where the copyright is held… the impact of a willful infringement is necessarily directed there as well."  *Washington Shoe Co. v. A–Z Sporting Goods Inc.*, — F.3d —, 2012 WL 6582345, at *8 (9th Cir. 2012); *see also Penguin Grp., Inc. v. Am. Buddha*, 640 F.3d 497, 500-501 (2d. Cir. 2011) (situs of copyright holder's injury was New York, its state of residence, even though the infringing acts occurred outside the state).

Disney has failed to make any case, let alone a "compelling" one, that the exercise of jurisdiction in Colorado would be unreasonable.  As a multi-billion dollar international media

conglomerate that does business throughout the United States and Colorado, Disney can just as easily answer SLMI's complaint in this forum as any other.

### C. Colorado Has General Jurisdiction Over Disney

General jurisdiction exists where a defendant's contacts are "continuous and systematic." *Behagen*, 744 F.2d at 733.  In the parent-subsidiary context, "[t]he effort is to ascertain from the total facts the amount of actual control exercised by the parent over the internal affairs of its subsidiary, and if such control is adequately shown, the self-serving niceties of inter-corporate housekeeping are of minor significance."  *SGI Air,* 239 F.Supp.2d at 1165 (exercising general jurisdiction over parent holding company based on its control over Colorado subsidiary).

At least three of Disney's subsidiaries are registered to do business in Colorado, including Buena Vista Home Entertainment, Inc., Disney Worldwide Services, Inc. and Disney Online, Inc.  Chapman Decl., ¶ 2, Exhs. 1-2.  The principal address for each of these subsidiaries is Disney's world-wide headquarters in Burbank, California.  *Id*.; *Cf.* RJN, Exh. A at p. 7.

As set forth in the FAC, and explained below, Disney dictates the policies and practices of the entire corporate conglomerate from its position at the top of the corporate pyramid.  FAC, ¶¶ 13-14.  In particular, Disney uses centralized departments to actively control the day-to-day operations of its subsidiaries' legal affairs, personnel decisions, and finances, including its subsidiaries in Colorado.  FAC, ¶¶ 14-18.

Disney does not deny these allegations.[3]  As a matter of law, these facts are established for purposes of this motion.  *Behagen,* 744 F.2d at 733.  Taken together, these facts demonstrate

---

[3] At best, Ms. Reed offers only conclusory assertions that Disney does not "manage or direct" the individual subsidiaries specified in paragraphs 7 and 8 of her declaration.  These conclusory assertions have no probative value and are insufficient to shift the burden of producing evidence

7

sufficient control to exercise general jurisdiction over Disney based on the continuous and systematic contacts of its Colorado subsidiaries. *SGI Air,* 239 F.Supp.2d at 1166-69 (control over Colorado subsidiary's investment, personnel, and management decisions established general jurisdiction over parent).

Disney exercises control over its subsidiaries' legal affairs through its centralized legal department staffed by Disney personnel. FAC, ¶¶ 15-16. Disney's legal department handles all aspects of the operations of Disney's subsidiaries, ranging from negotiation of film and television deals, to labor relations, and from real estate purchases and leases, to setting company-wide standards for privacy and data use. *Id.* Particularly relevant here, through its centralized legal department, Disney dictates all issues related to copyright use and copyright infringement for all of Disney's subsidiaries, affiliates and their employees. *Id.* Disney instructs its employees to address copyright infringement questions to its centralized legal department. *Id.*

Disney's other centralized departments work similarly. Disney exercises control over its subsidiaries' personnel decisions through its centralized human resources department, which controls company structure, defines job parameters, sets employee compensation and chooses personnel. FAC, ¶ 17. Disney also exercises control over its subsidiaries' finances through its centralized finance department, which analyzes the enterprise's finances and prepares both short term and long term operating and capital plans. *Id.* Disney reflects all subsidiaries' profits as its

---

to SLMI. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999). Moreover, Ms. Reed does not deny that Disney uses its centralized departments to control its Colorado subsidiaries, or its enterprise generally.

8

own in publically distributed consolidated financial statements. *Id.*; RJN, Exh. A at pp. 69, 75-87. Accordingly, Disney is subject to general jurisdiction in Colorado.[4]

## II. SLMI HAS PLEADED A VALID CLAIM FOR COPYRIGHT INFRINGEMENT

In testing the sufficiency of a complaint under Rule 12(b)(6), all well-pleaded allegations of the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### A. SLMI's Copyright Infringement Claim is Not Time-Barred

Disney argues that this matter is actually a copyright ownership case, rather than a copyright infringement case. Therefore, Disney says, SLMI's infringement claim accrued no later than 2004. Disney is wrong legally and factually.

