# EXHIBIT 1




Colorado
Secretary of State
Scott Gessler

Search

**For this Record...**
History & Documents
View Trade Names
Cert of Good Standing
File a Document
Subscribe Email
Notification
Unsubscribe Email
Notification

Business Home
Business Information
Business Search

FAQs, Glossary and
Information

# Summary

| | |
|---|---|
| ID Number: | 19871716740 |
| Name: | BUENA VISTA HOME ENTERTAINMENT, INC. |

| | |
|---|---|
| Registered Agent: | Corporation Service Company |
| Registered Agent Street Address: | 1560 Broadway Ste 2090, Denver, CO 80202, United States |
| Registered Agent Mailing Address: | |

| | |
|---|---|
| Principal Street Address: | 500 SOUTH BUENA VISTA STREET, BURBANK, CA 91521, United States |
| Principal Mailing Address: | 500 SOUTH BUENA VISTA STREET, BURBANK, CA 91521-0105, United States |

| | |
|---|---|
| Status: | Good Standing |
| Form: | Foreign Corporation |
| Jurisdiction: | California |
| Periodic Report Month: | March |

You may:
- View History and Documents
- View Trade Names
- Obtain Certificate of Good Standing
- File a Document
- Set Up Secure Business Filing for this Record
- Subscribe to email notification regarding this record
- Unsubscribe from email notification regarding this record

[ Previous Page ]

Terms and Conditions



**For this Record...**
History & Documents
Cert of Good Standing
File a Document
Subscribe Email
Notification
Unsubscribe Email
Notification

Business Home
Business Information
Business Search

FAQs, Glossary and
Information

# Summary

| | |
|---|---|
| ID Number: | 20061259241 |
| Name: | Disney Worldwide Services, Inc. |

| | |
|---|---|
| Registered Agent: | Corporation Service Company |
| Registered Agent Street Address: | 1560 Broadway Ste 2090, Denver, CO 80202, United States |
| Registered Agent Mailing Address: | |

| | |
|---|---|
| Principal Street Address: | 1375 Buena Vista Drive, P.O. Box 10,000, Lake Buena Vista, FL 32830, United States |
| Principal Mailing Address: | 500 S. Buena Vista Street, Burbank, CA 91521, United States |

| | |
|---|---|
| Status: | Good Standing |
| Form: | Foreign Corporation |
| Jurisdiction: | Florida |
| Periodic Report Month: | June |

You may:
- View History and Documents
- Obtain Certificate of Good Standing
- File a Document
- Set Up Secure Business Filing for this Record
- Subscribe to email notification regarding this record
- Unsubscribe from email notification regarding this record

[    Previous Page    ]

Terms and Conditions




**For this Record...**
History & Documents
Cert of Good Standing
File a Document
Subscribe Email
Notification
Unsubscribe Email
Notification

Business Home
Business Information
Business Search

FAQs, Glossary and
Information

# Summary

| | |
|---|---|
| ID Number: | 20081392337 |
| Name: | DISNEY ONLINE INC. |
| True Name: | DISNEY ONLINE |
| | |
| Registered Agent: | Corporation Service Company |
| Registered Agent Street Address: | 1560 Broadway, Suite 2090, Denver, CO 80202, United States |
| Registered Agent Mailing Address: | |
| | |
| Principal Street Address: | 500 SOUTH BUENA VISTA STREET, BURBANK, CA 91521, United States |
| Principal Mailing Address: | |
| | |
| Status: | Good Standing |
| Form: | Foreign Corporation |
| Jurisdiction: | CALIFORNIA |
| Periodic Report Month: | July |

You may:
- View History and Documents
- Obtain Certificate of Good Standing
- File a Document
- Set Up Secure Business Filing for this Record
- Subscribe to email notification regarding this record
- Unsubscribe from email notification regarding this record

[     Previous Page     ]

Terms and Conditions

# EXHIBIT 2

# OFFICE OF THE SECRETARY OF STATE
## OF THE STATE OF COLORADO

# CERTIFICATE

I, Scott Gessler, as the Secretary of State of the State of Colorado, hereby certify that, according to the records of this office,

**BUENA VISTA HOME ENTERTAINMENT, INC.**

is an entity formed or registered under the law of **California** has complied with all applicable requirements of this office, and is in good standing with this office. This entity has been assigned entity identification number 19871716740.

This certificate reflects facts established or disclosed by documents delivered to this office on paper through 02/05/2013 that have been posted, and by documents delivered to this office electronically through 02/06/2013 @ 16:33:57.

I have affixed hereto the Great Seal of the State of Colorado and duly generated, executed, authenticated, issued, delivered and communicated this official certificate at Denver, Colorado on 02/06/2013 @ 16:33:57 pursuant to and in accordance with applicable law. This certificate is assigned Confirmation Number 8454854.



_____
Secretary of State of the State of Colorado

*************************************************End of Certificate*************************************************

*Notice: A certificate issued electronically from the Colorado Secretary of State's Web site is fully and immediately valid and effective. However, as an option, the issuance and validity of a certificate obtained electronically may be established by visiting the Certificate Confirmation Page of the Secretary of State's Web site, http://www.sos.state.co.us/biz/CertificateSearchCriteria.do entering the certificate's confirmation number displayed on the certificate, and following the instructions displayed. Confirming the issuance of a certificate is merely optional and is not necessary to the valid and effective issuance of a certificate. For more information, visit our Web site, http://www.sos.state.co.us/ click Business Center and select "Frequently Asked Questions."*

# OFFICE OF THE SECRETARY OF STATE
# OF THE STATE OF COLORADO

# CERTIFICATE

I, Scott Gessler, as the Secretary of State of the State of Colorado, hereby certify that, according to the records of this office,

**Disney Worldwide Services, Inc.**

is an entity formed or registered under the law of **Florida** has complied with all applicable requirements of this office, and is in good standing with this office. This entity has been assigned entity identification number 20061259241.

This certificate reflects facts established or disclosed by documents delivered to this office on paper through 02/05/2013 that have been posted, and by documents delivered to this office electronically through 02/06/2013 @ 17:18:52.

I have affixed hereto the Great Seal of the State of Colorado and duly generated, executed, authenticated, issued, delivered and communicated this official certificate at Denver, Colorado on 02/06/2013 @ 17:18:52 pursuant to and in accordance with applicable law. This certificate is assigned Confirmation Number 8454904.



_____
Secretary of State of the State of Colorado

*****************************************End of Certificate*****************************************

_Notice: A certificate issued electronically from the Colorado Secretary of State's Web site is fully and immediately valid and effective._ However, as an option, the issuance and validity of a certificate obtained electronically may be established by visiting the Certificate Confirmation Page of the Secretary of State's Web site, _http://www.sos.state.co.us/biz/CertificateSearchCriteria.do_ entering the certificate's confirmation number displayed on the certificate, and following the instructions displayed. _Confirming the issuance of a certificate is merely optional and is not necessary to the valid and effective issuance of a certificate._ For more information, visit our Web site, http://www.sos.state.co.us/ click Business Center and select "Frequently Asked Questions."

CERT_GS_F Revised 08/20/2008

# OFFICE OF THE SECRETARY OF STATE
# OF THE STATE OF COLORADO

# CERTIFICATE

I, Scott Gessler, as the Secretary of State of the State of Colorado, hereby certify that, according to the records of this office,

**DISNEY ONLINE**

is an entity formed or registered under the law of **CALIFORNIA** has complied with all applicable requirements of this office, and is in good standing with this office.  This entity has been assigned entity identification number 20081392337.

This certificate reflects facts established or disclosed by documents delivered to this office on paper through 02/05/2013 that have been posted, and by documents delivered to this office electronically through 02/06/2013 @ 17:19:38.

This certificate does not reflect whether the entity is transacting business or conducting activities in Colorado under an assumed name.

I have affixed hereto the Great Seal of the State of Colorado and duly generated, executed, authenticated, issued, delivered and communicated this official certificate at Denver, Colorado on 02/06/2013 @ 17:19:38 pursuant to and in accordance with applicable law.  This certificate is assigned Confirmation Number 8454905.



