**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-02663-WJM-KMT

STAN LEE MEDIA, INC.

    Plaintiff,

v.

THE WALT DISNEY COMPANY,

    Defendant.

---

**THE WALT DISNEY COMPANY'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

---

The Walt Disney Company ("TWDC") respectfully submits this reply memorandum of law in further support of its motion to dismiss Plaintiff's Amended Complaint (the "Motion").[1]

## I.  PLAINTIFF HAS FAILED TO ESTABLISH JURISDICTION OVER TWDC

TWDC's motion papers provided sworn testimony refuting the allegations of the Amended Complaint that purport to establish personal jurisdiction over TWDC. In the face of this showing, it was incumbent upon the Plaintiff to come forward with "*competent proof* of the supporting facts." *Rosenberg v. Deutsche Bank A.G.*, 2012 U.S. Dist. LEXIS 121766 at *5 (D. Colo. Aug. 28, 2012) (Martinez, J.) (quoting *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)) (emphasis added). Plaintiff cannot create a factual dispute about jurisdiction

---

[1] Plaintiff's "evidentiary objections" are entirely without merit. The Declaration of Marsha Reed was based on personal knowledge as well as knowledge obtained in her capacity as an officer of TWDC. *See* Declaration of Marsha L. Reed dated January 14, 2013 ("Reed Decl.") ¶ 1. Moreover, the Declaration of Randi W. Singer, which simply presents judicially noticeable documents to the Court, need not authenticate the documents or demonstrate personal knowledge of the underlying facts. *See Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 n.2 (10th Cir. 1984). Plaintiff's counsel so acknowledged by filing an affidavit attaching documents from an action in which Plaintiff claims it was not involved. Declaration of Robert S. Chapman in Support of Plaintiff's Opposition to TWDC's Motion to Dismiss ("Chapman Decl."). There is, accordingly, no basis for striking any portion of the declarations or exhibits submitted in support of the Motion.

simply by resting on the allegations of its own Amended Complaint; rather, it must submit actual proof, in the form of "affidavit or other written materials." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). Plaintiff has utterly failed to carry that burden.

Plaintiff's Opposition attempts to sidestep the problem by asserting that the Declaration of Marsha Reed TWDC did not "specifically deny" the Amended Complaint's allegation that "distribution of [*Marvel's*] *The Avengers* and the licensing of infringing merchandise for sale in Colorado was undertaken by defendant [TWDC] itself." Plaintiff's Opposition to TWDC's Motion ("Opp.") at 5. In fact, that declaration encompasses those very matters: "TWDC does not produce, market or distribute *any motion pictures* or other productions featuring any Marvel character or property in Colorado or elsewhere." Reed Decl. ¶ 9 (emphasis added). Ms. Reed also averred that "TWDC conducts no business activities other than those of a public holding company," negating the proposition that it licenses or distributes any merchandise or other products alleged to be infringing. *Id.* ¶ 2. To dispel any remaining doubt, and to address literally what the above-quoted averments attest to generally, Ms. Reed's reply declaration, submitted herewith, confirms that "TWDC does not own or license the intellectual property at issue in this action," that TWDC did not distribute the film *Marvel's The Avengers* in Colorado, and that "TWDC does not license, and has never licensed, such intellectual property for use in motion pictures, theatrical productions or print media in Colorado or elsewhere" and "does not license, and has never licensed this intellectual property for any merchandise." Reply Declaration of Marsha L. Reed ("Reed Reply Decl.") ¶¶ 2-3.[2]

---

[2] Plaintiff's authorities are inapposite, as in those cases it was not disputed that the defendant *itself* had engaged in the conduct alleged. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) (defendant distributed magazines in New Hampshire); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th

2

Plaintiff cannot overcome its failure of proof simply by citing its own domicile in this forum. Opp. at 6. The "mere fortuity" that Plaintiff is incorporated in Colorado does not confer personal jurisdiction over TWDC, particularly when the unchallenged evidence demonstrates it undertakes no actual activities in this forum. *See* Mot. at 7 n.10 (citing cases). None of Plaintiff's cited cases holds to the contrary. *See Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668 (9th Cir. 2012) (defendant committed intentional act aimed at forum); *Penguin Group (USA) Inc. v. Am. Buddha*, 640 F.3d 497 (2d Cir. 2011) (conduct was within long-arm statute because situs of injury was New York).

