# EXHIBIT B



1   ROBERT E. KOHN, SBN 200373
    Email: rkohn@enensteinlaw.com
2   ENENSTEIN & RIBAKOFF, APC
    233 Wilshire Blvd., Suite 900
3   Santa Monica, CA 90401
    Phone: (310) 899-2070 / Fax: (310) 496-1930
4
    LUKE A. McGRATH, pro hac vice
5   Email: lmcgrath@dunnington.com
    DUNNINGTON, BARTHOLOW & MILLER, LLP
6   1359 Broadway, Sixth Floor
    New York, NY 10018
7   Phone: (212) 682-8811 / Fax: (212) 661-7769

8   Counsel for Plaintiff STAN LEE MEDIA, INC.,
    a Colorado corporation
9

10                  UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12  STAN LEE MEDIA, INC., a Colorado       CASE NO. 07-CV-0225-SVW (SSx)
    corporation,                           CASE NO. 07-CV-4438-SVW (SSx)
13                                          CASE NO. 09-CV-2340-SVW (PJWx)
                  Plaintiff,
14                                          Assigned to Hon. Stephen V. Wilson
          v.                                Courtroom 6
15

16  STAN LEE, an individual, QED           CONSOLIDATED COMPLAINT OF
    PRODUCTIONS, LLC, a Delaware           STAN LEE MEDIA, INC. FOR:
17  limited liability company, and POW!
    ENTERTAINMENT, INC., a                 (1) RECOVERY OF PERSONAL
18  Delaware corporation,                  PROPERTY;
                                           (2) DECLARATORY RELIEF;
19                Defendants.              (3) BREACH OF CONTRACT;
                                           (4) BREACH OF FIDUCIARY DUTY;
20                                          (5) BREACH OF FIDUCIARY DUTY;
                                           (6) ACCOUNTING;
21                                          (7) CONVERSION;
                                           (8) TRADEMARK INFRINGEMENT;
22                                          AND
                                            (9) RESTITUTION OF UNJUST
23                                          ENRICHMENT.

24                                          [DEMAND FOR JURY TRIAL]

25

26

27

28

---

CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.

Case No. 1:12-cv-02663-WJM-KMT   Document 46-4   filed 02/25/13   USDC Colorado
pg 3 of 39
Case 2:07-cv-00225-SVW-SS   Document #52  Filed 02/14/11   Page 2 of 38   Page ID #:2236

1    Plaintiff STAN LEE MEDIA, INC., a corporation organized under the laws

2    of the State of Colorado, hereby brings this action against Defendants STAN LEE,

3    an individual;  QED PRODUCTIONS, LLC, a Delaware limited liability

4    company;  and POW! ENTERTAINMENT, INC., a Delaware corporation.

5    Plaintiff, by its undersigned counsel, alleges as follows:

6

7                            **JURISDICTION**

8         1.    This Court has federal question jurisdiction under 28 U.S.C. §§ 1331

9    and 1338 over (a) the copyright ownership claims alleged in this action under the

10   Copyright Act (17 U.S.C. §§ 101 et seq.), (b) the trademark claims alleged in this

11   action under the Lanham Act (15 U.S.C. § 1121), and (c) the cause of action for

12   declaratory relief (under 28 U.S.C. §§ 2201-2202) insofar as it seeks relief that

13   would dispose of federal law causes of action or claims previously asserted by

14   Defendants themselves in this consolidated action.  This Court has jurisdiction

15   under 28 U.S.C. § 1332 due to the diversity of citizenship of the parties and an

16   amount in controversy exceeding $75,000.  This Court has supplemental

17   jurisdiction of related claims under 28 U.S.C. § 1367.

18

19                       **THE NATURE OF THIS ACTION**

20        2.    This is an action, inter alia, to declare the rights of Plaintiff Stan Lee

21   Media, Inc. ("SLMI") under a written assignment, recorded with the U.S.

22   Copyright Office, pursuant to which Defendant Stan Lee ("Lee") assigned all of

23   his present and future intellectual property rights to SLMI as of October 15, 1998

24   (the "1998 Assignment").  The 1998 Assignment transferred to SLMI all

25   intellectual property rights that Lee might have, "now or in the future," which

26   includes (but is not limited to) the following:

27        (a) Lee's intellectual property rights in characters authored by Lee, such as

28        Spider-Man, The Incredible Hulk, The X-Men, The Fantastic Four, Iron

---
1

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Man, Thor, Daredevil, and many other characters (collectively, the "Lee Characters");

(b) Lee's intellectual property rights in works registered with the U.S. Copyright Office, many of which are derived from and/or use the Lee Characters;

(c) Lee's intellectual property rights in trademarks, including marks registered with the U.S. Patent and Trademark Office, many of which are derived from and/or include the Lee Characters;

(d) literary rights in works by Lee that are not protected by copyright, and

(e) the right of publicity for, and the commercial use of, Lee's name, image, likeness and brand.

3.    After the 1998 Assignment, Lee and others, including Defendants POW! Entertainment, Inc. and QED Productions, LLC, knowing of SLMI's intellectual property ownership rights and without authority from SLMI, colluded to copy, license, transfer, exploit and collect monies from the exploitation of the Lee Characters and the other rights assigned to SLMI in the 1998 Assignment. By this action, SLMI seeks a declaration of ownership, an accounting, damages and other relief.

## **PARTIES**

4.    Plaintiff STAN LEE MEDIA, INC. ("SLMI") is an administratively-dissolved Colorado corporation (formerly known as Boulder Capital Opportunities, Inc.). Following a series of merger and share exchange transactions in 1999, SLMI is the successor in interest of its wholly owned subsidiary, Stan Lee Media, Inc., a Delaware corporation ("SLMI-DE"), which was the successor in interest to Stan Lee Entertainment, Inc., a Delaware corporation ("SLE"). As used herein, "SLMI" means all of those entities, as applicable. SLMI currently has no office or place of business in California or Delaware.

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
pg 5 of 39
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 4 of 38    Page ID #:2238

5.    Defendant STAN LEE ("Lee") is an individual and a citizen and
resident of the State of California.

6.    Defendant QED PRODUCTIONS, LLC ("QED") is a limited liability
company organized and existing under the laws of the State of Delaware.  QED
has at all relevant times conducted business and had a principal office within the
Central District of California.  QED is not a citizen of Colorado.

7.    Upon information and belief, at all relevant times, QED was the alter-
ego of Lee in that Lee and QED commingled funds and other assets, failed to
segregate funds between them and diverted corporate funds or assets to other uses
without authorization;  Lee treated the assets of QED as his own;  Lee diverted
assets from QED;  Lee disregarded legal formalities, including QED's requirement
to maintain minutes or adequate corporate/accounting records;  Lee dominated and
controlled QED;  Lee failed to adequately capitalize QED and used QED as a mere
shell, instrumentality or conduit for his own purposes and in order to procure labor,
services or merchandise for Lee's benefit;  and Lee further failed to maintain arm's
length relationships between and among himself, QED and POW!
ENTERTAINMENT, INC.

8.    Defendant POW! ENTERTAINMENT, INC. ("POW!"), is a
corporation organized and existing under the laws of the State of Delaware.  POW!
has at all relevant times conducted business and has had a principal office located
within the Central District of California.  POW! is not a citizen of Colorado.

9.    Upon information and belief, at all relevant times, POW! was the
alter-ego of Lee in that Lee and POW! commingled funds and other assets, failed
to segregate funds between them and diverted corporate funds or assets to other
uses without authorization;  Lee treated the assets of POW! as his own;  Lee
diverted assets from POW!;  Lee disregarded legal formalities, including POW!'s
requirement to maintain minutes or adequate corporate/accounting records;  Lee
dominated and controlled POW!;  Lee failed to adequately capitalize POW! and

CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.

