IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02663-WJM-KMT

STAN LEE MEDIA, INC.

    Plaintiff,

v.

THE WALT DISNEY COMPANY,

    Defendant.

## DECLARATION OF MARK W. WILLIAMS IN SUPPORT OF THE WALT DISNEY COMPANY'S EMERGENCY MOTION FOR PROTECTIVE ORDER

I, Mark W. Williams, declare under penalty of perjury as follows:

1. I am a member of Sherman & Howard L.L.C. and am admitted to practice in the State of Colorado and before this Court. Together with the law firms of Ganfer & Shore, LLP in New York and McGuireWoods LLP in Los Angeles, I am counsel to non-party Stan Lee. I submit this Declaration in Support of The Walt Disney Company's ("TWDC") Emergency Motion for Protective Order.

2. Stan Lee is a celebrity in the comic book and motion picture industry. His work for Marvel Comics and its predecessors ("Marvel") spanning the past six decades is well-known and widely discussed and admired. Mr. Lee is 90 years old, and, as Plaintiff has itself acknowledged and emphasized in pressing for his deposition in this action, has some reported health issues.

3. On or about January 30, 2013, Plaintiff served a subpoena for a deposition and for the production of documents on Stan Lee (the "Lee Subpoena").

4. On February 12, 2013, counsel for Mr. Lee served Mr. Lee's objections to the request for the production of documents contained in the Lee Subpoena. The objections referred to Mr. Lee's concerns regarding his privacy and the confidentiality of any documents to be produced. A true and correct copy of Non-Party Stan Lee's Objections to Requests for Documents Set Forth in Subpoena Duces Tecum Directed to Him, served on February 12, 2013, is attached hereto as Exhibit A.

5. On February 25, 2013, in response to concerns by Mr. Lee's counsel that confidential information produced or testified to by Mr. Lee should be treated as confidential, Plaintiff's counsel indicated that, barring a protective order, "if the press wishes to see a copy of the transcript or video, it may do so just as in any other case." A true and correct copy of the February 25, 2013 letter from Robert S. Chapman to Mark W. Williams is attached hereto as Exhibit B.

6. Mr. Lee was unwilling to appear for a deposition without confirmation that confidential information testified to by him would be treated as such. A true and correct copy of the February 27, 2013 letter from Mark W. Williams to Robert S. Chapman indicating that Mr. Lee's deposition transcript and videotape must be treated as confidential and usable for litigation purposes only is attached hereto as Exhibit C.

7. Plaintiff's counsel agreed that the Lee deposition transcript would be treated as confidential for a period of thirty (30) days after the deposition. A true and correct copy of the February 28, 2013 letter from Robert S. Chapman to Mark W. Williams reflecting the thirty-day confidentiality agreement is attached hereto as Exhibit D.

8. On March 8, 2013, counsel for Mr. Lee requested a meet and confer conference regarding a requested protective order directing that any use of the video and/or transcript of that deposition, including but not limited to copies, content or excerpts would be limited to litigation purposes only and that no part of the Lee deposition would be otherwise used, disseminated, released to, provided, or made available to any third party (except with the consent of the witness or of his representatives or counsel) or utilized for any non-litigation purpose. A true and correct copy of the March 8, 2013 email correspondence from Leslie M. Werlin to Robert S. Chapman requesting the meet and confer conference regarding the requested protective order is attached hereto as Exhibit E.

9. On March 11, 2013, Mr. Lee's counsel requested confirmation that Plaintiff's counsel would treat all documents produced by Mr. Lee in response to the subpoena as confidential for a period of thirty (30) days after Mr. Lee's deposition. A true and correct copy of the March 11, 2013 email correspondence from Ira B. Matetsky to Robert S. Chapman reflecting the request for a thirty-day confidentiality agreement is attached hereto as Exhibit F.

10. Plaintiff's counsel confirmed that it would keep the documents confidential for the thirty-day period. A true and correct copy of the March 12, 2013 email correspondence from Robert S. Chapman to Ira B. Matetsky reflecting the thirty-day confidentiality agreement is attached hereto as Exhibit G.

11. It was intended that during this period the parties would work out the terms of a stipulated protective order, as is routinely done in commercial and intellectual property litigation. Accordingly, in response to the subpoena, and based on the expectation that a protective order would be agreed and entered, Mr. Lee produced documents bates-numbered Lee 0001 – Lee

0236 (the "Lee Documents") on March 12, 2013. A true and correct copy of the March 12, 2013 email correspondence from Leslie M. Werlin to Robert S. Chapman transmitting the Lee Documents is attached hereto as Exhibit H (the documents referred to are not attached hereto).

