1                    IN THE UNITED STATES DISTRICT COURT

2                     FOR THE DISTRICT OF COLORADO

3       Case No. 12-cv-02663-WJM-KMT

4       _____

5       STAN LEE MEDIA, INC.,

6            Plaintiff,

7       vs.

8       THE WALT DISNEY COMPANY,

9            Defendant.

10      _____

11            Proceedings before KATHLEEN M. TAFOYA, United

12      States Magistrate Judge, United States District Court for the

13      District of Colorado, commencing at 10:44 a.m., April 12,

14      2013, in the United States Courthouse, Denver, Colorado.

15      _____

16            WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17      ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18      _____

19                          APPEARANCES

20            MARK T. BARNES, Attorney at Law, appearing for the

21      plaintiff.

22            HOLLY C. LUDWIG and RANDI SINGER, Attorneys at

23      Law, appearing for the defendant.

24      _____

25                        MOTIONS HEARING

AVERY WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
303-825-6119        FAX 303-893-8305

```
 1                    APPEARANCES (Cont'd)

 2            MARK WILLIAMS, Attorney at Law, appearing for the

 3    Interested Party, Stan Lee.

 4                  P R O C E E D I N G S

 5            (Whereupon, the within electronically recorded

 6    proceedings are herein transcribed, pursuant to order of

 7    counsel.)

 8            THE CLERK:  All rise.  Court is now in session.

 9            THE COURT:  Good morning, everyone.  Please be

10    seated.

11            MR. BARNES:  Good morning.

12            MR. WILLIAMS:  Good morning.

13            MS. SINGER:  Good morning, Your Honor.

14            THE COURT:  All right.  We are here this morning

15    in Civil Action 12-cv-2663, Stan Lee Media, Inc. versus The

16    Walt Disney Company.  May I have appearances, please?

17            MR. BARNES:  Your Honor, Mark Barnes from

18    Brownstein, Hyatt, Farber, Schreck for Stan Lee Media and my

19    paralegal, Penny LaLotte (phonetics).

20            THE COURT:  Okay.  Good morning to both of you.

21            MS. SINGER:  Good morning, Your Honor.  Randi

22    Singer from Weil Gotshal for defendant The Walt Disney

23    Company and with me is Holly Ludwig from Rothgerber, Lyons.

24            THE COURT:  Okay.  Good morning to both of you.

25            MR. WILLIAMS:  Good morning, Your Honor.  I'm Mark
```

```
 1    Williams.  I represent Stan Lee.  He's a nonparty here, but
 2    you see from the papers a topic of the issue before the Court
 3    today.
 4              THE COURT:  All right.  Good morning to you as
 5    well.
 6              MR. WILLIAMS:  Good morning.
 7              THE COURT:  You -- do you want to have a seat at
 8    one of the tables?  Would you be more --
 9              MR. WILLIAMS:  I'm fine here if it's okay with
10    you, Your Honor.
11              THE COURT:  It's fine with me.  That way you don't
12    show favoritism, right?  Sit back there.
13              I have read the parties papers.  This is The Walt
14    Disney Company's Emergency Motion for a Protective Order.
15    You refer to Disney as TWDC.  Forgive me.  I'll probably say
16    Disney instead.  That's kind of -- it will come more
17    naturally to me.
18              MS. SINGER:  Quite all right.
19              THE COURT:  But I have read both sides
20    representations here.  I've pulled a couple of cases.  You
21    know, I -- it's -- it's difficult for me to be able to
22    carefully read every case that the parties cite, so I have to
23    start out by telling you that if there's a case that's real
24    important that I haven't read you can -- you're certainly
25    welcome to talk to me about it, but you may have to remind me
```

1    of the facts.  But I did look at -- of course, at <u>Gillard</u>.

2    I've pulled off the back of <u>Gillard</u> the appendix which is the

3    -- the protective order that we're used to seeing here in

4    this District.  This isn't a little case and this protective

5    order is pretty abbreviated, if you will.  It's a completely

6    different kind of case really than this kind, but

7    nevertheless, in some of the most complicated cases that we

8    have in this District I've used that as the go-by and I

9    intend to use it again if one is -- is warranted in this

10   case.  And for plaintiffs I will tell you that I do think one

11   is warranted in this case for some purposes.  I -- I think in

12   any business case, especially one like this that's getting a

13   lot of -- well, I won't -- I wouldn't say a lot, but some

14   media attention, I think it's important for people's private

15   things to be protected.

16          Now, that said though, it's a public Court and not

17   everything gets protected.  But the way I'm looking at the

18   motion at this point so that you know where to direct your

19   efforts is not really at our local rules on restricted

20   documents because that's different.  Our local rules say that

21   merely having a protective order and having both of you agree

22   that something should be held confidentially between the

23   parties is completely different from whether or not the Court

24   will restrict the public filing record.  I don't think we're

25   at that point yet.  At this point we're just at what should

 1    be held confidential between the parties.  And coming from a

 2    criminal background which is my -- my practice in Court I am

 3    very much in favor of discovery.  I mean, I was a prosecutor.

 4    I think -- well, you know, we have to give up everything

 5    unless someone's going to get killed, you know, right?  So

 6    you won't give up your CI's address, but you give up

 7    everything else.  And so, you know, I think -- I think

 8    discovery is good, but that said, I don't think that it's

 9    good to publish things out in the media that should be

10    litigation related because the reason you're getting

11    discovery in a case as opposed to getting press releases is

12    for the case.  So I'm concerned about things going outside

13    the case when really what I'm giving you that very broad

14    brush of discovery for is to use in the case.  If it's not

15    useful in the case then you don't get it.  So I don't see why

16    you should be able to use it for other purposes.  So that --

17    that's my -- my kind of bent, if you will.  That's how I

18    start out.

19            So starting out just on reading both of your

20    briefing I -- I am in favor of a protective order.  I am not

21    particularly in favor of all the provisions that are in the

22    one that was initially proposed by Disney because I think

23    there's some things in there that are not quite right.  I --

24    I agree with plaintiff that there's a -- one of the

25    paragraphs at least appears to shift the burden which is not

6

1    right.  That's not correct.  And that's paragraph 13.  So I'm

2    certainly willing to talk about revising the protective order

3    that is submitted, but my inclination is to grant a

4    protective order of some kind.  So that's where you need to

5    start for plaintiff if you want to direct your arguments

6    there.  Now, it's -- it's defendant's motion though so I will

7    certainly let you start.

