**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2663-WJM-KMT

STAN LEE MEDIA, INC.,

    Plaintiff,

v.

THE WALT DISNEY COMPANY,

    Defendant.

---

**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES**

---

This matter is before the court on Defendant The Walt Disney Company's ("Defendant") Motion for Attorneys' Fees ("Motion"). (ECF No. 67.) Having obtained judgment, Defendant's counsel now seeks $461,881.80 in attorneys' fees pursuant to 17 U.S.C. § 505, 28 U.S.C. § 1927, and Fed. R. Civ. P. 54(d). The amount sought by Defendant's Motion is opposed by Plaintiff Stan Lee Media, Inc. ("Plaintiff"). (ECF No. 71.) For the reasons set forth below, the Motion is granted in part and denied in part.

## I.  BACKGROUND

Plaintiff is a Colorado corporation that entered into an agreement in 1998 ("1998 Agreement") with Stan Lee, a comic book artist who created several well-known comic book characters while employed at Marvel Comics. (ECF No. 25 ¶¶ 2, 4.) In the 1998 Agreement, Lee assigned to Plaintiff the copyrights for the comic book characters that he had previously created, and those that he would create in the future. (*Id.* ¶ 4.) Lee

subsequently sent a letter to Plaintiff purporting to terminate the 1998 Agreement because Plaintiff had materially breached it, and assigned the same copyrights to Marvel, leading to several legal disputes involving Plaintiff, Lee, Marvel, and others. (*Id.* ¶ 10; ECF No. 37 at 9.) Among other claims, these disputes involved Plaintiff's attempt to enforce its ownership of the copyrights to Lee's characters conferred upon it in the 1998 Agreement. (ECF No. 25 ¶¶ 27-35.)

In 2009, Disney purchased Marvel and turned it into a wholly-owned subsidiary. (*Id.* ¶ 11.) Marvel and other Disney subsidiaries have since used copyrighted characters created by Lee without Plaintiff's consent in distributing movies, selling merchandise, and in creating and distributing print media. (*Id.* ¶¶ 19-21.)

On October 9, 2012, Plaintiff filed a Complaint alleging that Defendant infringed the copyrights it holds by virtue of the 1998 Agreement. (ECF No. 1.) An Amended Complaint was filed on December 26, 2012. (ECF No. 25.) On January 14, 2013, Defendant filed a motion to dismiss all claims. (ECF No. 37.) On September 5, 2013, the Court granting Defendant's motion and dismissed Plaintiff's copyright claims with prejudice for failure to state a claim. (ECF No. 64 at 9.)

On September 19, 2013, Defendant filed the instant Motion seeking $461,881.80 in attorneys' fees pursuant to 17 U.S.C. § 505 and 28 U.S.C. § 1927. (ECF No. 67.) On October 15, 2013, Plaintiff filed an opposition to Plaintiff's Motion. (ECF No. 71.) Defendant submitted a Reply on November 1, 2013, which included its attorneys' billing records. (ECF No. 76.) On June 16, 2014, the Court submitted an Order allowing

Plaintiff to submit a Sur-Reply in order to address the reasonableness of Defendant's billing records. (ECF No. 82.) Plaintiff submitted a Sur-Reply on June 30, 2014. (ECF No. 83.)

## II.  ANALYSIS

Defendant seeks $461,881.80 in attorneys' fees pursuant to 17 U.S.C. § 505 and 28 U.S.C. § 1927. (*See* ECF No. 67.) The Court will analyze each of Defendant's request for fees in turn.

### A.    17 U.S.C. § 505

Pursuant to 17 U.S.C. § 505, the Court may award reasonable attorneys' fees to the prevailing party in a copyright infringement action. An award of attorneys' fees in a copyright case depends on the Court's consideration of the following factors: (1) frivolousness; (2) motivation; (3) "objective unreasonableness (both in the factual and in the legal components of the case)"; and (4) "the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994).

Defendant argues that Plaintiff's claim was frivolous and objectively unreasonable because Plaintiff chose to pursue this action despite three previous rulings that it had no basis for asserting ownership of any of the claimed copyrights. (ECF No. 67 at 4.) A copyright infringement claim is "objectively unreasonable when the claim is clearly without merit or otherwise patently devoid of a legal or factual basis." *Diplomatic Man, Inc. v. Nike, Inc.*, 2009 WL 935674, at *3 (S.D.N.Y. Apr. 7, 2009).

