Case 1:12-cv-02663-WJM-KMT   Document 95   Filed 12/23/14   USDC Colorado   Page 1 of 16
Appellate Case: 13-1407   Document: 01019360139   Date Filed: 12/23/2014   Page: 1

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 23, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

STAN LEE MEDIA, INC.,

    Plaintiff - Appellant,

v.

THE WALT DISNEY COMPANY,

    Defendant - Appellee.

No. 13-1407

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### (D.C. NO. 1:12-CV-02663-WJM-KMT)

---

Robert S. Chapman, Eisner, Kahan, Gorry, Chapman, Ross & Jaffe (Jon-Jamison Hill, Eisner, Kahan, Gorry, Chapman, Ross & Jaffe, and John V. McDermott and Mark T. Barnes, Brownstein Hyatt Farber Schreck, LLP, Denver, Colorado, with him on the briefs), Beverly Hills, California, for Appellant.

James W. Quinn, Weil, Gotshal & Manges LLP (R. Bruce Rich, Gregory Silbert, Randi W. Singer, and Sabrina A. Perelman, Weil, Gotshal & Manges LLP, and Frederick J. Baumann and Holly C. Ludwig, Lewis Roca Rothgerger LLP, Denver, Colorado, with him on the briefs), New York, New York, for Appellee.

---

Before **TYMKOVICH**, **EBEL**, and **PHILLIPS**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

Over the course of the last three-quarters of a century, Marvel Enterprises created a comic universe of unparalleled proportions. With comic-book legend Stan Lee at the helm as editor-in-chief of its comic-book division, Marvel constructed a fictional landscape of imaginative superheroes, elaborate narratives, and overlapping storylines. During this time period, the commercial popularity of these comic-book characters, including iconic figures like Spider-Man and the Avengers, intensified, steadily gaining devoted followers eager to consume the product. Eventually, Marvel, which is now indirectly owned by the Walt Disney Company, parlayed the success of this comic universe into a multi-platform, billion-dollar empire with blockbuster motion pictures, merchandising, and live productions.

Not surprisingly, such success breeds litigation, sometimes a lot of it. And rivaling the size and scope of Marvel's make-believe universe is a burgeoning mass of very real litigation over the ownership of the intellectual properties in the many characters comprising the Marvel portfolio. A repeat participant in these ownership disputes is Stan Lee Media, Inc.

Stan Lee Media claims to own intellectual-property rights in a number of popular Marvel characters. Its claims derive from a 1998 contractual agreement with Stan Lee, in which he transferred all of his ownership rights in characters he created while working at Marvel to Stan Lee Media in exchange for salary and other benefits. That ownership interest is the predicate for the claim of copyright

infringement that Stan Lee Media brings here against Disney. Disney ended up with the Marvel characters when it acquired Marvel's parent company in 2009. Disney disputes whether Stan Lee Media has any interest whatever in the Marvel characters.

Although the ownership question might be complex, we need not consider it here because the Ninth Circuit recently provided an answer in *Stan Lee Media, Inc. v. Lee*, No. 12-56733, 2014 WL 5462400 (9th Cir. Oct. 29, 2014) (*Stan Lee Media v. Lee*), finding that Stan Lee Media's statement of ownership of the copyrights to the pre-1998 characters failed to plausibly allege a claim for relief. In other words, Stan Lee Media could not even allege any right to ownership of the disputed properties. And under well-settled legal principles, the Ninth Circuit's decision on the ownership issue is entitled to collateral-estoppel effect in subsequent cases involving claims for relief premised on that issue.

Thus, because Stan Lee Media is precluded from alleging ownership of the at-issue intellectual properties, Stan Lee Media's copyright-infringement claim fails as a matter of law. We therefore AFFIRM the district court's decision granting Disney's motion to dismiss.

## I. Background

In October 1998, Stan Lee entered into a written employment agreement (the 1998 Agreement) with a Colorado company he formed, Stan Lee Entertainment, Inc., to create new comic-book characters. Stan Lee

Entertainment is the predecessor to plaintiff, Stan Lee Media.  The contract explained that Lee assigned, conveyed, and granted "all right, title and interest [Lee] may have or control" in his creations and intellectual properties.  Aplt. App. at 31.  At the time, Marvel had employed Lee for approximately sixty years, and the 1998 Agreement expressly recognized that Lee would continue to work part-time for Marvel.

