1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF COLORADO

3     Case No. 12-cv-02663-WJM-KMT

4     _____

5     STAN LEE MEDIA, INC.,

6          Plaintiff,

7     vs.

8     THE WALT DISNEY COMPANY,

9          Defendant.

10    _____

11          Proceedings before KATHLEEN M. TAFOYA, United

12    States Magistrate Judge, United States District Court for the

13    District of Colorado, commencing at 1:33 p.m., May 7, 2015,

14    in the United States Courthouse, Denver, Colorado.

15    _____

16          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17    ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18    _____

19                    APPEARANCES

20          ROBERT S. CHAPMAN and JON-JAMISON HILL, Attorneys

21    at Law, appearing for the plaintiff.

22          RANDI W. SINGER and HOLLY C. LUDWIG, Attorneys at

23    Law, appearing for the defendant.

24    _____

25                  MOTIONS HEARING

AVERY WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
303-825-6119        FAX 303-893-8305

 1                    APPEARANCES (Cont'd)

 2           MARK T. BARNES, Attorney at Law, appearing for the

 3    plaintiff.

 4                    P R O C E E D I N G S

 5           (Whereupon, the within electronically recorded

 6    proceedings are herein transcribed, pursuant to order of

 7    counsel.)

 8           THE CLERK:  All rise.  Court is in session.

 9           THE COURT:  Good morning, everyone.  Please be

10    seated.  We are here today in Case Number 12-cv-2663, Stan

11    Lee Media, Inc., plaintiff, versus The Walt Disney Company.

12    May I have appearances first for Stan Lee Media?

13           MR. CHAPMAN:  Good afternoon, Your Honor.  Robert

14    Chapman for Stan Lee Media.

15           MR. HILL:  Good afternoon, Your Honor.

16    Jon-Jamison Hill.

17           MR. BARNES:  Your Honor, Mark Barnes, from

18    (inaudible), local counsel for SLMI.

19           THE COURT:  All right.  And for Walt Disney

20    Company.

21           MS. SINGER:  Good afternoon, Your Honor.  Randi

22    Singer for Weil Gotshal & Manges for The Walt Disney Company.

23           MS. LUDWIG:  Good afternoon, Your Honor.  Holly

24    Ludwig with Lewis Roca Rothgerber, local counsel for The Walt

25    Disney Company.

```
 1              THE COURT:  All right.  And on the telephone I
 2      think I have -- do I have Mr. Wolk and Mr. Millstein?
 3              MR. MILLSTEIN:  Yes, Your Honor, you do.  This is
 4      Mr. Millstein speaking.
 5              THE COURT:  All right.  And, Mr. Wolk, are you
 6      able to hear me as well?
 7              MR. WOLK:  Yes, Your Honor.  Thank you.
 8              THE COURT:  All right.  Does that get everyone on
 9      the phone and here?  All right.  Hearing nothing I'll assume
10      that it does.
11              We're here to talk about three separate motions.
12      And Mr. Millstein has recently entered an appearance in this
13      case representing Mr. Wolk.  He has represented in his entry
14      and in the pleadings that he has filed here today that -- or
15      yesterday I guess, the day before, that he is willing to and
16      will accept service of subpoenas on Mr. Michael B. Wolk and
17      for that reason I allowed them to appear by phone here today.
18      If that had not been the case I would not have allowed them
19      to appear by phone.  They would have had to come here.  So
20      their agreement, however, Mr. Millstein and Mr. Wolk's
21      agreement which I am at this point reducing to an order to
22      accept service of the deposition, essentially the deposition
23      subpoena, that will need to be reissued.  I think that was
24      issued by Walt Disney for deposition testimony and production
25      of documents.  That was back awhile, I think in November that
```

1    was attempted to be served.  And so that concerns the motion

2    Number 92.  So with Mr. -- with the order to Mr. Millstein

3    and Mr. Wolk that service will be accepted.  I think that

4    moots Number 92, the motion to confirm service.  And what I

5    would like to do before we talk about the other two motions

6    which are here to withdraw as counsel on behalf of plaintiff,

7    I'd like to get some dates certain where this deposition is

8    going to take place.  So I guess, Walt Disney, get out your

9    calendar and tell me what date you want.  And, Mr. Millstein,

10   if you would check your calendar and your client's

11   availability.  Is this going to be taken in New York?