The cases Disney cites do not stand for anything close to the proposition stated. Unlike here, each of the cited cases involved disputes between putative co-owners or parties in a contractual relationship regarding copyright ownership. As the Ninth Circuit explained in the seminal case *Zuill v. Shanahan*, "claims of co-ownership[5], <u>as distinct from claims of infringement</u>, accrue when plain and express repudiation of <u>co-ownership</u> is communicated to

---

[4] Alternatively, if the Court is inclined to disagree with SLMI, leave to conduct jurisdictional discovery should be granted. *See Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (abuse of discretion to deny jurisdictional discovery where "pertinent facts bearing on the question of jurisdiction are controverted. . . or where a more satisfactory showing of the facts is necessary"); *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).
[5] Since *Zuill*, the cases concerning copyright ownership claims have been expanded from the co-ownership context to claims between parties in "close relationships," such as those in a contractual relationship regarding the copyright. *See Ritchie v. Williams*, 395 F.3d 283, 288, n.5 (6th Cir. 2005). Nevertheless, these cases do not apply to infringement claims against a third party. *Id.* (rule that each new infringing act causes a new three-year statutory period to begin "<u>does</u> apply to causes of action by an owner against an unknown third party") (emphasis added).

9

the claimant." 80 F.3d at 1369 (emphasis added).  This distinction is consistent with the purpose of the Copyright Act's statute of limitations, 17 U.S.C. § 507(b), which is to limit a plaintiff's remedies (such as damages), but not limit his substantive rights (such as ownership).  *Id.* at 1369, n.1, *citing* S.Rep. 85-1014, p.1963 (1957) ("The committee wishes to emphasize that it is the committee's intention that the statute of limitations, contained in this bill, is to extend to the remedy of the person affected thereby, and not to his substantive rights.").  In the copyright co-ownership context, a putative co-owner's sole remedy is a declaration of ownership.  That is the only situation in which the statute of limitations can deprive a plaintiff of substantive rights, because the remedy is ownership itself.  *Id.*

In *Merchant v. Levy,* the Second Circuit emphasized the key distinction drawn by *Zuill*.  There, the court held that plaintiffs claiming to be co-authors were time-barred from seeking a declaration of copyright co-ownership rights.  92 F.3d 51, 56 (2d Cir. 1996).  Significantly, however, the court stressed that "[o]ur holding here does not disturb our previous rulings that a copyright owner's suit for infringement is timely if instituted within three years of each infringing act for which relief is sought…" *Id.* at 57, n.8

SLMI and Disney are not now, and have never been, co-owners of, or co-parties to a contract regarding, the subject copyrights.  Rather, SLMI is the sole and exclusive owner of the copyrights, and has been since October 1998.  FAC, ¶¶ 4-9.  Even if SLMI was barred from claiming co-ownership with some party other than Disney, this would not bar SLMI's infringement claim.  In *Carell v. Shubert Org., Inc.,* 104 F.Supp.2d 236 (S.D.N.Y. 2000), the court held that, even though plaintiff's copyright ownership claim was time-barred, her copyright infringement claim could proceed.  *Id.* at 252.  The court reasoned that "while a dismissal of an

10

ownership claim as time-barred bars certain remedies associated with ownership, it does not extinguish the right of a copyright owner to sue for infringement." *Id.* "Plaintiff's alleged ownership interest may therefore serve as the basis for plaintiff's infringement claims even if plaintiff is barred from seeking a formal declaration of ownership rights." *Id.* at 255; *see also Stone v. Williams*, 970 F.2d 1043, 1051 (2d Cir. 1992) ("Merely because [copyright holder] could have brought suit in 1979 does not prevent her suit (only some of the relief sought) in 1985. To hold otherwise would be to ignore the long established rule that statutes of limitations bar remedies, not the assertion of rights"); *Ediciones Musicales v. San Martin*, 582 F.Supp.2d 1358, 1360-61 (S.D. Fla. 2008) (copyright infringement claim could proceed even if copyright ownership claim was time-barred).

Disney seems to argue that SLMI's prior dispute with Lee, the assignor of the copyrights, regarding Lee's contractual obligations under the 1998 Agreement now bars SLMI from ever suing an unrelated third party for infringing its exclusive copyrights. Disney's position makes no sense and, more importantly, it is legally baseless. As a matter of law, this action can be maintained for all infringing acts which occurred within the last three years prior to filing suit.