_____
Secretary of State of the State of Colorado

*************************************************End of Certificate*************************************************

*Notice: A certificate issued electronically from the Colorado Secretary of State's Web site is fully and immediately valid and effective. However, as an option, the issuance and validity of a certificate obtained electronically may be established by visiting the Certificate Confirmation Page of the Secretary of State's Web site, http://www.sos.state.co.us/biz/CertificateSearchCriteria.do entering the certificate's confirmation number displayed on the certificate, and following the instructions displayed. Confirming the issuance of a certificate is merely optional and is not necessary to the valid and effective issuance of a certificate. For more information, visit our Web site, http://www.sos.state.co.us/ click Business Center and select "Frequently Asked Questions."*

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSE ABADIN and CHRISTOPHER BELLAND, derivatively on behalf of STAN LEE MEDIA, INC., a Colorado Corporation,<br><br>Plaintiffs,<br><br>-against-<br><br>MARVEL ENTERTAINMENT, INC., a Delaware Corporation, MARVEL ENTERPRISES, INC., STAN LEE, and ARTHUR M. LIEBERMAN,<br><br>Defendants. | 09 Civ. 0715 (PAC)<br><br>**VERIFIED AMENDED SHAREHOLDERS DERIVATIVE COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiffs Jose Abadin and Christopher Belland ("Plaintiffs"), derivatively on behalf of Stan Lee Media, Inc. ("SLM"), by its attorneys, Eaton & Van Winkle LLP, for its Verified Amended Complaint (the "Amended Complaint") against Defendants, hereby allege as follows:

<u>**JURISDICTION AND VENUE**</u>

1.    Plaintiffs bring this action as a derivative action pursuant to Rule 23.1 of the Federal Rules of Civil Procedure on behalf of SLM and all other shareholders of SLM that are similarly situated.

2.    SLM seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202.

3.    This Court has jurisdiction over the copyright infringement claims pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, the Lanham Act claims pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331 and 28

U.S.C. § 1338(a), and all other claims by virtue of 28 U.S.C. § 1338(b) and
pendent jurisdiction.

4.      Venue in this District is proper under 28 U.S.C. §§ 1401 and
1391(b) and (c) because a substantial part of the activities and events occurred
within this district and the defendants are conducting business, have principal
office locations and/or are residents within this district.

## PARTIES

5.      Plaintiff Christopher Belland is a resident of Florida and
Plaintiff Jose Abadin is a resident of California.

6.      SLM is a corporation organized and existing under the laws
of the State of Colorado.

7.      SLM is the successor in interest to Stan Lee Media, Inc., a
Delaware Corporation, which was the successor in interest to Stan Lee
Entertainment, Inc., a Delaware Corporation which was established on or about
October 13, 1998.

8.      Defendant, Marvel Entertainment, Inc., is a successor entity
of and/or formerly known as Marvel Enterprises, Inc., and is a corporation
organized and existing under the laws of the State of Delaware, and at all times
material and relevant hereto has regularly and continually conducted business
and had a principal office located within the Southern District of New York.

9.      Marvel Enterprises, Inc. changed its name to Marvel
Entertainment, Inc. in 2005 but continues to do business under both names, and
is hereinafter described as "Marvel."

2

10.    Defendant Stan Lee ("Lee") is a resident of the State of California.

11.    Lee regularly conducts business within the Southern District of New York, and did so at the time the events in this Amended Complaint occurred, and the claims against him arose out of such business.

12.    Defendant Arthur M. Lieberman ("Lieberman") is a resident of New York, and has a principal place of business in New York, New York, located within the Southern District of New York.

**FEDERAL RULE 23.1 PLEADING REQUIREMENTS**

13.    Plaintiff Jose Abadin has continuously been a shareholder of SLM since on or about December 1999, which includes the time of the transactions complained of in this Amended Complaint, to and including the date hereof, and currently holds 29,386 shares of common stock of SLM for which he paid more than $200,000.

14.    Plaintiff Christopher Belland has continuously been a shareholder of SLM since on or about November 17, 1999, which includes the time of the transactions complained of in this Amended Complaint, to and including the date hereof, and is currently the record holder of 330 shares of common stock of SLM as custodian for his minor son Wesley Belland and is also the holder, by assignment, of 4.7 million shares of common stock of SLM.[1]

---

[1] The assignments are from P.F.P Family Holdings, L.P. of 2,668,300 shares; Continental Entities, Inc. of 705,500 shares; Celebrity Enterprises, Inc. of 629,633 shares; Hollywood Holdings Corp. of 416,306 shares; Global Brand Holdings, Inc. of 82,500 shares; The Medici Group, LLC of 82,500 shares; Global Language Solutions, Inc.  of  55,000  shares;  World Network, Inc. of 42,350 shares; and Excelsior Productions, Inc. of 26,500 shares.

15. This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

16. A demand upon SLM's board of directors to obtain the corporate action desired is impossible and would thereby be futile because, at the time the within lawsuit was commenced, SLM had no duly constituted board of directors.

17. Prior repeated efforts to have a board of directors for SLM elected and seated so that SLM could, inter alia, resume business (such business to include the bringing of the within claims against Lee and other defendants) have been successfully thwarted by Lee, as established by the following facts:

(a)    A Colorado State Court proceeding was first commenced by Plaintiff Christopher Belland in 2007 in the District Court for the City and County of Denver (Belland v. SLM et al., Case No. 07 CV 7536) (the "Colorado State Court '07 Proceeding") in order to hold a court-ordered shareholders' meeting so that SLM could become reinstated under Colorado law, elect directors and resume business;

(b)    In the Colorado State Court '07 Proceeding, a Special Master was court-appointed to conduct the shareholders' meeting in accordance with Colorado law;

(c)    After the quorum number of SLM shareholders was reached to conduct the shareholders' meeting and directors

4

were elected, Lee made a successful motion in the District Court
which prevented the seating of the elected directors;

(d)        A second Colorado State Court proceeding was
commenced in 2008 (P.F.P. Family Holdings, L.P. v. SLM et al.,
Case No. 08 CV 8584) (the "Colorado State Court '08 Proceeding")
for the same purpose, namely to hold a shareholders' meeting so
that SLM could become reinstated, elect directors and resume
business, such business to include the bringing of the within claims
against Lee and other defendants;

(e)        A notice of shareholders' meeting (and form of
proxy appointment) was sent by the same Special Master to a list of
record and beneficial shareholders of SLM prepared by the Special
Master;

(f)        After the quorum number of SLM shareholders
was reached to conduct the shareholders' meeting, Lee, as the sole
and exclusive intervenor in the Colorado State Court '08
Proceeding, frustrated the attempt to reach a quorum by raising
various objections to the sufficiency of certain proxy appointments
issued by SLM shareholders in connection with the noticed
shareholders' meeting;

(g)        On the basis of Lee's objections, the Special
Master disallowed certain proxies which resulted in a finding by the
Special Master that the necessary quorum of SLM shareholders for

5

a shareholders' meeting had not been attained and/or was not present; and

(h)     The Special Master's report, finding that a quorum of SLM shareholders was not present, was adopted and affirmed by Order of the Colorado State Court dated March 17, 2009.

18.     No formal demand has been made on the shareholders of SLM by Plaintiffs to commence this litigation, for such a demand would have been futile because SLM shareholders cannot achieve a quorum in order to authorize such a suit, by reason of the fact that:

(a)     SLM shareholders have been unable to seat a Board of Directors to authorize such actions notwithstanding two annual meetings called by Plaintiffs acting on behalf of all shareholders since 2007;

(b)     After the Colorado Court supervised the election of a Board and then seated a duly elected Board in 2007, which Lee was unable to thwart, he made a collateral attack on the Board before a new judge and managed to have that Board unseated without a hearing; and

(c)     When Plaintiffs obtained another court ordered and supervised annual meeting for an election in December 2008, Lee frustrated the 2008 meeting with technical objections to certain proxies presented and thwarted the quorum by successfully

contesting some of the votes present to deny the participating shareholders a quorum.

19.    No formal demand has been made on each shareholder of SLM by Plaintiffs to participate in this litigation because, as found by the Special Master in the Colorado State Court '07 Proceeding, the shareholders have already been apprised that "Mr. Belland is attempting to recover what he believes to be assets of SLMI through various lawsuits against Mr. Lee and his affiliates. If Mr. Belland's slate [of directors] is not elected, the SLMI shareholders likely will have nothing because no one else appears to be pursuing the lawsuits." Report of Special Master Cathy S. Krendl, Esq., dated February 2, 2008, rendered in Colorado State Court '07 Proceeding, at 64.