Additionally, Plaintiff's new contention that TWDC is subject to general jurisdiction in Colorado because three indirect subsidiaries identified for the first time in their Opposition[3] are registered to do business here also fails, based as it is on yet more unsubstantiated assertions, such as that "Disney dictates the policies and practices of the entire corporate conglomerate from its position at the top of the corporate pyramid" and "uses centralized departments to actively control the day-to-day operations of its subsidiaries' legal affairs, personnel decisions, and finances, including its subsidiaries in Colorado." Opp. at 7. These assertions, fashioned from general statements from TWDC's annual report and careers website wrenched from their contexts, are insufficient to demonstrate the degree of dominion and control required to pierce

---

Cir. 2011) (defendant operated interactive website with numerous contacts in California); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002) (defendant distributed albums in California).

[3] Ms. Reed's declaration explained that TWDC observes all formalities with respect to the subsidiaries that were readily identifiable from the Amended Complaint. Plaintiff belatedly identified three indirect subsidiaries registered to do business in Colorado, and then argued that because TWDC "does not deny" allegations that these subsidiaries are controlled by TWDC, somehow those facts are now "established for purposes of this motion." Opp. at 7. This position is untenable, for none of the three – Buena Vista Home Entertainment, Disney Worldwide Services, Inc. and Disney Online, Inc. – was named or even referenced in the Amended Complaint. Notwithstanding, the Reed Reply Declaration expressly refutes Plaintiff's jurisdictional allegations with respect to these subsidiaries. Reed Reply Decl. ¶¶ 4-6.

3

the multiple corporate veils between TWDC and its subsidiaries.  *See* Motion at 7-8 (collecting cases).  What is more, they are expressly refuted in Ms. Reed's declarations, which establish that TWDC "does not manage or direct the operations or day-to-day affairs" of any of its subsidiaries, and maintains separate records and bank accounts from each of them.  Reed Reply Decl. ¶¶ 3-6; *see also* Reed Decl. ¶¶ 7-8.  These averments as a matter of law would require Plaintiff to have introduced competent evidence that the "separation[s] of the . . . entities has not been maintained," and that "injustice would occur to third parties if the separate entity were recognized."  *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974).  No such showing has been – or could be – made.

Finally, it is clear that the exercise of jurisdiction over TWDC in a forum where it has *no* contacts would be unreasonable.  It simply is not the law that TWDC must submit to jurisdiction everywhere because it is alleged to be a "multi-billion dollar international media conglomerate."  Opp. at 6-7; *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.,* 488 F.3d 1282, 1293 (10th Cir. 2007) (affirming dismissal for lack of jurisdiction on burden grounds even where defendants were "large companies engaged in business on a worldwide basis").  This position has been soundly rejected in numerous previous litigations against TWDC, and should be rejected here again.  *See* Mot. at 6-8 (collecting cases).  The Court should give no weight to what Plaintiff's alleged countervailing interest in convenient relief, since it has shown by its prior conduct that it is capable of litigating the issues presented here in other jurisdictions.[4]

---

[4] No jurisdictional discovery is needed where Plaintiff has not shown a lack of such discovery would "result[] in actual and substantial prejudice" – particularly where the complaint has so many fatal infirmities that "there is a very low probability that the lack of discovery [will] affect[] the outcome."  *Grynberg v. Ivanhoe Energy, Inc.*, 2012 U.S. App. LEXIS 14254 at *45-47 (10th Cir. July 12, 2012) (citations omitted).

4

## II. THE AMENDED COMPLAINT FAILS TO CURE ANY OF THE FATAL DEFICIENCIES THAT REQUIRE DISMISSAL PURSUANT TO RULE 12(b)(6)

### A. Plaintiff's Copyright Claim Is Long Since Time-Barred

Nothing in Plaintiff's Opposition surmounts the clear time-bar that precludes its claim. Unlike many infringement cases where the ownership prong of the claim is not disputed, "where, as here, a plaintiff's copyright ownership claim is not conceded . . . , copyright ownership, and not infringement, is the gravamen of the plaintiff's claim to which the statute of limitations is applied." [5] *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) (where ownership is dispositive issue and time-barred, attendant infringement claims fail even if brought within three years of allegedly unauthorized act).[6]

The Amended Complaint and the Opposition both make clear that the fundamental premise of Plaintiff's infringement claim is that it owns the copyrights in certain pre-1998 Marvel characters based on an alleged assignment of rights from Stan Lee pursuant to the 1998 Agreement. *E.g.*, Am. Compl. ¶ 1 ("The true facts are that [Plaintiff] owns the copyrights to Stan Lee's creations."); Opp. at 3 ("The 1998 Agreement assigned all copyrights in Lee's comic