Case No. 1:12-cv-02663-WJM-KMT   Document 46-4   filed 02/25/13   USDC Colorado
page 6 of 39
Case 2:07-cv-00225-SVW-SS   Document #52   Filed 02/14/11   Page 5 of 38   Page ID #:2239

1  used POW! as a mere shell, instrumentality or conduit for his own purposes and in

2  order to procure labor, services or merchandise for Lee's benefit; and Lee further

3  failed to maintain arm's length relationships between and among himself, QED

4  and POW!.

5

6  **VENUE**

7        10.    Venue for this action is proper in this District pursuant to 28 U.S.C. §

8  1391(b) because a substantial part of the events alleged herein occurred within this

9  District, and the Defendants are conducting business, have principal office

10  locations and/or are residents within this District.

11

12  **FACTS COMMON TO ALL CAUSES OF ACTION**

13  **A.    Lee's October 1998 Assignment of Intellectual Property to SLMI**

14        11.    Lee and Peter Paul, with the assistance of attorney Arthur Lieberman,

15  founded SLE on or about October 13, 1998. By virtue of the transactions

16  described above, SLMI is the ultimate transferee of assets from and successor in

17  interest to SLE.

18        12.    Lee founded SLE to exploit his copyrights to characters created

19  before, during and after his tenure at non-party Marvel Entertainment, LLC and its

20  predecessors in interest and affiliates (collectively, "Marvel"). In or about July

21  1998, during Marvel's bankruptcy proceedings, Marvel rejected and repudiated its

22  contractual relationships with Lee, who that that point, was over 70 years old and

23  had not created a new character in years. Marvel's actions freed Lee from any

24  obligation not to compete with Marvel or to refrain from use his characters and

25  intellectual property rights for his own benefit.

26        13.    In fact, upon information and belief, on or about late summer 1998,

27  Lee obtained a legal opinion from the law firm of Irell & Manella LLP that opined

28  that Lee owned the intellectual property, copyrights and any and all other rights to

4

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
Case 2:07-cv-00225-SVW-SS    Document #52    Filed 02/14/11    Page 6 of 38    Page ID #:2240
pg 7 of 39

1    Lee's characters that Marvel had previously been publishing, under the agreements

2    with Lee, that Marvel had rejected and repudiated in the Marvel bankruptcy.

3        14.    When he founded SLE, Lee took a controlling stake in the company

4    in exchange for a grant of his intellectual property and a lifetime commitment to let

5    SLE use his name, image and promotional prowess.  In short, Stan Lee created his

6    own company and was in full control.

7        15.    On or about October 20, 1998, Lee executed an "Employment

8    Agreement/Rights Assignment" with SLE, now SLMI (the "October 1998

9    Agreement").  A copy of the October 1998 Agreement is attached hereto as Exhibit

10   "1" to this Complaint.

11       16.    The October 1998 Agreement includes, at paragraph 4, an assignment,

12   discussed above as the "1998 Assignment," in which Lee assigned to SLMI's

13   predecessor all of his rights to and ownership of his intellectual property.  In

14   pertinent part, the 1998 Assignment states:

15               "a)    I [Lee] assign, convey and grant to the Company

16               forever, all right, title and interest I may have or control,

17               now or in the future, in the following:    Any and all

18               ideas, names, titles, characters, symbols, logos, designs,

19               likenesses, visual representations, artwork, stories, plots,

20               scripts, episodes, literary property, and the conceptual

21               universe related thereto, including my name and likeness

22               (the 'Property') which will or have been in whole or part

23               disclosed in writing to, published, merchandised,

24               advertised, and/or licensed by Company, its affiliates and

25               successors in interest and licensees (which by agreement

26               inures to Company's benefit) or any of them and any

27               copyrights, trademarks, statutory rights, common law,

28               goodwill, moral rights and any other rights whatsoever in

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT   Document 46-4   filed 02/25/13   USDC Colorado
Case 2:07-cv-00225-SVW-SS   Document 152   Filed 02/14/11   Page 7 of 38   Page ID #:2241
pg 8 of 39

the Property in any and all media and/or fields, including all rights to renewal or extensions of copyright and make applications or institute suits therefore (the 'Rights')."

17.     In Paragraph 1 of the October 1998 Agreement, Lee promised to be SLE's Chairman and Chief Creative Officer for the remaining duration of his life.

18.     On or about October 22, 1999, Lee ratified the October 1998 Agreement and the 1998 Assignment. A copy of that ratification (the "October 1999 Ratification") is attached hereto as Exhibit "2" to this Complaint.

19.     In exchange for Lee's ownership interest in SLE (which in turned owned the Property and Rights conveyed by Lee in the 1998 Assignment), SLMI granted Lee more than 3.5 million shares of SLMI's stock. As of February 2000, Lee's shares had a market value of over $100 million.

20.     Based on the October 1998 Agreement and the October 1999 Ratification, which were contained in public filings with the Securities and Exchange Commission (authorized by Lee as SLMI's Chairman), under Lee's management, SLMI raised funds from investors by selling shares. For instance, on early 2000, SLMI had a market capitalization in excess of $300,000,000 on NASDAQ.

21.     Lee continues to own and retain all of the SLMI shares that were issued to him and has never tendered them back to SLMI.

22.     On October 15, 1998, when the October 1998 Agreement and the 1998 Assignment became effective, Lee was not under contract with any other person or entity with regard to any of his intellectual property rights and had full authority and power to convey to SLMI all of his intellectual property, including but not limited to rights in the Lee Characters.

23.     By virtue of the October 1999 Ratification, in October 1999, Lee represented that he had not conveyed his rights to any third party on October 15,

6

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

1  1998, when the October 1998 Agreement and the 1998 Assignment became

2  effective.

3       24.     SLMI is, thus, currently the rightful owner and holder of all the

4  Property and the Rights as defined and conveyed by Lee to SLE in the 1998

5  Assignment.

6       25.     Since October 15, 1998, the 1998 Assignment remains in full force

7  and effect.

8       26.     On November 28, 2006, SLMI shareholders recorded the October

9  1998 Agreement on behalf of SLMI with the United States Copyright Office.

10  **B.    Lee Assigned SLMI All of His Intellectual Property and Rights.**

11       27.     The Property and the Rights transferred in the 1998 Assignment (at

12  paragraph 4 of the October 1998 Agreement) include, but are not limited to, all

13  copyrights and trademarks associated with characters and comic books authored by

14  Lee, including such characters as Spider-Man, Iron Man, Daredevil, the X-Men,

15  the Incredible Hulk, the Fantastic Four and Thor.

16       28.     In addition, commencing October 15, 1998, Lee was employed and

17  worked at SLMI.  During this time, Lee created intellectual properties and

18  negotiated  deals, contracts, partnerships, licensing agreements and/or other

19  agreements, which, by the express terms of the October 1998 Agreement, inured to

20  the benefit and ownership of SLMI by virtue of the 1998 Assignment.

21       29.     At all times material hereto, Defendants had actual and/or

22  constructive knowledge of the continuing existence and validity of the October

23  1998 Agreement and the 1998 Assignment contained therein.

24       30.     At all times material hereto SLMI, as well as its predecessors in

25  interest, did all things required of them pursuant to the October 1998 Agreement

26  and/or the 1998 Assignment in order to retain exclusive ownership of the Property

27  and the Rights.

28

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
Case 2:07-cv-00225-SVW-SS    Document 52    Filed 02/14/11    Page 9 of 38    Page ID #:2243
pg 10 of 39

**C.    Lee Purports to Assign Property to Marvel**

31.    On information and belief, in November 1998 or some time thereafter, Lee entered into a second-in-time agreement with Marvel in which Lee purported to assign Marvel various intellectual property rights to Marvel.  Such a grant was inconsistent with Lee's earlier grant of the Property and the Rights to SLMI and, thus, invalid as to those Rights and Property.