12. Many of the Lee Documents were designated as confidential in good faith by Mr. Lee's counsel because they contained non-public and confidential information, including non-public, confidential employment agreements between Stan Lee and Marvel (and Marvel's predecessors), negotiation letters between parties to the aforementioned employment agreements, confidential attorney correspondence containing sensitive information analyzing the provisions of the aforementioned employment agreements, communications and licenses regarding certain trademarks, and letter agreements for Mr. Lee to work on specific projects. Specifically, the documents bearing the bates numbers Lee 0039-0182 and Lee 0184-0236 were marked "Confidential." The documents also contain personal financial information of Mr. Lee concerning his compensation.

13. Mr. Lee also gave a deposition over two days on March 13-14, 2013, portions of which addressed confidential and sensitive information, including discussion of the above-mentioned non-public, confidential employment agreements – for instance, pages 113-123 of the March 14, 2013 transcript of Mr. Lee's deposition are examples of portions which should be treated as confidential.

14. At the commencement of the first day of deposition, I expressly sought confirmation from Plaintiff's counsel that the deposition transcript, documents and video would remain confidential for at least thirty days while counsel for TWDC and Plaintiff worked out a confidentiality agreement. Plaintiff's counsel confirmed this statement. It was my express

understanding that counsel for Plaintiff and TWDC would jointly work out a confidentiality agreement that would include confidential matters relating to Mr. Lee; indeed, as I left the deposition room with Mr. Lee at the conclusion of his deposition, counsel remained to discuss that issue.

15. The Lee Documents marked confidential and the portion of the deposition transcript at issue include private information that warrants protection, including, but not limited to, Mr. Lee's past compensation and benefits, discussions with his employer, and discussions between his counsel and counsel for Marvel. Mr. Lee is a non-party, and expressly wants his private financial matters and discussions held private. Disclosure of Mr. Lee's confidential, private financial and business information is naturally an invasion of his privacy, and hurtful to him and his family.

16. Mr. Lee would not have agreed to proceed with production of the Lee Documents or with his deposition without protection for confidential documents and/or testimony.

17. As it was the understanding of Mr. Lee and me that the Court ordered the parties to negotiate a protective order in the Colorado action and, based on representations made by Plaintiff's counsel at Mr. Lee's deposition, that such an agreement would include confidential matters relating to Mr. Lee, we did not move for a protective order in the Central District of California, where the subpoena was executed and where the deposition was held.

18. In addition to protecting the confidential Lee Documents and the designated portions of the deposition transcript, Mr. Lee also seeks protection and confidential treatment of the video recording of his deposition in its entirety. Given Mr. Lee's celebrity status, the release of this video would be widely disseminated and is subject to distortion.

19. Mr. Lee's concern about the release of his confidential information and the deposition videotape is well placed, as Plaintiff has previously held press conferences regarding similar lawsuits. For example, a video of a January 27, 2009 press conference, entitled "Fraud Suit Filed Against Marvel, Perlmutter and Lee: Martin Garbus Press Conference", is available at http://www.visualwebcaster.com/VWP/Player/advplayer.HTML?id=55360&uid=2785358&time=GEENEFGLFJEFHH&digest=ROeP9xoBttWp0K5bwxxB4Q (last viewed, April _, 2013). More recently, the SLMI representative who appeared at Mr. Lee's deposition gave an interview to Forbes magazine in which he offered his opinion on the ultimate issues in the case. A true and correct copy of the Forbes article, entitled "Hedge Fund Elliott Management Is Backing Stan Lee Media's Spider-Man Lawsuit Against Disney", is attached hereto as Exhibit I.

20. Accordingly, Mr. Lee asks the Court to enter a Protective Order (in the form proposed in Exhibit I to the Declaration of Randi W. Singer dated April 1, 2013). Mr. Lee asks of the Court that the documents covered by the proposed protective order described herein, the portions of his deposition transcript in which those documents or other confidential matters were discussed, and the deposition video be protected from disclosure to anyone except the lawyers in the litigation, and that the information be used only for the litigation.

I declare under penalty of perjury that the foregoing is true and correct. This declaration was executed on the 10th day of April, 2013 in Denver, Colorado.

Mark W. Williams