8            MS. SINGER:  Thank you, Your Honor.  I -- I think

9    that you're exactly right.  At this point we're really just

10   looking to have a protective order to -- we have a Motion to

11   Stay Discovery which Your Honor has granted so really

12   specifically we're here about the -- Mr. Lee's documents, but

13   Mr. Lee is a nonparty.  These are essentially compensation

14   benefits, private records.  He's a nonparty.  His deposition

15   was taken solely to preserve the testimony in the event that

16   this does go forward, and really we're just looking to keep

17   things at this stage off the public record and -- and keep

18   them confidential, protect his privacy interests, and

19   certainly a -- you know, individual documents.  If -- if at

20   some point down the line we're talking about what gets filed

21   publicly we can deal with that, but at this point we're

22   really just looking for some form of a protective order to

23   protect the confidential information.

24           THE COURT:  All right.  Do you want me to hear

25   from the third-party first or do you want to go first --

1          MR. BARNES:  It's fine to have --

2          THE COURT:  -- because I think he's a little

3    more --

4          MR. BARNES:  -- Mr. Williams, if he wants to

5    start --

6          THE COURT:  -- aligned with Disney on this issue.

7          MR. BARNES:  Sure.  That's fine.

8          THE COURT:  All right.

9          MR. WILLIAMS:  Thank you, Your Honor.  I

10   appreciate it again.  Mark Williams appearing especially for

11   Mr. Lee on this matter.

12         As counsel indicated, Your Honor did grant the --

13   the defendant's ability to take the deposition of Mr. Lee and

14   it was taken over two days in mid March, March 12 and 13 in

15   Los Angeles.  It was videotaped.  In advance of the

16   deposition and at the deposition itself counsel and I agreed

17   that the transcript and the video and the documents in the

18   deposition would remain confidential for 30 days pending any

19   -- the parties working out a protective order and getting it

20   before Your Honor.

21         The documents that were produced do contain

22   financial information, other benefit information of Mr. Lee.

23   He's 90 years old.  His -- his wife is 90 years old.  While

24   he may have somewhat of a public persona, he is a private

25   person and would like to keep that information private.  The

1    employment information is akin to that which one would find

2    in an employment file.  And as Your Honor knows in the Zinn

3    (phonetics) case that you -- Your Honor ruled on, Your Honor

4    held that that information is -- is private and should be

5    held confidential.  Financial information, one's compensation

6    of benefits, is in its essence confidential.  And so he seeks

7    to keep that confidential in this case.  It doesn't really

8    bear on any issue that I can see reading from the pleadings.

9    I'm not in the case, but reading from the pleadings I don't

10   see how it bears on any issue whatsoever.  And it could be

11   the -- the subject of annoyance or embarrassment to him

12   because if this gets out it may be just misconstrued or

13   distorted in some manner which would hurt him, and he feels

14   very, very strongly about this and asked me to specifically

15   -- he said please tell Her Honor that this is very important

16   to me.

17            And the other thing that's important to him is --

18   is the -- is the deposition itself and the confidential

19   portions, but also the video.  He is -- he does have a public

20   persona.  But what can happen with a video if it goes out on

21   YouTube or whatever it can be distorted as we all know.  I --

22   I'm not -- I don't have a facility of how to do that myself,

23   but I do know that that can happen.  And so what we're

24   seeking is to have that videotape kept for this case, not

25   given to the media, nor the deposition, and nor the

 1    documents.  As Your Honor has pointed out, there may become a

 2    time when if somebody in the public wants to see it, well,

 3    then we can address that issue at that time, but for now we'd

 4    like to keep it private and -- and personal.  And any public

 5    interest right now from my perspective and from Mr. Lee's

 6    perspective is outweighed greatly by his right to privacy in

 7    financial matters.

 8           The -- the defense counsel, excuse me, plaintiff's

 9    counsel has been kind enough to agree to keep the matters

10    confidential for these 30 days.  I see no reason right now to

11    not keep them confidential further.  So from that perspective

12    the -- in weighing this a protective order from our

13    perspective strikes a fair balance.  It protects Mr. Lee's

14    financial and private financial matters, his employment

15    matters, while it gives access to the parties for any

16    evidence they may need and keeps it for this litigation.  So

17    we kindly ask you to enter that protective order.

18           Thank you for letting me address the Court on this

19    matter.

20           THE COURT:  All right.  And, Mr. Barnes, really

21    kind of what I'm -- what I'm interested in in case you didn't

22    draw from my preliminary remarks is not so much an argument

23    about any of the individual documents or the video or what's

24    been alleged that might happen to the video like YouTube.

25    You don't need to tell me that you're not going to do that or

1     any of that because that's not really the issue here.

2            The issue is do we start out this way with these

3     things held confidentially until such time as the parties

4     decide to either agree to disagree and bring it to the Court

5     individually or do you get to just do whatever you want with

6     the documents?  They're given up like any other discovery.

7     They're not particularly confidential so you can do what you

8     want.  I think -- personally I think that any discovery that

9     you get within the context of a case is -- should be used

10    only for purposes of the case.  But when -- when you say that

11    that's not really quite true because sometimes cases spin off

12    from other cases and that material can be used in the other

13    case, you know, so -- so I understand there's lots of things

14    that can be done.  And I'm not anticipating anything even

15    remotely similar to a gag order in this case.  I'm just --

16    I'm just thinking that we ought to tee the issue up better by

17    having a reasonable protective order where each side gets to

18    bring specific things to the Court's attention and argue

19    about those specific things.  For instance, the video might

20    be one, and if it is then the Court can look at it and talk

21    about it and see whether or not it should go out on the

22    public record.