Here, Plaintiff relied solely on the 1998 Agreement to establish its ownership of the copyrights at issue in this case. (*Id.*) As the Court mentioned in its Order granting Defendant's Motion to Dismiss, a District Court had previously determined that the statute of limitations on the 1998 Agreement had run, and that Plaintiff could not exercise any ownership over the copyrights. (*Id.* at 7 (citing *Abadin v. Marvel Entm't, Inc.*, 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010)).) Additionally, after *Abadin*, two other District Courts subsequently found that Plaintiff was precluded from asserting its alleged ownership of copyrights under the 1998 Agreement. (*Id.* at 7 (citing *Lee v. Marvel Enters.*, 765 F. Supp. 2d 440 (S.D.N.Y. 2011) and *Stan Lee Media, Inc. v. Lee*, 2012 WL 4048871 (C.D. Cal. Aug. 23, 2012)).)

The Court, finds that it was objectively unreasonable for Plaintiff to pursue its copyright claims under the 1998 Agreement after three District Courts had previously found that it had no basis for asserting ownership of any of the claimed copyrights. *Pannonia Farms, Inc. v. Re/Max Int'l, Inc.*, 407 F. Supp. 2d 41, 46 (D.D.C. 2005) (awarding attorneys' fees incurred in moving to dismiss based on collateral estoppel where "it was objectively unreasonable for [plaintiff] to continue to pursue any of the intellectual property claims after the New York federal court found that it did not have any ownership interests"). Accordingly, Defendant should be awarded attorneys' fees pursuant to 17 U.S.C. § 505.

    1.    <u>Reasonableness of Fees</u>

A party seeking an award of attorneys' fees must demonstrate that the fees it

seeks are reasonable. *See Dewey v. Hewlett Packard Co.*, 2007 WL 707462, at *1 (D. Colo. Mar. 5, 2007). Therefore, counsel must make a good faith effort to exclude hours or costs that are "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Generally, the starting point for any calculation of a reasonable attorneys' fee is the "lodestar," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate. *Id.* at 433; *Malloy v. Monahan*, 73 F.3d 1012, 1017-18 (10th Cir. 1996). To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment. *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997). The Court is not required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion. *Hensley*, 461 U.S. at 436-37.

As for the hourly rate, the Tenth Circuit has indicated that "the court must look to 'what the evidence shows the market commands for civil rights or analogous litigation.'" *Burch v. La Petite Academy, Inc.*, 10 F. App'x 753, 755 (10th Cir. 2001) (quoting *Case*, 157 F.3d at 1255). The "local market rate" is usually defined by the state or city in which counsel practices. *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998) (looking at "the prevailing market rates in the relevant community", which was Kansas City, Kansas); *Case*, 157 F.3d at 1256 (looking at fees charged by lawyers in

the area in which the litigation occurs).  The burden is on the party seeking fees to provide evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community. *Ellis*, 163 F.3d at 1203.

      a.  *Defendant's New York Attorneys' Hourly Rates*

Defendant has submitted an affidavit and a copy of its bills as part of its fee requests.  (ECF Nos. 67-1, 76-2.)  Defendant seeks an award of attorneys' fees for the work performed by its New York attorneys: Mr. Singer, Mr. Quinn, Mr. Rich, Ms. Perelman, Ms. Costa, and Ms. Sperle.[1]  (Singer Aff. (ECF No. 67-1).)  The hourly rates charged for the work performed on this case by these attorneys are $630, $855, $855, $499.50, $396, and $319.50, respectively.  (*Id.* at ¶¶ 7-12.)

Defendant, however, has not submitted any evidence that these rates were the "prevailing market rates" in the Denver area for intellectual property or commercial litigation attorneys of comparable skill, experience and reputation.  *See Broad. Music, Inc. v. Cleatz Bar & Grill, LLC*, 2013 WL 753468, at *2 (D. Colo. Feb. 27, 2013). Defendant has, therefore, failed to meet its burden of establishing the "prevailing market rate."

      b.  *Hours Billed*

Defendant requests an amount of $461,881.80 in attorneys' fees for work done

---

[1] Defendant also seeks fees for its Denver counsel's billable hours.  Plaintiff does not object to the hourly rates of these attorneys.  (ECF No. 83 at 9.)

by eight attorneys in two different law firms. (ECF Nos. 67 at 7, 67-1 at 2-5.) The Court finds these fees to be grossly excessive. It shocks the Court's conscience that Defendants would bill almost half a million dollars, or 900 hours, on a case with minimal discovery that was resolved on a motion to dismiss.

A review of Defendant's billing records indicates that eight attorneys spent nearly 200 hours handling the initial motion to dismiss. (*See id.*) After the Court found that Defendant's initial motion to dismiss became moot when Plaintiff filed the Amended Complaint, seven attorneys spend nearly forty hours researching and drafting an amended motion to dismiss. (*Id.*) These hours are excessive, not only because Defendant's attorneys are sophisticated litigators who have undoubtably filed similar motions, but because the issues in this case had been decided previously by three other courts.