For reasons that are not apparent in the record, Lee entered into an agreement with Marvel in November 1998.  This time he assigned Marvel essentially the same rights to the comic book characters Stan Lee Media claims he granted to Stan Lee Entertainment through the 1998 Agreement.

In 2001, Stan Lee repudiated the 1998 Agreement, contending that Stan Lee Media committed material breach.  In the letter communicating as much, Lee's attorney indicated that "such material breaches expressly permit Stan to claim rights and ownership in the properties such as defined in the agreement, which I hereby do on his behalf, including the trademarks, copyrights, and . . . intellectual Property of the company."  Aple. App. at 29.  Over five years later, on November 28, 2006, Stan Lee Media recorded the 1998 Agreement with the United States Copyright Office in Vol. 3544, Doc. No. 426.  In a cover letter for this recordation, Stan Lee Media asserted that the 1998 Agreement transferred ownership rights from Lee to Stan Lee Media in many famous characters, including Spider-Man and Iron Man.

Throughout this time period, and carrying through to the present, Marvel exploited its comic universe by, among other things, selling and licensing the film rights to several characters and franchises to major production companies to create, sell, and distribute motion pictures. These efforts have been enormously profitable. Since its release in 2002, for example, the movie *Spider-Man* has grossed over $800 million worldwide.

Despite the value of the Marvel franchises, it was not until 2007 that Stan Lee Media started to assert ownership rights in the Marvel characters through litigation, filing lawsuits across the country in an effort to cash in on this financial success. To date, Stan Lee Media and related entities have filed numerous lawsuits, and courts from coast to coast have weighed in on the propriety of Stan Lee Media's assertion of rights in the Marvel characters. *See Stan Lee Media Inc. v. Lee*, No. 2:07-CV-00225, 2012 WL 4048871 (C.D. Cal. Aug. 23, 2012) (*Abadin II*); *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d 440, 456 (S.D.N.Y. 2011) *aff'd*, 471 F. App'x 14 (2d Cir. 2012); *Abadin v. Marvel Entm't, Inc.*, No. 09 Civ. 0715 (PAC), 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010) (*Abadin I*); *Stan Lee Media, Inc. v. Marvel Entm't, Inc.*, No. 07 Civ. 2238 (PAC) (S.D.N.Y. Mar. 15, 2007); *QED Prods., LLC v. Nesfeiled*, No. 07-CV-00225 (SVW) (SSX) (C.D. Cal. Jan. 8, 2007). And where there are numerous related lawsuits, the spotlight often shines on which lawsuits take precedence over others. Such is the case here, as many courts have singled out the Southern District of

New York's decision in *Abadin I* as a bar to relitigation of certain claims and issues. *See, e.g.*, *Abadin II*, 2012 WL 4048871, at *7; *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d at 456.

In this respect, the district court's decision is typical. Stan Lee Media filed a complaint against Disney in the District of Colorado, alleging a single cause of action for federal copyright infringement. It claimed that Disney's production and distribution of several movies, including *X-Men: First Class* and *Marvel's the Avengers*, as well as other revenue-generating projects, intentionally violated Stan Lee Media's exclusive rights to use and exploit the characters it purportedly owns under the 1998 Agreement. The district court granted Disney's motion to dismiss in reliance on its view that *Abadin I* precluded the Colorado litigation. According to the district court, *Abadin I* definitively decided that Stan Lee Media could not assert ownership rights in the Marvel characters.

Since the district court's decision in this case, the Ninth Circuit has weighed in with yet another decision involving the usual players in a case called *Stan Lee Media v. Lee*. In that case, the court decided an appeal from the Central District of California in which Stan Lee Media had sued Stan Lee, among others, for a declaration regarding the intellectual-property rights subsumed in the 1998 Agreement. The district court dismissed the claims on res judicata grounds, citing *Abadin I*'s preclusive barrier. On appeal, however, the Ninth Circuit

-6-

affirmed on an alternative basis, concluding that Stan Lee Media could not assert ownership in the disputed characters:

> This appeal challenges the dismissal of Stan Lee Media, Inc.'s (SLMI) claims that its intellectual property rights in comic book characters were violated by the legendary comic book creator Stan Lee. We affirm because SLMI failed to satisfy pleading requirements. To survive a motion to dismiss, a party must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Accepting as true the allegations made by SLMI in its complaint . . . the claims to the vast majority of properties fall short of the pleading requirement established in *Iqbal–Twombly*.