12            MS. SINGER:  We're -- we're happy to take it in

13   New York if that's -- we're happy to take it wherever Mr.

14   Wolk is willing to appear.

15            THE COURT:  All right.

16            MS. SINGER:  New York is fine.

17            THE COURT:  So, Mr. Wolk, where -- where -- well,

18   Mr. Millstein, let me ask you.  Where does Mr. Wolk wish to

19   appear for the deposition?

20            MR. MILLSTEIN:  Well, Mr. Wolk is a registered

21   agent for SLMI.  He's not a member of the board of directors.

22   So to the extent that, you know, Mr. -- if -- we will accept

23   service of Mr. Wolk.  And New York would be -- would be

24   acceptable for Mr. Wolk.  But I think if it's a deposition in

25   aid of execution you would probably -- they would probably

1    want to depose a member of the board of directors of SLMI.

2    And I made initial contact and said -- you know, with one of

3    those members of the board of directors about attempting to

4    have a deposition taken.  So if it's Mr. Wolk, New York, if

5    it's -- I believe it will be a gentleman named Mr. Avideen

6    (phonetic), it would probably be in Los Angeles if that was

7    acceptable to The Walt Disney Company.

8            MS. SINGER:  The Walt Disney Company really would

9    like to depose Mr. Wolk as -- as really the deposition is

10   about the funding and the sources of funding and the assets

11   of the corporation.  And whether or not Mr. Wolk is actually

12   a member of the board of directors, there have been

13   representations in various Court filings by Mr. Chapman and

14   Mr. Barnes that Mr. Wolk is, in fact, the client contact and

15   is the person who has been directing the litigation and so we

16   believe he is -- and he is the registered agent.  We believe

17   he is the person who would have the most information about

18   the funding and the assets.

19           THE COURT:  All right.  So I'm not going to speak

20   to Mr. Avideen at the moment because I -- I don't -- that's

21   really not before me.  What's before me is this service on

22   and deposition for Mr. Wolk.  So New York is the place.  So

23   let's throw out some dates.  I want this done within the next

24   30 to 45 days.

25           MS. SINGER:  We could do -- we would -- we would

1    want to have the documents at least a couple of days in

2    advance.  Could we do us for the documents within 14 days?

3    And then --

4              THE COURT:  Is that -- is that doable, Mr.

5    Millstein?

6              MR. MILLSTEIN:  Yeah.  My calendar -- so we're

7    looking at something about 45 days out in total.  My calendar

8    is relatively open then so I'm sure we could find a day and

9    I'm only -- you know, it's only an hour train ride so I'll

10   make myself as available as possible.  And I know since Mr.

11   Wolk is not working right now his availability -- you know,

12   we'll -- we'll be able to make time in his schedule to do it.

13   I would ask though that it be as close to the 45-day mark as

14   possible to get him more time to convalesce before the --

15   before the hearing.

16             THE COURT:  All right.  Well, can you produce

17   documents within 14 days?

18             MR. MILLSTEIN:  Michael?

19             MR. WOLK:  I'm happy to -- I'm happy to provide

20   anything that's relevant as SLMI's assets.  My own personal

21   assets are not relevant to that, but I'm happy to provide

22   anything I have relevant to SLMI's assets.

23             THE COURT:  I'm -- I'm not (inaudible) --

24             UNIDENTIFIED SPEAKER:  (Inaudible).

25             THE COURT:  -- what was asked for on the

```
1    deposition, the form -- the first deposition because you're

2    going to get another deposition subpoena that sets out the

3    date that we all agree on.  And will it have the same

4    attachment as the documents -- for the documents?

5           MS. SINGER:  It will have basically the same

6    attachment which is all about SLMI's assets and funding for

7    the litigation.

8           THE COURT:  Okay.  So it -- that's -- so it will

9    have the same attachment, Mr. Wolk, as the former one did.

10   So I'm sure your attorney has that.

11          MR. WOLK:  Yes, Your Honor.

12          THE COURT:  All right.  So let's -- let's have

13   production of the documents to Walt Disney then by the 21st

14   of May and then let's set the deposition out into mid June or

15   -- or so, somewhere in the mid to latter part of June.

16          MS. SINGER:  Your Honor, I could do any day the

17   week of June 15th.

18          THE COURT:  Any day the week of June 15th.  Mr.

19   Millstein?

20          MR. MILLSTEIN:  I'm open through that week as well

21   so I'm going to defer to Mr. Wolk on what works best for him.

22          THE COURT:  Mr. Wolk?

23          MR. WOLK:  I -- I would intend to show up at that

24   time.  Yes.

25          THE COURT:  All right.  So what day do you want to
```

1    pick?