**B.     The Prior Litigation Has No Preclusive Effect on SLMI's Copyright Infringement Claim Against Disney**

As the Supreme Court has explained, collateral estoppel is "confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *C.I.R. v. Sunnen*, 333 U.S. 591, 599-600 (1948); *see also Computer Assoc. Int'l., Inc. v. Altai, Inc.,* 126 F.3d 365, 371 (2d Cir. 1997). Disney bears the burden of establishing all elements of this

11

affirmative defense, including that the issues raised in this case are identical to issues actually litigated and decided in a prior proceeding. *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008). As such, Disney also has the burden of submitting an adequate court record from the prior proceeding upon which it seeks to rely. *In re Riggle,* 389 B.R. 167, 175-76 (D. Colo. 2007).

Disney argues that SLMI's ownership of the copyrights at issue in this action was litigated in *Abadin I*.[6] However, Disney does not submit any of the court record from that case for the Court's review, including the underlying pleadings.[7] Accordingly, Disney has failed to carry its burden as a matter of law. *Taylor,* 553 U.S. at 907; *Riggle,* 389 B.R. at 175-76. The reason for Disney's conspicuous omission is simple. Even a cursory review of the record in *Abadin I* reveals that the issues raised (let alone decided) in that case are completely different from the issues presented here.

*Abadin I* was an unauthorized derivative action by two purported shareholders of SLMI against Lee and Marvel regarding Lee's contractual duties under the 1998 Agreement. Chapman Decl., Exh. 3 (*Abadin I* Amended Complaint), ¶ 1. The only copyright claim in that action was against Lee regarding works created after 1998. *Id.*, ¶¶ 91-104. In particular, plaintiffs alleged that Lee wrongfully filed an assignment with the Copyright Office for three characters: the Drifter, the Accuser and Stan's Evil Clone. *Id.*, ¶ 94. Plaintiffs argued that these filings were done by Lee in contravention of his duties under the parties' agreement. *Id.*, ¶¶ 91-104, 129-132.

---

[6] Disney repeatedly cites to prior cases involving SLMI as a party, seeming to suggest that these cases have some relevance to this action, yet never explaining why. Ultimately, the only case Disney claims to have resulted in a final adjudication on the merits, and to therefore have any preclusive effect, is *Abadin I*. Motion, pp. 10-11.

[7] Disney's omission is especially odd given that it does provide the Court with the irrelevant pleadings from *Abadin II*, a case which Disney admits never resulted in final disposition and upon which Disney does not seek to rely. *See* Motion, fn.5; Evid. Objs., Nos. 12-14. For the Court's reference, the amended complaint from *Abadin I* is attached to the accompanying Chapman Declaration as Exhibit 3.

The *Abadin I* plaintiffs' only claims against Marvel arose out of Marvel's alleged interference with Lee's contract and use of Lee's name and likeness. *Id.* ¶¶ 105-121, 133-139, 157-174.

Judge Crotty held that the *Abadin I* plaintiffs' copyright claim was barred by the four-year statute of limitations for <u>breach of contract under California law</u>. *Abadin I*, 2010 WL 1257519, *6. Nowhere does the court mention the Copyright Act's three-year limitations period. As the court recognized, the gravamen of plaintiffs' claims against Lee was breach of contract.[8]

Significantly, Judge Crotty also emphasized that his decision was based, in part, on the fact that "Lee has been using <u>his own</u> characters since at least 1999." *Abadin I*, 2010 WL 1257519, *6 (emphasis added). This is inconsistent with Disney's position here. Disney cannot argue that SLMI's ownership of the copyrights underlying the FAC was resolved in *Abadin I* unless it also takes the position that Lee (not Disney) is the rightful owner of those copyrights (or at least was when *Abadin I* was decided).

SLMI's copyright claim is against Disney, a third party, for infringing its copyrights in characters created prior to 1998. In *Abadin I*, the only alleged copyright claim was against Lee, SLMI's assignor, for exploiting characters he created after 1998 in violation of the parties' agreement. Judge Crotty held that the copyright claim in *Abadin I* was governed by California's four-year limitations period for breach of contract, not the Copyright Act.

The issues raised in this suit are completely different from the issues decided in *Abadin I*. The controlling facts and applicable legal rules are not the same. Therefore, Disney' collateral estoppel argument fails.

---

[8] As for Marvel, the gravamen of plaintiffs' claims was tortious interference with Lee's contract. The "open and notorious" conduct of Marvel discussed by the court at footnote 5 refers to Marvel's acts of contract interference. *Abadin I*, 2010 WL 1257519, *6, n.5.