20.    No formal demand has been made on each shareholder of SLM by Plaintiffs to participate in this litigation because the shareholders have already been apprised, in the notice of shareholders' meeting sent by the Special Master in 2008 in connection with the Colorado State Court '08 Proceeding, that Plaintiffs Jose Abadin and Christopher Belland have been and are attempting to recover assets of SLM through lawsuits against Lee and his affiliates necessitated by Lee's alleged improper actions and transfers.

21.    Despite the fact that the shareholders have already been specifically apprised, in the context of both the Colorado State Court '07 Proceeding and the Colorado State Court '08 Proceeding, that Plaintiffs have been attempting to recover assets of SLM through various lawsuits against Mr.

Lee and his affiliates, no shareholders other than Plaintiffs have volunteered or elected to participate in the within lawsuit.

22.     Upon information and belief, Lee will continue to litigate in Colorado, New York, California and elsewhere to try to try to thwart the shareholders from successfully seating a Board of Directors that will authorize the pursuit of SLM's claims against him and Marvel.

23.     Plaintiffs will fairly and adequately represent the best interests of the shareholders of SLM similarly situated and SLM in enforcing herein the rights of SLM, having been the only active shareholders since SLM was dismissed from Chapter 11 Debtor in Possession protection to protect all shareholders through litigation in New York, California and Colorado.

## THE NATURE OF THIS ACTION

24.     This is an action brought by Plaintiffs, derivatively on behalf of SLM, against all defendants regarding certain property of SLM, including (but not limited to) assets, claims, copyright and trademark claims and rights, and other intellectual property rights and interests, including a right, title and interest to the use of the name and trademark of "Marvel" and the likeness, name and image of Stan Lee, to obtain an accounting and award of damages for the unlawful and unauthorized use of SLM's property, and to obtain a judgment for damages as against Lee for breach of contract.

25.     Upon information and belief, Marvel and Lee have for nearly 20 years been developing, producing, marketing and selling characters in various media which were initially created by Lee, Lee's interest in which has been

assigned and belongs to SLM, including all of his interest in the name "Marvel."
Most of Marvel's financial success derives from characters initially created by
Lee that are the subject of this lawsuit.

26.    Upon information and belief, Marvel's net sales from its
exploitation of various world famous characters created by Lee, from 2003 to the
present alone, now exceed $2,000,000,000 and in the future will exceed a
multiple of that number.  These sales include a share in the profits from monies
earned from "Marvel" movies ("X-Men," "Spider Man 1, 2 and 3", "The Incredible
Hulk," "Fantastic Four," "Iron Man" and "Daredevil").  The measure of SLM's
damages includes the value of all of Lee's interest in the exploitation of these
characters, as well as a share in the profits from additional assets.

27.    Upon information and belief, Marvel, along with Lieberman,
knowing of an assignment from Lee to SLM dated October 15, 1998, and
knowing that by that assignment Lee transferred, among other things, all his
interest in the Marvel characters and his interest in the name and trademark
"Marvel" to SLM, decided to ignore that assignment.

28.    Upon information and belief, Marvel and Lieberman
conspired to and have otherwise engaged in tortious interference with Lee's
assignment to SLM dated October 15, 1998 and aided and abetted Lee in
breaching his fiduciary duty of care and loyalty owed to SLM.

**FACTS COMMON TO ALL CAUSES OF ACTION**

29.    Upon information and belief, from 1941 through
approximately November 9, 1942, Lee was employed by Timely Comics.

9

30.    Upon information and belief, from approximately November 9, 1942 until on or about September 29, 1945, Lee was on active duty in the United States Army.

31.    Upon information and belief, during the time that Lee was on active duty with the United States Army, he wrote scripts on a freelance basis for comic books for Timely Comics and was paid by Timely Comics on a per page basis for said scripts.

32.    Upon information and belief, from on or about November 9, 1945 through the autumn of 1968, Lee was employed by Timely Comics.

33.    Upon information and belief, throughout the years of 1945 through the autumn of 1968, Timely Comics operated and distributed its comic books under several names, including "Timely Comics", "Atlas Comics" and ultimately "Marvel Comics" (collectively referred to herein as "Timely/Atlas/Marvel").

34.    Upon information and belief, between 1945 and the autumn of 1968, a span of approximately twenty-three (23) years, Lee did not have a written contract of any kind with Timely/Atlas/Marvel.

35.    Upon information and belief, between 1945 and the autumn of 1968, Lee was employed in the capacity as an "editor-in-chief" and "art director," but was not employed as a writer of Timely/Atlas/Marvel.

36.    Upon information and belief, between 1945 and the autumn of 1968, Lee's employment and compensation for his work as "editor-in-chief"

and "art director" did not include any duties of conceiving of, creating or developing new characters.

37.    Upon information and belief, Lee, while employed by Timely/Atlas/Marvel, engaged in freelance writing and creative work for Marvel and others outside of work, for which he was paid separately.

38.    Upon information and belief, Lee's freelance writing and creative work during the course of his employment at Timely/Atlas/Marvel included the conception, creation and development of new comic book characters that were subsequently reduced to pages published in comic books with the assistance of artists supervised by Lee.

39.    Upon information and belief, all of Lee's conceptions, creations and development of new characters were performed by him during his spare time and were not within the scope of his salaried positions.

40.    Upon    information    and    belief,    Timely/Atlas/Marvel compensated Lee with both a salary for his work in Timely/Atlas/Marvel's office as Editor and Art Director, and with a separate income for his interest in each of the characters he conceived, created and developed, which were subsequently copyrighted and trademarked by Marvel.

41.    Upon information and belief, Lee's characters were not "works for hire" by Lee for any person or entity.

42.    Upon information and belief, Lee's characters were not commissioned works for any person or entity.

43.    Upon information and belief, Lee's characters include:

11

(1)    Spider-Man;
(2)    The Fantastic Four;
(3)    Mr. Fantastic;
(4)    The Invisible Woman;
(5)    Human Torch, a/k/a Johnny Storm;
(6)    The Thing;
(7)    The Incredible Hulk;
(8)    X-Men;
(9)    Daredevil;
(10)    Silver Surfer;
(11)    Ant-Man, a/k/a Yellowjacket, Giant-Man, Goliath;
(12)    Iron Man;
(13)    Doctor Strange;
(14)    The Avengers;
(15)    Thor;
(16)    Doctor Doom;
(17)    Magneto;
(18)    Colonel Nicholas Joseph "Nick" Fury;
(19)    Galactus;
(20)    Green Goblin;
(21)    Doctor Octopus;
(22)    The Vulture;
(23)    Mysterio;
(24)    John Jonah Jameson, a/k/a J. Jonah Jameson, J.J., and
         J.J.J;
(25)    The Lizard;
(26)    The Rhino;
(27)    The Shocker;
(28)    Mary Jane, a/k/a Mary Jane Watson-Parker;
(29)    Gwen Stacy;
(30)    The Sandman;
(31)    Electro;
(32)    Kraven the Hunter;
(33)    MACH-IV, a/k/a Beetle, MACH-1, 2 and 3;
(34)    The Chameleon;
(35)    Boomerang;
(36)    Blacklash a/k/a Whiplash;
(37)    Kingpin;
(38)    Baron Wolfgang von Strucker;
(39)    Mentallo;
(40)    Fixer;
(41)    Hawkeye;
(42)    Wonderman;
(43)    The Wasp;
(44)    Scarlet Witch;
(45)    Quicksilver;

(46)  Odin;
(47)  The Absorbing Man;
(48)  Mangog;
(49)  Ulik;
(50)  Fandral, a/k/a Fandral the Dashing;
(51)  Hogan, a/k/a Hogun the Grim;
(52)  Volstagg;
(53)  Balder the Brave;
(54)  Skurge, The Executioner;
(55)  Enchantress;
(56)  The Mandarin;
(57)  Power Man, a/k/a Atlas, Smuggler, Goliath, Erik Josten;
(58)  Black Bolt;
(59)  Medusa;
(60)  Karnak;
(61)  Gorgan;
(62)  Triton;
(63)  Crystal;
(64)  Lockjaw;
(65)  Maximus, a/k/a Maximus the Mad;
(66)  The Inhumans;
(67)  The Skrulls;
(68)  Captain Marvel, a/k/a Captain Mar-vell;
(69)  Toad;
(70)  Mastermind;
(71)  Blob;
(72)  Cyclops;
(73)  Marvel Girl, a/k/a Jean Grey, Phoenix;
(74)  Iceman;
(75)  Angel, a/k/a Archangel, Warren Kenneth Worthington III;
       and
(76)  Beast.