---

[5] Plaintiff argues that this rule does not apply here – and that the statute of limitations instead runs from the time one or more asserted infringing acts occurred – because certain of the cases establishing the rule arose in a co-ownership context. *See* Opp. at 9-11. This argument is of no moment. Nothing in the holdings of those cases suggests that those factual circumstances warrant a different or special rule from other fact settings, such as that presented here. Plaintiff points to no such authority. Indeed, to impute such a limitation would invite perverse results – enabling repeat harassing infringement cases to be brought against every claimed successor-in-interest to copyrights, notwithstanding the plaintiff's failure to have timely asserted its ownership claims against the predecessors.

[6] To the extent *Carrell v. Schubert Organization, Inc.*, 104 F. Supp. 2d 236 (S.D.N.Y. 2000), can be said to have held otherwise, a review of the applicable authority indicates it was an outlier when decided, and in light of the subsequent development of the law and recent Second Circuit holding in *Kwan*, it is likely no longer good law. The Second Circuit's decision in *Stone v. Williams*, 970 F.2d 1043 (2d Cir. 1992), also is of no support to Plaintiff, for it has consistently been held that *Stone* was decided on its own "highly idiosyncratic facts" and "does not insulate all civil actions under the copyright law from the general three-year statute of limitations." *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996).

5

book characters . . . ."); *id.* at 10 ("SLMI is the sole and exclusive owner of the copyrights, and has been since October 1998."). Given this foundational premise, and the fact that ownership of the subject copyrights in fact is contested, Plaintiff may proceed with its case only if it can show that it commenced this suit within three years of the date its ownership claims based on the 1998 Agreement first accrued. As already discussed, Motion at 12-14, Plaintiff is unable to do so.

As prior litigations to which Plaintiff has been party have established, Plaintiff was on notice as of 1998 of Marvel's claims of ownership in the same pre-1998 characters it contends it owns pursuant to the 1998 Agreement. *Abadin v. Marvel Entm't, Inc.*, 2010 WL 1257519, at *6 & n.5 (S.D.N.Y. Mar. 31, 2010); *see* Declaration of Randi W. Singer dated January 14, 2013 ("Singer Decl.") Ex. A. It was again on notice of contested ownership claims to those characters as of 2001, when Stan Lee terminated the 1998 Agreement and any purported assignment of rights resulting therefrom. *Id.*; Singer Decl. Ex. B. As a matter of law, Plaintiff should have asserted any copyright ownership claims it believed it had in the works claimed to be at issue in this case within three years from November 1998 (the date of Mr. Lee's employment agreement with Marvel) or, at the very latest, from January 30, 2001 (the date of Mr. Lee's termination letter).[7] Having failed to do so, the Copyright Act's statute of limitations bars Plaintiff's claims against a supposed successor-in-interest to an entity (Marvel) whose claims of copyright ownership in the identical works Plaintiff has been aware of for more than 14 years.

---

[7] Instead, although Plaintiff now claims to own the exclusive copyright ownership rights over Marvel characters worth many billions of dollars, it failed even to mention those supposed rights in public statements and SEC documents filed shortly after the 1998 Agreement was executed. *See* Stan Lee Media Inc. Form 10KSB for 12/31/99, *available at* http://www.secinfo.com/dsVsb.5Dg.htm#1stPage.

6

### B. This Latest in Plaintiff's History Of Repeat Litigations Fails To Survive A Motion To Dismiss Under The Doctrine Of Collateral Estoppel

Plaintiff mischaracterizes TWDC's position in arguing that its claim is somehow not barred by the doctrine of collateral estoppel. It is not that Plaintiff's "ownership of the copyrights at issue in this action was litigated in *Abadin I*" and other prior litigations (Opp. at 12); rather, the issue that Plaintiff seeks to litigate for the fourth time is whether it can timely *assert* ownership rights to the Marvel characters that are the subject of the Amended Complaint arising from the 1998 Agreement. The answer, decided three times previously, is that it cannot.