32.    Lee owed contractual and fiduciary duties to SLMI, as SLMI's Chairman, an officer, and the Company's controlling shareholder.  Lee breached those duties by executing his November 1998 agreement with Marvel and pursuing a course of conduct that diverted the Property and Rights from SLMI.  In the agreement with Marvel, Lee created an irreconcilable conflict of interest by promising that any competition between Lee and Marvel would "not violate any of the intellectual property or other rights" that Lee was purporting to assign.  Thus, Lee had sold the rights to the Lee Characters to two purchasers, without informing SLMI and without accounting for the proceeds.   Lee also agreed to reduce his compensation from Marvel if he "or any company wholly owned or wholly controlled" by Lee received any revenues from "competing business activities" after November 1, 2002.

33.    Since Lee controlled SLMI, Lee had, in effect, accepted payment in exchange for a promise to divert or obstruct SLMI's exercise of valuable rights in the exploitation of the Lee Characters.

34.    In exchange for signing the purported November 1998 agreement with Marvel, Lee received substantial revenue and other valuable consideration and failed to account to SLMI for it.

35.    By entering the second-in-time agreement with Marvel in November 1998, Lee breached Paragraph 4(c) of the October 1998 Agreement.  That paragraph provides that Lee "will never assert or assist others in asserting on my

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
Case 2:07-cv-00225-SVW-SS    Document 152  Page 11 of 39  filed 02/14/11    Page 10 of 38    Page ID
#:2244

1  behalf or in claiming rights through me, any claim to ownership of the Rights in

2  the Property."

3  **D.    Lee Places SLMI In Bankruptcy.**

4        36.    On January 24, 2001, Lee authorized payment of $50,000 from

5  SLMI's treasury to engage bankruptcy counsel.

6        37.    On January 30, 2001, SLMI's attorney Arthur M. Lieberman

7  ("Lieberman") sent a letter to SLMI's chief executive officer on behalf of Lee.

8  The letter stated that Lee "will continue to perform services to the company to

9  assure the equitable distribution of assets to creditors and stockholders alike *and to*

10 *that end waive as much of his claim to rights in this Property as is reasonable*

11 *under the circumstances as the facts continue to emerge*." (emphasis added).

12       38.    In the same letter, Lieberman also wrote that Lee "considers his

13 agreement dated October 15th, 1998 with the company to be terminated for

14 Material Breaches," and asserted that SLMI breached the agreement based upon

15 conduct that Lee controlled as SLMI's Chairman, officer, Chair of the SLMI

16 Compensation Committee, and controlling shareholder (such as SLMI failing to

17 pay certain insurance).

18       39.    Lieberman's letter did not purport on its face to be a termination of

19 SLMI's ownership of the Property and the Rights, but, instead, contained waiver

20 language.

21       40.    At the time of his January 30, 2001 letter, Lieberman was purporting

22 to act as counsel for both Lee and SLMI.

23       41.    On February 16, 2001, SLMI filed a short-form bankruptcy petition

24 with the United States Bankruptcy Court for the Central District of California.

25       42.    On March 16, 2001, SLMI filed its asset schedules and statements of

26 financial affairs in SLMI's Chapter 11 bankruptcy case. Section 10 to SLMI's

27 financial statements purported to disclose all transfers of SLMI property not in the

28 ordinary course of SLMI's business during the one-year period preceding the

9

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 11 of 38    Page ID
#:2245

1   February 16, 2001 bankruptcy filing.  It made no mention of Lieberman's January

2   30, 2001 letter.  Under the "intellectual property" section of SLMI's asset

3   schedules, the words "unknown" or "none" were listed.

4         43.    In April 2001, the Bankruptcy Court issued a "Bar Date Order"

5   requiring creditors to file proofs of claim by a deadline of June 8, 2001 or be

6   "forever barred" from asserting claims against SLMI.  Lee did not file proofs of

7   claim by this deadline (or at any other time during SLMI's bankruptcy) asserting

8   that he had rescinded the 1998 Assignment of the Property and the Rights to SLMI

9   or claiming that SLMI did not own the Property and the Rights that Lee previously

10   assigned to the Company.

11         44.    Lee's course of conduct during SLMI's bankruptcy demonstrates that

12   Lee considered the 1998 Assignment to be in effect and not "terminated."  For

13   example, Lee sought permission from the bankruptcy Court in SLMI's bankruptcy

14   to sell some of SLMI's intellectual property assets to a Lee-controlled company

15   called "SLC, LLC," ostensibly to repay SLMI's creditors.  Lee's actions are

16   inconsistent with the position that he terminated the 1998 Assignment.  Lee's

17   actions are, instead, consistent with the representation in Lieberman's January 30,

18   2001 letter, that Lee would waive claims in the Property and the Rights.

19   **E.**    **During the Bankruptcy, Defendants Exploit and Divert the SLMI's**

20           **Property and Rights Without Authorization.**

21         45.    While SLMI was in bankruptcy, Lee, with the aid of QED, POW! and

22   others, took SLMI's property, diverted corporate opportunities, and wasted

23   corporate assets.

24         46.    Lee never concluded the proposed sale to SLC, LLC.  Instead, acting

25   with Junko Kobayashi (SLMI's Controller), Lieberman (SLMI's lawyer), and Gill

26   Champion (SLMI's Chief Operating Officer), Lee simply took SLMI's intellectual

27   property and rights to the extent he could, in violation of bankruptcy law, and gave

28

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
page 13 of 39
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 12 of 38    Page ID
#:2246

1    them to QED and POW! while continuing to receive payoffs from Marvel for

2    Property belonging to SLMI.

3         47.    On January 20, 2009, the Court in these actions found the QED and

4    POW! asset transfers void and in violation of the automatic stay in bankruptcy.

5    The Court found further that QED and POW! did not present any evidence that

6    they had paid anything to SLMI's creditors despite exploiting SLMI's intellectual

7    property for nearly a decade.

8         48.    On information and belief, Lee was SLMI's Chairman of the Board,

9    SLMI's Chief Creative Officer, and SLMI's largest shareholder and controlled

10   SLMI during its bankruptcy.

11        49.    During SLMI's bankruptcy, Lee and others acting under his control –

12   including Kobayashi, Lieberman and Champion – were working together at QED

13   and POW!, which Lee also controlled.  During that time, however, Lee,

14   Kobayashi, Lieberman and Champion each also owed fiduciary duties to SLMI.

15        50.    POW! has asserted in SEC filings and on its website that it is

16   managed and operated by Lee in tandem with Lieberman, Champion and

17   Kobayashi.

18   **F.    Lee Further Causes SLMI to Lose Control of Its Property.**

19        51.    In addition to the above, Defendants undertook to assign copyrights,

20   record copyrights and take other steps purporting to assume ownership of SLMI's

21   property without authorization:

22        a. On or about July 31, 2006, purportedly as an agent of SLMI, Kobayashi

23            executed an "Assignment of Copyright" in favor of QED (hereinafter

24            referred to as "Assignment of Copyright").  This Assignment of

25            Copyright was also signed by Champion as agent for QED.

26        b. The Assignment of Copyright was utilized by QED to record copyrights

27            on *The Drifter, The Accuser* and *Stan's Evil Clone a/k/a Evil Clone*.  The

28

11

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 13 of 38    Page ID
#:2247

1    purported assignment was never authorized by the bankruptcy court or by

2    SLMI. QED did not disclose those facts with any of its recordations.

3    c.  Upon information and belief, the Defendants recorded copyrights that

4    were part of the Property or the Rights, or otherwise improperly

5    transferred such assets to other parties, during SLMI's bankruptcy.

6    d.  On July 11, 2006, during SLMI's bankruptcy, QED applied for

7    registration of a trademark on *The Drifter*. Its application was granted.

8    *See* Trademark Reg. No. 3552108. Meanwhile, on January 13, 2003,

9    SLMI's own pending application to register that same mark had been

10    abandoned. *See* Trademark Serial No. 75912559. Upon information

11    and belief, Lee caused or allowed the abandonment SLMI's application

12    for registration of that mark.