23            MR. BARNES:  Your Honor, thank you.  I appreciate

24    and understand your perspective.  I think just stepping back

25    plaintiff's initial reaction and position was that this

1    really is a premature discussion given that you've stayed

2    discovery.  We're not yet dealing with the exchange of

3    discovery between defendants and plaintiffs.  We're really

4    here just talking about some documents that Mr. Lee produced

5    with regard to a subpoena.  We don't think that at this stage

6    a blanket protective order especially one that they propose

7    that gets into two-tier and all -- all sorts of -- we can

8    talk about those details today if that's the way we're going

9    to go, but we just didn't think that to discuss those

10   specific documents from this -- from that deposition from a

11   third-party -- Mr. Williams is here.  If he wanted to make a

12   motion regarding specific documents or talk to us about

13   specific documents that seemed like a more appropriate

14   process at this point in time.  I think it's important that

15   it's not defendant's counsel that has designated any of these

16   documents pursuant to, like, a blanket protective order.  We

17   have someone who's not a party to the case.  I think a lot of

18   times at least when I've appeared in front of Magistrate

19   Judge Boland I think he puts a lot of weight on the fact that

20   one of the parties to the case -- the attorney is basically

21   representing to the Court that they're making a good faith

22   designation of this.  I'm not in any way disparaging

23   Mr. Williams, but he's not in this case and he's not really

24   in front of the Court going forward.  So in truth --

25              THE COURT:  But couldn't he have -- I mean, just

    1    as a practical matter couldn't he have just brought a Motion

    2    to Quash and then -- then he would be in it for the Motion to

    3    Quash.  We'd be having the same conversation only you

    4    wouldn't have the information that you really wanted that I

    5    gave you because -- well, and that the parties actually

    6    agreed to because of the age of Mr. Lee.  You know, I -- I

    7    don't -- I don't know about his health issues.  There's been

    8    some reference that he has some without specifics, but that's

    9    not surprising in someone who's 90.  And someone who's 90

   10    could die at any time and we all know that.  It's a fact of

   11    life.  Death is -- goes along with that.  So that seemed

   12    reasonable to preserve all that so there was no real need to

   13    file a Motion to Quash, right, because nobody really wanted

   14    to quash.  I mean, it was like okay, I'll give this to you,

   15    but, you know, until a Court can rule I want you to hold it

   16    confidentially.  And, you know, I don't question that you

   17    didn't agree.  Right?  I -- I read those e-mails pretty

   18    carefully and I don't think you agreed, but I think you did

   19    agree to work on a protective order and work on some

   20    arrangement to keep things confidential.  If -- if you hadn't

   21    agreed to that or your side hadn't agreed, plaintiff hadn't

   22    agreed, I think that you would have been faced with a Motion

   23    to Quash.  So I think the good faith of all of it it could

   24    have been brought up that way.  You're right.  And it might

   25    have been a better way to bring it up, but I think people

1    were trying to work with you and give you the information

2    that you need without having to file a Motion to Quash.

3                   MR. BARNES:  Okay.  And I won't belabor this.  I

4    do think that we briefed that we don't think that there was

5    really a threshold showing with regard to these documents in

6    particular.  For the most part some of these are contracts

7    that go back more than 30 years.  I know that there's been

8    substantial and protracted bankruptcy litigation between

9    Mr. Lee and -- and Marvel and I think a lot of these

10   documents may have actually already been made public through

11   another Court proceeding.  We can address that question.  If

12   we're going to do the blanket protective order I understand

13   that your order today is not -- or I assume because it's not

14   before the Court that your order wouldn't rule on specific

15   documents and say that any individual document is

16   specifically entitled or -- to the Court's protection; that

17   we're just talking about a process that if we enter a form of

18   a protective order that would then trigger that process where

19   we'd have to go back to them and say here's specific

20   documents where we really don't think there's reason to keep

21   them confidential.

22                   I do want to get to and we can move on to talk

23   about the protective order in terms of that burden shifting.

24   I -- I don't want there to be some expectation that it's now

25   plaintiff who has the burden to come to the Court and say

1    here's why and I think that there is some things in the

2    document that did that.  So I -- I won't belabor the first

3    point.

4            THE COURT:  And I agree with you on that

5    100 percent because it's not -- it's not the non-designating

6    parties burden.  I think all the case law is very clear on

7    that.  And the way I read paragraph 13 specifically, that's

8    why I referenced you, both of you to that, the burden shifts

9    and that's not -- that's not the way.  I mean, it -- well, it

10   doesn't really, but it could.  And -- and I think that it

11   needs to be clearer about what the burden on the

12   non-designating party is.  The burden is only to provide

13   notice that you disagree.  I don't think you have to provide

14   grounds for it.  I don't think you have to provide -- you

15   have to provide specifics.  It's this document that I

16   disagree with --

17           MR. BARNES:  Sure.

18           THE COURT:  -- or whatever, but I think that's all

19   you have to do.  And then the designating party has to come

20   forward with the evidence of why this should be confidential,

21   otherwise it's going to be non-confidential, right?  So

22   that's the way I read Gillard.  It's the way I've read every

23   protective order I've ever done, blanket protective orders

24   like we're talking about here.  And I think 13 doesn't do

25   that.

1          MR. BARNES:  Okay.  And I have some thoughts on

2     that, but if we're going to move on to talk about specific

3     provisions I'm happy to sit down if you want to hear from

4     Disney's counsel first in terms of this or do you want to

5     continue the dialog of some other concerns I have about the

6     protective order?

7          THE COURT:  Why don't you while you're standing

8     tell us what -- what other because we know we have to work on

9     paragraph 13.

10         And, Mr. Williams, I will leave this up to you as

11     far as your participation, what you want to -- to -- but this

12     is going to be a protective order that covers the parties.

13     And because of the negotiations between the parties to allow

14     this to go forward without a Motion to Quash from Mr. Lee I'm

15     going to consider that Walt Disney Company can designate

16     those documents as confidential and then they would be

17     subject to this procedure, but I don't think you have a dog

18     in that race.

19         MR. WILLIAMS:  Your Honor, you're -- you're right

20     about that and Your Honor is right.  I could have filed a

21     Motion to Quash.  We certainly considered that.  But in

22     trying to get this process moving on and without enlarging

23     the proceedings and attorney's fees from -- among everybody,

24     including my client who's a nonparty, we decided to go that

25     route.  So from Mr. Lee's perspective he kindly asked that

1    whatever the decision that you ultimately make and what the

2    parties work on with you, if the -- for now at least that the

3    -- the documents, the exhibits to the deposition can be kept

4    confidential within this litigation.  The parties can use

5    them, the -- the deposition itself and the video.  That would

6    satisfy him and then at some point if it needs to be

7    addressed again then we can come before you.  But he kindly

8    asked that that -- those things be kept confidential.

9            THE COURT:  All right.  Then let me ask on the

10   record so that Mr. Lee has a record of this.  Under a protect

11   -- a blanket protective order does Disney Company intend to

12   mark those items confidential which have been requested to

13   remain confidential with respect to Mr. Lee's deposition and

14   production of documents?