Additionally, many of Defendant's billing records are vague, making it virtually impossible to determine whether the requested hours are excessive, redundant, or otherwise unnecessary. For instance, many time entries have been redacted, making it impossible to tell whether the tasks are redundant.[2] In other instances, attorneys lumped several tasks together without specifying how much time was spent on each task.[3] Additionally, there are entries that reflect time spent in meetings and phone calls

---

[2] For example, the time entries for November 13, 2012 show that both Ms. Costa and Ms. Sperle both conducted research, but since the entries have been redacted, it is impossible to determine if their research efforts were redundant. (ECF No. 76-2 at 6.)

[3] For example, Mr. Singer's time entry for November 27, 2012 that he spent 2.5 hours on the following: "Review E. Bard comments and incorporate; telephone conference with E.

between attorneys that are not reflected on the other attorneys' time entries, thus calling into question the accuracy of the records.[4]

Based on the above-mentioned deficiencies, and the fact that Defendant has not met its burden of proving the "prevailing market rate" of its New York attorneys' hourly fees, the Court declines to reach a lodestar determination in this case.[5] *See Hensley*, 461 U.S. at 436-37 (explaining that a court is not required to reach a lodestar determination in every instance, and may simply accept or reduce a fee request within its discretion). Instead, the Court finds that Defendant is entitled to only half of the attorneys' fees it requests, or $239,940.90.

## B.     28 U.S.C. § 1927

Defendant also seeks fees from Plaintiff's counsel pursuant to 28 U.S.C. § 1927. (ECF No. 67 at 6.) Plaintiff bases this request on the same factors through which it attempts to prove entitlement to fees under 17 U.S.C. § 505. (*Id.*)

Section 1927 provides that: "Any attorney . . . who so multiplies the proceedings

---

Bard __; ____; Revise Reed Declaration; Revise Brief; Review E. Nowak Comments and Review Brief." (ECF No. 76-2 at 8.)

[4] For instance, on April 4, 2013, Mr. Quinn billed time to an office conference with Ms. Singer and Mr. Rich. (ECF No. 76-1 at 50.) Neither Ms. Singer nor Mr. Rich, however, had time entries for that day. (*Id.*)

[5] If the Court were to have made a lodestar determination, it would have reduced both Defendant's New York attorneys' hourly rates as well as the numbers of hours expended by all attorneys. *See Ward v. Siebel*, 2012 WL 2196054, at *3 (D. Colo. June 15, 2012) ("In the absence of adequate evidence of prevailing market rates for attorney fees, a district court may, in its discretion use other relevant factors, including its own knowledge, to establish the rate.").

in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 awards are appropriate "only in instances evidencing a serious and standard disregard for the orderly process of justice." *White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1427 (10th Cir. 1990) (internal quotations omitted). "Actions are considered vexatious and unreasonable if the attorney acts in bad faith . . . or if the attorney's conduct constitutes a reckless disregard for the duty owed by counsel to the court." *Shackelford v. Courtesy Ford, Inc.*, 96 F.Supp.2d 1140, 1144 (D. Colo. 2000). Moreover, the Tenth Circuit has stated that the statutory language in Section 1927 "necessarily excludes the complaint that gives birth to the proceedings, as it is not possible to multiply proceedings until *after* those proceedings have begun." *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1225 (10th Cir. 2006) (emphasis in original).

Defendant argues that, because of Plaintiff's counsel's conduct, it was compelled to litigate two motions to dismiss, two motions for protective order and two motions to stay discovery. (ECF No. 67 at 5.) Inspection of this case's docket, however, reveals that most of the multiplicative proceedings were due to the fact that the parties continued to fully brief Defendant's initial motion to dismiss (ECF No. 21) and motion to stay discovery (ECF No. 22) after the Complaint was superceded by the filing of the Amended Complaint (ECF No. 25). The Court subsequently found those motions to be moot. (ECF Nos. 34 and 35.) Additionally, the Court does not find that Plaintiff's

counsel acted in bad faith in its opposition to Plaintiff's motions for protective order. Since Plaintiff's only malfeasance was initiating this action and promoting its non-meritorious claims, the Court finds that Plaintiff's conduct did not multiply the proceedings "unreasonably and vexatiously."  See *Steinert*, 440 F.3d at 1225. Accordingly, Defendant's motion for attorneys' fees pursuant to 28 U.S.C. § 1927 is denied.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Attorneys' Fees (ECF No. 67) is GRANTED IN PART; and

2. Defendant is AWARDED attorneys' fees in the amount of $239,940.90.

Dated this 31st day of July, 2014.

BY THE COURT:

_____
William J. Martinez
United States District Judge