*Stan Lee Media v. Lee*, 2014 WL 5462400, at *1.

The Ninth Circuit rejected Stan Lee Media's "central contention . . . that, in October 1998, Stan Lee assigned [Stan Lee Media] rights to valuable comic book characters, including Spider-Man, The X-Men, The Incredible Hulk, The Fantastic Four, Iron Man, Thor, Daredevil, and others." *Id.* According to the Ninth Circuit, this proposition was "simply implausible" because Stan Lee Media "never announced that it owned rights to these characters . . . , licensed the characters, produced content related to the characters, or asserted or attempted to enforce its ownership rights." *Id.* Particularly because others continually generated revenue from the characters and franchises in the years following the 1998 Agreement, the Ninth Circuit reiterated, Stan Lee Media's "failure to publicize, protect, or exploit

its right to profit from the characters establishes that these claims are simply implausible. . . ." *Id.*

In short, the court found that Stan Lee Media's claims of ownership failed to plausibly state a claim for relief, and that any cause of action predicated on ownership was therefore legally and factually deficient.

## II. Analysis

We review de novo the district court's grant of a motion to dismiss for failure to state a claim. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). We can affirm on any grounds supported by the record. *Elwell v. Byers*, 699 F.3d 1208, 1213 (10th Cir. 2012).

Under this standard, we conclude that Stan Lee Media cannot state a claim for copyright infringement.

### A. *Collateral Estoppel*

Collateral estoppel bars the successive litigation of any issue of law or fact "once [it has] been determined by a valid and final judgment." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). That is, the doctrine "prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit." *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009). In this way, collateral estoppel, frequently referred to as "issue preclusion," aims to promote judicial efficiency, encourage reliance on previously adjudicated matters, and avoid inconsistent rules of decision. *Nichols v. Bd. of*

*Cnty. Comm'rs of Cnty. of La Plata, Colo.*, 506 F.3d 962, 967 (10th Cir. 2007). Federal law governs the scope of the preclusive effect given to federal-court decisions. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 500 (2001).

For an issue to be collaterally estopped, the party invoking the doctrine has the burden of establishing four separate elements:

> (1) the issue previously decided is *identical* with the one presented in the action in question,
>
> (2) the prior action has been *finally adjudicated on the merits*,
>
> (3) the party against whom the doctrine is invoked was a *party or in privity with a party* to the prior adjudication, and
>
> (4) the party against whom the doctrine is raised had a *full and fair opportunity to litigate* the issue in the prior action.

*Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 (10th Cir. 1992) (emphasis added) (internal quotation marks and citation omitted); (paragraph structure altered); *see also Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009). As long as the issues are identical, "issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, *even if the issue arises when the party is pursuing or defending against a different claim*." *Park Lake Res. LLC v. U.S. Dep't of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (emphasis added).

-9-

Our consideration of a party's prior "full and fair opportunity to litigate an issue '[o]ften . . . will focus on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties.'" *Murdock*, 975 F.2d at 689 (quoting *Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990)). We have found a party "cannot now complain that it did not have a full and fair opportunity to litigate the issue [when] [i]t asked the [prior] court to decide the issue in its brief, and it argued its position extensively" in the prior proceeding. *Id.* at 690.

The Supreme Court has also advised that the issue decided must be "essential to the judgment." *Arizona v. California*, 530 U.S. 392, 414 (2000); *see also In re Corey*, 583 F.3d at 1251. That means that "issue preclusion will not apply in the absence of a valid and final judgment to which resolution of a particular issue was necessary." *C & M Props., L.L.C. v. Burbidge (In re C & M Props., L.L.C.)*, 563 F.3d 1156, 1166 (10th Cir. 2009) (quotation marks omitted).[1]

---

[1] Where the prior court gave alternative rulings on a given issue, and where each is sufficient to support the result, neither is typically given issue-preclusive effect because "it cannot be said that either issue was actually and necessarily decided." *Turney v. O'Toole*, 898 F.2d 1470, 1472 n.1 (10th Cir. 1990); *see also* Restatement (Second) of Judgments § 27, cmt. I (1982) ("If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone."). Thus, even "if a decision could have been rationally grounded upon an issue other than that which the defendant seeks to foreclose from consideration, relitigation
(continued...)