2               MR. WOLK:  Any date that -- any date that we --

3               MR. MILLSTEIN:  Let's do Wednesday if that's okay,

4    the Wednesday of that week.

5               THE COURT:  Okay.  So June 17.

6               MS. SINGER:  Sure.

7               MR. MILLSTEIN:  Yeah.

8               THE COURT:  All right.  So the -- the deposition

9    subpoena that will be sent to you, Mr. Millstein, and I will

10   leave it up to the attorneys to get together and make sure

11   the addresses are right, but if it's sent to the address that

12   you've used on your Court filings that would be adequate,

13   right?

14              MR. MILLSTEIN:  That is correct, Your Honor.

15              THE COURT:  All right.  So how soon can you get

16   out the deposition subpoena or the aids subpoena?

17              MS. SINGER:  We -- we can get that out tomorrow,

18   Your Honor.

19              THE COURT:  All right.  So look for it tomorrow.

20              MR. MILLSTEIN:  Okay.  Great.

21              THE COURT:  And then I'll consider that really the

22   end of 92.  So document Number 92 which is the motion to

23   confirm service is going to be denied at this time as moot

24   because we have set up a different time.  We have agreement

25   over and an order, by the way, but agreement over acceptance

         1    of service so there shouldn't be any further problems.  Now,

         2    I'm not naive enough to think that there won't be, but -- but

         3    I don't think there should be.  So I'll leave it at that.

         4           So let's take up the issue of the attorney

         5    withdrawals.  And let me just go through briefly.  I do want

         6    to hear from counsel, but I do want to put on the record that

         7    I have looked at the case kind of as a whole from the docket.

         8    I haven't really -- I mean, I've done some things myself in

         9    the case.  I don't remember the case real well, but I know

        10    we've had some hearings and there was discovery and all that

        11    sort of thing.  But the case was filed October 9th, 2012.

        12    The complaint was signed by Robert Chapman and John

        13    McDermott, so both counsel that now want to withdraw.  And

        14    I'm including other members of the law firm that entered,

        15    okay, not the law firm as a whole, but the -- the member --

        16    the people that entered.  They signed the complaint.  Both of

        17    those people proceeded completely throughout the litigation.

        18    There was a motion to dismiss filed and defended on

        19    September 5th, 2013.  The district judge granted Disney's

        20    motion to dismiss and then entered a final judgment on

        21    September 16.  Then in September Disney filed a bill of cost

        22    and a motion to recover attorney's fees.  And all of this is

        23    being handled at the District Court level, not at my

        24    magistrate judge level.

        25           I noted that on the 2nd of October, 2013,

1   plaintiff filed a notice of appeal regarding the dismissal of

2   the case and that's Document Number 68.  And, again, that was

3   signed by Robert Chapman and John McDermott.  Costs were

4   taxed at the end of October of 2013, 20 -- in the amount of

5   2504.45 against the plaintiff.  And then in July, the very

6   end of July, July 31st, 2014, the district judge awarded

7   attorney's fees to Walt Disney Company in the amount of --

8   and against the plaintiff in the amount of $239,940.90 which

9   is, of course, why we're here.

10          Now, a notice of appeal was filed on that fee

11   award on August 28th, 2014, and, again, on the notice of

12   appeal it was filed by Robert Chapman and John McDermott.

13   Now, John McDermott did -- actually Robert Chapman -- John

14   McDermott didn't actually sign or appear as a signatory on

15   that document, but he was listed as a person that was served.