### C. SLMI Has Properly Pleaded a Copyright Infringement Claim

Actions for copyright infringement are subject to the pleading requirements of Rule 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Mid America Title Co. v. Kirk*, 991 F.2d 417, 421 (7th Cir. 1993). "Copyright claims need not be pled with particularity." *Perfect 10, Inc. v. Cybernet Ventures*, *Inc.,* 167 F.Supp.2d 1114, 1120 (C.D. Cal. 2001). "It is enough that the complaint gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests so that the defendant can frame a responsive pleading." *Id.* at 1119. As the Supreme Court has explained, only those claims enumerated in Rule 9(b), which governs averments of fraud or mistake, are subject to a heightened pleading standard. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993).

Disney seeks to impose a heightened pleading standard akin to Rule 9(b). This argument not only runs directly counter to the Supreme Court's holding in *Leatherman*, but it has been soundly rejected by virtually every court to consider the issue since that case was decided. *See, e.g., Mid America*, 991 F.2d at 421 ("We cannot accept the argument that plaintiffs in [copyright infringement] cases…must be held to a particularity requirement akin to Federal Rule of Civil Procedure 9(b)."); *Perfect 10*, 167 F.Supp.2d at 1120.

Contrary to the heightened pleading requirements urged by Disney, SLMI must simply allege ownership of the copyrights, registration in compliance with the applicable statute and infringement by Disney.[9] *See Perfect 10* at 1120; 5 Wright & Miller, Federal Practice and

---

[9] Liberal notice pleading is especially appropriate where, as here, the alleged infringement occurred on a massive scale. *See Perfect 10* at 1120 (for widespread infringement "[r]equiring a statement of each and every example would defeat the regime established by Rule 8.").

14

Procedure § 1237, p. 400 (2004).  The FAC satisfies these pleading requirements.  As alleged, SLMI owns the copyrights to Spider Man, Iron Man, The Incredible Hulk, The X-Men, The Fantastic Four, and many of The Avengers.  FAC, ¶¶ 1, 4-9.  SLMI recorded the assignment granting it these rights with the U.S. Copyright Office.  *Id.*, ¶¶ 9, 38. Disney has infringed SLMI's copyrights by (a) producing and distributing motion pictures featuring the characters; (b) licensing and selling merchandise based on the characters; and (c) exploiting the characters in print media.  *Id.*, ¶¶ 19-21, 37-39.  The FAC's allegations are more than sufficient to give Disney fair notice of what SLMI's claim is and the grounds upon which it rests.

The cases cited by Disney do not control.  In those cases, the courts found that the plaintiffs failed to allege any facts to support their claims.  Moreover, despite failing to satisfy even the most liberal pleading standard, plaintiffs in each case were readily granted leave to amend.  To the extent these cases, or any other, purport to impose a heightened pleading standard on copyright infringement actions, they are inconsistent with the Supreme Court's holding in *Leatherman* and are not good law.

### III.    CONCLUSION

For all the foregoing reasons, Disney's motion should be denied.

In the alternative, if the Court is inclined to find that SLMI has not made a prima facie showing of personal jurisdiction over Disney, SLMI respectfully requests leave to conduct jurisdictional discovery.  In the event the Court believes that the amended complaint does not state a valid claim for copyright infringement, SLMI respectfully requests leave to amend.

Dated this 7th day of February, 2013.

                                                      *s/ Robert S. Chapman*
Robert S. Chapman
Jon-Jamison Hill
James R. Molen
EISNER KAHAN GORRY CHAPMAN
ROSS & JAFFE, P.C.
9601 Wilshire Boulevard , Suite 700
Beverly Hills, California  90212
Phone:  310.855.3200
Email: rchapman@eisnerlaw.com

John V. McDermott, #5384
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado  80202
Phone:  303.223.1100
Email: jmcdermott@bhfs.com
**Attorneys for Plaintiff Stan Lee Media, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of February, 2013, I electronically filed the foregoing **STAN LEE MEDIA, INC.'S OPPOSITION TO DISNEY'S MOTION TO DISMISS** with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| Frederick J. Baumann | James W. Quinn |
| Holly C. Ludwig | R. Bruce Rich |
| ROTHGERBER JOHNSON & LYONS LLP | Randi W. Singer |
| One Tabor Center, Suite 3000 | WEIL, GOTSHAL & MANGES LLP |
| 1200 17th Street | 767 Fifth Avenue |
| Denver, CO 80202-5855 | New York, NY 10153 |
| Tel: (303) 623-9000 | Tel: (212) 310-8000 |
| Fax: (303) 623-9222 | james.quinn@weil.com |
| fbaumann@rothgerber.com | bruce.rich@weil.com |
| hludwig@rothgerber.com | randi.singer@weil.com |

*s/Penny G. Lalonde*
Penny G. Lalonde, Paralegal