44.    Upon information and belief, after the autumn of 1968, Lee

worked for and was employed by a number of different companies, including

Perfect Film and Chemical Corporation (specifically, Lee was employed by its

subsidiary, Magazine Management Co.), Cadence Industries (which changed the

name of Magazine Management Co. to Marvel Comics Group), New World

Entertainment, Marvel Entertainment Group, Inc., Marvel Enterprises, Inc., and

Marvel Entertainment, Inc.

13

45.    Marvel Entertainment, Inc. is the successor in interest to Marvel Entertainment Group, Inc.

46.    Upon information and belief, from the date that Marvel Entertainment Group, Inc. became Lee's employer until approximately August of 1998, pursuant to a written employment agreement, Marvel paid Lee both a salary for Lee's exclusive services and extra compensation for Marvel's right to use, develop and exploit Lee's interest in the characters he had previously conceived, created and developed.

47.    On or about August of 1998, Marvel Entertainment Group, Inc. terminated Lee's employment agreement, but such termination did not extinguish Lee's rights and interest in the characters he had previously conceived, created and developed.

48.    Upon information and belief, Marvel has recognized Lee's rights and interest in the characters he had previously conceived, created and developed and Marvel has compensated Lee for Marvel's use and exploitation of such characters.

49.    On or about October 15, 1998, Lee entered into an agreement with Stan Lee Entertainment Inc., the predecessor to SLM, concerning both his employment and his assignment, then and in the future, of his "Property" and "Rights", as such terms are described and defined therein. That agreement is hereinafter referred to as the "Lee-SLM Agreement," and the capitalized terms "Property" and "Rights" as hereinafter used shall have the meanings ascribed to them in Paragraph 4(a) of the Lee-SLM Agreement.

14

50.    The Lee-SLM Agreement states, in pertinent part, as follows:

4(a) I [Stan Lee] assign, convey and grant to [Stan Lee Entertainment, Inc.] forever, all right, title and interest I may have or control, now or in the future, in the following: Any and all ideas, names, titles, characters, symbols, logos, designs, likenesses, visual representations, artwork, stories, plots, scripts, episodes, literary property, and the conceptual universe related thereto, including my name and likeness (the "**Property**") which will or have been in whole or part disclosed in writing to, published, merchandised, advertised, and/or licensed by [Stan Lee Entertainment, Inc.], its affiliates and successors in interest and licensees (which by agreement inures to [Stan Lee Entertainment, Inc.] benefit) or any of them and any copyrights, trademarks, statutory rights, common law, goodwill, moral rights and any other rights whatsoever in the Property in any and all media and/or fields, including all rights to renewal or extensions of copyright amid make applications or institute suits therefore (the "**Rights**"). [emphasis added]

...

4(c) Subject to a material breach of this agreement, I will never file with the U.S. Copyright or Patent and Trademark Office or any governmental or public agency, and will never assert or assist others in asserting on my behalf or in claiming rights through me, any claim to ownership or the Rights in the Property, or in making any objection to [Stan Lee Entertainment, Inc.'s] complete and unrestricted right to use and exploit said Property or Rights in any form, manner or medium [Stan Lee Entertainment, Inc.] may desire.

51.    Lee had retained his rights and interest in all his characters, which were encompassed within the Property and Rights and other interests of Lee that were assigned to Stan Lee Entertainment Inc. in the Lee-SLM Agreement.

52.    In return for Lee's all encompassing assignment made to Stan Lee Entertainment Inc. by reason of the Lee-SLM Agreement, including Lee's name and likeness, Stan Lee Entertainment, Inc. conveyed to Lee 51% of the shares in the companies, agreed to pay and did, in fact, pay to Lee

approximately $250,000.00 per year in salary, bonuses and other compensation, and also provided certain other items of consideration as set forth therein, including over 3.5 million shares in Stan Lee Media stock, in addition to options and other compensation.

53.    Lee also became Chairman of the Board of Directors and Chief Creative Officer of Stan Lee Entertainment, Inc.

54.    The Lee-SLM Agreement required that Lee's services be exclusive to Stan Lee Entertainment, Inc. with only one stated exception: those part-time services provided under a new lifetime non-exclusive agreement with Marvel Enterprises, Inc., which could require no more than an average of 10-15 hours per week on its behalf.

55.    The Lee-SLM Agreement provided that Stan Lee Entertainment, Inc. was entitled to the benefits and proceeds of all other services performed and intellectual property then held or to be created by Lee both directly for Stan Lee Entertainment, Inc. and for any other entity.

56.    At the time the Lee-SLM Agreement was executed, Lee had full authority and right to convey the Property and Rights to Stan Lee Entertainment, Inc.

57.    At the time the Lee-SLM Agreement was executed, Lee was not a party to any contract with any other person or entity with regard to any of the Property or Rights.

58.   The Lee-SLM Agreement expressly required that Lee obtain the written consent of Stan Lee Entertainment, Inc. prior to performing any services of any kind for any other entity.

59.   SLM is currently the rightful owner and holder of the Property and Rights assigned by Lee to Stan Lee Entertainment, Inc. pursuant to the Lee-SLM Agreement, as SLM is the ultimate successor in interest to Stan Lee Entertainment, Inc.

60.   At no point in time has Stan Lee Entertainment, Inc. or SLM ever provided to Lee any form of written consent for him to perform any services of any kind for any other entity.

61.   Upon information and belief, Lee continues to own and retain SLM shares that were issued to him (either individually and/or through the Lee Family Trust) and has never tendered them back to SLM.

62.   The Lee-SLM Agreement was ratified by Lee over a year after it was executed, on or about October 19, 1999, in an Amendment.  The Amendment contained express representations by Lee that the Amendment was being signed after consultation with his financial consultants and legal counsel.

63.   Except as provided in the immediately preceding paragraph, the Lee-SLM Agreement has never been modified and remains in full force and effect.

64.   Upon information and belief, Lieberman and Marvel knew about the creation, existence and effect of the Lee-SLM Agreement and all defendants knew that Lee was no longer free to dispose of the Property and

Rights, including his interest in the Marvel characters, since he had already done so by virtue of the Lee-SLM Agreement.

65.     On or about November 17, 1998, Lee, in exchange for present and future consideration, and Marvel executed an agreement that purported to convey to Marvel the very "Property" and "Rights" that the Lee-SLM Agreement transferred to Stan Lee Entertainment, Inc. (hereinafter called the "Lee-Marvel Agreement").

66.     Upon information and belief, Lieberman represented Lee in his negotiation of the Lee-Marvel Agreement and supervised Lee's execution of the Lee-Marvel Agreement.

67.     Upon information and belief, thereafter, Marvel paid monies to Lee that rightfully belonged to SLM and its shareholders and Lee used his fiduciary control position as Chairman and major shareholder of SLM to conceal from SLM the nature and extent of his breaches of fiduciary duty of care and loyalty.

68.     Upon information and belief, Lee was aided and abetted in his concealment by Lieberman, who became a partner or member with Lee in one or more business entities, including POW! Entertainment LLC, and a shareholder in SLM, and served as SLM's intellectual property lawyer in respect of various copyright and trademark registrations and also represented Lee in his dealings and negotiations with SLM.