The relevant inquiry in collateral estoppel (as opposed to res judicata) is whether the previous litigation adjudicated an identical *issue*; the extent of identity of the underlying cause of action is irrelevant. *E.g.*, *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."); *Park Lake Res., LLC v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) ("Issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."). Notwithstanding that *Abadin I* and the other preceding litigations did not, strictly speaking, involve copyright infringement claims, they incontestably did involve Plaintiff's efforts to prove its legal theories based on establishing the fact of ownership in the identical intellectual property that is in issue here derived from precisely the same underlying 1998 Agreement. The amended complaint in *Abadin I* alleges:

- Plaintiff "is the assignee of Lee, pursuant to the [1998] Agreement, of any and all of Lee's creations and characters" and that Marvel's use thereof constituted a violation of the Lanham Act. Chapman Decl. Ex. 3 ¶¶ 106-121.

7

- Plaintiff obtained "certain property" through the assignment in the same 1998 Agreement at issue here, relating to, among other things, "various world famous characters created by Lee" that were incorporated into "'Marvel' movies ('X-Men,' 'Spider[-]Man 1, 2 and 3,' 'The Incredible Hulk,' 'Fantastic Four,' 'Iron Man,' and 'Daredevil')." *Id.* ¶¶ 24, 26-27; *see also id.* ¶¶ 47, 49, 51-52.

- "Most of Marvel's financial success derives from characters initially created by Lee that are the subject of this lawsuit." *Id.* ¶ 25.

- Marvel does not own the works because they "were not 'works for hire' by Lee for any person or entity." *Id.* ¶ 41.

The *Abadin I* amended complaint also contains a detailed list of the nearly 80 characters at issue, including Spider-Man, The Fantastic Four, X-Men, The Incredible Hulk and Iron Man.[8] *Id.* ¶ 43. As noted, Plaintiff's efforts to assert these rights were repeatedly and uniformly rejected as untimely and barred by one or more statutes of limitation and doctrines of laches and estoppel. *See* Mot. at 3-4, 10-12.

In light of this record, Plaintiff's current assertion that Plaintiff's claimed rights in these characters were not at issue in *Abadin I* or in any other previous litigation is remarkable.[9] To the contrary, this Court faces the very same issue as did each of the previous courts in which Plaintiff and its representatives have litigated: whether Plaintiff, or those acting on its behalf, can assert any rights to the Marvel characters arising out of the 1998 Agreement. The *Abadin I* court

---

[8] In *Lee v. Marvel*, SLMI sought to file an amended complaint with allegations about "some of the world's most popular and commercially successful characters and stories such as Spider-Man, The Incredible Hulk, Iron Man, X-Men and The Fantastic Four." Reply Declaration of Randi W. Singer, dated February 25, 2013 ("Singer Reply Decl.") Ex. A ¶ 1; *see also id.* ¶¶ 40-50, 59-62, 81-82, 145-47, 244, 246. Similarly, the consolidated complaint in the Central District of California alleged that the "1998 Assignment transferred to SLMI all intellectual property rights that Lee might have, 'now or in the future,' which includes . . . the following: (a) Lee's intellectual property rights in characters authored by Lee, such as Spider-Man, The Incredible Hulk, The X-Men, The Fantastic Four, Iron Man, Thor, Daredevil, and many others." *Id.* Ex. B ¶ 2; *see also id.* ¶¶ 24, 27, 63-65. Both courts held *Abadin I* had preclusive effect, which necessarily means both determined the issues in all three cases were identical.

[9] Indeed, the Amended Complaint itself includes allegations regarding the three previous litigations and concedes that *Abadin I* involved "an accounting for profits in connection with certain ownership rights involving the Characters." *See* Am. Compl. ¶¶ 27-35.

8

resolved that issue on the merits, and two separate courts found any subsequent claims arising from the same issue to be barred by the doctrine of res judicata. Plaintiff cannot resurrect its stale ownership claim by the device of suing TWDC in the place of Marvel, where such substitution of defendants does not alter the basis for Plaintiff's copyright ownership claims. Plaintiff does not dispute that all other collateral estoppel elements have been met. The Amended Complaint must therefore be dismissed.

### C. The Complaint Fails To State A Plausible Copyright Infringement Claim

In response to TWDC's demonstration that it failed to state a plausible copyright infringement claim, Plaintiff incorrectly contends that TWDC seeks to hold it to a heightened pleading standard. The law is clear that to give proper notice of its claim, Plaintiff must allege at least the works whose copyrights were supposedly infringed and the nature of the infringing conduct. *See Shell v. Am. Family Rights Ass'n*, 2012 WL 4476641 at *13 (D. Colo. Sept. 28, 2012) (requiring copyright plaintiff to "specify each and every act of infringement"); *see also Shepard's McGraw-Hill Inc. v. Legal Soft Corp.*, 769 F. Supp. 1161, 1166-67 (D. Colo. 1991); *Cole v. John Wiley & Sons, Inc.*, 2012 U.S. Dist. LEXIS 108612 at *36-37 (S.D.N.Y. Aug. 1, 2012) (rejecting "conclusory and vague allegations . . . as a substitute for allegations that specify the original works that are the subject of a copyright claim"). Plaintiff has failed to do so.