13    e.  On May 18, 2005, POW! applied for registration of "STAN LEE

14    PRESENTS" as a trademark, and registration was granted. *See*

15    Trademark Reg. No. 3357243. Meanwhile, on June 29, 2009, an

16    application by SLMI to register the same mark was abandoned. *See*

17    Trademark Serial No. 75727811. SLMI's counsel of record in

18    connection with its application was Richard A. Stambul, Esq. Upon

19    information and belief, Stambul acted on direction from Lee in causing

20    or allowing the abandonment of SLMI's application to register that mark.

21    f.  On November 29, 2002, while the bankruptcy case was pending, Arthur

22    Lieberman caused SLMI to abandon its trademark application for *The*

23    *Accuser*. *See* Trademark Serial No. 75912558. Lieberman was counsel

24    of record for SLMI. Upon information and belief, Lieberman acted at the

25    direction and under the control of the Defendants when he caused or

26    allowed SLMI's applications to be abandoned.

27

28

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
pg 15 of 39
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 14 of 38    Page ID
#:2248

g.  Upon information and belief, the Defendants attempted to register other trademarks that are part of the Property and the Rights during SLMI's bankruptcy case.

h.  Defendants have also operated websites using trademarks (such as the Stan Lee signature and name) and publicity rights (such as Lee's name, image and likeness) that are part of the Property and the Rights.  See, for example, www.powentertainment.com .  During the same time, Defendants also misappropriated literary rights that are part of the Property and the Rights by developing and publishing original works authored by Lee (such as *The Drifter* and *The Accuser*).

## G.    The SLMI Bankruptcy Case Is Dismissed.

52.    On or about November 7, 2006, counsel of record for SLMI filed a "Notice of Non-Opposition to Dismissal of Chapter 11 Bankruptcy Cases," which included a statement that there were "no unencumbered assets over and above the post-petition secured debt, which may be monetized for the benefit of creditors" and requested permission to destroy all property, files and records of plaintiff. Counsel further asserted that SLMI had no assets with which to pay for maintenance of the files and records, and that such files and records were of no further use to SLMI.

53.    On or about November 14, 2006, the Bankruptcy Court issued an Order granting the United States Trustee's motion to dismiss the SLMI bankruptcy without authorizing the destruction of SLMI's books, records and files.  The dismissal order was entered by the clerk of court on December 6, 2006.  Upon information and belief, Lee and Lieberman retained possession, custody or control of SLMI's books, records and files thereafter.  Despite demand by SLMI, Defendants have failed and refused to restore such books, records and files to SLMI or to assist in locating them.

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
Case 2:07-cv-00225-SVW-SS    Document 162    Filed 02/14/11    Page 15 of 38    Page ID
#:2249

**H.    Defendants Continue to Exploit the Property and the Rights of SLMI
After the Bankruptcy Case.**

54.    From 2006 (when the bankruptcy case was dismissed) until 2010 (when the Colorado courts approved the election of a new SLMI board of directors), SLMI had no legally authorized representative in a capacity to assert or defend its legal rights

55.    For example:

a. SLMI had no one to speak on its behalf on May 2, 2008.  On that date, POW! applied to register the trademark "EXCELSIOR!".  *See* Trademark Serial No. 77464861.  The "EXCELSIOR!" mark is the "sign-off" that SLMI and the Defendants have used above his signature. Thereafter, in their Second Amended Complaint of August 25, 2008 (Document No. 79 in Case No. 07-CV-0225-SVW (SSx)), the Defendants sued SLMI and others for alleged infringement of the "STAN LEE MEDIA," "STAN LEE," the Lee signature, and "EXCELSIOR!" marks as well as trademarks for *Stan Lee Presents*, *The Accuser* and *The Drifter*.

b. While the bankruptcy case was still pending, the U.S. Patent and Trademark Office had granted SLMI registration of the trademark "STAN LEE MEDIA" on May 29, 2001.  *See* Trademark Reg. No. 2455135.  On March 8, 2008, after the dismissal of the bankruptcy case, that trademark registration was cancelled.  At the time of that cancellation, SLMI did not have anyone to speak on its behalf because it was going through a procedure in the Colorado courts to elect a board of directors.

c. On December 27, 2010, POW! applied to register "THE STAN LEE TRADITION" as a trademark.  *See* Trademark Serial No. 85205801.

14

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
pg 17 of 39
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 16 of 38    Page ID
#:2250

1       d.  Upon information and belief, the Defendants also have attempted to

2          register trademarks on other of SLMI assets.  For example, on January

3          17, 2011, an entity called The Stan Lee Foundation applied to register its

4          name as well as a stylized mark including Lee's signature.  *See*

5          Trademark Serial Nos. 85219089 and 85219097.  Upon information and

6          belief, these applications were made at the direction and with the consent

7          of Lee.

8       e.  On January 24, 2011, POW! applied on its own behalf to register the

9          trademark "STAN LEE."  *See* Trademark Serial No. 85224945.

10      56.    Upon information and belief, the Defendants also attempted to seek

11  copyrights on other SLMI assets that are part of the Property and the Rights that

12  Lee had conveyed in the 1998 Assignment.

### FIRST CAUSE OF ACTION

### (For Recovery of Personal Property As Against All Defendants)

16      57.    Plaintiff repeats and realleges each and every allegation contained in

17  paragraphs one (1) through fifty-six (56) above as if fully set forth herein.

18      58.    In or about July 2010, and on subsequent dates, counsel for SLMI and

19  its independent, court-authorized board have demanded that Defendants and

20  Lieberman turn over to SLMI any and all of SLMI's books, records, files and other

21  documents under their possession, custody or control.  Lieberman acted as counsel

22  for SLMI before and during SLMI's bankruptcy.  Commencing not later than

23  January 2007 and continuing to date, Lieberman has been associated with and, on

24  information and belief, has directed Lee's counsel in various legal proceedings in

25  this action, in Colorado, and in New York.  Commencing in November 2001 and

26  continuing to date, Lieberman has held an ownership interest in, and has acted in

27  management of, Defendants POW! and QED.  SLMI is informed and believes (and

28

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
Case 2:07-cv-00225-SVW-SS    Document 152 Filed 02/14/11    Page 17 of 38    Page ID
#:2251
page 18 of 39

1    thereon alleges) that Defendants, as well as Lieberman, have possession, custody

2    and control over SLMI's books, records, files and other documents.

3        59.    Defendants have failed and refused to turn over any such books,

4    records, files and other documents to SLMI.

5        60.    SLMI is entitled to an order directing Defendants to turn over and

6    deliver to SLMI all of SLMI's books, records, files and other documents under

7    Defendants' possession, custody and control.

8

9    **SECOND CAUSE OF ACTION**

10    **(As Against All Defendants For Declaratory Relief As To Ownership)**

11        61.    Plaintiff repeats and realleges each and every allegation contained in

12    paragraphs one (1) through sixty (60) above as if fully set forth herein.

13        62.    In January 2007, Defendants commenced an action in this Court (07

14    Civ. 225) seeking, inter alia, a determination of intellectual property ownership

15    and whether SLMI's 1998 Assignment remains valid or had been terminated by

16    Lee shortly before SLMI's bankruptcy.

17        63.    The 1998 Assignment is a valid and enforceable assignment of Lee's

18    copyright interests to SLMI within the meaning of Sections 204(a) and 205(d) of

19    the Copyright Act, 17 U.S.C. §§ 204(a), 205(d).

20        64.    The 1998 Assignment is a valid and enforceable assignment of Lee's

21    trademark interests to SLMI within the meaning of Section 10(a)(1) of the Lanham

22    Act, 15 U.S.C. § 1060(a)(1) and at common law.

23        65.    The 1998 Assignment is a valid and enforceable assignment of Lee's

24    literary rights to SLMI within the meaning of Section 982 of the California Civil

25    Code and at common law.

26        66.    The 1998 Assignment is a valid and enforceable assignment to SLMI

27    of Lee's common law rights of publicity in the use of his name, image and

28    likeness.