15           MS. SINGER:  To the extent that it is -- Disney's

16   in a position to be marking things one way or another, they

17   -- the documents were produced by Mr. Lee's counsel and

18   marked confidential and Disney would obviously respect

19   whatever confidentiality designation that Mr. Lee and his

20   counsel requested.

21           THE COURT:  Because to come under this protective

22   order, you know, somebody has to be willing to defend it

23   because if the -- if the plaintiffs say no, this shouldn't be

24   confidential, you're going to have to come to Court and

25   defend it.

1          MS. SINGER:  And Disney is -- is certainly willing

2     to do that --

3          THE COURT:  All right.

4          MS. SINGER:  -- ready, willing and able, so --

5          THE COURT:  So -- and, of course, Mr. Williams,

6     you know, if we do have a hearing on any of these documents,

7     you know, I will allow you to be heard on the confidentiality

8     since they belong to the third-party, the Rule 45 party.

9          MR. WILLIAMS:  Exactly.  And I appreciate that,

10    Your Honor.  It just seems from -- from Mr. Lee's

11    perspective, especially when there's a stay of discovery at

12    this point, for now no party is prejudiced because they're

13    able to use the documents within the litigation if they need

14    to.  And I don't know what the status of the -- complete

15    status of the proceedings is, but, nonetheless, they are able

16    to use them.  So they're not prejudiced in any way.  For

17    right now we'd just like to keep it out of the public view

18    until further proceedings.

19         THE COURT:  All right.

20         MR. WILLIAMS:  Thank you.

21         THE COURT:  Okay.  Then, Mr. Barnes, why don't you

22    gone ahead and tell me your thoughts on paragraph 13?  I have

23    some, too, obviously, and then anything else that's in here

24    that -- and -- and let me ask you.  Have -- have the parties

25    had a chance to meet and confer on the contents of a

1    protective order?

2          MS. SINGER:  Your Honor, we attempted several

3    times.  We -- we had this out for about three weeks and

4    multiple follow-up requests and they just refused to engage.

5    So we do apologize that we are taking the Court's time going

6    through the details here.  We did try and I'm sorry.

7          THE COURT:  Well, let me ask you this:  Since you

8    know I'm going to enter one, so -- so that issue is going to

9    be resolved, do you want to have a chance to try to work it

10   out among yourselves before you get me involved or do you --

11   is it -- is it reasonable to do it?  I don't mind doing it if

12   it's going to take us half an hour or so, but I do mind doing

13   it if it's going to take hours and hours.  I'd rather you

14   guys fight about it and let me know what the real issue is.

15         MR. BARNES:  You know, Your Honor, I -- I'm very

16   respectful of your time and don't want to waste your time,

17   but given that we are all here I'd rather use a little bit

18   more of our time to see if we could hit at least some of the

19   bigger issues --

20         THE COURT:  All right.

21         MR. BARNES:  -- rather than to leave, have

22   conference, and find out that we need to reschedule and get

23   back in front of you in three weeks because we couldn't agree

24   on something that we may be able to address here and get

25   resolved.

1           THE COURT:  All right.  That's fine.

2           MR. BARNES:  I would like to clarify, before I

3    talk about Section 13, one of Miss Singer's comments when she

4    was essentially saying she respected Mr. Lee's counsel's

5    designation.  I think if we are going forward with a

6    protective order my understanding is that the volume of

7    documents that were produced by Mr. Lee were not significant

8    or at least the documents that were marked confidential.  I

9    think it's --

10          THE COURT:  300 pages or something.

11          MR. BARNES:  -- several hundred pages.

12          MR. WILLIAMS:  Not -- not -- not even 300 pages,

13   Your Honor.

14          THE COURT:  Okay.

15          MR. BARNES:  So given that, I'm not trying to

16   create unnecessary work for Disney counsel, but I do think it

17   would be more appropriate as we go forward that they at least

18   go through the exercise and let us know that they've reviewed

19   those pages and that they agree with that designation so that

20   in the future if we have an issue we already start with that

21   presumption that they are representing to the Court they made

22   a good faith determination that they thought that the listed

23   items should be marked confidential in the first place.

24          THE COURT:  And, frankly, I took that from the

25   fact that they filed the motion, right?  I mean, it's not

1    your motion to file if you don't agree with it, right?

2              MS. LUDWIG:  That's correct, Your Honor.

3              THE COURT:  So -- so that's why I think it's

4    reasonable that we put that on there.  But I agree with you

5    that -- and I'm going to be relying on both counsel's good

6    faith in designating documents.  I -- I don't care what

7    outside people think is confidential.  I care what you have

8    designated because you're the people I rely on.

9              MS. LUDWIG:  Certainly, Your Honor.  Thank you.

10             MR. BARNES:  In terms of paragraph 13 I think you

11   already hit one of our concerns.  Just even the --

12   challenging the designation, writing the grounds for the

13   challenge, I don't think that I've seen that in any of the

14   protective orders that I've been involved with in front of a

15   Federal Court here in Colorado.  My understanding is the way

16   that this is supposed to make things more efficient and avoid

17   future disputes to the Court is very much a back and forth.

18   The designating party makes a good faith.  The reviewing

19   party looks through and identifies specifically which

20   documents they disagree with.  At that point then it goes

21   back to the designating party and they sort of decide do I

22   really want to fight this or am I willing to agree on some of

23   those?  And then they come to the Court.  I think it is clear

24   in Gillard and other cases that have followed that that the

25   burden should be -- and I -- I think in Gillard it even said

1    the party designating shall have the burden of establishing

2    that good cause exists after you go through that back and

3    forth process.

4           So my changes to 13 would be to take out any

5    specification that there's something more than just notifying

6    them in terms of grounds or anything like that, and be --

7    just clarifying because I think there was some language that

8    I was a little bit confused about about the parties would

9    file a joint stipulation on the motion.  I think that if they

10   want to --

11          THE COURT:  I -- I was unclear about that, too.  I

12   don't like that language.

13          MR. BARNES:  Okay.  So I --

14          THE COURT:  I think it's confusing.

15          MR. BARNES:  -- would strike any sort of joint

16   stipulation, just clarify that it's still their burden

17   ultimately of coming to the Court if we oppose or object to

18   any of their specific designations.