Only where the party invoking the doctrine shows that all the elements are met will collateral estoppel operate as a preclusive defense. *Cf. Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) (finding the defendant has the burden of proving all elements of an affirmative defense).

We have thoroughly reviewed the Ninth Circuit's decision, the briefing in both that court and the Central District of California, and the parties' supplemental briefing on *Stan Lee Media v. Lee* in this case. That review yields the firm conclusion that none of the elements of collateral estoppel can be reasonably debated—each element is present here.

The first three elements are obviously met. First, the issue of Stan Lee Media's ownership interest in the pre-1998 Marvel characters, which include Iron Man, the Avengers, and the X-Men, was clearly decided against Stan Lee Media in *Stan Lee Media v. Lee*. That issue is substantively identical to the one we consider here.

Second, the Ninth Circuit's dismissal for failure to plead a viable cause of action is a decision on the merits under that circuit's (and every other circuit's) law. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) ("[A] dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' to which res judicata applies."); *see also Hagans v. Lavine*, 415 U.S. 528, 542

---

[1](...continued)
of the issue is not precluded under the doctrine of issue preclusion, because the issue was not necessary or essential to the judgment." 21A Fed. Proc. § 51:261.

(1974) ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits."); Restatement (Second) of Judgments § 19 cmt. d (1982). Furthermore, the issues decided within that decision, even though it was not submitted for publication, are clearly collaterally binding. 9th Cir. R. 36-3 ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.").

Third, Stan Lee Media concedes that it was a party to the Ninth Circuit's decision.

Only the fourth factor is seriously contested. Stan Lee Media alleges that it did not have a full and fair opportunity to litigate the ownership issue in *Stan Lee Media v. Lee*. To this end, it claims (1) the parties did not raise or litigate the plausibility standard in the prior proceedings, and (2) the fact that Stan Lee Media could potentially amend its complaint prevents the application of issue preclusion.

We are not persuaded. The defendants in *Stan Lee Media v. Lee* alleged that the ownership aspect of Stan Lee Media's declaratory judgment claim was insufficiently plausible to meet the pleading standard in a motion to dismiss before the district court.[2] Stan Lee Media responded in its opposition, devoting

---

[2] We take judicial notice of the pleadings and other documents of public record filed in the Ninth Circuit and the Central District of California in *Stan Lee Media v. Lee*. Fed. R. Evid. 201(b)(2) (explaining that the court can take judicial notice of a fact "that is not subject to reasonable dispute because it . . . can be
(continued...)

five full pages to explaining why its copyright infringement claims met the required pleading standard under *Twombly*, *Iqbal*, and Rule 8 of the Federal Rules of Civil Procedure. Although the district court dismissed the complaint on other grounds, the issue was properly preserved for appeal. And defendants raised, and again Stan Lee Media responded, to the plausibility argument on appeal to the Ninth Circuit. The Ninth Circuit, based on the briefing before it, found the plausibility argument to be the most persuasive, concluding that Stan Lee Media could not satisfy the federal pleading standard on its request for a declaration of ownership rights. This is a full and fair opportunity to litigate the issue by any standard.

Nor are we convinced that the possibility of an amendment to Stan Lee Media's complaint in federal court in California—to the extent it is even available[3]—bars the application of collateral estoppel. Dismissals for failure to state a claim are presumptively with prejudice because they fully dispose of the

---

[2](...continued)
accurately and readily determined from sources whose accuracy cannot be reasonably questioned."); *see also Estate of McMorris v. C.I.R.*, 243 F.3d 1254, 1258 n.8 (10th Cir. 2001) (explaining that we can take judicial notice of documents and docket materials filed in other courts).