16   On November 7th, 2014, the Clerk of the Court entered a writ

17   of execution against Stan Lee Media, Inc.  Among others, both

18   Mr. Chapman and Mr. McDermott received electronic

19   notification of that -- that entry.  And then on 12/5 of

20   2014, that motion, 92 to confirm service by Disney, was --

21   was filed and there was a response filed to that, and, again,

22   it was signed by Robert S. Chapman with John McDermott.  And

23   then on -- two days before Christmas on December 23rd, 2014,

24   the Tenth Circuit dismissed the appeal -- the plaintiff's

25   appeal of the judgment, so the original judgment that was

1    entered.  And then I set a hearing in February of 2015, on

2    that motion to confirm service that we've just now resolved.

3    And I reset it a couple of times.  It was reset to March 2nd

4    and then it went to March 16th.  So we were all set to have

5    the hearing on March 16th, and on March 12th, four days

6    before that hearing, Mr. Chapman and the attorneys in his

7    firm moved to withdraw.  And on the 13th we got an emergency

8    motion from Mr. McDermott and people in his firm saying they

9    needed to withdraw as well, and somewhat reactionary I can't

10   -- I vacated the hearing because there was no attorneys that

11   wanted to appear for plaintiff.

12          Disney filed their objections to the withdrawals

13   on April 4th, or, excuse me, April 1st, 2015.  And then on

14   the 2nd I set today's hearing and commanded everyone to

15   appear in person so that we could actually talk about this

16   and get this resolved.  In the interim between when I set the

17   hearing and now on the 28th of April the Tenth Circuit

18   dismissed the appeal on the attorney fees portion as filed by

19   plaintiff early on for lack of prosecution.

20          Then on -- after some -- few entries onto the

21   docket Mr. Millstein did enter his appearance on May 5th.

22   And then based on, as I said, Mr. Millstein's representation

23   and now verified by Mr. Wolk as well that they would accept

24   service from Walt Disney on this -- in aid of this judgment I

25   let them appear by phone.  No attorney at any point has now

     1    tried to enter an appearance on behalf of Stan Lee Media to

     2    replace those that want to withdraw which means that -- I

     3    don't really much know exactly what it means because, you

     4    know, obviously a company can't appear without counsel.

     5           In my view this last series of withdrawals of

     6    attorney is a neat little trick and it looks to me like after

     7    filing all of these suits all around the country and

     8    especially this one here which is the only one I'm really

     9    concerned with, now that the worst has happened which

    10    everyone had to be prepared for, frankly, because I think

    11    that whenever you undergo filing a lawsuit there's a chance

    12    when you file the lawsuit that you're going to win big and if

    13    you lose there's a chance you could get stuck with fees and

    14    costs.  I mean, that's always the case in any lawsuit.  So

    15    you had to know and your -- I think your clients had to be

    16    advised that this -- this is a worst-case scenario outcome.

    17    You know, it probably isn't the worst case because I noticed

    18    that Walt Disney got its fees cut quite a bit.  But it's --

    19    it's not a great outcome.  But I don't know why you think the

    20    Court would let you cut and run when it's time to pay the

    21    piper.  That said, the case is just about over and with this

    22    deposition I think that probably it will be over as far as

    23    the lawyers are concerned.  So my inclination at this point

    24    without hearing from you in person is that I should deny your

    25    motions to withdraw until after the deposition is taken.  At

```
 1    that point I think our case is somewhat closed.  Now, that

 2    doesn't mean that it couldn't be reopened, but this smacks to

 3    me of -- of unfairness to the Court that you know that these

 4    motions -- this motion is pending.  You know what's going on.

 5    There's stuff going on in the United States with -- in other

 6    cases here.  As a matter of fact, a writ is filed I think

 7    with the Supreme Court in one of them.  And two days or

 8    four days before the hearing everybody, uh-huh, we're not

 9    going to appear anymore.  I don't -- I don't believe that

10    it's because they're not paying you.  They may not be paying

11    you.  They don't seem to be paying anybody.  But I think this

12    is a tactical maneuver and I'm not going to let you do it

13    unless you convince me otherwise.

14            MR. CHAPMAN:  Your Honor, if I might, Robert

15    Chapman.  Your Honor, in the recitation you gave of the

16    procedure it wasn't entirely correct.  The appeal in front of

17    the Tenth Circuit was not dismissed.  It was fully briefed

18    and argued and decided.

19            THE COURT:  Of the -- of the case in chief, the

20    judgment?

21            MR. CHAPMAN:  Yes.

22            THE COURT:  Right.  Yes.

23            MR. CHAPMAN:  And the attorney's fees appeal was

24    also fully briefed.  And we filed motions to withdraw in

25    front of the Tenth Circuit which were granted on this same
```