69.     Since October 15, 1998, Lee, while employed by SLM, created, as works for hire, certain characters, copyrights and trademarks and

intellectual properties, which, by the express terms of the Lee-SLM Agreement, comprise a portion of the Property and Rights in which Lee had a financial interest and an intellectual property interest, and which inured to the benefit and ownership of SLM. They include, but are not limited to, the following:

    (a)   Stanlee.NET web site and portal
    (b)   The Accuser
    (c)   The Drifter
    (d)   Stan's Evil Clone
    (e)   Chrysallis
    (f)   The Stone Giant
    (g)   Battle School Tranquility
    (h)   Lee Schultz Partnership
    (i)   DC Comics/Stan Lee Project
    (j)   Scuzzle Project and Scuzzle Design Project

    70.   Pursuant to the terms of the Lee-SLM Agreement, SLM was entitled to all assets and revenues from all services performed by Lee, with the exception only of compensation from Marvel Enterprises, Inc. to Lee for those services of 10-15 hours per week, from November 1998 forward. To the extent that Lee obtained any other compensation for any services or other things beyond the 10-15 hours per week of work for Marvel Enterprises, Inc., SLM was entitled to 100% of such income and an interest in any after-arising Property or Rights pursuant to the express provisions of the Lee-SLM Agreement.

    71.   Upon information and belief, Lee receives royalties directly from publishers and others on a variety of projects and publications, for which he has participated as a writer, producer and/or in some other capacity or affiliation. The Lee-SLM Agreement assigned all such royalties to SLM generated by such projects as are encompassed within the Property and Rights assigned to SLM.

72.     Upon information and belief, Lee has, before and after the Lee-SLM Agreement, performed work for companies, including, but not limited to, Marvel Characters B.V., QED Productions, LLC and POW! Entertainment, Inc., has created additional Property and Rights and other intellectual property interests, and has obtained payment for services and the use of his name, likeness and slogans and for his interest in the name and trademark of Marvel, and other things, to all of which SLM is entitled.

73.     Upon information and belief, Lee purported to assign certain of the Property and Rights to QED Productions, LLC and/or POW! Entertainment, Inc., entities which Lee owns or over which he exerts dominion and control.

74.     The Lee-SLM Agreement was recorded on behalf of SLM on or about November 28, 2006 with the United States Copyright Office.

75.     Upon information and belief, the Lee-Marvel Agreement has not been recorded with the United States Copyright Office.

76.     Upon information and belief, at all times material and relevant hereto, all of the defendants had actual and/or constructive knowledge of the continuing existence, validity and enforceability of the Lee-SLM Agreement.

77.     At all times material and relevant hereto, SLM, as well as its predecessors in interest, did all things required of them pursuant to the Lee-SLM Agreement in order to retain exclusive ownership of the Property and Rights.

78.     Upon information and belief, Marvel since November 1998 and up until the present time has paid or promised to pay third parties and Stan

Lee, and has obligated itself to pay Joan Lee and Joan C. Lee monies, rather than SLM.

79.    Upon information and belief, defendants thereafter continued a course of action which diverted funds properly owed to SLM pursuant to the Lee-SLM Agreement, including keeping secret settlement terms and a settlement document dated on or about April 2005 in the United States District Court for the Southern District of New York in an action entitled <u>Stan Lee v. Marvel Entertainment</u>, 02 CV 8945 (the "Lee v. Marvel Suit"), an action then pending before Judge Robert Sweet, in which Lee had alleged entitlement to profit sharing pursuant to the Lee-Marvel Agreement, for which Marvel was given a conditional assignment of "Lee's rights in his many world famous and hugely popular characters".  Lee v. Marvel Suit, Complaint dated November 12, 2002, Para. 14.

80.    Upon information and belief, a settlement was made between Lee and Marvel on Lee's claims and those settlement terms were sealed at the request of Marvel and Lee, for they knew, among other things, that the full terms of the settlement would show that Marvel acknowledged SLM's Property and Rights, and that Lee intentionally breached the Lee-SLM Agreement and Marvel tortiously interfered with the Lee-SLM Agreement.

81.    Upon information and belief, if all the sealed documents were released, along with all the other details leading to the settlement and all details of that litigation, they would not only reveal information regarding Lee's breaches of duties owed, but the terms of the settlement would show that

defendants have previously taken positions, and presently take positions, that contradict each other.

82. Upon information and belief, those sealed documents would also prove that Marvel has always recognized Lee's rights and interest in Marvel characters, as well as his intellectual property interests in the Marvel name and trademark.

83. In violation of SLM's ownership rights to the Property and Rights, the defendants have used, marketed, licensed, merchandised, promoted, advertised and otherwise exploited the Property and Rights for their own financial benefit, and without the participation, authority and consent of SLM.

84. In violation of SLM's ownership of the Property and Rights, the defendants have not paid to SLM the income, proceeds and profits from defendants' unauthorized use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Property and Rights.

85. As the defendants have received income, proceeds and profits from the defendants' use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Property and Rights, the defendants have a duty to account to and pay to SLM.

86. The defendants have utilized Stan Lee's name, likeness, persona, and signature slogans, which they are not entitled to utilize for any purpose because they are encompassed within the Property and Rights Lee assigned to SLM.

87.    Defendants have attempted to use Stan Lee's interest in the Marvel name and trademark, which are encompassed within the Property and Rights Lee assigned to SLM, while failing to account to SLM.

## COUNT I:  COPYRIGHT INFRINGEMENT; UNFAIR COMPETITION; AND DECLARATORY JUDGMENT RELIEF
### [As Against Lee]

88.    SLM repeats and realleges each and every allegation contained in paragraphs 1 through 87 above as if fully set forth herein.

89.    Upon information and belief, Lee, a United States citizen, is the original creator and author of various works.

90.    Lee's original works are copyrightable under United States law.

91.    Upon information and belief, original works of Lee have been registered with the United States Copyright Office in accordance with the Lee-SLM Agreement and the Copyright Act and Lee (or entities owned by him or over which he exercises dominion and control) has received certificates of registration for such original works including, but not limited to:

    (a)    Title: Accuser Artwork
           i.   Authorship on application: SLM
           ii.  Registrant: QED Productions, LLC
           iii. Registration No: VA0001387661
           iv.  Date of Registration: January 8, 2007

    (b)    Title: Accuser webisodes
           i.   Authorship on application: SLM
           ii.  Registrant: QED Productions, LLC
           iii. Registration No: PA0001341307
           iv.  Date of Registration: January 8, 2007

    (c)    Title: Drifter artwork
           i.   Authorship on application: SLM

                ii.   Registrant: QED Productions, LLC
                iii.  Registration No: VA0001387662
                iv.  Date of Registration: January 8, 2007

    (d)     Title: Stan's evil clone webisodes
                i.    Authorship on application: SLM
                ii.   Registrant: QED Productions, LLC
                iii.  Registration No: PA0001341306
                iv.  Date of Registration: January 8, 2007

92.    By reason of the Lee-SLM Agreement, SLM is the valid assignee of the copyrights to all original works of Lee, including but not limited to those set forth in the immediately preceding paragraph relating to the Drifter, the Accuser and Stan's evil clone.

93.    The Lee-SLM Agreement, which is the instrument of transfer of the original works of Lee to SLM, has been recorded with the United States Copyright Office in accordance with the Copyright Act.

94.    On or about July 31, 2006, Lee effected the filing of an assignment of copyright with the United States Copyright Office purporting to assign SLM's copyrights in the Drifter, the Accuser and Stan's evil clone to QED Productions, LLC.

95.    The Lee-SLM Agreement remains in all respects valid, proper, existing, executory and enforceable.

96.    The Lee-SLM Agreement predates and supersedes any purported assignment of rights to QED Productions, LLC and, in any event, any purported assignment of rights to QED Productions, LLC was unauthorized and unapproved.

97. Lee had actual, constructive and/or inquiry notice of the existence of the Lee-SLM Agreement as of the date of its execution.

98. QED Productions, LLC had actual, constructive and/or inquiry notice of the existence of the Lee-SLM Agreement, and knowing of facts sufficient to put it on notice of inquiry into the possibility that there might be another assignment superior to its assignment, was not a bona fide purchaser, in good faith, in respect of any purported assignment of rights and properties.

99. At all times material and relevant hereto, SLM, as well as its predecessors in interest, did all things required of it pursuant to the Lee-SLM Agreement in order to retain ownership as assignee of Lee's rights in his original works.

100. By the Decision and Order of the Hon. Stephen V. Wilson, District Judge for the U. S. District Court for the Central District of California (CV 07-0225) ("Judge Wilson's 1-20-09 Decision"), dated January 20, 2009, in an action brought by Lee, QED Productions, LLC and POW! Entertainment, Inc., Judge Wilson found that QED Productions, Inc. never acquired any assets from SLM, such assets necessarily including copyrights in the Drifter, the Accuser and Stan's evil clone.