Since the time the initial complaint was filed in this action, Plaintiff has failed to specify the copyrights allegedly infringed;[10] attaching to the Amended Complaint a certificate of

---

[10] Plaintiff's cited allegations merely list certain comic book works as "among the best known comic book characters of all time," Am. Compl. ¶ 1, and contend that Lee assigned to Plaintiff's predecessor "the copyrights and all other rights in the comic book characters (the 'Characters') that he had previously created or would create in the future," *id.* ¶ 4; *see id.* ¶ 9 (alleging recordation of assignment of copyrights

9

recordation filed years after the 1998 Agreement that self-servingly names certain characters the rights to which supposedly were transferred to Plaintiff (but are not named in the agreement it claims effectuated the transfer) does not cure this deficiency.  Moreover, Plaintiff's vague averment that the infringing acts consist of "(a) producing and distributing motion pictures featuring the characters; (b) licensing and selling merchandise based on the characters; and (c) exploiting the characters in print media," Opp. at 15, is insufficient to sustain its pleading burden.  Nowhere does Plaintiff specify precisely which conduct forms the basis of its claim or identify in any way the various merchandising or print media uses it alleges infringed its rights.[11]  *See Shell*, 2012 WL 4476641 at *13 (plaintiff must allege "exactly how, when, and by whom . . . the alleged infringement occurred").

Having been on notice of the insufficiency of its allegations since at least the filing of TWDC's initial motion to dismiss in November 2012, *see* Docket No. 21, and having failed to remedy those deficiencies in its Amended Complaint, Plaintiff should not be given further leave to amend its claims.  *Shifrin v. Toll*, 2011 U.S. Dist. LEXIS 89140 at *42 (D. Colo. July 1, 2011) (denying leave to amend where "Plaintiff has been provided ample notice and opportunity to amend and cure the complaint, but has failed to do so").

## CONCLUSION

For the foregoing reasons, as well as those set forth in TWDC's moving papers, the Amended Complaint should be dismissed with prejudice and without leave to amend.

---

in "*among other things* . . . lists . . . Spider[-]Man, The Incredible Hulk, X-Men Fantastic Four, Iron Man, Daredevil, Silver Surfer [and] Dr. Strange").

[11] *See* Am. Compl. ¶ 19 (movies "*includ[e]* the 2012 blockbuster '[Marvel's] The Avengers'), ¶¶ 20-21 (referring, without more, to "infringing merchandise" and "print works based on 'Marvel-branded franchises'"); *id.* ¶ 37 (alleging exploitation "in other media and merchandising, *including, but not limited to*" Broadway productions, merchandise and print media).

DATED this 25th day of February, 2013.          Respectfully submitted,

/s/ James W. Quinn

James W. Quinn
R. Bruce Rich
Randi W. Singer
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
james.quinn@weil.com
bruce.rich@weil.com
randi.singer@weil.com

Frederick J. Baumann
Holly C. Ludwig
ROTHGERBER JOHNSON & LYONS LLP
One Tabor Center, Suite 3000
1200 17th Street
Denver, CO 80202-5855
Tel: (303) 623-9000
Fax: (303) 623-9222
fbaumann@rothgerber.com
hludwig@rothgerber.com

*Counsel for The Walt Disney Company*

# CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of February, 2013, I filed electronically the foregoing **THE WALT DISNEY COMPANY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12(b)(6)** with the Clerk of Court, using the CM/ECF system, which caused automatic electronic notification of such filing upon the following:

John V. McDermott
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202
Telephone: (303) 223-1100
E-mail: jmcdermott@bhfs.com

Robert S. Chapman
Jon-Jamison Hill
EISNER, KAHAN & GORRY
9601 Wilshire Boulevard, Suite 700
Beverly Hills, California 90212
Telephone: (310) 855-3200
Email: rchapman@eisnerlaw.com
        jhill@eisnerlaw.com


                                             */s/ Holly C. Ludwig*