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 18 of 38    Page ID
#:2252
pg 19 of 39

1    67.    The October 1998 Agreement (which contains the 1998 Assignment)

2    includes a severability clause in Paragraph 6.  It states that if any provision or part

3    of the agreement is invalid, the advantages conferred by any other provision of the

4    agreement would survive.

5    68.    The October 1998 Agreement and the 1998 Assignment contained

6    therein is not void or voidable at Lee's option or for any other reason.

7    69.    The Defendants have asserted an actual, present, adverse and

8    antagonistic interest in SLMI's Property and Rights, and they are currently

9    exploiting the Property and the Rights.  The value of those assets substantially

10    exceeds the $75,000 jurisdictional amount.

11    70.    Failure to resolve the parties' dispute by declaring that the Lee

12    Characters belong to SLMI will impair SLMI's copyrights, literary rights,

13    trademarks and rights of publicity, will impair SLMI's rights to license its Property

14    and Rights and/or receive royalties therefrom, and may cause damage or

15    uncertainty to third parties.

16    71.    To resolve the actual controversy, Plaintiff seeks a declaration and

17    judgment under 28 U.S.C. §§ 2201-2202 that SLMI acquired and retains all of

18    Lee's past, present and future Property and Rights conveyed by the 1998

19    Assignment.

20

21    **THIRD CAUSE OF ACTION**

22    **(As Against Lee for Breach of Contract)**

23    72.    Plaintiff repeats and realleges each and every allegation contained in

24    paragraphs one (1) through seventy-one (71) above as if fully set forth herein.

25    73.    Pursuant to the terms of the 1998 Assignment, SLMI is entitled to all

26    rights appurtenant to the Property and the Rights that Lee assigned to SLMI,

27    including, but not limited to, possession, ownership and all revenues, profits and

28    payments realized therefrom.

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
page 20 of 39
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 19 of 38    Page ID
#:2253

74.     Lee has breached his contractual obligations to SLMI by entering into
a contract with Marvel that purports to assign some of SLMI's Property and Rights
to Marvel.

75.     The October 1998 Agreement expressly provides in Paragraph 2 that,
with the exception of the 10-15 hours of services per week provided by Lee to
Marvel, all other payments, revenues, profits and proceeds realized as a result of
Lee's services and/or creations – either for SLMI or for any other entity – are the
property and inure to the benefit of SLMI.  Lee has breached his contractual
obligations to SLMI by misappropriating such revenues, profits, payments and
income.

76.     Lee has breached his contractual obligations to SLMI by working for
other companies (such as QED and POW!) instead of working for SLMI or
accounting for the benefits inuring to SLMI as agreed.

77.     Lee has breached his contractual obligations to SLMI by asserting that
the Lieberman letter of January 30, 2001 effectively terminated the 1998
Assignment.

78.     As a result of Lee's breaches of the October 1998 Agreement, SLMI
has suffered damages substantially in excess of the $75,000 jurisdictional amount,
including but not limited to consequential damages.

79.     Plaintiff is entitled to an award of prejudgment and post judgment
interest on all damages awarded by this Court.


## FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty As Against Lee Only)

80.     Plaintiff repeats and realleges each and every allegation contained in
paragraphs one (1) through seventy-nine (79) above as if fully set forth herein.

81.     At all times material to this cause of action, Lee was a director and
officer of SLMI or its predecessors in interest.

18

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 20 of 38    Page ID
#:2254
page 21 of 39

82.    At all times material to this cause of action, Lee owed a fiduciary duty to SLMI, which is the highest standard of duty implied by law.

83.    By signing and subsequently accepting payoffs from the purported November 1998 agreement with Marvel, Lee violated his fiduciary duties of loyalty and care to SLMI and its predecessors.  In honoring that agreement, Lee exercised control over SLMI by not allowing SLMI to compete against Marvel in the use of the assets that Lee had purported to assign to Marvel.  In exchange, Lee derived substantial revenues and other benefits from Marvel that SLMI did not receive.

84.    As a direct result of each of the foregoing breaches of fiduciary duties to SLMI, plaintiff has suffered great loss, substantially in excess of the $75,000 jurisdictional amount.

85.    The foregoing acts were fraudulent, malicious and oppressive, and were done in conscious disregard of SLMI's rights, such that an award of punitive or exemplary damages is warranted.

### FIFTH CAUSE OF ACTION

### (Breach of Fiduciary Duty As Against All Defendants)

86.    Plaintiff repeats and realleges each and every allegation contained in paragraphs one (1) through eighty-five (85) above as if fully set forth herein.

87.    Plaintiff brings this cause of action against Lee individually for his breaches of fiduciary duty to SLMI, and against QED and POW! who aided and abetted breaches of fiduciary duty by Lee, Gill Champion, Arthur Lieberman and Junko Kobayashi.

88.    At all times material to this cause of action, Lee, Champion, Lieberman and Kobayashi owed to Plaintiff fiduciary duties, the highest standard of duty implied by law.  Lee and Champion were officers of SLMI, and Lee was its Chairman.  Lieberman was SLMI's attorney.  Kobayashi was SLMI's agent in

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
page 22 of 39
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 21 of 38    Page ID
#:2255

1  signing the Assignment of Copyright, as well as its Controller.  During the

2  bankruptcy case, Kobayashi was SLMI's sole authorized agent to make decisions

3  on its behalf.

4      89.    At all times material to this cause of action, the Defendants QED and

5  POW! have been substantially owned or controlled by Lee.  QED and POW!

6  knowingly profited from  breaches of fiduciary duty owed to SLMI by Lee,

7  Champion, Lieberman and Kobayashi, and  received substantial benefits as a

8  result.  The participation of QED and POW! was necessary for those breaches of

9  duty to be accomplished.

10      90.    Lee participated in, organized and/or knowingly allowed Lieberman

11  and others, including but not limited to Kobayashi and Champion, to cause SLMI's

12  Property and Rights to be diverted to QED and POW!.

13      91.    As a direct result of each of the foregoing breaches of fiduciary duties

14  to SLMI, plaintiff has suffered great loss, substantially in excess of the $75,000

15  jurisdictional amount.

16      92.    The foregoing acts were fraudulent, malicious and oppressive, and

17  were done in conscious disregard of SLMI's rights, such that an award of punitive

18  or exemplary damages is warranted.

19

20  ### SIXTH CAUSE OF ACTION
21  ### (For An Accounting As Against All Defendants)

22      93.    Plaintiff repeats and realleges each and every allegation contained in

23  paragraphs one (1) through ninety-two (92) above as if fully set forth herein.

24      94.    Upon information and belief, the Defendants have each has received

25  monies from the exploitation of the assigned Property and Rights following

26  October 15, 1998.

27      95.    Lee's contractual obligations and fiduciary obligations to SLMI give

28  rise to a duty to account for any property or funds received or diverted from SLMI.

20

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
pg 23 of 39
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 22 of 38    Page ID
#:2256

1    96.    In part because Lee has left SLMI without its books or records and

2    has exploited SLMI's rights and properties without providing information to SLMI

3    regarding the revenues derived therefrom, it is difficult for SLMI to calculate the

4    amounts owed SLMI.  Nevertheless, those amounts substantially exceed the

5    $75,000 jurisdictional sum.

6    97.    Plaintiff seeks an accounting against each Defendant of all property

7    and funds belonging to SLMI, from October 15, 1998 to the present.

8    98.    SLMI is entitled to prejudgment and postjudgment interest as allowed

9    by law.

10

11    **SEVENTH CAUSE OF ACTION**

12    **(As Against All Defendants For Conversion)**

13    99.    Plaintiff repeats and realleges each and every allegation contained in

14    paragraphs one (1) through ninety-eight (98) above as if fully set forth herein.