19          THE COURT:  Right, if you need to.  I mean --

20          MR. BARNES:  Correct.

21          THE COURT:  -- you give them notice.  They tell

22   you why again, maybe more specifically just like any other

23   discovery dispute, and you say oh, yeah, I hadn't thought

24   about that.  Okay.  That's all right then, or I disagree with

25   you 100 percent and they say well, yeah, but we -- we're real

1    serious, then you come to the Court.

2          MR. BARNES:  I understand.  A couple other

3    provisions of the protective -- proposed protective order

4    that I had some concerns about.  One was just the broad

5    language of it being a two-tier protective order.  There's a

6    lot of discussion about confidential and then highly

7    confidential.  Highly confidential, it's drafted essentially

8    as attorney's eyes only.  It doesn't even allow the parties.

9    This is not a sort of trade secret case of Coke doesn't want

10   the Pepsi people to see their formula, so I don't think this

11   is a case where it's appropriate for us to start.  If a

12   specific document comes up that they have that concern about

13   we can address it at the time, but I don't think we should be

14   starting with a protective order that is a two-tier

15   protective order from the get-go.

16         Yeah.  I had some concerns about just how -- some

17   of the definition of what they define as confidential.  My

18   experience has been that it's more appropriate to either

19   limit sort of to privacy interests or recognize confidential

20   sensitive business information, but I think that they had at

21   least under their definition of highly confidential, if I

22   recall correctly they had just referred to even just private

23   contracts just without anything more.  And I don't think that

24   we want to stipulate from the get-go that we're just saying

25   anything that is just necessarily a private contract is

1    entitled to -- especially -- I mean, that was under the

2    attorney's eyes only definition.  So I don't think that's

3    appropriate.  Just real --

4              THE COURT:  Well, let's -- let's take that up for

5    just a second because on paragraph two or, excuse me, Page 2

6    it says confidential -- confidential basically would be

7    documents that contain confidential, proprietary or

8    commercially sensitive information.  No problem there, right?

9              MR. BARNES:  Correct.

10             THE COURT:  It will -- they could contain

11   information which the party is contractually or otherwise by

12   law required to maintain as confidential, e.g., due to a

13   nondisclosure agreement.  That's probably appropriate to --

14   to mark.  I mean, I'm just talking about, you know, to mark.

15   Three, contain information that if disclosed could impair or

16   disrupt future or current business relationships.  That's

17   pretty standard.  Or implicates common law and statutory

18   privacy interests of parties or nonparties, their employees

19   or representatives.  And that's what they're claiming the

20   Stan Lee documents have.  So it doesn't seem to me to be

21   anything wrong with that either as an initial cut at marking

22   it confidential.  And that's all that's in there.

23             MR. BARNES:  Okay.  And then there was a -- they

24   separately defined though highly -- documents that would be

25   marked highly confidential and we don't really need to get

AVERY WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
303-825-6119        FAX 303-893-8305

1    into that if we're not going to have a two-tier protective

2    order, so --

3         THE COURT:  Well, let me -- let me ask defendants.

4    Do you really think there -- I mean, I'm used to seeing them

5    done two-tier just because -- just in case, right?  If we

6    ever do see any AEO we want the provisions in place so that

7    we don't have to come back to the Court, so let's get it

8    right the first time around.  But if there's really not going

9    to be any AEO, you guys have been litigating for quite

10   awhile --

11        MS. SINGER:  Well, Your Honor, I think that we're

12   -- really it was kind of -- who knows what's going to be down

13   the line?  What they seem to be asking for and what we've

14   seen in terms of the pleadings and the initial disclosures

15   and conversations, to the extent that what we're talking

16   about is damages or revenues from the films or any of that,

17   as -- as we've told them it's all third parties.  The Walt

18   Disney Company doesn't produce any of these films, isn't the

19   contracting party.  So what you're going to be talking about

20   are film agreements.  You're talking about -- it's -- it's

21   different depending on which film.  It's different

22   distributors, different companies who aren't going to want

23   each other to have access to these licenses.  These are going

24   to be -- all kinds of revenue definitions.  It's going to be

25   a lot of third-party -- if -- if we ever get there it will be

1   a lot of third-party, very highly confidential information.

2   And I, frankly, don't think that, you know, that's the kind

3   of thing that needs to be available to everybody.  If the

4   attorneys or outside experts need it to look at damages if we

5   get there that's one thing, but, you know, this shouldn't be

6   a free-for-all.

7           MR. BARNES:  Your Honor, I think that to the

8   extent that you get into financial data or contracts that was

9   specifically one of my concerns.  In paragraph 4b where

10  they're trying to define highly confidential information at

11  the very end under sub Romanette iv they just say private

12  agreements.  Well, we are going to have a lot of contracts of

13  -- distribution agreements, marketing, all sorts of things,

14  and the way they've drafted this it would be an attorney's

15  eyes only.  We wouldn't even be able to have the parties.

16  We're not right now a competitor in the sense that we're

17  gaining some strategic advantage by seeing what sort of

18  contract that Disney has with the distributor over a movie.

19  So I think that it's fine if we talk about whether that's

20  entitled to be just confidential and we're not using it

21  outside of litigation, but it really puts a burden on the

22  parties and their attorneys if you really start getting into

23  this attorney's eyes only that even the party themselves

24  can't see these -- these documents.

25          THE COURT:  Yeah.  I -- I kind of agree with the

1    language.  It's kind of broad for an AEO agreement.  But how

2    about moving that paragraph into confidential?  And it

3    doesn't mean that they always are confidential because

4    they're already public, you know, then they're not

5    confidential, but they could be.  I -- I don't see -- I mean,

6    I -- I -- even what you said about if we ever get there it

7    could have these things, I still don't quite understand.  If

8    nobody's a party they -- they don't -- you don't want these

9    nonparties to see each other's data, but why can't your

10   parties see it in the context of this litigation if it's

11   relevant?  I mean, why couldn't the principals of Walt Disney

12   see it, for instance?

13        MS. SINGER:  I -- well, I think the principals of

14   Walt Disney -- we're very hypothetically -- I think, frankly,

15   the principals of Walt Disney may be actually competitors in

16   certain of these situations because a lot of these are

17   preexisting distribution deals with Marvel.