[3] Stan Lee Media's conclusory allegations that it has additional facts that would transform its implausible claim of ownership into a viable cause of action are untenable. Indeed, considering the nature of the claims brought against Stan Lee in that case, it presses the limits of reasonableness to suggest that these alleged facts were withheld from the complaint and subsequent briefing in both the district court in California and the Ninth Circuit. *See Sheldon v. Vermonty*, 269 F.3d 1202, 1207 n.5 (10th Cir. 2001).

case. *See* Fed. R. Civ. P. 41(b); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). By affirming on an alternative merits-based ground, the Ninth Circuit did not alter the substance of the district court's judgment or enlarge defendants' rights—under either analysis, the end result was a granting of the motion to dismiss *with prejudice*. And given the Ninth Circuit's determination of the ownership issue, which will henceforth carry issue-preclusive effect, it is clear that any attempts to amend would be futile because all new claims predicated on copyright ownership would likewise be subject to dismissal. *See Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). Stan Lee Media points to no case dictating an alternative conclusion.

Finally, the Ninth Circuit's rationale for dismissal is singular and readily discernible: Stan Lee Media's ownership claim deriving from the 1998 Agreement is "simply implausible." In all events, this issue was essential to the judgment, and there are no alternative holdings or other obstacles to the application of collateral estoppel.

In sum, Disney has met its burden to establish all of the elements of issue preclusion with respect to whether Stan Lee Media can enforce ownership rights in the Marvel properties.

### B. *Copyright Infringement Action*

With the issue of copyright ownership conclusively decided against it, Stan Lee Media's claim for copyright infringement necessarily fails as a matter of law.

To state a claim for copyright infringement, a plaintiff must show "(1) ownership of a valid copyright and (2) 'copying of constituent elements of the work that are original.'" *TransWestern Publ'g Co. v. Multimedia Mktg. Assocs.*, 133 F.3d 773, 775 (10th Cir. 1998) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  As with any cause of action, a plaintiff's failure to sufficiently plead a required element necessitates dismissal for failing to state a claim.  *See Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1104 (10th Cir. 2009).

Stan Lee Media pleaded a single count of copyright infringement against Disney premised on Stan Lee Media's claimed ownership of the Marvel characters.  This cause of action sought damages for Disney's alleged infringing use within the past three years, including for producing and distributing *Marvel's the Avengers* and other works.[4]  Viewed from any angle, the Ninth Circuit's decision precludes Stan Lee Media's argument that it owns the copyrights to the

---

[4] By limiting its challenge to Disney's alleged infringing activities within the past three years, Stan Lee Media sought to satisfy the Copyright Act's three-year statute of limitations.  *See* 17 U.S.C. § 507(b).  But because Stan Lee Media's claim of a copyright ownership interest stems from a contractual assignment, its infringement cause of action accrued in 2001 when Stan Lee expressly repudiated the 1998 Agreement.  *See Ritchie v. Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005); *see also Seven Arts Filmed Entm't Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1256–57 (9th Cir. 2013).  Where ownership is the basis of the copyright dispute, this "accrual-upon-express-repudiation" rule prohibits infringement actions when the freestanding ownership action would be time-barred.  *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011).  Put simply, Stan Lee Media should have brought any copyright infringement action within three years of January 30, 2001, when Stan Lee unambiguously terminated Stan Lee Media's intellectual-property rights under the 1998 Agreement.

Marvel properties forming the basis for this complaint.  Accordingly, Stan Lee Media cannot state a claim for copyright infringement against Disney, and the district court correctly granted Disney's motion to dismiss.

### C.  *Alternative Grounds*

Although our reasoning differs from the district court's, the preceding analysis is sufficient to affirm the district court's decision.  *Elwell v. Byers*, 699 F.3d 1208, 1213 (10th Cir. 2012).  We need not, therefore, rule on the extent to which *Abadin I* is entitled to issue-preclusive effect regarding Stan Lee Media's alleged ownership interest in the copyrights involved in this case.  Nor do we take up the other issues raised by Disney, including a lack of personal jurisdiction in the District of Colorado, as alternative grounds to affirm the decision below.

## III.  Conclusion

The district court's decision dismissing Stan Lee Media's complaint for failure to state a claim is AFFIRMED.