1    showing.  And I think a -- an assumption by the Court that

2    somehow we filed our motions as a tactical maneuver is

3    unwarranted.  We were prepared to appear on this motion which

4    is 92 the first time it was set for hearing and the Court

5    continued the hearing.  We were prepared to appear the second

6    time and the Court continued the hearing.  And we then filed

7    our motion after we had not been paid for a lengthy period of

8    time after we had completed the briefing and we had done a

9    great deal of work.  We were not getting communications from

10   our client.  Our firms were not involved in any other

11   litigation around the country about this.  It was just this

12   litigation.

13          And if Your Honor reviews the Tenth Circuit

14   opinion, the Tenth Circuit opinion actually has a footnote

15   pointing out that the argument we made about the

16   incorrectness of the District Court's decision on the motion

17   to dismiss was actually well-taken, but the Tenth Circuit

18   believed that it was bound by a Ninth Circuit opinion that

19   came in after we had already argued the Tenth Circuit

20   decision.

21          So we've been handling this faith -- this case in

22   complete good faith.  We were prepared to make all

23   appearances.  Because of the Court's schedule the hearings

24   were continued, but we were prepared to get on planes and

25   come out here.  And Mr. Barnes' firm was prepared to show up.

1    So there was nothing tactical about -- excuse me, nothing

2    tactical about our motions to withdraw other than we had

3    reached a point where we were getting no communications from

4    our client.  We were not getting paid.  We had made sure that

5    everything was fully briefed and fully handled and that's the

6    point that we filed our motions.  The hearing could have gone

7    on on the 16th and we would have been here, but Your Honor

8    took that off calendar.  We've made the identical showing to

9    the Tenth Circuit and that motion was granted.  So I believe

10    the inference Your Honor is drawing from what we have done is

11    completely unsupported and incorrect.

12              THE COURT:  Okay.  How about -- anyone else want

13    to speak to that?

14              MR. BARNES:  Yes, Your Honor.  Mark Barnes, local

15    counsel.  Our firm really has just -- I would second in terms

16    of this notion of --

17              MR. MILLSTEIN:  Pardon me.  We can't hear through

18    the telephone.  You need to speak into the mic maybe.

19              MR. BARNES:  I'm sorry.

20              THE COURT:  And if it's easier just go to the

21    podium.

22              MR. BARNES:  That's fine.

23              THE COURT:  That's fine.

24              MR. BARNES:  I just want to echo that our firm has

25    had nothing to do with lawsuits in any other part of the

1    country.  We were retained just as local counsel.  That's the

2    only role we've really served.  We haven't been in direct

3    communication with the client other than from the very

4    initiation of this litigation.  We've been serving as local

5    counsel.  So our withdrawal was sort of reactionary to the

6    lead counsel who's saying they can't get in touch with the

7    client, aren't getting paid.  That's why we followed.  We

8    weren't in a position to say okay, lead counsel is out so now

9    we're taking over the case.  That just has never been the

10   role that we've played in this case.

11        THE COURT:  All right.  Has there been any attempt

12   to get other counsel for Stan Lee Media, Inc.?

13        MR. CHAPMAN:  Your Honor, I have spoken to Mr.

14   Wolk's wife who's not a lawyer, who told me about his illness

15   and his hospitalization, and she put me in touch with Mr.

16   Millstein who has appeared on behalf of SLMI I understand in

17   other cases around the country.  And I have had discussions

18   with Mr. Millstein and he's been talking on behalf of Mr.

19   Wolk to me.  And I have talked with Mr. Millstein about the

20   impact of our firms withdrawing and getting our motion

21   granted at the Tenth Circuit.  So those are the efforts that

22   have been made.  Mrs. Wolk told me she was contacting other

23   lawyers and I heard from Mr. Millstein and I've been in

24   communication with him and the results we see today.