101. From and including 1999, Lee has infringed and intends to infringe SLM's copyrights in Lee's original works by certain acts, including but not limited to copying, developing, exhibiting, licensing, pursuing syndication, distributing or otherwise exploiting such works as the Drifter, the Accuser and Stan's evil clone, in such media as webisodes, macromedia flash-based

interactive games, paper-based medium calendars, trading cards, envelopes, greeting cards, and developing a television script.

102.    The acts of Lee were performed without the agreement or consent of SLM, and said acts constitute acts of copyright infringement under U.S.C. Title 17.

103.    Lee continues to infringe the aforementioned copyrights and further has engaged in unfair trade practices and unfair competition in connection with his infringing acts, thereby causing irreparable damage.

104.    Based upon the foregoing, SLM seeks judgment declaring it the copyright owner of such characters as the Drifter, the Accuser and Stan's evil clone and demands that Lee account for and pay as damages all profits and advantages gained from unfair trade practices, unfair competition, and infringing SLM's copyrights (but no less than the statutory minimum) for a period of not less than three years prior to the commencement of this lawsuit.

### COUNT II:  VIOLATION OF SECTION 43(a) LANHAM ACT
### [As Against Lee and Marvel]

105.    SLM repeats and realleges each and every allegation contained in paragraph 1 through 104 above as if fully set forth herein.

106.    SLM is the assignee of Lee, pursuant to the Lee-SLM Agreement, of any and all of Lee's creations and characters, Stan Lee's name, likeness, signature, symbols, logos, designs, and visual representations, as well as any trademarks including Stan Lee's interest, if any, in the Marvel trademark, and the trademarks STAN LEE PRESENTS (which was registered in the U.S Patent and Trademark Office ("USPTO") on December 18, 2007 [Reg. No.

26

3,357,243]), The Drifter (which was registered in the USPTO on December 23,

2008 [Reg. No. 3,553,108]), Excelsior! (which was registered in the USPTO on

September 30, 2008 [Reg. No. pending]), Accuser (which was registered in the

USPTO on December 23, 2008 [Reg. No. 3,552,112]).

107.    As held in Judge Wilson's 1-20-09 Decision, Lee, QED

Productions, Inc., and POW! Entertainment, Inc. never acquired any assets from

SLM, such assets necessarily including trademarks in STAN LEE PRESENTS,

The Drifter, Excelsior!, and Accuser.

108.    Neither Lee nor Marvel has any right of any kind to use the

name, likeness, signature, symbols, logos, designs, and visual representations of

Stan Lee or any trademarks including or evidencing the same, such as STAN

LEE PRESENTS.

109.    SLM is protected by Section 43(a) of the Lanham Act as

assignee of Lee.

110.    Lee and Marvel have and continue to use, market,

merchandise, promote, advertise, license and exploit the name, likeness,

signature, symbols, logos, designs, visual representations of Stan Lee, as well as

trademarks (including the Marvel Trademark and STAN LEE PRESENTS),

including and evidencing the same, for their financial benefit.

111.    Lee and Marvel have used, marketed, merchandised,

promoted, advertised, licensed and exploited the name, likeness, signature,

symbols, logos, designs and visual representations of Stan Lee, as well as

trademarks (including the Marvel trademark and STAN LEE PRESENTS)

evidencing the same, without any authority from SLM and in violation of Section 43(a) of the Lanham Act.

112.    Upon information and belief, Lee and Marvel have derived a financial benefit from utilizing Stan Lee's name, likeness, signature, symbols, logos, designs and visual representations, as well as trademarks (including the Marvel trademark and STAN LEE PRESENTS) evidencing the same, in the manner described in this cause of action.

113.    Lee and Marvel, in connection with goods and services, have used false designations of origin, false or misleading descriptions of fact, false or misleading representations of fact which are likely to cause confusion or mistake or to deceive as to the affiliation, connection or association of Stan Lee with Marvel.

114.    Lee and Marvel, in connection with goods and services, have used false designations of origin, false or misleading descriptions of fact, false or misleading representations of fact which misrepresent the ownership, nature, characteristics, qualities or geographic origin of Lee's creations and characters, Stan Lee's name, likeness, signature, symbols, logos, designs, and visual representations, as well as any trademarks.

115.    Lee's and Marvel's false claims regarding their rights in and to Stan Lee's name, likeness, signature, symbols, logos, designs and visual representations, as well as trademarks (including the Marvel trademark) evidencing the same, constitute a false or misleading description of fact or a false or misleading representations of fact.  Lee's and Marvel's misrepresentations

falsely characterize and describe the ownership and control of the aforementioned Property and Rights in violation of the Lanham Act.

116.    By engaging in the conduct alleged herein, Lee and Marvel have deprived SLM of its right to receive the goodwill and value that it otherwise would receive as the sole and exclusive owner and assignee of any and all rights to Stan Lee's name, likeness, signature, symbols, logos, designs and visual representations, as well as trademarks, including the Marvel trademark.   Such recognition would enhance SLM's name, reputation and goodwill and create opportunities for future business and future economic benefit.   Lee and Marvel have unjustly and intentionally deprived SLM of these rights, interests and benefits for defendants' own financial gain.

117.    As a direct and proximate result of defendants' wrongful conduct as alleged herein, SLM has been damaged in an amount not yet ascertained but in excess of the jurisdictional minimum of this Court.

118.    Lee's and Marvel's infringement was willful and intentional, having had actual, constructive and/or inquiry notice of the existence of the Lee-SLM Agreement and knowledge of facts sufficient to put them on notice of inquiry into the possibility that there might be another assignment superior to any purported rights transferred by reason of the Lee-Marvel Agreement.

119.    Pursuant to 15 U.S.C. § 1117, SLM is entitled to receive a judgment equal to three times the amount of Lee's and Marvel's profits or to recover the amount of SLM's actual damages, whichever is greater, plus costs of

suit, prejudgment and post-judgment interest on all amounts awarded, and reasonable attorneys' fees.

120.    The acts and omissions of Lee and Marvel were willful and malicious, and done with an intent to injure SLM and with full knowledge of the adverse effects such acts would have on SLM, and with a conscious disregard of SLM's rights and willful and deliberate disregard for the consequences to SLM, such as to constitute oppression, fraud or malice thus entitling SLM to exemplary and punitive damages in an amount appropriate to punish or set an example of defendants and to deter such conduct in the future.

121.    A monetary award, alone, is not adequate to compensate SLM with regard to this cause of action.  SLM, therefore, also seeks a permanent injunction under 15 U.S.C. § 1125(c) and other applicable law prohibiting defendants from continuing to wrongfully violate SLM's rights as set forth herein.

## COUNT III:  BREACH OF CONTRACT
### [As Against Lee]

122.    SLM repeats and realleges each and every allegation contained in paragraphs 1 through 87 above as if fully set forth herein.

123.    The Lee-SLM Agreement is a valid, existing, executory contract between SLM, as successor in interest to Stan Lee Entertainment, Inc., and Lee.

124.    The Lee-SLM Agreement has no durational term and imposes continuing and ongoing obligations upon Lee.

125.    Pursuant to the terms of the Lee-SLM Agreement, Stan Lee Entertainment, Inc. and/or its successors in interest conveyed to Lee shares in

the companies, paid Lee approximately $250,000.00 per year in salary, bonuses and other compensation, and also provided certain other items of consideration as set forth therein.

126.    SLM at all relevant times did perform and/or was ready, able and willing to perform all of its obligations under the Lee-SLM Agreement and/or was prevented from further performance by the actions and conduct of Lee.

127.    Pursuant to the terms of the Lee-SLM Agreement, Lee has an ongoing and continuing obligation to assign, convey and grant to SLM, as successor in interest to Stan Lee Entertainment, Inc., all right, title and interest he had or has in past, present or future Property and Rights.

128.    Pursuant to the terms of the Lee-SLM Agreement, Lee has an ongoing and continuing obligation to provide enumerated services exclusively to SLM, as successor in interest to Stan Lee Entertainment, Inc. (with the exception of 10-15 hours of services per week provided by Lee to Marvel).