15    100.    Upon information and belief, each of the Defendants has received

16    monies from the exploitation of intellectual property, rights and characters created

17    by Lee and the use of Lee's name and image following Lee's transfer of such

18    rights and property on October 15, 1998 to SLMI knowing that such intellectual

19    property, rights and characters and the monies, benefits and funds that flowed

20    therefrom belonged to SLMI.

21    101.    Lee had contractual obligations and fiduciary obligations to SLMI,

22    and QED and POW!'s knew of these obligations.

23    102.    Lee, QED and POW! have each converted to their own use and

24    benefit, a sum of money from the exploitation of the Property and Rights following

25    Lee's transfer of such rights and property to SLMI on October 15, 1998.

26    103.    The monies converted by Lee, QED and POW! are each capable of

27    identification in a sum to be specified by an accounting.  Each sum substantially

28    exceeds the $75,000 jurisdictional amount.

21

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
pg 24 of 39
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 23 of 38    Page ID
#:2257

104.   By receiving those monies that they converted to their own use, without accounting therefor to SLMI, Defendants thereby directly interfered with SLMI's ownership and dominion over those monies.

105.   As a result of the foregoing acts of conversion, SLMI has been damaged in an amount to be proven, with interest from the time of each act of conversion, and a fair compensation for the time and money properly expended in pursuit of the monies.

106.   The foregoing acts of conversion were fraudulent, malicious and oppressive, and were done in conscious disregard of SLMI's rights, such that an award of punitive or exemplary damages is warranted.

## EIGHTH CAUSE OF ACTION

### (As Against All Defendants for Trademark Infringement)

107.   Plaintiff repeats and realleges each and every allegation contained in paragraphs one (1) through one hundred six (106) above as if fully set forth herein.

108.   Plaintiff is the assignee of trademarks pursuant to the 1998 Assignment.  None of the Defendants have any right or permission to use or license those trademarks.

109.   Plaintiff is protected by section 43(a) of the Lanham Act as assignee of Lee.

110.   Defendants have and continue to use and license trademarks that are part of the Property and the Rights.

111.   Pursuant to 15 U.S.C. § 1117, plaintiff is entitled to receive a judgment equal to three times the amount of Defendants' profits or to recover the amount of plaintiff's actual damages, whichever is greater, plus costs of suit, prejudgment and post judgment interest on all amounts awarded, and reasonable attorney's fees.

22

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
pg 25 of 39
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 24 of 38    Page ID
#:2258

112.   A monetary award, alone, is not adequate to compensate plaintiff with regard to this cause of action.  Plaintiff, therefore, also seeks a preliminary and permanent injunction under 15 U.S.C. § 1125(c) and other applicable law prohibiting defendants from continuing to wrongfully violate plaintiff's rights as set forth herein.

## NINTH CAUSE OF ACTION

### (For Restitution of Unjust Enrichment As Against All Defendants)

113.   Plaintiff repeats and realleges each and every allegation contained in paragraphs one (1) through one hundred twelve (112) above as if fully set forth herein.

114.   As a result of the foregoing events, each of the Defendants has been enriched unjustly in an amount substantially in excess of the $75,000 jurisdictional sum.

115.   SLMI should justly be awarded restitution of the Defendants' unjust enrichment in an amount to be proven.

116.   SLMI is entitled to prejudgment and postjudgment interest as allowed by law.

117.   The conduct of each of the Defendants in deriving their unjust enrichment was willful, and was done fraudulently, maliciously and oppressively, in conscious disregard of SLMI's rights.  An award of punitive damages is therefore warranted.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands:

1.       As to the First Cause of Action, a judgment directing each of the Defendants to restore SLMI's possession of its books, records and files that are within their possession, custody or control, plus costs of suit as allowed by law.

23

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

2.      As to the Second Cause of Action, a declaration and judgment against all of the Defendants that SLMI acquired and retains all of Lee's past, present and future Property and Rights conveyed by the 1998 Assignment, plus costs of suit as allowed by law.

3.      As to the Third Cause of Action, a judgment against Lee for damages in an amount to be proven, with interest thereon; imposition of a constructive trust upon the proceeds of Lee's activities that the October 1998 Agreement provides are SLMI's property, and disgorgement thereof to SLMI; and costs of suit as allowed by law

4.      As to Fourth Cause of Action, a judgment against Lee for damages in an amount to be proven, with interest thereon; imposition of a constructive trust upon the proceeds of Lee's breach of fiduciary duty and disgorgement thereof to SLMI; punitive or exemplary damages; and costs of suit as allowed by law.

5.      As to the Fifth Cause of Action, a judgment against each of the Defendants for damages in an amount to be proven, with interest thereon; imposition of a constructive trust upon the proceeds of the breaches of fiduciary duty and disgorgement thereof to SLMI; punitive or exemplary damages; and costs of suit as allowed by law.

6.      As to the Sixth Cause of Action, an accounting against each Defendant of all property and funds belonging to SLMI, from October 15, 1998 to the present, and costs of suit as allowed by law.

7.      As to the Seventh Cause of Action, a judgment against each Defendant, jointly and severally, for damages for the conversion of identified monies, with interest from the time of each act of conversion, and a fair compensation for the time and money properly expended in pursuit of the monies; and costs of suit as allowed by law.

8.      As to the Eighth Cause of Action, a judgment in an amount equal to three times the amount of Defendants' profits or three times the amount of SLMI's

24
**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT   Document 46-4   filed 02/25/13   USDC Colorado
Case 2:07-cv-00225-SVW-SS   Document 250   Filed 02/14/11   Page 26 of 38   Page ID
#:2260

1   actual damages, whichever is greater; interest thereon as allowed by law; a

2   preliminary and permanent injunction prohibiting Defendants from continuing to

3   infringe SLMI's trademarks; reasonable attorney's fees; and other costs of suit as

4   allowed by law.

5       9.      As to the Ninth Cause of Action, an award of restitution in favor of

6   SLMI against each of the Defendants in the amount of their unjust enrichment,

7   with interest thereon; punitive or exemplary damages; and costs of suit as allowed

8   by law.

9

10  Dated: February 14, 2011         **ENENSTEIN & RIBAKOFF, APC**

11

12                                   By:/s/ Robert E. Kohn
                                         Robert E. Kohn
13                                       Counsel for Plaintiff STAN LEE MEDIA,
                                         INC., a Colorado corporation
14

15  Dated: February 14, 2011         **DUNNINGTON, BARTHOLOW & MILLER,
                                     LLP**
16

17                                   By:/s/ Luke A. McGrath
                                         Luke A. McGrath
18                                       Counsel for Plaintiff STAN LEE MEDIA,
                                         INC., a Colorado corporation
19

20

21

22

23

24

25

26

27

28

25
**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT   Document 46-4   filed 02/25/13   USDC Colorado
Case 2:07-cv-00225-SVW-SS   Document 262   filed 02/14/11   Page 27 of 38   Page ID
pg 28 of 39
#:2261

1                   **DEMAND FOR JURY TRIAL**

2        Plaintiff Stan Lee Media, Inc., by and through its undersigned counsel,

3 hereby demands a jury trial on any and all issues so triable pursuant to the Federal

4 Rules of Civil Procedure, Rule 38(b) and Local Rule 38-1.

5

6

7   Dated: February 14, 2011      **ENENSTEIN & RIBAKOFF, APC**

8                    By:/s/ Robert E. Kohn

9                       Robert E. Kohn
                      Counsel for Plaintiff STAN LEE MEDIA,

10                       INC., a Colorado corporation

11

12

13   Dated: February 14, 2011      **DUNNINGTON, BARTHOLOW & MILLER,
LLP**

14

15                    By:/s/ Luke A. McGrath

16                       Luke A. McGrath
                      Counsel for Plaintiff STAN LEE MEDIA,

17                       INC., a Colorado corporation

18

19

20

21

22

23

24

25

26

27

28

**CONSOLIDATED COMPLAINT OF STAN LEE MEDIA, INC.**

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
pg 29 of 39
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 28 of 38    Page ID
#:2262

# EXHIBIT "1"

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 29 of 38    Page ID
pg 30 of 39
#:2263

Stan Lee Entertainment Inc.
15821 Ventura Blvd., Suite 675
Encino, CA 91436

October 15, 1998

Mr. Stan Lee
9143 Oriole Way
Los Angeles, CA 90068

Re: Employment Agreement/Rights Assignment

Dear Stan:

Confirming our discussions, this letter, when accepted and agreed by you,
shall constitute an agreement between you and Stan Lee Entertainment Inc.
(the "Company") relating to the terms of your employment with the Company
as set forth below:

1.     Stan Lee will serve as Chairman and Chief Creative Officer of
       Company, based in Los Angeles, for a term commencing as of the date
       hereof and terminating on the death of Stan Lee.