18        But I think that, you know, it's hard to say at

19   the outset here because we haven't seen discovery states.  We

20   haven't seen any discovery requests and we don't know what's

21   out there.  This is certainly -- with -- with all due

22   respect, I don't want to accuse anybody of anything, but, you

23   know, certainly the plaintiffs here have a history of -- of

24   holding press conferences and giving quotes to articles and

25   things like that and so to the extent that what -- you know,

1    this is information that has the potential to be misused.  I

2    think really what we're seeking is a little bit of a higher

3    level of confidentiality for certain of these highly

4    sensitive documents.

5         THE COURT:  Well, wouldn't -- wouldn't small iii

6    cover your problems without adding this extra kind of vague

7    sentence in iv?  I mean, it says documents which are

8    commercially sensitive --

9         MS. SINGER:  Mm-hmm.

10        THE COURT:  -- such that their disclosure could

11   reasonably harm competitive advantage or foster a competitive

12   advantage, e.g., unpublished creative material such as

13   scripts, artwork, and the like.  I mean, you could include

14   agreements in there, but it's -- it's -- what you're talking

15   about is something that is commercially sensitive that --

16   that does have a ring where the parties maybe shouldn't know.

17   And, again, that doesn't mean it really is.  It means --

18        MS. SINGER:  Right.

19        THE COURT:  -- that one side gets to say it is and

20   the other side gets to say no, it's not, right?

21        MS. SINGER:  So if, Your Honor, if the -- if the

22   question is striking I guess it's 4b Romanette iv on Page 3 I

23   -- I think that we could probably live with that.

24        THE COURT:  Yeah.  I think that seems reasonable.

25        MR. BARNES:  Your Honor, I just really don't think

1    that by modifying just that small subset -- my concern is if

2    you then go back and look at the Romanettes i, ii, and iii

3    I'm afraid that that's going to cover a vast majority or a

4    large amount of discovery in this case.  Again, I come back

5    to the fact that this is not Marvel suing Disney or Pepsi,

6    Coke where there's some particularized harm of our client

7    seeing this.  I mean, financial information for us to be able

8    to talk about damages, theories and things, for us to have a

9    large -- such a large amount of documents that we can't even

10   show to our client I think creates a real burden and it --

11   there's not a reason that they've shown that there's some

12   particularized harm.  Even in a trade secret case if it's

13   competitor A against competitor B you can talk about an

14   attorney's eyes only.  But in this sort of case I just don't

15   think that's appropriate and I think having this subparagraph

16   4b in any iteration doesn't make sense here.  If they at some

17   point want to come and show that there's a particular

18   document that they have such a concern that shouldn't be

19   shown to our client I think we can address that separately.

20   But I'm really concerned that having any 4b in here that has

21   this broad language just about financial data and financial

22   reports and things like that is just going to end up having

23   way too many fights if we try to do this from the outset.

24          And the last thing I would like to say is whatever

25   we agree on for the definition under confidential or highly

1    confidential, it's always my understanding that when the

2    designating party ultimately does have a burden to come in

3    and show they still would have to show the particularized

4    injury or what they would need to show.  I don't want to be

5    constrained by well, we put this in here that contracts or

6    financial reports were supposed to be highly confidential and

7    there -- somehow then plaintiff has been deemed to agree that

8    just because it meets that definition it's entitled to

9    protection.

10        THE COURT:  All right.  Well, nine times out of

11   ten the discovery arguments that I get that have to do with a

12   protective order, so I've got to limit that a little bit,

13   have to do with an AEO of designation because that's where

14   the parties really suffer.  And I don't -- I'm not saying the

15   parties versus their attorneys.  I'm just saying that that's

16   where people really get in trouble.  They don't have their

17   own in-house experts to deal with this.  They can't talk

18   usually to the in-house lawyer.  I mean, there's a lot of

19   problems with AEO material.  So my tendency has always been

20   to severely limit AEO, I mean, really severely.  There's --

21   there's got to be a real reason why the parties can't see it.

22   And sometimes there is, data source code to software, for

23   instance.

24        MR. BARNES:  Sure.

25        THE COURT:  It comes to mind right away.  But --

1    but usually there's not.  Usually there's not.  I mean, it --

2    information is confidential, but it's not that confidential.

3    And, yes, it could tell something to one of the parties about

4    somebody's financial state and all that kind of stuff, but

5    that's usually not what we look at.

6         Now, I notice on the <u>Gillard</u> case, again, that

7    case is so different from this it's hardly worth talking

8    about the facts of the case, but it doesn't even have a

9    highly confidential.  Now, a lot of these I do see a highly

10   confidential and -- and by itself I don't really mind, but

11   this is pretty broad.  So I don't know.  I think it should be

12   limited a little bit more and maybe I would give defendants

13   the option.  But I -- I think instead of putting in

14   categories like this that really to me they -- they really

15   kind of read more like confidential.  There should be

16   something in there and you can base it on -- I think there's

17   lots of case law out there that -- that basically just says

18   in a very succinct way that it's information that is so

19   highly confidential that the parties can't look at it.  I

20   mean, you're not calling it AEO and that's really what you're

21   talking about, isn't it?

22        MS. SINGER:  That's -- that's true, Your Honor.

23   Yes.

24        THE COURT:  Yeah.  So what I would do is take out

25   -- you know, you might even think about taking out this

1    highly confidential and calling it what it really is --

2                MS. SINGER:  Mm-hmm.

3                THE COURT:  -- which is attorney's eyes only.  And

4    then going off a definition of what really is attorney's eyes

5    only and you probably will get -- at least I would think you

6    -- you wouldn't be objecting to it if it was defined a little

7    more.

8                MR. BARNES:  Your Honor -- Your Honor, I think --

9                THE COURT:  You don't think it's necessary, but I

10   think you should have it in there --

11               MR. BARNES:  Okay.

12               THE COURT:  -- just because there could be

13   something like that.

14               MR. BARNES:  And I think that this is one of those

15   issues where maybe we spend our time better of afterwards we

16   can confer, try to see if we can come to some agreement on

17   what an AEO provision would look like rather than trying to

18   wordsmith something here today.