25        THE COURT:  All right.  Let me ask lawyers for The

```
 1    Walt Disney Company, it seems to me that Mr. -- Mr. Millstein
 2    is not entering on behalf of Stan Lee Media, Inc.  He -- he
 3    entered, more or less, a special appearance on behalf of Mr.
 4    Wolk.  But I'm not sure that Stan Lee Media actually needs
 5    counsel anymore and I believe that his entry on behalf of Mr.
 6    Wolk and his agreement to kind of accept service of process
 7    and get at least this deposition set up -- and apparently he
 8    has information to talk to you about about who the board --
 9    may be interviewed on the -- or deposed in the board of
10    directors, that maybe that's enough.  Do you -- do you
11    persist in your objection to the withdrawal of both of these
12    other law firms?
13         MS. SINGER:  Your Honor, we do because in Mr.
14    Millstein's filing he very carefully appears only on behalf
15    of Mr. Wolk and goes on to say that Mr. Wolk is not a party,
16    Mr. Wolk is not on the board of directors, and has made a lot
17    of statements where we see Mr. Wolk distancing himself now
18    that there is a judgment certain.
19         The only thing I would add to Your Honor's
20    recitation is that there's actually a second motion in the
21    Tenth Circuit.  The Walt Disney Company made a motion for
22    attorney's fees that were incurred in the appeal on the
23    merits brief in the merits appeal.  That was fully briefed,
24    however, now that counsel has withdrawn and the Tenth Circuit
25    has allowed them to withdraw we're actually not certain
```

 1    procedurally what happens because as Your Honor has noted,

 2    they're a corporation and they cannot appear pro se.  So we

 3    have this fully briefed motion in front of the Tenth Circuit

 4    and we're in the process of working to determine sort of

 5    procedurally what happens next.  And we really would prefer

 6    not to be in a position in this Court if there is another

 7    counsel who makes an appearance on behalf of SLMI, what -- we

 8    really do not want to be in the position where our adversary

 9    is an unrepresented corporation.  And obviously since the

10    lawsuit is more or less concluded there's absolutely no

11    upside to having anybody else appear and so really no

12    incentive for them to have substitute counsel.  And so we

13    really don't want to be left again with the situation where

14    Mr. Wolk distances himself from SLMI and we're left holding

15    the bag with a judgment against an unrepresented corporation

16    and it's very difficult for us to take any actions against

17    them.

18              THE COURT:  Well, I mean, I understand that you

19    don't want that, but attorneys don't want clients that don't

20    pay them either.  And there's only -- there's a limit to --

21    to how long you can keep attorneys in a case once someone has

22    a judgment against them.  It's not uncommon that attorneys

23    withdraw at some point.  I mean, they have gone all through

24    the appellate process.

25              MS. SINGER:  Understood, Your Honor.  I think at

1    this point we now have a deposition on the books for about

2    six weeks from now and I don't think there would be any

3    additional fees or anything else for them to do so they won't

4    be incurring any other bills in that six weeks.  So if Your

5    Honor would delay the decision at least until after the

6    deposition is taken that would be The Walt Disney Company's

7    preference here.

8              THE COURT:  All right.  As -- as opposed to what?

9              MS. SINGER:  As opposed to granting the motion to

10   withdraw today.

11             THE COURT:  Okay.

12             MR. CHAPMAN:  Your Honor, what I hear from Miss

13   Singer is there's a concern by Walt Disney Company about the

14   proceedings in the Tenth Circuit, but the Tenth Circuit has

15   already granted our motion to withdraw so that can't impact

16   the showing made before Your Honor.  And I would reassert,

17   the client has not opposed us withdrawing.  I don't believe

18   Disney has standing to oppose.  And there --

19             THE COURT:  Well, I don't -- I don't know whether

20   your client opposes it or not.  You tell me you can't get

21   ahold of them and that they don't communicate with you and so

22   I don't know whether they oppose it or not.  You're their

23   only representative.  You're the only representative they've

24   ever had as far as this Court is concerned, the -- the two

25   firms.

1           MR. CHAPMAN:  They have not had counsel enter any

2    sort of opposition and I haven't seen any opposition.  I

3    haven't heard any opposition.  And with the showing that we

4    made we have done everything in this case needed to be done.

5    There's no reason to delay further for us to be allowed to --

6    to withdraw from the case.  Mr. Wolk will be deposed.  Mr.