129.    Pursuant to the terms of the Lee-SLM Agreement, Lee has an ongoing and continuing obligation to refrain from filing anything with the U.S. Copyright or Patent and Trademark Office or any governmental or public agency, and to refrain from asserting or assisting others in asserting on Lee's behalf or in claiming rights through Lee, any claim to ownership or rights in past, present or future Property and Rights, or in making any objection to SLM's complete and unrestricted right to use and exploit the Property or Rights in any form, manner or medium.

130.    Lee has breached his contractual obligations to SLM, and continues to breach his contractual obligations to SLM, by failing to, among other things, effect necessary assignments, conveyances and/or grants of his interests in all Property and Rights to SLM, provide exclusive, enumerated services to SLM or refrain from making governmental filings or otherwise claiming ownership or rights or assisting others in claiming ownership or rights in the Property and Rights.

131.    Lee has breached his contractual obligations to SLM, and continues to breach his contractual obligations to SLM, by various acts and omissions which are tantamount to taking the Property and Rights from SLM as well as the revenues, profits and payments realized from the Property and Rights.

132.    As a result of Lee's successive breaches of his continuing and ongoing contractual obligations, SLM has suffered and is currently entitled to damages for each successive breach by Lee, including all revenues, profits and payments realized from the Property and Rights in an amount to be determined at trial, for a period of not less than six years prior to the commencement of this lawsuit SLM.

### COUNT IV:  TORTIOUS INTERFERENCE WITH CONTRACT
### [As Against Marvel & Lieberman]

133.    SLM repeats and realleges each and every allegation contained in paragraph 1 to 87, 122-132 through above as if fully set forth herein.

134.    SLM, as successor in interest to Stan Lee Entertainment, Inc., has a valid, existing agreement with Lee, namely the Lee-SLM Agreement.

135.    Upon information and belief, Marvel and Lieberman knew of the terms and existence of the Lee-SLM Agreement as of the date of its execution and/or before execution of the Lee-Marvel Agreement.

136.    Without reasonable or economic justification or excuse, Marvel and Lieberman knowingly and intentionally induced, caused and/or procured the continuing and successive breaches of the Lee-SLM Agreement by Lee.

137.    The actions of Marvel and Lieberman in causing Lee's breach of the Lee-SLM Agreement constitutes tortious interference with contract.

138.    SLM has suffered damages as the direct and proximate result of the tortious interference of Marvel and Lieberman.

139.    As the direct and proximate result of the tortious interference of Marvel and Lieberman, each is jointly and severally liable to SLM for the damages it has incurred and will incur, in an amount to be determined at trial.

### COUNT V:  BREACH OF FIDUCIARY DUTY OF CARE AND LOYALTY
### [As Against Lee]

140.    SLM repeats and realleges each and every allegation contained in paragraph 1 to 87 through above as if fully set forth herein.

141.    At all times material and relevant to this cause of action, until at least December 5, 2006 (which is the date SLM's Chapter 11 bankruptcy proceeding, filed with the U.S. Bankruptcy Court for the Central District of California [Case No. SV-01-11329-KL] [the "Bankruptcy Proceeding"], was dismissed), Lee was a director and officer of SLM.

142.    At all times material and relevant to this cause of action, until at least December 5, 2006, Lee owed a fiduciary duty to SLM, which is the highest standard of duty implied by law.

143.    At all times material and relevant to this cause of action, until at least December 5, 2006, Lee owed a duty to SLM to act in the best interests of SLM, subordinating his own personal interests to those of SLM.

144.    Upon information and belief, at no time prior to December 5, 2006 did Lee ever repudiate or otherwise purport to terminate his fiduciary relationship with SLM.

145.    Upon information and belief, at all times material and relevant to this cause of action through until at least December 5, 2006, SLM reasonably relied upon Lee's skill and reposed trust and confidence in Lee in his role as a fiduciary to SLM.

146.    While Lee was required to be acting as a director and officer of SLM, he intentionally failed to perform his duties as director and officer, so that the Property and Rights of SLM were mismanaged, wasted, and diverted to himself and to Marvel, and SLM's copyright and trademark interests were infringed upon and ignored.

147.    At all times material and relevant to this cause of action, Lee owed a duty (a) to truthfully, completely and accurately disclose and describe to the Bankruptcy Court in the Bankruptcy Proceeding, any and all potential assets of SLM that might be subject to administration by the Bankruptcy Court; (b) to provide fair and accurate representations as to the market value of any and all

potential assets of SLM that might be subject to administration by the Bankruptcy Court; (c) to correct any inaccuracies in any previous filings and/or disclosures immediately upon becoming aware of such inaccuracies; (d) to protect the assets of SLM for the benefit of the creditors and shareholders of SLM; and (e) to act with candor at all times when making submissions to the Bankruptcy Court, creditors and shareholders of SLM, the debtor-in-possession.

148.    Upon information and belief, while Lee was required to be acting as a director and officer of SLM, he intentionally failed to perform his duties as director and officer, so that at no time during the Bankruptcy Proceeding did Lee ever disclose to the Bankruptcy Court the fact that SLM had a contractual assignment to the Property and Rights pursuant to the Lee-SLM Agreement.

149.    Upon information and belief, during the Bankruptcy Proceeding, Lee failed to make adequate disclosures to the Bankruptcy Court or to potential bona fide third party purchasers in an effort to liquidate assets to satisfy creditors and legitimate offers for the purchase of the disclosed assets were intentionally ignored.

150.    Upon information and belief, throughout the entirety of the Bankruptcy Proceeding, Lee acted for his own personal financial gain and in disregard of the best interests of SLM, its creditors and its shareholders by, among other things, establishing new companies, such as QED Productions, LLC and POW! Entertainment, Inc., that he would own and manage in order to acquire assets (including certain of the Property and Rights) of SLM at the same

time that Lee represented to the Bankruptcy Court that he would not financially benefit.

     151. Upon information and belief, during the Bankruptcy Proceeding, without due authority or approval from the Bankruptcy Court, Lee purported to convert or otherwise divert assets of SLM to his own use and/or personal benefit by, among other things:

     (a)    effecting the filing, on or about May 18, 2005, of the application for registration of the service mark STAN LEE PRESENTS in the name of POW! Entertainment, LLC with the USPTO;

     (b)    effecting the filing, on or about July 11, 2006, of the application for registration of the character mark THE DRIFTER in the name of QED Productions, LLC with the USPTO;

     (c)    effecting the filing, on or about July 12, 2006, of the application for registration of the character mark ACCUSER in the name of QED Productions, LLC with the USPTO;

     (d)    effecting the filing, on or about July 31, 2006, of a purported assignment of SLM's copyrights in the Drifter, the Accuser and Stan's evil clone to QED Productions, LLC with the United States Copyright Office; and

     (e)    exploiting these and other copyrights and trademarks through to the date of the filing of the Amended Complaint.

152.    By reason of the foregoing, SLM has suffered great loss, the value of SLM's stock and dividends has suffered great loss, and its shareholders have been similarly damaged.

153.    Upon information and belief, Lee has also been unjustly enriched as the result of Lee's intentional failure to perform his duties as director and officer of SLM.

154.    By reason of the foregoing, Lee has been unjustly enriched at the expense of SLM.

155.    By reason of the foregoing, Lee has obtained and retained monies under such circumstances that in equity and good conscience he should not retain.

156.    By reason of the foregoing, SLM is entitled to a judgment against Lee, in an amount to be determined at trial, for the amounts by which (a) SLM has been damaged, and (b) Lee has been unjustly enriched.

**COUNT VI:  AIDING AND ABETTING AND/OR CONSPIRACY TO BREACH
FIDUCIARY DUTY OF CARE AND LOYALTY
[Against Lee, Marvel and Lieberman]**

157.    SLM repeats and realleges each and every allegation contained in paragraphs 1 through 87 and 140 through 156 above as if fully set forth herein.

158.    At all times material and relevant hereto, Marvel has been in direct competition with the business of SLM.

159.    Upon information and belief, while Lee was required to be acting in his fiduciary capacity as a director and officer of SLM, he entered into a

corrupt agreement with Marvel and Lieberman, as part of a plan and/or common scheme, to wrongfully cause the Property and Rights to be assigned to businesses in direct competition with SLM, infringed upon and otherwise exploited.