2.     Stan Lee's services shall be exclusive with the exception of those
       services provided under a lifetime agreement with Marvel Enterprises,
       Inc., which shall require no more than an average of 10 - 15 hours per
       week on its behalf. All other services performed and intellectual
       property created for the Company, or for any other entity, which
       entity shall be approved in writing by the Company, shall inure to the
       benefit of the Company to the entire extent your participation
       provides. Your services to Company shall include, but not be limited to,
       the following:

       (a)     Serve, and be listed in all directories and publications, as
               Chairman, Publisher and Chief Creative Officer of the Company,
               including attending corporate meetings, developing and

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 30 of 38    Page ID
#:2264

pg 31 of 39

Page 2. Employment Agreement/ Stan Lee

        supervising development and production of intellectual property in any and all media, directing and guiding the creative staff or staffs of the Company, all subsidiaries and affiliates as reasonably requested by the company.

(b)    Act as Executive Producer or Co-Executive Producer for all media productions and receive customary fees accordingly;

(c)    Apply your good faith, best efforts to enhance the brand and good will of the company, support and stimulate strategic alliances, joint ventures, sponsors, production partners and all direct and ancillary business of the company.

(d)    Serve as spokesman for the company to all media and assemblies as reasonably requested by the company.

(e)    Take all actions and contribute all creative talents within your reasonable capability, pursuant to your good faith determination of your schedule, as may reasonably be required to advance the interests of the company.

3.    As compensation to you for all rights and services contributed by you, to the Company hereunder, notwithstanding any disability, the Company agrees to provide the following compensation for your life:

a)    Base Salary – You shall receive a base salary of $250,000 (Two Hundred Fifty Thousand Dollars) per annum payable in equal monthly installments commencing February 1, 1999, payable to you or any company you so designate in lieu of making payments to you individually.

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
page 32 of 39
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 31 of 38    Page ID
#:2265

Page 3. Employment Agreement/ Stan Lee

b)   Bonuses – You shall receive bonuses on those projects you
     personally initiate and/or accomplish with approved entities
     from your participation as assigned to the company. You shall
     also receive ten per cent of all net profits after taxes reported
     by the Company on its Federal Tax Return. The Company will
     compute, account and pay to you your participation due, if any,
     on account of said profits, for the annual period ending each
     January 31 during your life, on an annual basis within a
     reasonable time after the end of each such period.

c)   Stock Options – The Company agrees to issue to you, in
     accordance with the Company's Stock Option Plan, as and when
     it may be adopted, the highest number of options offered to
     Company executives.

d)   Expenses/Fringe Benefits – You are to receive prompt
     reimbursement for all ordinary and necessary business
     expenses incurred by you in connection with your activities on
     behalf of the Company upon presentation of appropriate
     documentation, and you shall be permitted your customary style
     of business travel, which shall be first class with sedan
     limousine and stay in deluxe hotels.

e)   Insurance – The company shall no later than December 31, 1998,
     secure a term life insurance policy in the minimum principal sum
     of two million dollars, providing your designated heir as co-
     beneficiary with the company on the event of your death.

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 32 of 38    Page ID
#:2266

*Page 4. Employment Agreement/ Stan Lee*

4.    In express consideration for the performance of the foregoing obligations of the Company, you agree as follows:

a)    I assign, convey and grant to the Company forever, all right, title and interest I may have or control, now or in the future, in the following:    Any and all ideas, names, titles, characters, symbols, logos, designs, likenesses, visual representations, artwork, stories, plots, scripts, episodes, literary property, and the conceptual universe related thereto, including my name and likeness (the "Property") which will or have been in whole or part disclosed in writing to, published, merchandised, advertised, and/or licensed by Company, its affiliates and successors in interest and licensees (which by agreement inures to Company's benefit) or any of them and any copyrights, trademarks, statutory rights, common law, goodwill, moral rights and any other rights whatsoever in the Property in any and all media and/or fields, including all rights to renewal or extensions of copyright and make applications or institute suits therefor (the "Rights").

b)    Subject to a material breach of this agreement, I hereby agree to execute upon request from Company any documents it deems reasonably necessary to effect the purposes of this agreement,

c)    Subject to a material breach of this agreement, I will never file with the U.S. Copyright or Patent and Trademark Office or any governmental or public agency, and will never assert or assist others in asserting on my behalf or in claiming rights through me, any claim to ownership of the Rights in the Property, or in making any objection to Company's complete and unrestricted right to use and exploit said Property or Rights in any form, manner or medium Company may desire.

Case No. 1:12-cv-02663-WJM-KMT     Document 46-4     filed 02/25/13     USDC Colorado
pg 34 of 39
Case 2:07-cv-00225-SVW-SS     Document 152     Filed 02/14/11     Page 33 of 38     Page ID
#:2267

Page 5. Employment Agreement / Stan Lee

5.  This Agreement, including the assignment set forth herein, shall be binding upon the parties hereto, their affiliates and subsidiaries, legal representatives, successors and predecessors in interest, heirs and assigns.

6.  The invalidity of any provision or part hereof or obligation hereunder, or the contravention thereby of any law, rule or regulation of any State, the Federal Government or any agency, shall not relieve any party from its obligation under, nor deprive any party of advantages of any other provision of this Agreement.

7.  This Agreement will constitute the entire understanding between the parties in connection with Stan Lee's relationship with the Company from the date hereof and may not be amended or modified except by a writing signed by the party charged. This agreement shall be governed by and construed under the laws of the State of California.

Signed at Los Angeles, California this 21st day of October, 1998.

Stan Lee Entertainment Inc.

By: _____
President

_____
Stan Lee

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
pg 35 of 39
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 34 of 38    Page ID
#:2268

# EXHIBIT "2"

Case No. 1:12-cv-02663-WJM-KMT   Document 46-4   filed 02/25/13   USDC Colorado
pg 36 of 39
Case 2:07-cv-00225-SVW-SS   Document 152   Filed 02/14/11   Page 35 of 38   Page ID
#:2269

813670f0e3fb45f094a64ef497699189

-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 E7kHSD7BEhkdW28jXyPUki/tKFvuCi2mDDE1ilADKJGdHRwwonKN5q2mGUHkXhfU
 908/PA6QIKp5DoHt9EJyvA==

<SEC-DOCUMENT>0000950148-00-000447.txt : 20000321
<SEC-HEADER>0000950148-00-000447.hdr.sgml : 20000321
ACCESSION NUMBER:                      0000950148-00-000447
CONFORMED SUBMISSION TYPE:             10KSB
PUBLIC DOCUMENT COUNT:                 62
CONFORMED PERIOD OF REPORT:            19991231
FILED AS OF DATE:                      20000320

FILER:

        COMPANY DATA:
                COMPANY CONFORMED NAME:          STAN LEE MEDIA INC
                CENTRAL INDEX KEY:               0001015663
                STANDARD INDUSTRIAL CLASSIFICATION:  BLANK CHECKS [6770]
                IRS NUMBER:                      841341980
                STATE OF INCORPORATION:          CO
                FISCAL YEAR END:                 1231