19               THE COURT:  That's what I think because I would

20   rather not see this -- the little subparagraphs because, yes,

21   in some circumstances they sure would be AEO.  But, in others

22   they wouldn't, so --

23               MS. SINGER:  Certainly, Your Honor.  I think --

24   you know, and this is sort of what we had hoped to do before

25   we came before Your Honor and -- and certainly we're open to

```
 1    conferring as long as we're in agreement that the category

 2    should exist --

 3              THE COURT:  Well --

 4              MS. SINGER:  -- although much more narrow.

 5              THE COURT:  -- I'm not going to -- I'm not going

 6    to make plaintiff agree that the categories should exist

 7    because they didn't agree and -- and, in fact, I'm not going

 8    to call this a stipulated protective order because it's not

 9    stipulated.

10              MS. SINGER:  Okay.

11              THE COURT:  You know, the plaintiff doesn't think

12    one should be there.  And I think your rights and objections

13    should be preserved no matter -- whether you want to appeal

14    it or not it should be preserved.  But I'm ordering that

15    there's going to be a protective order.

16              MS. SINGER:  Okay.

17              THE COURT:  I -- I want your input as to what

18    should be in it and I'm telling you that an attorney's eyes

19    only provision is I think appropriate.

20              MS. SINGER:  Thank you, Your Honor.

21              THE COURT:  But I'm going to let you draft it up

22    and hopefully you can stipulate to the language of it.  All

23    right?

24              MR. BARNES:  Okay.

25              THE COURT:  Is that --
```

1          MR. BARNES:  Yeah.

2          THE COURT:  -- clarified a little better?

3          MR. BARNES:  Oh, that's very helpful.  I think the

4     only other general comment that I think it's worth just

5     bringing to the Court's attention, you did note the local

6     Rule 7.2.  Paragraph 11 is basically this very broad

7     prohibition that just says you won't file a protected writing

8     unless it's under seal.  After Rule 7.2 went into effect the

9     way I've seen this treated is any reference to filing

10    documents with the Court in the future.  It's really just a

11    very short sentence that says confidential documents to the

12    extent they're going to be filed will be filed in accordance

13    with the process under local Rule 7.2, something along that

14    lines.

15         THE COURT:  I can't imagine that would even be

16    objected to.

17         MS. SINGER:  No.

18         THE COURT:  I think that's the way to handle that.

19         MS. SINGER:  Of course, Your Honor.

20         THE COURT:  And I don't know -- you know, Judge --

21    you have Judge Martinez and I'm not sure what a -- what --

22    how much of a stickler he is on 7.2.  I can tell you that

23    Judge Krieger is just a complete stickler on it.  Right?  And

24    so if I -- if I get something from you that's kind of general

25    and I say yeah, I know this case, I know these are

1    confidential, and I say that, she returns it.  She says no,

2    you know, they didn't make the proper showing.

3        So -- so do make the proper showing under 70 --

4    7.2.  Whoever wants to file it be sure you hit the topics and

5    then that allows us to do the three days for public objection

6    and then we rule on those usually pretty fast, but less fast

7    now than we used to because several of the judges -- and,

8    again, I'm -- I'm just not sure about Judge Martinez, but

9    several of them are very -- you know, they -- they believe

10   very firmly which I think we all do in the public's right to

11   know about what goes on in the judicial process, and the more

12   that you hide from them, the more you have, you know, the

13   little whispered conferences up here in front of the jury and

14   stuff the more the public thinks that what we're doing is

15   somehow sneaky and that's -- so we don't want to.  On the

16   other hand, you know, I'm not a big YouTube fan for things

17   that go on in litigation.

18        MR. BARNES:  I understand.  Beyond what we've just

19   talked about I don't have any other issues to raise.  I think

20   that now we can confer.  We hadn't in terms of that process

21   because we thought this was premature and shouldn't really

22   apply to these Stan Lee documents, and just the general

23   two-tier nature it didn't make sense to go through line by

24   line.  Now that we've got some guidance I think that we can

25   confer, save some time, and if we can't reach some agreement

1    on a very narrow issue we'll bring it back to your attention.

2              THE COURT:  All right.  And all of the -- in the

3    interim -- so let's -- so that the record is complete because

4    everything is electronic now so if you don't actually say it,

5    you know, things don't get taken off the docket.  So for the

6    record the motion, Walt Disney Company's Emergency Motion for

7    Protective Order is granted, that's Document 49, under the

8    provisions that are discussed here in Court and the parties

9    will submit a -- let's see.  We won't call it a stipulated

10   protective order, but we will call it just a protective order

11   with the -- put a cover sheet on it saying that we have now

12   agreed to the terms.  All right?  Is that acceptable to

13   plaintiff?

14             MR. BARNES:  Yes, Your Honor.  And I think that

15   we're willing and happy to stipulate -- I know we had

16   originally at the deposition talked about a 30-day period.  I

17   think now that we're in this process we'll agree to continue

18   to keep those -- treat them as if they were marked

19   confidential and subject to a protective order until we have

20   an actual protective order in place at which point then we

21   can start going by the process.

22             THE COURT:  Right.  But for right now nobody --

23             MR. BARNES:  But we won't -- we won't treat --

24             THE COURT:  -- needs to object.

25             MR. BARNES:  -- them as not subject to a -- to a

AVERY WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
303-825-6119        FAX 303-893-8305

1    protective order just because one isn't entered today.

2              THE COURT:  Right.  So -- so that will be the

3    order of the Court that they remain confidential --

4    confidential at this point, all of the -- the video

5    depositions and the documents that are specified, right?

6    Mr. Williams?

7              MR. WILLIAMS:  Yes.  Excuse me, Your Honor.  So as

8    I understand it, the -- the documents produced for the

9    deposition, the deposition transcript and the video shall

10   remain confidential, should not be disseminated, not be

11   disclosed to anybody outside of this litigation pending

12   further order of the Court.

13             THE COURT:  Right.  That's exactly right because

14   we have now -- we -- we will have a protective order, and

15   when the protective order is entered if plaintiffs wish to

16   then disagree with any of the designations that starts your

17   running of the time.  Okay.  Is that fair?