7    Millstein will be there.  And I don't know what the purpose

8    is for there to be further delay in us being let out.  I

9    mean, on the identical showing the Tenth Circuit has already

10   granted the motion so obviously the showing is sufficient for

11   the motion to be granted.  There are no further proceedings

12   here that we will be involved in so there shouldn't be any

13   further delay and we shouldn't be kept (inaudible) here

14   having done as much as we have, not getting communication and

15   not being paid, and the client having agreed that if they

16   don't pay we get to withdraw.

17           THE COURT:  Well, I understand the argument.  What

18   -- what wasn't before the Tenth Circuit apparently was a

19   Court inference that the withdrawal is in bad faith and

20   that's what I have because of the timing.  All right.  And I

21   understand your argument against that.  So for me in order to

22   combat that I'm going to deny the motions, but that's without

23   prejudice, to reraise them as soon as the deposition is

24   completed for Mr. Wolk.  Once that's completed then any bad

25   faith you had by withdrawing before I could rule on that,

 1    before I could even have a hearing on it I think is

 2    ameliorated and gone.

 3              MR. CHAPMAN:  Your Honor, once again, the

 4    inference your -- that the Court is drawing of bad faith is

 5    not based upon anything that counsel did.  We were prepared

 6    to appear for this hearing on three separate occasions and it

 7    was the Court that continued those hearings, not based upon

 8    any request by any counsel.  We would have been here, but the

 9    Court had the press of other business and meanwhile we were

10    working in the Tenth Circuit, briefing, running up fees, not

11    getting paid.  We waited until the last possible minute.  I

12    don't believe there is a basis to draw any inference.  Had

13    the -- Your Honor left the hearing on on the 16th we would

14    have been here for that, too.  But there is no basis to draw

15    that inference, none at all.  We have done everything that we

16    were asked to do and required to do and more.  And we didn't

17    take a single step to try to continue the hearing dates on

18    this motion.  We filed our oppositions.  We were prepared to

19    be here.  Had the Court held the hearing when it was

20    originally scheduled or even the second time it was scheduled

21    our motion to withdraw would have been filed much later.  So

22    I believe that any -- there are no facts upon which Your

23    Honor can draw that inference.

24              THE COURT:  Well, I also -- I also put in my order

25    I think at one point, I'm not sure exactly which one this

1    appeared in, probably near the latter one, that if -- I think

2    it was for today's hearing, that if other counsel came in

3    this would be a moot point.  No one had to come here.  No one

4    had to answer anything, just get other counsel in here.  Now,

5    I'm not sure I think that was actually a great thing for me

6    to say, but -- but I did because someone could have come in

7    here that hadn't carried the case all the way through.  And

8    that's -- that's the problem I have is that you had this

9    case.  You worked on it the whole way through.  And at pretty

10   much every juncture where you could lose you did lose and now

11   you want out at the last minute.  And what I see -- I hear

12   what you're saying and I'm not -- I'm not saying that you're

13   lying to me now, but it did not appear to me that you were

14   going to do anything except something crazy like -- like

15   we're -- we'll just withdraw then we don't have to go take on

16   this issue of whether or not Mr. Wolk is evading service and

17   that sort of thing.

18           MR. CHAPMAN:  Your Honor, we were -- we briefed

19   the matter and we were prepared to handle it with Your Honor

20   with no mention of any withdrawal motion.  We were ready to

21   get on the plane and come here and it was Your Honor who

22   continued the hearings.

23           THE COURT:  Right.  But you didn't ultimately get

24   on the plane and get here.  You withdrew instead.  Now, I

25   continued that hearing because I thought -- in fairness to

23

1    you, frankly.  I thought well, gee, if the attorneys aren't

2    getting paid and they aren't getting -- you know, I better

3    not have this hearing.  How am I going to have a hearing with

4    no attorneys here and how am I going to get them on a plane

5    if no one is paying them?  So it was really in deference to

6    you that I did kind of a knee-jerk reaction and -- and, you

7    know, vacated that hearing.  But then I got the response from

8    Walt Disney and I started really thinking about it and going

9    through everything and I thought, you know, it is kind of

10   perplexing that you withdraw at the last minute like that.