160.   Defendants did not have the right or legal authority to do so.

161.   Upon information and belief, while Lee was required to be acting in his fiduciary capacity as a director and officer of SLM, he conspired with Marvel and Lieberman, each of whom aided and abetted Lee and intentionally undertook overt acts in furtherance of and as part of a plan and/or common scheme to exploit SLM's Property and Rights for Lee's, Marvel's and Lieberman's financial benefit, all the while knowing that these other entities had no legal authority to be in possession of such Property and Rights, and that SLM, its creditors and shareholders would suffer great financial harm as a result.

162.   Upon information and belief, beginning on or about November 1998 and at various other times thereafter, Lee, Lieberman and Marvel (through Isaac Perlmutter) met, joined together, planned, and conspired to take the Property and Rights of SLM, and convey them to defendants, Marvel and other entities for the financial benefit of all defendants, and to the detriment of SLM, its shareholders and creditors.

163.   All of the defendants agreed or understood that the purpose of their meetings and agreements was as described in the preceding paragraph, understood that both their purpose and their methods of achieving this purpose were improper, fraudulent, unlawful and tortious, and would result in injury to

SLM, its shareholders and creditors, and agreed and understood that each would act in concert with the others to achieve this purpose.

164.    Upon information and belief, in furtherance of the conspiracy described herein, Lee caused entities to be formed and convinced and caused former principals of SLM to thereafter make false representations in written agreements.

165.    Upon information and belief, defendants have fraudulently transferred, concealed, and dissipated many of the Property and Rights, including copyrights and trademarks they received, and they continue to dissipate the Property and Rights.

166.    Defendants undertook the acts described herein for their own financial gain.

167.    Lee also engaged in the acts described herein while purportedly acting in his capacity as agent, fiduciary, officer and director of SLM.

168.    Marvel and Lieberman conspired with Lee to continue to market, distribute, produce and sell Marvel characters.

169.    Based upon the totality of his actions, Lee has breached his fiduciary duty as a director and officer of SLM, and he was induced, aided and abetted to so breach his fiduciary duty by virtue of the wrongful, knowing and intentional actions, participation and substantial assistance of Marvel and Lieberman.

170.    As a direct result of Lee's breach of his fiduciary duty to SLM and his conspiracy with Marvel and Lieberman, SLM has thereby suffered great

loss and damages, the value of SLM's stock and dividends has suffered great loss, and its shareholders have been similarly damaged.

171.    Upon information and belief, all defendants have also been unjustly enriched as the result of Lee's actions, including Lee's intentional failure to perform his duties as director and officer of SLM.

172.    By reason of the foregoing, all defendants have been unjustly enriched at the expense of SLM.

173.    By reason of the foregoing, all defendants have obtained and retained monies under such circumstances that in equity and good conscience they should not retain.

174.    By reason of the foregoing, SLM is entitled to a judgment against all defendants, in an amount to be determined at trial, for the amounts by which (a) SLM has been damaged, and (b) Lee, Marvel and Lieberman have been unjustly enriched.

### COUNT VII:  CONSTRUCTIVE TRUST
### [As Against All Defendants]

175.    SLM repeats and realleges each and every allegation contained in paragraph 1 through 174 above as if fully set forth herein.

176.    Based upon the foregoing, the defendants have knowingly and wrongfully used, marketed, licensed, merchandised, promoted, advertised and exploited the Property and Rights, of which SLM is the rightful and legal owner.

177.    At all times material and relevant hereto, the defendants have had actual and constructive notice Stan Lee's interest in his characters and

creations, and Lee's assignment to SLM of the Property and Rights pursuant to the Lee-SLM Agreement.

178.   All defendants have been unjustly enriched as the result of their actions.

179.   All defendants have been unjustly enriched as the result of Lee's intentional failure to perform his duties as director and officer of SLM.

180.   By reason of the foregoing, all defendants have been unjustly enriched at the expense of SLM.

181.   By reason of the foregoing, all defendants have obtained and retained monies under such circumstances that in equity and good conscience they should not retain.

182.   Equity and justice require that defendants be deemed to hold any and all income, proceeds and profits from the defendants' use, marketing, merchandising, promoting, advertising and exploitation of the Property and Rights in constructive trust for SLM.

183.   SLM seeks the imposition of a constructive trust over the entirety of the income, proceeds and profits from the defendants' use, marketing, merchandising, promoting, advertising and exploitation of the Property and Rights.

184.   With regard to those equitable aspects of this cause, SLM has no adequate remedy at law.

## COUNT VIII:  DEMAND FOR ACCOUNTING OF PROFITS
### [As Against All Defendants]

185.    SLM repeats and realleges each and every allegation contained in paragraphs 1 through 184 above as if fully set forth herein.

186.    This is an action in equity seeking a damages award against defendants for certain income, proceeds and profits, obtained by defendants by and through defendants' unilateral and unauthorized use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Properties and Rights.

187.    At all times material and relevant hereto, the defendants had no entitlement or right of any kind to the Property and Rights owned by SLM and the Properties and Rights assigned in the Lee-SLM Agreement.

188.    Contrary to SLM's exclusive ownership rights to same, the defendants have used, marketed, licensed, merchandised, promoted, advertised and otherwise exploited the Property and Rights for their own financial benefit, and without the participation, authority or consent of SLM.

189.    Contrary to SLM's ownership rights to same, the defendants have not paid to SLM the income, proceeds and profits from defendants' use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Property and Rights.

190.    The defendants have a duty to account to and pay to SLM the income, proceeds and profits derived from defendants' use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Properties and Rights.

191.   Equity and justice require that defendants account to SLM for any and all income, proceeds and profits from the defendants' use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Property and Rights.

192.   Equity and justice require that defendants account for and pay to SLM, and that this Court enter an award of damages in favor of SLM, an amount equal to any and all income, proceeds and profits derived from the defendants' use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Property and Rights.

193.   With regard to those equitable aspects of this cause, SLM has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, SLM requests judgment

On the First Cause of Action – For judgment declaring it the copyright owner of such characters as the Drifter, the Accuser and Stan's evil clone and for actual damages sustained by SLM and profits in excess of $750,000,000 derived from defendants and not less than the minimum statutory damages alllowable, and attorneys' fees and costs;

On the Second Cause of Action – For an amount to be determined by the Court, including prejudgment and post-judgment interest, and attorneys fees and costs;

On the Third Cause of Action – For an amount to be determined by the Court;

On the Fourth Cause of Action — For an amount to be determined by the Court;

On the Fifth Cause of Action — For an amount to be determined by the Court;

On the Sixth Cause of Action — For an amount to be determined by the Court;

On the Seventh Cause of Action — The Imposition of a Constructive Trust against all defendants;

On the Eighth Cause of Action — An Accounting of Profits;

And for such other legal and equitable relief that the court may deem just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

SLM, by and through its undersigned counsel, hereby demands a jury trial on any and all issues so triable.

Dated:  New York, New York
April 27, 2009

EATON & VAN WINKLE LLP

By: _____
        Martin Garbus

3 Park Avenue
New York, New York 10016
(212) 779-9910

Attorneys for
Jose Abadin, and Christopher
Belland, derivatively on behalf
of Stan Lee Media, Inc.

## VERIFICATION

Christopher Belland, pursuant to the provisions of 28 U.S.C. § 1746 declares and states as follows:

I am a shareholder of Stan Lee Media, Inc., and have brought the within action in my derivative capacity as such shareholder. I have read the foregoing Verified Amended Complaint, and know the contents thereof and the allegations are true to my own knowledge, except as to matters stated to be upon information and belief, which I believe to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at Key West, Florida on April 27, 2009.

Christopher Belland

## VERIFICATION

Jose Abadin, pursuant to the provisions of 28 U.S.C. § 1746 declares and
states as follows:

    I am a shareholder of Stan Lee Media, Inc., and have brought the within
action in my derivative capacity as such shareholder. I have read the foregoing
Verified Amended Complaint, and know the contents thereof and the allegations
are true to my own knowledge, except as to matters stated to be upon
information and belief, which I believe to be true.

    I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct, and that this declaration is
executed at [city, state] on April 27, 2009.
Beverly Hills, California

_____
Jose Abadin

46