        FILING VALUES:
                FORM TYPE:            10KSB
                SEC ACT:
                SEC FILE NUMBER:      000-28530
                FILM NUMBER:          574005

        BUSINESS ADDRESS:
                STREET 1:             15821 VENTURA BOULEVARD
                STREET 2:             SUITE 675
                CITY:                 ENCINO
                STATE:                CA
                ZIP:                  91436
                BUSINESS PHONE:       8184611757

        FORMER COMPANY:
                FORMER CONFORMED NAME:  BOULDER CAPITAL OPPORTUNITIES INC F/A
                DATE OF NAME CHANGE:    19960726

        FORMER COMPANY:
                FORMER CONFORMED NAME:  BOULDER CAPITAL OPPORTUNITIES INC
                DATE OF NAME CHANGE:    19960620
</SEC-HEADER>
<DOCUMENT>
<TYPE>10KSB
<SEQUENCE>1
<DESCRIPTION>FORM 10-KSB
<TEXT>

<PAGE>    1

                   SECURITIES AND EXCHANGE COMMISSION
                        WASHINGTON, D.C. 20549

                             FORM 10-KSB

                               Page 1

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 36 of 38    Page ID
#:2270

813670f0e3fb45f094a64ef497699189

[X] ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE
SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 1999

[ ] TRANSITION REPORT UNDER SECTION 13 OR 15(d) OF THE
SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ to _____

Commission file number 0-28530

STAN LEE MEDIA, INC.
(Name of small business issuer in its charter)

COLORADO                                                    84-1341980
(State or other jurisdiction of                          (I.R.s. Employer
incorporation or organization)                        Identification No.)

15821 VENTURA BOULEVARD, SUITE 675, ENCINO, CALIFORNIA, 91436
(Address of principal executive offices) (Zip Code)

Issuer's telephone number: (818) 461-1757

Securities registered under Section 12(b) of the Exchange Act:
NONE

Securities registered under Section 12(g) of the Exchange Act:
COMMON STOCK, NO PAR VALUE
(Title of Class)

    Check whether the issuer (1) filed all reports required to be filed by
Section 13 or 15(d) of the Exchange Act during the past 12 months (or for such
shorter period that the registrant was required to file such reports) and
(2) has been subject to such filing requirements for the past 90 days.
Yes   X    No
     _____     _____

    Check if disclosure of delinquent filers in response to Item 405 of
Regulation S-B is not contained in this form, and no disclosure will be
contained, to the best of registrant's knowledge, in definitive proxy or
information statements incorporated by reference in Part III of this Form 10-KSB
or any amendment to this Form 10-KSB. [ ]

    The issuer's revenues for its most recent fiscal year were $30,605.

    The aggregate market value of the voting and non-voting common equity
held by non-affiliates, based upon the average bid and asked prices of the
issuer's common stock on March 6, 2000 was $88,404,941. Shares of common stock
held by each officer and director and by each person who owns 5% or more of the
outstanding common stock have been excluded in that such persons may be deemed
to be affiliates. This determination of affiliate status is not necessarily a
conclusive determination for other purposes.

    The number of shares outstanding of the issuer's common stock, as of
March 6, 2000, was 11,856,362.

<PAGE>   2

STAN LEE MEDIA, INC.

FORM 10-KSB
Page 2

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
pg 36 of 3
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 37 of 38    Page ID
#:2271

813670f0e3fb45f094a64ef497699189

Stan Lee Entertainment, Inc.


By: /s/  STEPHEN M. GORDON
    ------------------------------------
      President


/s/  STAN LEE
- ------------------------------------
Stan Lee




                        Page 3 of 3
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-10.42
<SEQUENCE>48
<DESCRIPTION>MATERIAL CONTRACTS
<TEXT>

<PAGE>   1

                                                    EXHIBIT 10.42

                        STAN LEE
                     9143 Oriole Way
                  Los Angeles, CA 90068
                  As of October 8, 1999

Board of Directors of
Stan Lee Media, Inc.
15821 Ventura Boulevard, Suite 675
Encino, CA   91436

            Re:   Amendment to Employment Agreement/Rights Agreement

Ladies and Gentlemen:

            Reference is made to that certain Employment Agreement/Rights
Agreement dated as of October 15, 1998 (the "Agreement"), with Stan Lee Media,
Inc., as successor-in-interest to Stan Lee Entertainment, Inc. (the "Company").

            I have been represented by financial advisors and independent
counsel of my own choice throughout all negotiations which have preceded the
execution of this letter agreement, and have executed this letter agreement with
the consent and upon the advice of such independent advisors, or have knowingly,
voluntarily and willingly waived the right to such independent advisors. I
represent and warrant to the Company that no person, or any agent or attorney of
any person, has made any promise, representation or warranty whatsoever, express
or implied, not contained in this letter agreement concerning the subject matter
hereof to induce the execution of this letter agreement and acknowledge
execution of this letter agreement was not in reliance upon any promise,
representation or warranty not contained in this letter agreement. I hereby
relinquish all right, title and interest to receive ten percent (10%) of all net
profits after taxes reported by the Company on its Federal Tax Return as
provided for in Section 3(b) of the Agreement. Except as otherwise amended
hereby, the Agreement shall remain in full force and effect.
                        Page 392

Case No. 1:12-cv-02663-WJM-KMT    Document 46-4    filed 02/25/13    USDC Colorado
pg 39 of 39
Case 2:07-cv-00225-SVW-SS    Document 152    Filed 02/14/11    Page 38 of 38    Page ID
#:2272

813670f0e3fb45f094a64ef497699189

                    If you have any questions regarding the foregoing, please feel
free to contact the undersigned.

                                        EXCELSIOR!

                                        /s/ Stan Lee
                                        STAN LEE

ACCEPTED AND APPROVED:
Stan Lee Media, Inc.

By:  /s/ Gill Champion
     -----------------------------
          Gill Champion,
          Chief Operating Officer
Dated:  October 22, 1999.
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-10.43
<SEQUENCE>49
<DESCRIPTION>MATERIAL CONTRACTS
<TEXT>

<PAGE>   1

                                                        Exhibit 10.43

                                        CONSULTING AGREEMENT

          AGREEMENT dated as of October 5, 1999, between STAN LEE
     MEDIA, INC., a Colorado corporation ("Company"), and PARAVERSAL,
     INC. ("Consultant").

          Company currently is engaged in the business of deploying the
global brand, intellectual property, development capabilities and goodwill of
comic book publisher Stan Lee to the Internet, as well as other new media and
traditional media platforms, and the commercial exploitation of such content
through e-commerce, product and merchandise licensing and sales, online
publishing, gaming, distance learning, financial services, sponsorships,
co-branding, advertising, product placement and endorsements. Consultant is
experienced in structuring corporate partnering relationships and strategic
alliances, and coordinating public relations efforts, through services rendered
by Peter F. Paul (being hereinafter sometimes referred to, collectively, as
"Consultant"), who is a co-founder of Company.

          Company desires to retain the experience, skills, abilities,
background and knowledge of the Consultant, and the Consultant is willing to
accept such engagement, in each case, for the purposes and on the terms and
conditions described in this Agreement.

          Accordingly, the Company and the Consultant hereby agree as
follows:

I.      TERM

          The term of the Consultant's engagement under this Agreement
shall be for a period of seven (7) years, commencing as of October 1, 1999,
unless earlier terminated as provided in Article IV hereof; and thereafter, this
Agreement shall be renewed for two (2) additional, successive three (3) year
periods unless either party gives notice of its desire not to renew this
Agreement to the other party not more than 180 days and not less than 60 days
prior to the expiration of the initial or the then current renewal term, as the
case may be (the "Consulting Period").
                              Page 393