18             MR. BARNES:  Yes, Your Honor.  And I just wanted

19   to clarify that in the alternative if -- if Stan Lee's

20   attorney have been coming here saying these need to be

21   subject to a permanent protective order and we walked out of

22   here and you were saying yes, they've made that showing, I

23   just want to be clear we've not done that.  We're just

24   putting it on hold and we will continue to treat them as

25   confidential until we get a blanket protective order in place

37

```
 1    and then we'll go through that process.

 2            THE COURT:  Right.  And I'll leave it -- since

 3    you've been here, Mr. Williams, you certainly can follow the

 4    public docket.  If there's going to be -- well, if there's a

 5    filing from plaintiffs that say we wish to, you know, seek

 6    the Court's review of certain documents as non-confidential

 7    you'll see it --

 8            MR. WILLIAMS:  Right.

 9            THE COURT:  -- so --

10            MR. WILLIAMS:  So as I understand it, Your Honor,

11    based upon what Mr. Barnes indicated, until further order of

12    the Court the documents, the deposition transcript, and the

13    video shall remain confidential.  Once the protective order

14    is entered then, as I understand it, Disney would then

15    designate those as all confidential under the protective

16    order and they would remain that way unless Mr. Barnes made a

17    7.2 -- or made another filing before the Court.

18            THE COURT:  Well, that's right, except that you're

19    adding a step in there that I don't think is really necessary

20    because Disney has said that by virtue of their motion that

21    they are -- they are saying --

22            MR. WILLIAMS:  Okay.

23            THE COURT:  -- that they're seeking confidential

24    designation of these things.  Now, if you -- if you by

25    agreement talk about it and you agree that -- because I think
```

 1    there was a couple of pages in there that you didn't think

 2    should be confidential, that's between yourselves.  Right?

 3    You don't have to file anything with the Court.  You just --

 4    those aren't confidential anymore.  You've agreed not to hold

 5    them that way.  Right?

 6              MR. BARNES:  Yes.  And I just want to clarify.  I

 7    think it was in -- unintentional, but I think he slightly

 8    misspoke when he said they will keep -- be treated as

 9    confidential unless Mr. Barnes or plaintiff makes a filing

10    with the Court.  My understanding the way these protective

11    orders ordinarily work we wouldn't involve the Court at that

12    step.  We would just notify Disney's counsel that we think

13    some of these particular documents should not have been

14    marked confidential and then it would be Disney Company if

15    they wanted to maintain the confidentiality that would file

16    something with the Court.  I didn't want to create an

17    impression that we would be coming in.

18              THE COURT:  That is correct.  We do have to watch

19    that, Mr. Williams --

20              MR. WILLIAMS:  And that's fair.

21              THE COURT:  -- and keep them --

22              MR. WILLIAMS:  And that's fair.  I -- it really --

23    what it comes down on, I hate to parse this so much, Your

24    Honor, and I appreciate your listening to me about this, is

25    they will remain confidential until a further order of the

1    Court.  It will be designated under -- because Disney has

2    said they will be designated under this protective order as

3    -- as confidential, therefore, they will remain confidential

4    unless -- until Mr. Barnes communicates otherwise to -- to

5    Miss Singer and then likely there will be a filing which then

6    I can come in and protect Mr. Lee's rights and, therefore,

7    they remain protected and confidential until you order

8    otherwise.

9              THE COURT:  Right.  Well, yes, yes --

10             MR. WILLIAMS:  Yes.

11             THE COURT:  -- except I -- I do -- there is a step

12   in there where you could be left out of the process so that I

13   think should be on the record that you know that because you

14   need to take some steps with Disney to protect yourself on

15   that because once -- assuming that one or more documents or

16   something may be objectionable by the plaintiffs, when they

17   notify Disney that it's objectionable, if Disney does not

18   file something to uphold their designation those -- those

19   documents become non-confidential.  Okay.  So that's the way

20   it works.  So Disney has to come forward with a showing.

21   Now, until -- you know, if there's a dispute about it, of

22   course, then the Court order.

23             MR. WILLIAMS:  Right.  Thank you, Your Honor.

24   Really appreciate your time today.

25             THE COURT:  All right.  Anything else from

1    anybody?

2             MS. SINGER:  No.  Thank you so much.

3             THE COURT:  Oh, you know, we didn't agree on a

4    time.  Do you think --

5             MS. SINGER:  Oh.

6             THE COURT:  -- it's helpful to have a time to

7    submit the agreed upon language for the protective order?

8             MS. SINGER:  Probably can't hurt.

9             THE COURT:  Ten days.  Is that --

10            MR. BARNES:  Your Honor --

11            THE COURT:  -- less?

12            MR. BARNES:  -- the only reason I hesitate I want

13   to keep things moving along.  The lead counsel in California

14   is currently in trial and I think they have another week or

15   so of trial.  So if we could do this as even -- three weeks

16   just because they are in trial.  They'll probably be taking

17   the lead in terms of conferring with Miss Singer.  So do you

18   have --

19            THE COURT:  I mean, I think the status quo is

20   maintained until then because they're being held confidential

21   until then so that probably doesn't matter too much --

22            MS. SINGER:  As long as --

23            THE COURT:  -- and the discovery is stayed.

24            MS. SINGER:  -- Your Honor, as long as the status

25   quo is in place we're -- we're fine with whatever deadline is

1    convenient for everyone.

2              THE COURT:  May 3rd then.  That's three weeks.

3              MR. WILLIAMS:  That's fine.

4              MR. BARNES:  Thank you.

5              THE COURT:  Okay.  So we'll be looking -- we

6    tickle these things on a calendar just in case you don't do

7    anything.  We like to call and bug you.  So we'll tickle it

8    for May 3rd that -- that the agreed upon language of the

9    protective order is due that day.  And whoever does the final

10   draft, if you would submit a Word or Word Perfect version of

11   the protective order to chambers along with your motion

12   that's usually helpful.  Mr. Richards can give you the

13   chambers address.  But just -- that way if we need to make

14   any -- any corrections before we actually enter it, which I

15   don't really suspect, but if we do we've got it in a form we

16   can do it.

17             MS. SINGER:  Certainly.

18             THE COURT:  All right.

19             MR. WILLIAMS:  Thank you, Your Honor.

20             MR. BARNES:  Thank you very much.

21             MS. SINGER:  Thank you, Your Honor.

22             THE COURT:  All right.  We'll be in recess.

23             THE CLERK:  All rise.

24

25             (Whereupon, the within hearing was then in

1    conclusion at 11:32 a.m., on April 12, 2013.)

2

3             I certify that the foregoing is a correct

4    transcript, to the best of my knowledge and believe (pursuant

5    to the quality of the recording) from the record of

6    proceedings in the above-entitled matter.

7

8

9    /s/ Laurel Tubbs                    April 25, 2013

10   Signature of Transcriber           Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AVERY WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
303-825-6119        FAX 303-893-8305