11           MR. CHAPMAN:  Your Honor, the timing was at most

12   serendipitous.  We could have moved to withdraw several

13   months before, but we briefed the matters in the Tenth

14   Circuit and continued to do all the work going further than

15   we really needed to do, and to now be told that your -- the

16   Honor -- Your Honor is drawing an inference that we're

17   somehow acting in bad faith, we acted in the highest good

18   faith to the Court and to our clients and to have that turned

19   around really is extraordinary.

20           THE COURT:  Well, I'm not going to let you out

21   now, but I will probably after the deposition is completed

22   because I think that the issue that brings you here today and

23   has the Court up in arms at you at the moment will be over

24   once that deposition is taken.  I don't think I can hold you

25   in the case forever.  Your representation obviously can end

     1    at some point.  You're not in servitude.  But I'm assuming if

     2    you're -- if you're completely right about everything you're

     3    telling me that you've got a substantial attorney fees bill

     4    against Stan Lee Media, Inc., your client, maybe someone

     5    else, add whatever else you feel you need to do to it.  And

     6    I'm not telling you you have to go to the deposition.  I'm

     7    not at all saying that.  You do whatever you think is right

     8    on that score.  What I'm saying is that when this deposition

     9    is taken I will grant your motions, but I'm not going to

    10    grant them today.  And --

    11              MR. CHAPMAN:  Well --

    12              THE COURT:  -- my -- my feeling is that for the

    13    clarity I'm going to deny both of -- well, actually I'm going

    14    to deny yours, the 105.  I am going to grant the local

    15    counsel's withdrawal, but I'm going to deny yours and -- but

    16    I will hear it again if you -- if this deposition goes

    17    forward the way it appears it will.

    18              MR. CHAPMAN:  Well, Your Honor, can I request that

    19    Your Honor suspend ruling on our motion and continue it until

    20    after the deposition and then rule on it?

    21              THE COURT:  I can do that, too, but then someone

    22    is going to have to let me know.

    23              MR. CHAPMAN:  We'll -- well, why don't we have Mr.

    24    Millstein or Miss Singer notify the Court that the deposition

    25    went forward?

1                    THE COURT:  Can you do that?

2                    MS. SINGER:  Sure.

3                    THE COURT:  All right.  So --

4                    MR. MILLSTEIN:  Yes, Your Honor.

5                    THE COURT:  -- all right.  If both of you would --

6       would file with the Court something within let's say two --

7       two to -- let's say three business days after the deposition,

8       up to three.  If you can do it sooner that would be good.  If

9       both of you file something and say the deposition went

10      forward then I'll reconsider Mr. Chapman's motion to

11      withdraw.  And I'll -- for now I'll hold it under advisement.

12                   MR. CHAPMAN:  Thank you, Your Honor.  Will that

13      require another appearance by counsel?

14                   THE COURT:  No.

15                   MR. CHAPMAN:  Thank you, Your Honor.

16                   THE COURT:  All right.  Anything further that we

17      need to do today?

18                   MR. BARNES:  I'm sorry.  I just wanted to clarify,

19      you are granting local counsel's motion to withdraw?

20                   THE COURT:  Yes.  So motion 107 we'll show as

21      granted and local counsel is allowed to withdraw at this

22      point.

23                   MR. BARNES:  Thank you, Your Honor.

24                   THE COURT:  All right.

25                   MR. CHAPMAN:  Thank you, Your Honor.

1          THE COURT:  Anything else?

2          MS. SINGER:  Thank you, Your Honor.

3          THE COURT:  All right.  Anything --

4          MR. MILLSTEIN:  Thank you, Your Honor.  That's

5     all.

6          THE COURT:  All right.  We'll be in recess.

7          THE CLERK:  All rise.  Court is in recess.

8          (Whereupon, the within hearing was then in

9     conclusion at 2:10 p.m.)

10

11          I certify that the foregoing is a correct

12     transcript, to the best of my knowledge and belief (pursuant

13     to the quality of the recording) from the record of

14     proceedings in the above-entitled matter.

15

16

17

18     /s/ Laurel Tubbs                   May 12, 2015

19     Signature of Transcriber               Date

20

21

22

23

24

25

AVERY WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
303-825-6119          FAX 303-893-8305