# Exhibit 2

No. 13-1407

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

STAN LEE MEDIA, INC.

*Plaintiff / Appellant*

*versus*

THE WALT DISNEY COMPANY

*Defendant / Appellee*

———————————————————————

Appeal from U.S. District Court, District Of Colorado
The Honorable William J. Martinez
U.S.D.C. Case No. 1:12-cv-02663-WJM-KMT

———————————————————————

## THE WALT DISNEY COMPANY'S MOTION FOR ATTORNEYS FEES
———————————————————————

James W. Quinn
R. Bruce Rich
Gregory Silbert
Randi W. Singer
Sabrina A. Perelman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007
james.quinn@weil.com
bruce.rich@weil.com
gregory.silbert@weil.com
randi.singer@weil.com
sabrina.perelman@weil.com

Frederick J. Baumann
Holly C. Ludwig
LEWIS ROCA ROTHGERBER LLP
One Tabor Center, Suite 3000
1200 17th Street
Denver, CO 80202-5855
Tel: (303) 623-9000
Fax: (303) 623-9222
fbaumann@lrrlaw.com
hludwig@lrrlaw.com

*Counsel for The Walt Disney Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................1

BACKGROUND ........................................................................................2

PROCEDURAL HISTORY ON APPEAL....................................................3

ARGUMENT .............................................................................................5

    I.    THE COURT SHOULD EXERCISE ITS DISCRETION TO
        AWARD ATTORNEYS' FEES PURSUANT TO THE
        COPYRIGHT ACT AND FED. R. APP. P. 38 ..................................5

        A.    Section 505 Of The Copyright Act Entitles TWDC
               To Fees ...................................................................................5

        B.    Fed. R. App. P. 38 Entitles TWDC To Attorneys'
               Fees .......................................................................................8

    II.    TWDC'S REQUESTED FEES ARE REASONABLE .......................9

CONCLUSION .........................................................................................13

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Abadin v. Marvel Entm't, Inc.*,
    No. 09 Civ. 0715 (PAC), 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010) ...........1

*Aerotech, Inc. v. Estes*,
    110 F.3d 1523 (10th Cir. 1997) ...........................................................5

*Big Tree Enters., Ltd. v. Mabrey*,
    45 F.3d 439 (10th Cir. 1994) ................................................................7

*Braley v. Campbell*,
    832 F.2d 1504 (10th Cir. 1987) .......................................................8, 9

*Broadcast Music, Inc. v. Cleatz Bar & Grill, LLC*,
    No. 12–cv–00321–REB–CBS, 2013 WL 753468 (D. Colo. Feb. 27,
    2013) .................................................................................5, 10, 11

*Coles v. Wonder*,
    283 F.3d 798 (6th Cir. 2002) ................................................................8

*Diamond Star Bldg. Corp. v. Freed*,
    30 F.3d 503 (4th Cir. 1994) ..................................................................7

*Disney Enters., Inc. v. Entm't Theatre Grp.*,
    No. 13-CV-5570, 2014 WL 5483487 (E.D. Pa. Oct. 30, 2014) ......................1, 2

*Fed. Deposit Ins. Corp v. Van Laanen*,
    769 F.2d 666 (10th Cir. 1985) ..............................................................9

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)........................................................................6, 7

*Gardner v. Wilkins*,
    No. 14-4090, 2014 WL 6679584 (10th Cir. Nov. 26, 2014)..............................9

*Girlsongs v. 609 Indus., Inc.*,
    625 F. Supp. 2d 1127 (D. Colo. 2008)...................................................5

*Huffman v. Saul Holdings Ltd. P'ship*,
    262 F.3d 1128 (10th Cir. 2001) ............................................................9

WEIL:\95198255\5\79593.0033

*Lee v. Marvel Enters., Inc.*,
    765 F. Supp. 2d 440 (S.D.N.Y. 2011) ..................................................................1

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014).............................................................................................3

*Lorillard Tobacco Co. v. Engida*,
    611 F.3d 1209 (10th Cir. 2010) ...........................................................................5

*N.L.R.B. v. Teamsters Local Union No. 523*,
    488 F. App'x 280 (10th Cir. 2012) .....................................................................10

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986).............................................................................................11

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    134 S. Ct. 1962 (2014).............................................................................................3

*Randolph v. Dimension Films, Inc.*,
    634 F. Supp. 2d 779 (S.D. Tex. 2009).................................................................7

*Robinson v. City of Edmond*,
    160 F.3d 1275 (10th Cir. 1998) .........................................................................10

*Shelton v. MRIGlobal*,
    No. 11-cv-02891-PAB-MJW, 2013 WL 3381270 (D. Colo. July 8, 2013) .........5

*Stan Lee Media, Inc. v. Lee*,
    No. 12-56733, 2014 WL 5462400 (9th Cir. Oct. 29, 2014) ..................1, 3, 4, 10

*Stan Lee Media Inc. v. Lee*,
    No. 2:07-CV-00225-SVW-SSx, 2012 WL 4048871 (C.D. Cal. Aug. 23,
    2012) ......................................................................................................................1

*Stan Lee Media, Inc. v. The Walt Disney Co.*,
    No. 12-CV-2663-WJM-KMT, 2013 WL 4776026 (D. Colo. Sept. 5,
    2013) ..................................................................................................................1, 2

*Stan Lee Media, Inc. v. The Walt Disney Co.*,
    No. 12-cv-2663-WJM-KMT, 2014 WL 3767191 (D. Colo. July 31,

2014) .............................................................................................................1, 3, 6

WEIL:\95198255\5\79593.0033

*Stan Lee Media, Inc. v. The Walt Disney Co.*,
 No. 13-1407 (10th Cir. Dec. 23, 2014)........................................................*passim*

*Stan Lee Media, Inc. v. The Walt Disney Co.*,
 No. 14-1348 (10th Cir.) ...........................................................................3

*Woodhaven Homes & Realty, Inc. v. Hotz*,
 396 F.3d 822 (7th Cir. 2005) ...............................................................7

**Statutes**

17 U.S.C. § 505 ....................................................................................1, 5

**Other Authorities**

Fed. R. App. P. 38 ..............................................................................2, 8

WEIL:\95198255\5\79593.0033

The Walt Disney Company ("TWDC") hereby respectfully submits this Motion for Attorneys' Fees pursuant to 17 U.S.C. § 505 and Fed. R. App. P. 38.

## PRELIMINARY STATEMENT

As this Court recognized, Plaintiff-Appellant Stan Lee Media, Inc. ("SLMI") has waged a "coast to coast" effort to assert non-existent copyright ownership rights in iconic Marvel comic book characters, including Spider-Man, Iron Man, The Incredible Hulk, The X-Men, The Fantastic Four and The Avengers (collectively, the "Marvel Characters").  *See* Opinion, *Stan Lee Media, Inc. v. The Walt Disney Co.*, No. 13-1407 (10th Cir. Dec. 23, 2014) ("Opinion") at 5.  With this Court's December 23, 2014 Order, *seven* courts have now held that SLMI cannot assert ownership rights in the Marvel Characters.  *See id.* at 3, 5.[1]

The Copyright Act entitles TWDC, as the prevailing party on the appeal of this copyright infringement action, to recover its attorneys' fees incurred on this appeal; the district court has already issued such an award as to the proceedings below.  *See* 17 U.S.C. § 505; *Stan Lee Media, Inc. v. The Walt Disney Co.*, No. 12-

---

[1] *Stan Lee Media, Inc. v. The Walt Disney Co.*, No. 13-1407 (10th Cir. Dec. 23, 2014); *Stan Lee Media, Inc. v. Lee*, No. 12-56733, 2014 WL 5462400, at *1 (9th Cir. Oct. 29, 2014); *Disney Enters., Inc. v. Entm't Theatre Grp.*, No. 13-CV-5570, 2014 WL 5483487, at *9 (E.D. Pa. Oct. 30, 2014); *Stan Lee Media, Inc. v. The Walt Disney Co.*, No. 12-CV-2663-WJM-KMT, 2013 WL 4776026, at *4 (D. Colo. Sept. 5, 2013); *Stan Lee Media Inc. v. Lee*, No. 2:07-CV-00225-SVW-SSx, 2012 WL 4048871, at *7 (C.D. Cal. Aug. 23, 2012); *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d 440, 444-45 (S.D.N.Y. 2011), *aff'd*, 471 F. App'x 14, 17 (2d Cir. 2012); *Abadin v. Marvel Entm't, Inc.*, No. 09 Civ. 0715 (PAC), 2010 WL 1257519, at *6 (S.D.N.Y. Mar. 31, 2010) ("*Abadin I*").

cv-2663-WJM-KMT, 2014 WL 3767191, at *2 (D. Colo. July 31, 2014). Rule 38

also entitles TWDC to recover its attorneys' fees on this frivolous appeal. Fed. R.

App. P. 38. Such an award is appropriate here, both to compensate TWDC for the

fees it has incurred in successfully opposing this appeal, and to deter SLMI from

continuing to pursue meritless litigation.

## <u>BACKGROUND</u>

In 2012, as part of a litigation history that "stretches over more than a decade

and at least six courts," *Stan Lee Media v. Disney*, 2013 WL 4776026, at *4, SLMI

asserted time-barred and implausible copyright infringement claims against

TWDC, a holding company that owns stock directly or indirectly in numerous

corporations including Marvel Entertainment, but does not itself produce, market

or distribute motion pictures or merchandise featuring any Marvel character. The

district court properly dismissed the complaint,[2] and ordered SLMI to pay

$240,000 in attorneys' fees under section 505 of the Copyright Act because it was

---

[2] Undaunted, SLMI subsequently asserted the identical ownership claim in a
Pennsylvania federal court. There, Marvel Characters, Inc. and other plaintiffs
sued a theatre for copyright and trademark infringement over a show that, *inter
alia,* used the Spider-Man character without a license. *See Disney Enters.*, No.
5:13-cv-05570-JLS (E.D. Pa. filed Sept. 24, 2013). SLMI later granted the theatre
a *nunc pro tunc* "license" to use the Marvel Characters, then intervened in the
litigation, claiming to be the exclusive owner of the rights in Spider-Man and other
Marvel properties. The Eastern District of Pennsylvania dismissed SLMI's
Intervenor Complaint with prejudice, holding that "prior decisions preclude SLMI
and AMT from pursuing a claim that SLMI owns the rights to Spider-Man."
*Disney Enters.*, 2014 WL 5483487, at *9.

-2-

"objectively unreasonable for [SLMI] to pursue its copyright claims under the 1998 Agreement." *Stan Lee Media v. Disney*, 2014 WL 3767191, at *2. SLMI has appealed this ruling. *See Stan Lee Media, Inc. v. The Walt Disney Co.*, No. 14-1348 (10th Cir.).

This Court affirmed the dismissal of SLMI's complaint, finding that the United States Court of Appeals for the Ninth Circuit's holding that "SLMI failed to satisfy pleading requirements" and that SLMI's ownership claims were "simply implausible because Stan Lee Media never announced that it owned rights to these characters, licensed the characters, produced content related to the characters, or asserted or attempted to enforce its ownership rights" barred SLMI's claim in this action. *Stan Lee Media v. Lee*, 2014 WL 5462400, at *1; Opinion at 7.

## PROCEDURAL HISTORY ON APPEAL

SLMI filed its opening brief in this appeal on January 15, 2014. TWDC filed its opposition on March 20, 2014, and SLMI filed its reply on April 7, 2014. After the Supreme Court's decisions in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) and *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), TWDC and SLMI filed letters concerning supplemental authority pursuant to Fed. R. App. P. 28(j) on April 1, 2014 and

WEIL:\95198255\5\79593.0033

May 23, 2014, respectively.[3]  *See* Docket Nos. 1019226702, 10178720.  This Court

held oral argument on October 28, 2014.  On October 30, 2014, TWDC filed a

letter regarding the Ninth Circuit's decision in *Stan Lee Media Inc. v. Lee*, 2014

WL 5462400, and SLMI responded on October 31, 2014.  Per this Court's order,

both parties filed simultaneous supplemental briefing on November 26, 2014,

addressing whether the Ninth Circuit's order was entitled to preclusive effect as to

SLMI's ability to assert ownership rights under the 1998 Agreement.

On December 23, 2014, this Court affirmed the dismissal of SLMI's

complaint with prejudice, holding that "because Stan Lee Media is precluded from

alleging ownership of the at-issue intellectual properties, Stan Lee Media's

copyright-infringement claim fails as a matter of law."  Opinion at 3.  The Court

held that the Ninth Circuit's decision was "entitled to collateral-estoppel effect"

and that "none of the elements of collateral estoppel [could] be reasonably

debated."  *Id.* at 3, 11.  Accordingly, the Court found that SLMI is estopped from

asserting ownership claims based on the 1998 Agreement, *id.* at 3, and that its

copyright infringement claim against TWDC thus failed.  *Id.* at 15-16.  This Court

also noted that the Copyright Act's three-year statute of limitations independently

would have barred SLMI's infringement claim.  *Id.* at 15 n.4.

---

[3] TWDC filed its response to SLMI's *Petrella* letter on May 28, 2014; SLMI did
not respond to TWDC's *Lexmark* letter.

WEIL:\95198255\5\79593.0033

## ARGUMENT

I.    **THE COURT SHOULD EXERCISE ITS DISCRETION TO AWARD ATTORNEYS' FEES PURSUANT TO THE COPYRIGHT ACT AND FED. R. APP. P. 38**

A.    <u>**Section 505 Of The Copyright Act Entitles TWDC To Fees**</u>

The Copyright Act permits a court to "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. A party has prevailed where there is a "judicially sanctioned change in the legal relationship of the parties." *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1215 (10th Cir. 2010) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001)). This Court affirmed dismissal of SLMI's entire complaint with prejudice, holding that "Stan Lee Media cannot state a claim for copyright infringement." Opinion at 8. TWDC therefore is the prevailing party on this appeal. *See Aerotech, Inc. v. Estes*, 110 F.3d 1523, 1527 (10th Cir. 1997).

Under the Copyright Act, TWDC "may be awarded attorney's fees simply by virtue of prevailing in the action: no other precondition need be met." *See Shelton v. MRIGlobal*, No. 11-cv-02891-PAB-MJW, 2013 WL 3381270, at *3 (D. Colo. July 8, 2013); *Girlsongs v. 609 Indus., Inc.*, 625 F. Supp. 2d 1127, 1132 (D. Colo. 2008). Moreover, attorneys' fees are awarded "more often as the rule than the exception" in copyright cases. *Broadcast Music, Inc. v. Cleatz Bar & Grill, LLC*, No. 12–cv–00321–REB–CBS, 2013 WL 753468, at *1 (D. Colo. Feb. 27, 2013). While "[t]here is no precise rule or formula for making [attorneys' fees]

determinations," the Supreme Court has outlined several nonexclusive factors that courts may use in determining whether to award attorneys' fees, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994).

Here, all four *Fogerty* factors clearly favor granting attorneys' fees to TWDC. First, it was frivolous for SLMI to press its "simply implausible" claim. Opinion at 7. Second, as the district court found, SLMI's copyright claim was "objectively unreasonable . . . clearly without merit or otherwise patently devoid of a legal or factual basis." *Stan Lee Media v. Disney*, 2014 WL 3767191, at *2 (quoting *Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 Civ. 139(GEL), 2009 WL 935674, at *3 (S.D.N.Y. Apr. 7, 2009)). SLMI chose to pursue an appeal here even though all of the "courts from coast to coast [that] have weighed in on the propriety of Stan Lee Media's assertion of rights in the Marvel characters," Opinion at 5, have rejected SLMI's claims, finding SLMI cannot assert any rights to the Marvel Characters. Indeed, this Court specifically rejected SLMI's contention that there might be additional facts that could transform SLMI's "implausible claim of ownership into a viable cause of action." *Id.* at 13 n.3. SLMI's pursuit of its claim against TWDC accordingly fails to meet any test of

objective reasonableness.  *See Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503,

506 (4th Cir. 1994) (directing district court to award attorneys' fees to defendant

because plaintiff's suit was "objective[ly] unreasonable" and "without merit for

numerous reasons" and defendant had "no choice but to litigate due to [plaintiff's]

perseverance in pursuing its claim").

Third, considerations of compensation and deterrence warrant an award of

attorneys' fees.  *See Fogerty*, 510 U.S. at 534 n.19.  Courts routinely award

attorneys' fees either to compensate a party who was forced to litigate or to deter

future bad conduct.  *See Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822,

824 (7th Cir. 2005) (holding defendant entitled to reasonable attorneys' fees

because "without the prospect of such an award, [a defendant] might be forced into

a nuisance settlement or deterred altogether from exercising his rights"); *Big Tree

Enters., Ltd. v. Mabrey*, 45 F.3d 439, 439 (10th Cir. 1994) (granting reasonable

attorneys' fees).  SLMI has been a "repeat participant" in ownership disputes

regarding the Marvel Characters, "filing lawsuits across the country in an effort to

cash in on this financial success."  Opinion at 2, 5.  Attorneys' fees are necessary

to deter SLMI from further assertions of nonexistent copyright ownership rights.

*See Randolph v. Dimension Films, Inc.*, 634 F. Supp. 2d 779, 796-97 (S.D. Tex.

2009), *aff'd*, 381 F. App'x 449 (5th Cir. 2010) ("[W]hen a copyright infringement

claim is objectively unreasonable, deterrence is an important factor."); *see also*

WEIL:\95198255\5\79593.0033

*Coles v. Wonder*, 283 F.3d 798, 803 (6th Cir. 2002) (finding that "considerations

of compensation, deterrence, and the objective of the Copyright Act weigh in favor

of awarding [defendants'] attorney fees . . . [to] deter would-be plaintiffs from

bringing equally meritless lawsuits").

Finally, SLMI's bad faith favors an attorneys' fees award.  SLMI doggedly

pursued its baseless claims in the face of repeated decisions that it could not do so

as a matter of law.  Indeed, SLMI tried to sidestep the prior decisions against it by

bringing suit in a new jurisdiction against a new defendant, holding company

TWDC.  An award of attorneys' fees appears to be the only way to deter SLMI and

its financial backers from perpetuating seriatim baseless copyright claims.[4]

### B.    Fed. R. App. P. 38 Entitles TWDC To Attorneys' Fees

A court of appeals may award "just damages and single or double costs to

the appellee" for a frivolous appeal.  Fed R. App. P. 38; *see also Braley v.

Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (holding that attorneys' fees are

proper under Fed. R. App. P. 38 where an appeal is frivolous or brought for

purposes of delay).  "An appeal is frivolous when the result is obvious, or the

appellant's arguments of error are wholly without merit."  *Id.*  SLMI's appeal

---

[4] According to public reports, SLMI is funded by a multi-billion dollar hedge fund.
*See* Nathan Vardi, *Hedge Fund Elliot Management Is Backing Stan Lee Media's
Spider-Man Lawsuit Against Disney*, Forbes, Feb. 1, 2013, attached as Exhibit 1 to
the Affidavit of Randi W. Singer ("Singer Aff.").  An investor stated that TWDC's
acquisition of Marvel played a large role in attracting financing to litigate.  *Id.*

clearly meets this standard. Simply put, no court has ever found any merit in SLMI's claims; the result here was obvious and it was objectively unreasonable for SLMI to pursue them before this Court.

"Such meritless appeals are a burden on the federal court system and justify the exercise of [this Court's] discretionary power to award attorney's fees and double or single costs against litigants who prosecute frivolous appeals." *Fed. Deposit Ins. Corp v. Van Laanen*, 769 F.2d 666, 667 (10th Cir. 1985). Indeed, "[w]ith courts struggling to remain afloat in a constantly rising sea of litigation, a frivolous appeal can itself be a form of obscenity. Rule 38 should doubtless be more often enforced than ignored in the face of a frivolous appeal." *Braley*, 832 F.2d at 1511. This case is an exemplar for an award of Rule 38 fees. *See Gardner v. Wilkins*, No. 14-4090, 2014 WL 6679584, at *2 (10th Cir. Nov. 26, 2014) (awarding attorneys fees as "just damages" under Fed. R. App. P. 38 against a serial litigant)

## II.    TWDC'S REQUESTED FEES ARE REASONABLE

An application for appeal-related attorneys' fees must first be made to this Court, which then may remand to the district court to determine an award of reasonable fees. *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1133 & n.6 (10th Cir. 2001) (citing *Hoyt v. Robson Cos., Inc.*, 11 F.3d 983, 985 (10th Cir. 1983)). This Court may also use its discretion and award attorneys' fees rather

WEIL:\95198255\5\79593.0033

than remand where a separate remand would be "an additional round of briefing on
the amount of fees [that] would only add to the unnecessary expenses already
incurred" in the litigation. *N.L.R.B. v. Teamsters Local Union No. 523*, 488 F.
App'x 280, 284-85 (10th Cir. 2012), *cert. denied*, 133 S. Ct. 1458 (2013).

The analysis of the reasonableness of a fee request "begin[s] by calculating
the so-called 'lodestar amount' of a fee, and a claimant is entitled to the
presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson v.
City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). Courts look at whether the
hours billed were necessary under the circumstances and whether the hourly rate
charged reflects "the prevailing market rates in the relevant community." *See id.*;
*Broadcast Music*, 2013 WL 753468, at *2. Consistent with this directive, TWDC
has made a "good-faith effort to exclude from [its] fee request" attorney hours that
might be considered "excessive, redundant, or otherwise unnecessary." *See
Robinson*, 160 F.3d at 1281.

Here, TWDC's fees for defeating SLMI's claims – including (1) appellate
briefing, (2) submissions of supplemental authority under Fed. R. App. P. 28(j), (3)
responses to SLMI's submissions of supplemental authority, (4) preparing for and
appearing at oral argument, and (5) preparing this Court's requested supplemental
briefing regarding the precedential value of the Ninth Circuit's decision in *Stan
Lee Media Inc. v. Lee* – were reasonable. The Singer Affidavit sets forth the hours

TWDC's lead counsel, Weil, Gotshal & Manges LLP ("Weil") and local counsel
Lewis Roca Rothgerber LLP ("LRR") devoted to these tasks during the appeal.
The attachments provide daily entries and detailed descriptions of work devoted to
opposing SLMI's claim on appeal.  The Weil fees total $117,004.65 for 211.4
hours and the LRR fees total $6,615.00 for 13.1 hours for a total of $123,619.65 in
attorneys' fees.  This is the proper "lodestar" figure.

     In evaluating Weil's and LRR's rates, courts look at the status, reputation,
and experience of the attorneys who perform the service, the quality of their
services, the complexity of the work performed, the results achieved and the rates
customarily charged for similar work in the relevant legal community.  *See
Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66
(1986).  Consideration of all of these factors compels the conclusion that the rates
are reasonable.  Courts have frequently used the survey of the American
Intellectual Property Law Association (AIPLA) in determining a reasonable rate
for intellectual property actions.  *See Broadcast Music*, 2013 WL 753468, at *2
(citing cases).  The most recently available AIPLA survey notes that the median
average billing rate for intellectual property work at large firms was $450 per hour
in 2012.  Singer Aff. Ex. 3 at 49.  Further, a review of the 2014 National Law
Journal survey of the billing rates charged by partners and associates nationwide
shows the following ranges of rates in Colorado-based law firms:

| Law Firm | Partner Rates | Associate Rates |
|---|---|---|
| Brownstein Hyatt Farber Schreck | $700-$310 | $345-$265 |
| Davis Graham & Stubbs | $635-$315 | $350-$200 |
| Holland & Hart | $725-$305 | $425-$175 |

*See* Singer Aff. Ex. 4. TWDC's lawyers provided high quality services addressing issues of collateral estoppel, personal jurisdiction, and copyright ownership and infringement across a complex and ever-changing procedural landscape. Weil and LRR succeeded in securing a favorable outcome for TWDC, and their hourly rates are reasonable compared to the range of rates charged by intellectual property attorneys of comparable skill, experience and reputation for similar services. Though TWDC has already paid a higher rate for the work performed on this appeal, for purposes of this motion, TWDC has capped its fee request at $725 per hour, consistent with the National Law Journal survey for Colorado.

The stakes here – whether SLMI may assert ownership of the Marvel Characters – were substantial: Marvel has "exploited its comic universe by, among other things, selling and licensing the film rights to several characters and franchises to major production companies" and "[t]hese efforts have been enormously profitable." Opinion at 5. As the Court noted, the 2002 movie *Spider-Man* alone "has grossed over $800 million worldwide." *Id.* Accordingly, TWDC

was warranted in retaining skilled and experienced counsel to protect its valuable

intellectual property assets.

## CONCLUSION

For the foregoing reasons, TWDC respectfully requests that the Court award

TWDC attorneys' fees in the amount of $123,619.65.

## STATEMENT CONCERNING ORAL ARGUMENT

Appellee The Walt Disney Company does not request oral argument in this

matter as the issues are neither factually nor legally complex.

## DISCLOSURE OF OPPONENT'S POSITION

Pursuant to 10th Cir. Rule 27.3(C), TWDC states that its counsel emailed

SLMI's counsel on January 16, 2015 requesting its stance on this motion by

January 20, 2015, however, TWDC has not received a response.

WEIL:\95198255\5\79593.0033

Dated:   New York, New York
         January 21, 2015

By:   _/s/ James W. Quinn_

WEIL, GOTSHAL & MANGES LLP
James W. Quinn
R. Bruce Rich
Gregory Silbert
Randi W. Singer
Sabrina A. Perelman
767 Fifth Avenue
New York, NY 10153
Tel:  (212) 310-8000
Fax: (212) 310-8007

Frederick J. Baumann
Holly C. Ludwig
LEWIS ROCA ROTHGERBER LLP
One Tabor Center, Suite 3000
1200 17th Street
Denver, CO 80202-5855
Tel: (303) 623-9000
Fax: (303) 623-9222
fbaumann@lrrlaw.com
hludwig@lrrlaw.com

*Attorneys for Defendant-Appellee*
*The Walt Disney Company*

WEIL:\95198255\5\79593.0033

## <u>CERTIFICATION OF COMPLIANCE</u>

This motion complies with the page limitations and typeface requirements of

Fed. R. App. P. 27(d)(2) because this motion is less than 20 pages, excluding the

corporate disclosure statement and the accompanying documents exempted by Fed.

R. App. 27(a)(2)(B).  The page count was measured by the word-processing

program used to prepare the brief, Microsoft Word.

This motion complies with the typeface and typestyle requirements of Fed.

R. App. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced

typeface using Microsoft Word in 14 point Times New Roman font.

Dated:        New York, New York        By:    /s/ *Holly C. Ludwig*
              January 21, 2015

                                        WEIL, GOTSHAL & MANGES LLP
                                        James W. Quinn
                                        R. Bruce Rich
                                        Gregory Silbert
                                        Randi W. Singer
                                        Sabrina A. Perelman
                                        767 Fifth Avenue
                                        New York, NY 10153
                                        Tel:  (212) 310-8000
                                        Fax: (212) 310-8007

                                        Frederick J. Baumann
                                        Holly C. Ludwig
                                        LEWIS ROCA ROTHGERBER LLP
                                        One Tabor Center, Suite 3000
                                        1200 17th Street
                                        Denver, CO 80202-5855
                                        Tel: (303) 623-9000
                                        Fax: (303) 623-9222
                                        fbaumann@lrrlaw.com

hludwig@lrrlaw.com

*Attorneys for Defendant-Appellee*
*The Walt Disney Company*

## CERTIFICATION OF VIRUS SCANNING

This Motion has been submitted in PDF format to the Tenth Circuit's
CM/ECF electronic filing system, and the digital submission has been scanned for
viruses with Check Point Endpoint Security, version E80.30(8.1.302).  According
to that software program, the document is free of viruses.

## CERTIFICATION CONCERNING PRIVACY

This Motion has been submitted in PDF format to the Tenth Circuit's
CM/ECF electronic filing system, and all required privacy redactions have been
made.

## CERTIFICATION OF HARD COPY SUBMISSION

The hard copies of this Motion submitted to the clerk's office are exact
copies of the ECF filing.

Dated:    New York, New York       By:   _/s/Holly C. Ludwig_
           January 21, 2015

                                 WEIL, GOTSHAL & MANGES LLP
                                 James W. Quinn
                                 R. Bruce Rich
                                 Gregory Silbert
                                 Randi W. Singer
                                 Sabrina A. Perelman
                                 767 Fifth Avenue
                                 New York, NY 10153
                                 Tel:  (212) 310-8000
                                 Fax: (212) 310-8007

                                 Frederick J. Baumann
                                 Holly C. Ludwig
                                 LEWIS ROCA ROTHGERBER LLP
                                 One Tabor Center, Suite 3000

1200 17th Street
Denver, CO 80202-5855
Tel: (303) 623-9000
Fax: (303) 623-9222
fbaumann@lrrlaw.com
hludwig@lrrlaw.com

*Attorneys for Defendant-Appellee
The Walt Disney Company*

## PROOF OF SERVICE VIA ECF SYSTEM

Pursuant to Fed. R. App. P. 25 and Tenth Circuit Rule 25.3, I certify that on

January 16, 2015, I caused the foregoing Motion for Attorneys Fees to be filed

with the Court through the use of the Tenth Circuit CM/ECF electronic filing

system and served on the following counsel of record who are registered CM/ECF

users will be served by the appellate CM/ECF system:

| | |
|---|---|
| Mark T. Barnes | MBarnes@bhfs.com |
| Robert Steven Chapman | rchapman@eisnerlaw.com |
| Jon-Jamison Hill | jhill@eisnerlaw.com |
| John V. McDermott | jmcdermott@bhfs.com |

Dated:    New York, New York          By:    /s/*Holly C. Ludwig*
        January 21, 2015

Holly C. Ludwig
LEWIS ROCA ROTHGERBER LLP
One Tabor Center, Suite 3000
1200 17th Street
Denver, CO 80202-5855
Tel: (303) 623-9000
Fax: (303) 623-9222
hludwig@lrrlaw.com

No. 13-1407

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

STAN LEE MEDIA, INC.

*Plaintiff / Appellant*

*versus*

THE WALT DISNEY COMPANY

*Defendant / Appellee*

Appeal from U.S. District Court, District Of Colorado
The Honorable William J. Martinez
U.S.D.C. Case No. 1:12-cv-02663-WJM-KMT

## AFFIDAVIT OF RANDI W. SINGER IN SUPPORT OF THE WALT DISNEY COMPANY'S MOTION FOR ATTORNEYS' FEES

I, Randi W. Singer, declare under penalty of perjury as follows:

1.      I am a partner of Weil, Gotshal & Manges LLP ("Weil") and am duly admitted to practice in the State of New York and before this Court.  Together with the law firm Lewis Roca Rothgerber LLP ("LRR"), Weil is counsel to Defendant/Appellee The Walt Disney Company ("TWDC") in this action.

2.      I submit this Affidavit in support of TWDC's motion for attorney's fees.

WEIL:\95199804\4\79593.0033

3.      Attached hereto as Exhibit 1 is a true and correct copy of an article

entitled *Hedge Fund Elliot Management is Backing Stan Lee Media's Spider-Man*

*Lawsuit Against Disney* written by Nathan Vardi and appearing on Forbes.com on

February 1, 2013.

4.      Subject to paragraphs 5 and 10 below, attached hereto as Exhibit 2 is a

printout of the time that Weil and LRR have billed that relates to reviewing

SLMI's appellate briefing, drafting TWDC's appellate briefing, submissions of

supplemental authority under Fed. R. App. P. 28(j) and responses to SLMI's

submissions of supplemental authority, preparing for and appearing at oral

argument, as well as preparing the Tenth Circuit's requested supplemental briefing

regarding the precedential value of the Ninth Circuit's decision in *Stan Lee Media*

*Inc. v. Lee*.

5.      TWDC has made a good faith effort to remove from its fee request

any hours that might be considered excessive, redundant, or otherwise

unnecessary.

6.      Attached hereto as Exhibit 3 is a copy of the American Intellectual

Property Law Association Report of the Economic Survey 2013, *available at*,

http://www.aipla.org/about/newsroom/PR /Pages/IP-Fees--Salaries-Benchmarked-

in-AIPLA-2013-Report-of-the-Economic-Survey.aspx (last visited Jan. 7, 2015).

WEIL:\95199804\4\79593.0033

7.    Attached hereto as Exhibit 4 is a copy of the 2014 National Law Journal Billing Survey.

8.    I, along with James W. Quinn and Gregory Silbert, both Weil partners, am responsible for representing TWDC in the above-referenced matter.  I supervise and am assisted here by Sabrina A. Perelman and Jessica L. Falk, both of whom are Weil associates.

9.    I have been practicing law for over fifteen years and my practice is complex commercial and intellectual property litigation in state and federal courts.  My billing rate on this matter was $630 per hour with an increase to $671 per hour effective as of September 1, 2014.  Since SLMI filed its merits appeal in this action, I have spent 7 hours on the tasks for which TWDC is seeking an award of attorney's fees.  Weil billed $4,483.80 for my work on these aspects of this matter.

10.    Mr. Quinn has been practicing law for over 40 years and his practice is complex commercial litigation in state and federal courts.  Mr. Quinn's hourly rate on this matter was $855 with an increase to $881 per hour effective as of September 1, 2014.  While TWDC has already paid Mr. Quinn's hourly rate, for purposes of this motion, TWDC has capped its request for Mr. Quinn's fees at $725 per hour in order to keep the rate comparable to partner billing rates at Colorado-based law firms.  Since SLMI filed its merits appeal in this action, Mr.

3

Quinn has spent 40.9 hours on the tasks for which TWDC is seeking an award of attorney's fees. With the $725 per hour rate cap, Weil billed $29,652.50 for his work on these aspects of this matter.

11.    Mr. Silbert has been practicing law for 15 years and his practice is appellate and complex commercial litigation in state and federal courts. Mr. Silbert's hourly rate on this matter was $535.50 with an increase to $605 per hour effective as of September 1, 2014. Since SLMI filed its merits appeal in this action, Mr. Silbert has spent 58.9 hours on the tasks for which TWDC is seeking an award of attorney's fees. Weil billed $31,610.45 for his work on these aspects of this matter.

12.    Ms. Perelman is a ninth year litigation associate at Weil and her practice is complex commercial and intellectual property litigation in state and federal courts. Ms. Perelman's hourly rate on this matter was $499.50 with an increase to $534.50 per hour effective as of September 1, 2014. Since SLMI filed its merits appeal in this action, Ms. Perelman has spent 85.8 hours on the tasks for which TWDC is seeking an award of attorney's fees. Weil billed $43,823.10 for her work on these aspects of this matter.

13.    Ms. Falk is a sixth year litigation associate at Weil and her practice is complex commercial and intellectual property litigation in state and federal courts.

4

Ms. Falk's hourly rate on this matter was $396 with an increase to $423.50 per hour effective as of September 1, 2014.  Since SLMI filed its merits appeal in this action, Ms. Falk has spent 18.8 hours on the tasks for which TWDC is seeking an award of attorney's fees.  Weil billed $7,434.80 for her work on these aspects of this matter.

14.     In addition to the attorneys at Weil, Frederick J. Baumann, a partner at LRR, has also performed work in connection with defending the appeal of this action.  Mr. Baumann spent 13.1 hours on the tasks for which TWDC is seeking an award of attorneys' fees.  The amount billed for his work on these aspects of this matter is $6,615.00.

15.     Attached hereto as Exhibit 5 are the firm biographies for the attorneys whose fees are included in this request.

16.     Considering the circumstances of this matter and the knowledge, background, and experience of the attorneys involved, it is my opinion that the rates charged by Weil and LRR in connection with this case are reasonable and within the range of rates charged by other attorneys of similar skill and experience working with law firms of similar skill, experience, and reputation.

17.     It is also my opinion that the fees and costs incurred by TWDC in defending this appeal and obtaining an affirmance of the dismissal of Plaintiff's

amended complaint were reasonable and necessary, given the conduct of Plaintiff in repeatedly litigating the same baseless claims, the issues involved in this case, the amount in controversy, and the value to TWDC. The attorneys' fees TWDC incurred with respect to reviewing SLMI's appellate briefing, drafting TWDC's appellate briefing, submissions of supplemental authority under Fed. R. App. P. 28(j) and responses to SLMI's submissions of supplemental authority, preparing for and appearing at oral argument, as well as preparing the Tenth Circuit's requested supplemental briefing regarding the precedential value of the Ninth Circuit's decision in *Stan Lee Media Inc. v. Lee* amount to $123,619.65.

I declare under penalty of perjury that the foregoing facts are true and correct. This affidavit was executed on the 20th day of January, 2015 in New York, New York.

Randi W. Singer

WEIL:\95199804\4\79593.0033

# EXHIBIT 1

**Nathan Vardi**, Forbes Staff
Following the money trail

 **Follow** (418)

BUSINESS  |  2/01/2013 @ 9:30AM  |  5,935 views

# Hedge Fund Elliott Management Is Backing Stan Lee Media's Spider-Man Lawsuit Against Disney

5 comments, 2 called-out        **Comment Now**    **Follow Comments**

For the last few years Michael Wolk has quietly worked to advance the multi-billion dollar copyright infringement lawsuit that claims Walt Disney Co. does not own the rights to iconic Stan Lee-created superhero characters it acquired from Marvel Entertainment, like Spider-Man, X-Men, The Incredible Hulk and The Fantastic Four. Before Wolk got involved, the minority shareholders of a company Lee founded in the 1990s had for a long time unsuccessfully litigated over these characters, but Wolk has not been dissuaded.

"We are in the right here," says Wolk in an interview. "No court has ever addressed or ever decided who is the owner of the characters—all of the prior litigation got dismissed



Spider-Man debuts: Amazing Fantasy #15 (Aug. 1962). Cover art by Jack Kirby (penciler) and Steve Ditko (inker). (Photo credit: Wikipedia)

for reasons that have nothing to do
with who owns the characters."

Wolk is not a shareholder of Stan Lee Media, which spent the years 2001 to
2006 in bankruptcy court, nor is he a lawyer in the case. Rather Wolk is an
investor who has organized a small group to financially back Stan Lee Media's
legal claims that it owns these iconic characters. Wolk says his primary
investor is one of the nation's biggest hedge funds, billionaire Paul Singer's
Elliott Management. "Elliott Capital hedge fund has been providing financial
support to help [Stan Lee Media] since 2011," says Wolk.



### Death Of The Hedge Fund Short Seller


**Nathan Vardi**
Forbes Staff

Hedge funds and other investment vehicles have
increasingly been funding litigation against major
corporations in return for a piece of any winnings.
Elliott Management, which oversees $21 billion in
assets, is a hedge fund that is comfortable using
sharp elbows both in the stock market and in the
courts. In its battle against Argentina over defaulted
bonds, Elliott Management has worked to seize
sovereign assets, successfully convincing the
government of Ghana last year to take possession of
an Argentine naval vessel, much to the dismay of
President Cristina Fernandez de Kirchner. In a
typical move for the activist investor, Elliott
Management recently purchased shares of Hess
Corp., proclaimed it would seek board seats and said
"lack of focus is a chronic issue at Hess that remains
unchecked by the board."

Wolk was able to attract Elliott Management's financial backing in 2011 after
two key events. In May 2010, Wolk succeeded in getting the Colorado Court
of Appeals to reverse a prior lower court decision in Stan Lee Media's
corporate governance case, allowing the company's minority shareholders to
take control of the company from Lee himself and appoint a new board of
directors by 2011. In addition, in December 2009 Disney bought Marvel
Entertainment for $4 billion and started to make blockbuster movies from
Stan Lee characters like those in The Avengers.

Elliott Management declined to comment. Disney has said the "lawsuit is

without merit; it arises out of the same core facts and legal claims that have
been rejected by three federal district court judges." The company did not
respond to requests to discuss the case. Lee's lawyer also did not respond to a
request for comment.

Comic writer Lee assigned the rights to his superhero characters to Marvel in
1998, but after Stan Lee Media collapsed, minority shareholders of the
company claimed that Lee had previously assigned those rights in a written
agreement to a predecessor company of Stan Lee Media. The minority
shareholders have previously brought legal proceedings in courts from New
York to California, but have never been able to get anywhere, losing decisions
and cases.

For his part, Wolk says he became intrigued by Stan Lee Media's claims when
he was looking for some litigation to fund as part of his new business venture
in 2009. Born in the Riverdale section of the Bronx, Wolk is a graduate of the
University of Pennsylvania Law School who worked as a commercial lawyer in
the New York area for years and, more recently, as a general counsel in the life
settlements business. He has no copyright or intellectual property law
experience. "The law is out there, I really don't think it's rocket science," he
says.

According to Wolk, the prior legal efforts by some shareholders of Stan Lee
Media to pursue ownership rights of the superhero characters were stymied
because the claims were brought derivatively, with minority shareholders of
Stan Lee Media trying to stand in the shoes of the company without its
authorization, against both Marvel and Lee. But by wresting control of Stan
Lee Media, Wolk maintains, infringement claims can now be pursued directly
for the first time. In October, Stan Lee Media launched its lawsuit against
Disney in federal court in Denver, claiming that Stan Lee Media, a Colorado
company, "owns the copyrights to Stan Lee's creations" and "is entitled to the
billions of dollars of profits" Disney has earned releasing motion pictures
starring the characters in the last three years.

In motions to dismiss the lawsuit, Disney calls the new lawsuit "frivolous" and
"a wholly improper attempt to revive a claim already rejected three times."
Disney is essentially arguing that Stan Lee Media is improperly trying to get
around legal doctrines meant to bar continued litigation between the same
parties over an already decided issue and that it's trying to circumvent statutes

of limitation. In its legal filings Disney implies that Marvel, where Disney says
Lee worked for 40 years, owned the characters all along and states that Lee
always retained the right to reclaim any intellectual property he assigned to
Stan Lee Media's predecessor company in the event of a material breach,
which Disney claims Lee did in 2001. Disney has also asked the court to stay
all discovery in the case.

"This action is the latest in a long series of attempts to assert non-existent
rights over unspecified Marvel comic book characters allegedly stemming
from a terminated 1998 agreement that on its face never granted any such
rights in the first place," Disney says in a court document. "Numerous
previous litigations have soundly rejected the copyright claim."

Nevertheless, Wolk on Wednesday had his lawyers, who are partly being
financed by Elliott Management, arrange for Lee to be served with a subpoena
to testify in a deposition and turn over documents this month. The legal
adventure continues.

# EXHIBIT 2

| Work Date | Name | Bill Hours | Bill Amount | Narrative |
|---|---|---|---|---|
| 1/22/2014 | Quinn, James W. | 1 | 725.00 | Conference with team re brief et al. |
| 1/22/2014 | Silbert, Gregory | 1.7 | 910.35 | review appeal record, briefs and authorities; conf. w/ J. Quinn et al re appeal strategy |
| 1/22/2014 | Perelman, Sabrina A. | 1.9 | 949.05 | Analyze Carell v. Schubert and statute-of-limitations arguments in SLMI appeal brief; meet with J. Quinn and team re SLMI appeal brief and responses. |
| 1/22/2014 | Singer, Randi W. | 2.7 | 1,701.00 | read Carell and subsequent history and revise memo to client (2.0); meet with J. Quinn, G. Silbert re: response to 10th circuit brief (.5); telephone conference with client re: status (.2) |
| 1/27/2014 | Perelman, Sabrina A. | 4.5 | 2,247.75 | Draft outline of SLMI appeal brief. |
| 1/29/2014 | Falk, Jessica Lynn | 1.6 | 633.60 | Research on [redacted] for appeal brief |
| 1/30/2014 | Quinn, James W. | 1 | 725.00 | Review and revise appellate brief outline |
| 2/1/2014 | Perelman, Sabrina A. | 7.8 | 3,896.10 | Draft 10th Cir. appeal brief. |
| 2/4/2014 | Falk, Jessica Lynn | 1.9 | 742.40 | Review and distinguish cases cited by SLMI and draft insert for brief; Research regarding [redacted] |
| 2/4/2014 | Perelman, Sabrina A. | 5.4 | 2,697.30 | Draft SLMI appeal brief. |
| 2/7/2014 | Silbert, Gregory | 3 | 1,606.50 | revise appeal brief |
| 2/7/2014 | Perelman, Sabrina A. | 4.6 | 2,297.70 | Draft SLMI appeal brief. |
| 2/10/2014 | Silbert, Gregory | 6.1 | 3,266.55 | revise appeal brief |
| 2/11/2014 | Quinn, James W. | 2.3 | 1,667.50 | Review 10th Circuit draft and conference S. Perelman. |
| 2/11/2014 | Perelman, Sabrina A. | 2.6 | 1,298.70 | Revise SLMI appeal brief; Meet with J. Quinn. |
| 2/12/2014 | Quinn, James W. | 1 | 725.00 | Review revised draft of appeal brief |
| 2/12/2014 | Falk, Jessica Lynn | 1.3 | 514.80 | Research on [redacted]; Review collateral estoppel section for references to failure to perfect second circuit appeal |
| 2/12/2014 | Perelman, Sabrina A. | 4.6 | 2,297.70 | Revise SLMI appeal brief; Meet with G. Silbert |
| 2/13/2014 | Silbert, Gregory | 4.7 | 2,516.85 | revise appeal brief |
| 2/14/2014 | Falk, Jessica Lynn | 1.3 | 514.80 | Insert citations into 10th circuit brief |
| 2/14/2014 | Perelman, Sabrina A. | 2 | 999.00 | Revise SLMI appeal brief per internal comments. |
| 2/18/2014 | Silbert, Gregory | 2.1 | 1,124.55 | conf. w/ client re appeal brief; revise same; conf. w/ R. Singer re same |
| 2/19/2014 | Silbert, Gregory | 2.3 | 1,231.65 | review Abadin complaint, briefs; email J. Quinn et al re same, ground for decision; conf. w/ R. Singer, S. Perelman re [redacted] |
| 2/19/2014 | Perelman, Sabrina A. | 0.6 | 299.70 | Meet with G. Silbert and R. Singer re SLMI appeal brief, [redacted] |
| 2/19/2014 | Singer, Randi W. | 0.5 | 315.00 | meet with G. Silbert, S. Perelman re: [redacted] |
| 2/25/2014 | Perelman, Sabrina A. | 1.1 | 549.45 | Revise draft SLMI appeal brief per local counsel comments. |
| 2/26/2014 | Perelman, Sabrina A. | 1.3 | 649.35 | Revise draft SLMI appeal brief per internal comments. |
| 2/27/2014 | Quinn, James W. | 2 | 1,450.00 | Prep and conference call regarding draft appellate brief. |
| 2/27/2014 | Perelman, Sabrina A. | 2.6 | 1,298.70 | T/c with clients re comments to SLMI appeal brief; revise draft per same. |
| 2/28/2014 | Perelman, Sabrina A. | 3.6 | 1,798.20 | Revise SLMI appeal brief per client comments; t/c with G. Silbert re same. |
| 2/28/2014 | Silbert, Gregory | 1.5 | 803.25 | conf. w/ S. Perelman re appeal brief; revise same |
| 2/28/2014 | Falk, Jessica Lynn | 0.8 | 316.80 | Review procedural overview and insert citations to record and publicly available documents |
| 3/4/2014 | Silbert, Gregory | 6 | 3,213.00 | revise appeal brief |
| 3/5/2014 | Quinn, James W. | 1 | 725.00 | Review/revise draft appeal brief |
| 3/5/2014 | Silbert, Gregory | 4.1 | 2,195.55 | revise appeal brief |
| 3/6/2014 | Quinn, James W. | 2 | 1,450.00 | Review/revise draft brief and conference with Greg Silbert. |
| 3/6/2014 | Silbert, Gregory | 3 | 1,606.50 | revise appeal brief; meet with J. Quinn |
| 3/7/2014 | Quinn, James W. | 1 | 725.00 | Review revised brief. |
| 3/7/2014 | Silbert, Gregory | 5 | 2,677.50 | revise appeal brief; emails re same |
| 3/7/2014 | Singer, Randi W. | 1 | 630.00 | Review 10th circuit brief |
| 3/8/2014 | Silbert, Gregory | 1.9 | 1,017.45 | conf. w/ client re appeal brief; revise same |
| 3/9/2014 | Silbert, Gregory | 0.8 | 428.40 | revise appeal brief; emails re same |
| 3/11/2014 | Quinn, James W. | 0.5 | 362.50 | Review client edits and discussion S. Perelman |
| 3/11/2014 | Perelman, Sabrina A. | 3.4 | 1,698.30 | Revise 10th Cir brief per client comments. |
| 3/12/2014 | Silbert, Gregory | 3.1 | 1,660.05 | revise appeal brief; conf. w/ S. Perelman re same; review brief re 10th circuit issues; conf. w/ client, co-counsel re same |
| 3/12/2014 | Perelman, Sabrina A. | 4.2 | 2,097.90 | Revise draft 10th Cir brief. |
| 3/13/2014 | Quinn, James W. | 1 | 725.00 | Review/revise appeal brief and conference with client |
| 3/13/2014 | Perelman, Sabrina A. | 1.8 | 899.10 | Revise draft 10th Cir brief per J. Quinn comments. |
| 3/17/2014 | Falk, Jessica Lynn | 6.4 | 2,534.40 | Review and cite-check 10th circuit appellee brief |
| 3/18/2014 | Falk, Jessica Lynn | 2.2 | 871.20 | Incorporate cite-checking edits into brief; Revise supplemental appendix table of contents; Review cases in brief for most up-to-date law on each point |
| 3/18/2014 | Silbert, Gregory | 1.8 | 963.90 | review and revise draft appeal brief; conf. w/ S. Perelman re same; emails re same; review AMT reply brief |

| Date | Name | Hours | Amount | Description |
|---|---|---|---|---|
| 3/18/2014 | Singer, Randi W. | 1 | 630.00 | revise 10th circuit brief |
| 3/19/2014 | Falk, Jessica Lynn | 3.3 | 1306.8 | Continue review of cases in brief for most up-to-date law on each point; Review and cite-check revised version of brief; Review 10th circuit rules for confirmation of compliance with filing requirements; Incorporate revisions into appellee brief; Correspondence with F. Baumann and H. Ludwig regarding oral argument request |
| 3/19/2014 | Quinn, James W. | 0.8 | 580.00 | Finalize brief; discussion with client and Greg Silbert. |
| 3/19/2014 | Silbert, Gregory | 1.8 | 963.90 | revise draft brief; conf. w/ client re same; emails re same; emails re oral argument request, finalizing and filing brief |
| 3/20/2014 | Perelman, Sabrina A. | 0.6 | 299.70 | Finalize 10th Cir brief for filing. |
| 3/25/2014 | Silbert, Gregory | 0.7 | 374.85 | review Lexmark supreme court decision; review draft 28(j) letter; emails re same |
| 3/25/2014 | Perelman, Sabrina A. | 1.6 | 799.20 | Review Lexmark decision; draft 28(j) letter re same. |
| 3/31/2014 | Quinn, James W. | 0.3 | 217.50 | Review and revise 28(j) letter |
| 4/1/2014 | Perelman, Sabrina A. | 0.4 | 199.80 | Finalize 28(j) letter re Lexmark for filing. |
| 4/8/2014 | Silbert, Gregory | 0.5 | 267.75 | review draft summary of reply brief; conf. w/ S. Perelman re same |
| 4/8/2014 | Perelman, Sabrina A. | 3 | 1,498.50 | Review SLMI reply brief; draft memo analyzing same. |
| 5/22/2014 | Perelman, Sabrina A. | 2.7 | 1,445.85 | draft 28(j) letter regarding Petrella decision |
| 5/24/2014 | Silbert, Gregory | 1.2 | 642.60 | review SLMI 28(j) letter re petrella; emails re same; draft response re same |
| 5/26/2014 | Quinn, James W. | 0.7 | 507.50 | 28(j) letter and draft response. |
| 5/27/2014 | Silbert, Gregory | 2.9 | 1,552.95 | revise 28(j) letter re Petrella; conf. w/ client re same; emails re same; conf. w/ S. Perelman re same |
| 5/27/2014 | Quinn, James W. | 0.5 | 362.50 | Review letter drafts for 10th Circuit. |
| 5/28/2014 | Perelman, Sabrina A. | 0.6 | 299.70 | Finalize and file 28j response letter re Petrella. |
| 5/28/2014 | Silbert, Gregory | 1 | 535.50 | conf. w/ client re 28(j) letter; revise same; conf. w/ S. Perelman re same |
| 10/9/2014 | Perelman, Sabrina A. | 3.1 | 1,656.95 | Draft oral argument outline; prepare materials re same. |
| 10/10/2014 | Quinn, James W. | 3.7 | 2,682.50 | Review cases and 9th Circuit argument and preparation materials for oral argument in 10th Circuit. |
| 10/17/2014 | Quinn, James W. | 1.5 | 1,087.50 | Review cases and related e-mails for 10th Circuit oral argument. |
| 10/21/2014 | Quinn, James W. | 3.2 | 2,320.00 | Draft revised outline of oral argument. |
| 10/22/2014 | Quinn, James W. | 2.7 | 1,957.50 | Oral argument prep and call with Denver counsel. |
| 10/24/2014 | Quinn, James W. | 1.4 | 1,015.00 | Prep oral argument |
| 10/24/2014 | Perelman, Sabrina A. | 2.6 | 1,389.70 | Assist in preparation for 10th Circuit argument. |
| 10/27/2014 | Quinn, James W. | 4.2 | 3,045.00 | Prep for argument; review cases. |
| 10/27/2014 | Perelman, Sabrina A. | 3.7 | 1,977.65 | Assist in preparation for 10th Circuit argument |
| 10/28/2014 | Quinn, James W. | 4.5 | 3,262.50 | Prep and appear at oral argument; e-mails with client regarding oral argument. |
| 10/28/2014 | Perelman, Sabrina A. | 5.5 | 2,939.75 | Attend 10th Circuit argument; t/c and email correspondence re same; draft summary of argument to team. |
| 10/29/2014 | Quinn, James W. | 1.2 | 870.00 | E-mails and discussion regarding 9th Circuit decision and related issues. |
| 10/29/2014 | Perelman, Sabrina A. | 2.1 | 1,122.45 | Research re 10th Circuit argument issues; draft 28j letter; review 9th Circuit opinion; revise 28j letter. |
| 10/30/2014 | Quinn, James W. | 1.5 | 1,087.50 | Revise 28(j) letter and conference with client and team. |
| 10/31/2014 | Perelman, Sabrina A. | 1.4 | 748.30 | Finalize 28j letter for filing; meeting re strategy in SLMI. |
| 11/16/2014 | Perelman, Sabrina A. | 1.9 | 1,015.55 | Research in support of supplemental briefing to 10th Circuit. |
| 11/18/2014 | Perelman, Sabrina A. | 4.2 | 2,244.90 | Draft supplemental brief to 10th Circuit |
| 11/19/2014 | Singer, Randi W. | 1 | 671.00 | Revise supplemental 10th circuit brief |
| 11/20/2014 | Quinn, James W. | 1.3 | 942.50 | Review/revise supplement brief and conference with Sabrina Perelman. |
| 11/20/2014 | Perelman, Sabrina A. | 1.7 | 908.65 | Revise draft supplemental brief per internal comments; circulate same for review. |
| 11/20/2014 | Silbert, Gregory | 1 | 605.00 | review and revise brief re preclusive effect of ninth circuit decision |
| 11/24/2014 | Quinn, James W. | 0.6 | 435.00 | Review/revise supplemental brief |
| 11/24/2014 | Singer, Randi W. | 0.8 | 536.80 | Revise 10th circuit supplemental brief |
| 11/26/2014 | Perelman, Sabrina A. | 1.4 | 748.30 | Finalize supplemental brief for filing; review SLMI supplemental brief; email correspondence re same. |
| | **TOTAL** | 211.4 | $ 117,004.65 | |

| Work Date | Name | Bill Hours | Bill Amount | Narrative |
|---|---|---|---|---|
| 1/15/2014 | Baumann, Fred | 0.4 | 202.00 | Begin review of SLMI opening brief. |
| 1/16/2014 | Baumann, Fred | 0.7 | 353.50 | Review of appellants' opening brief. |
| 2/24/2014 | Baumann, Fred | 1.2 | 606.00 | Review and revision of draft appeal brief and preparation of note to R. Singer re: same |
| 3/21/2014 | Baumann, Fred | 0.8 | 404.00 | Review of answer brief as filed |
| 4/1/2014 | Baumann, Fred | 0.8 | 404.00 | Review of Tenth Circuit oral argument calendars and preparation of e-mail to New York City co- counsel regarding same |
| 7/17/2014 | Baumann, Fred | 0.2 | 101.00 | Review of Order setting briefing schedule |
| 7/18/2014 | Baumann, Fred | 0.3 | 151.00 | Emails to and from R. Singer re oral argument |
| 7/21/2014 | Baumann, Fred | 1 | 505.00 | Review of emails from R. Singer re oral argument; review of 10th Circuit rules re oral argument; preparation of notes to R. Singer re same |
| 7/24/2014 | Baumann, Fred | 0.4 | 202.00 | Telephone conference(s) with Randi Singer re oral argument |
| 10/8/2014 | Baumann, Fred | 0.7 | 353.50 | Telephone call(s) from Sabrina Perelman re oral argument; review of Court docket and preparation of notes to WGM team re argument issues. |
| 10/20/2014 | Baumann, Fred | 0.6 | 303.00 | Review of Order assigning panel; emails to and from Weil team re same |
| 10/22/2014 | Baumann, Fred | 1 | 505.00 | Preparation for and attend telephone conference(s) with Weil team re Tenth Circuit argument |
| 10/28/2014 | Baumann, Fred | 3.1 | 1,565.50 | Meeting with Jim Quinn and Sabrina Perelman to prepare for oral argument; attend oral argument in Tenth Circuit |
| 10/31/2014 | Baumann, Fred | 0.3 | 151.50 | Emails re motion for recording of oral argument |
| 11/3/2014 | Baumann, Fred | 0.2 | 101.00 | Emails re motion in Tenth Circuit |
| 11/14/2014 | Baumann, Fred | 0.7 | 353.50 | Review of Order re supplemental briefing; notes to and from WGM re same |
| 11/26/2014 | Baumann, Fred | 0.7 | 353.50 | Review of supplemental briefs to the 10th Circuit; telephone conference(s) with S.Perelman re: note to SLMI co-counsel |
| | **TOTAL** | 13.1 | 6,615.00 | |

# EXHIBIT 3



# Report of the
# Economic Survey
# 2013

Prepared Under Direction of
Law Practice Management Committee

**American Intellectual Property Law Association**
241 18th Street South, Suite 700
Arlington, Virginia 22202
www.aipla.org



# REPORT OF THE
# ECONOMIC SURVEY
# 2013

PREPARED UNDER DIRECTION OF THE
AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION
LAW PRACTICE MANAGEMENT COMMITTEE

DAVID A. DIVINE, CHAIR
RICHARD W. GOLDSTEIN, VICE CHAIR

July 2013



910 Clopper Road, Suite 210N
Gaithersburg, Maryland 20878
TEL: (240) 268-1262
ARI@associationresearch.com

# AIPLA LAW PRACTICE MANAGEMENT 2013 ECONOMIC SURVEY PARTICIPANTS

**WE WOULD LIKE TO THANK THOSE WHO HELPED PUT TOGETHER AND REVIEW THIS YEAR'S AIPLA ECONOMIC SURVEY:**

**DAVE DIVINE**: LEE & HAYES – CHAIR OF LPM COMMITTEE

**RICHARD GOLDSTEIN**: GOLDSTEIN PATENT LAW – VICE CHAIR OF LPM COMMITTEE

**COLLEEN SCHALLER**: HOWSON & HOWSON LLP – CHAIR OF ECONOMIC SURVEY SUBCOMMITTEE

**JOHN THUERMER**: SQUIRE SANDERS – VICE CHAIR OF ECONOMIC SURVEY SUBCOMMITTEE

**ASHRAF ABDUL-MOHSEN**: ARI

**SALVATORE ANASTASI**: – BARLEY SNYDER

**RHONDA BOGART**: LEE & HAYES

**MEGHAN DONOHOE**: AIPLA

**NEIL KARDOS**: HARRITY & HARRITY LLP

**MEGAN KIRKEGAARD**: ARI

**DAVID MORELAND**: MARKS & CLERK

**DOUGLAS NEMEC**: SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

**MOLLY WEISBLATT**: AIPLA

---

**©2013 AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION**

**ALL RIGHTS RESERVED. NO PART OF THIS BOOK MAY BE REPRODUCED OR TRANSMITTED IN ANY FORM OR BY ANY MEANS, ELECTRONIC OR MECHANICAL, INCLUDING PHOTOCOPYING, RECORDING, OR BY AN INFORMATION STORAGE AND RETRIEVAL SYSTEM, WITHOUT PERMISSION IN WRITING FROM THE PUBLISHER.**

**COPIES OF THIS REPORT ARE AVAILABLE FROM AIPLA AT A COST OF $45 PER COPY FOR MEMBERS AND $495 PER COPY FOR NON-MEMBERS.**

**AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION**
**241 18TH STREET, SOUTH, SUITE 700**
**ARLINGTON VA 22202-3694**
**(703) 415-0780**
**WWW.AIPLA.ORG**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................... 1

DATA COLLECTION ................................................................................................................. 1

CHANGES TO THE SURVEY ..................................................................................................... 1

DESCRIPTION OF STATISTICS AND FORMATTING CONVENTIONS .................................................. 2

RESPONDENT BACKGROUND .................................................................................................. 4

IP BUDGET FOR CORPORATE PRACTITIONERS ............................................................................ 6

INCOME RECEIVED IN 2012 AND PROJECTED FOR 2013, BILLING RATES, AND
BILLABLE HOURS ................................................................................................................... 7

SUMMARY OF SURVEY RESULTS BY PRACTICE TYPE ................................................................ 11
SOLO PRACTITIONER ........................................................................................................ 11
PRIVATE FIRM, PARTNER ................................................................................................... 14
PRIVATE FIRM, ASSOCIATE ................................................................................................ 17
PRIVATE FIRM, OF COUNSEL .............................................................................................. 20
HEAD OF CORPORATE IP DEPARTMENT .............................................................................. 23
CORPORATE IP DEPARTMENT, ATTORNEY .......................................................................... 24
PRIVATE FIRM, PATENT AGENT .......................................................................................... 25
CORPORATE IP DEPARTMENT, PATENT AGENT .................................................................... 26

TYPICAL CHARGES FOR IP LAW SERVICES ............................................................................ 27

TYPICAL TYPE OF FEE FOR IP LAW SERVICE CHARGES ........................................................... 31

TYPICAL COSTS OF LITIGATION ............................................................................................ 34

CHARACTERISTICS OF FIRMS ................................................................................................ 42
NUMBER AND TYPE OF ATTORNEYS .................................................................................. 42
ASSOCIATE STARTING SALARY AND SUMMER MONTHLY PAY .............................................. 44
SUPPORT STAFF AND SERVICES ......................................................................................... 46
BILLING RATES AND PRACTICES ......................................................................................... 49
LIABILITY INSURANCE ...................................................................................................... 52
BUSINESS DEVELOPMENT ................................................................................................ 52

STATISTICAL TABLES ......................................................................................... APPENDIX A
INDIVIDUAL DATA ........................................................................................... I-1 TO I-192
FIRM DATA .................................................................................................... F-1 TO F-44

SURVEY INSTRUMENTS ..................................................................................... APPENDIX B

Case No. 1:12-cv-02663-WJM-KMT     Document 132-3     filed 06/11/15     USDC Colorado
Page 46 of 109
AIPLA Report of the Economic Survey 2013

Appellate Case: 13-1407     Document: 01019373678     Date Filed: 01/21/2015     Page: 6

## INTRODUCTION

The AIPLA Economic Survey, developed and directed by the Law Practice Management Committee of the American Intellectual Property Law Association (AIPLA), reports the annual incomes and related professional and demographic characteristics of intellectual property (IP) law attorneys and associated patent agents. Conducted every other year by AIPLA, this survey also examines the economic aspects of intellectual property law practice, including individual billing rates and typical charges for representative IP law services. All AIPLA members were invited to participate.

The Law Practice Management Committee took an active role in reviewing the Economic Survey with a goal of improving the usefulness and value of the data that are collected and analyzed.

## DATA COLLECTION

An e-mail invitation to participate in the 2013 AIPLA Economic Survey was sent to a list of 12,605 AIPLA members; accounting for bounces and requests to be removed from the database, the actual sample surveyed was 11,870. The e-mail included an individualized direct link to the Web-based questionnaire along with an attached letter requesting additional participation in the Firm portion of the Economic Survey. The initial e-mail was followed up by several e-mail reminders, including notices specifically directed at collecting additional Firm responses.

A total of 1,799 individuals responded by completing some or all of the Individual questionnaire, yielding a 15.2% response rate, similar to 2011. This is the fourth time the survey has been conducted online.

The additional efforts to gather data for the Firm portion of the survey garnered 246 responses—lower than in 2011, when 287 firm representatives completed the firm questionnaire.

All data submitted by respondents were reviewed and evaluated for reasonableness and consistency; data anomalies and outliers were analyzed and corrected or deleted.

In many cases, respondents did not answer every question, so the total counts for each table may vary.

## CHANGES TO THE SURVEY

A number of enhancements were made to the 2013 Individual Survey instrument. Questions were added and wording was refined, based on comments and questions received from past surveys. A new question asking about the percentage of the total time spent by respondents in business development was added in Part III for Private Practitioners. Also in Part III, a clarifying phrase, 'If you use billable hours', was added to the question about the number of billable hours recorded in 2012. Furthermore, the question for private practitioners, that was added in 2011 to define who is primarily represented by each firm (plaintiffs, defendants or both equally), was removed from this year's survey because it was decided by the committee that the data collected in 2011 did not bring additional value to the report. For Part IV—under Patent Infringement—several options were added including: All Varieties, Pursuant to the Hatch-Waxman Act, Defending Claims of Patent Infringement by Non-Practicing Entity, and Section 337—Patent Infringement Action in the International Trade Commission. Additionally, the $1-$25 million at-risk option for estimating the total cost of litigation was divided into two new categories—$1-$10 million and $10-$25 million at risk. For historical comparisons, a combined risk category ($1-$25 million) was calculated using the averages of total costs from the newly created risk categories.

Case No. 1:12-cv-02663-WJM-KMT    Document 132-3    filed 06/11/15    USDC Colorado
AIPLA Report of the Economic Survey 2013
Page 47 of 109

Appellate Case: 13-1407    Document: 01019373678    Date Filed: 01/21/2015    Page: 7

Finally, a new section about business development was also added to the 2013 Firm Survey instrument, along with a question evaluating the format in which the Report of the Economic Survey would be delivered in future surveys. This format question was also added to the end of the 2013 Individuals Survey instrument.

In the data tables in the report, a minimum of three responses was required to show composite values. **The term "ISD" is used in the tables to show insufficient data.** Different this year, table rows with one or two respondents have been omitted to protect the anonymity of respondents and tables with no valid rows have likewise been omitted. Also, tables with less than 20 respondents overall were not shown in order to maintain statistical reliability of the data.

## DESCRIPTION OF STATISTICS AND FORMATTING CONVENTIONS

**Quartiles:** In tables that report incomes, billing rates, typical charges, and other distributions of real numbers, responses are described by three quartiles: the first quartile, the median, and the third quartile. Quartiles identify interpolated locations on a distribution of values and do not necessarily represent actual reported values. Another label for quartiles is percentiles; the first quartile is the same as the 25th percentile, the median is the 50th percentile, and the third quartile is the 75th percentile. For example, when all reported values are listed from highest to lowest, the third quartile identifies the point on the list that is equal to or greater than 75 percent (three quarters) of the reported values and equal to or less than 25 percent (one quarter).

**Median (midpoint):** The median identifies the point in the distribution of reported values that is equal to or larger than one-half of reported values and equal to or smaller than one-half—that is, the mid-point.

A median is reported when three or more values were reported by respondents. The first and third quartiles are reported when five or more values were reported by respondents. Quartiles and medians based on values reported by survey respondents are estimates of the quartiles and medians that could be determined if the characteristics of the entire population represented by survey respondents were known. In general, the more values that are reported, the more accurately quartiles estimate the distribution of values among all AIPLA members.

**Mean (average):** The sum of all values divided by the number of values.

It should be noted that if the mean exceeds the median, it is because high values affect the calculations. It is also possible, especially with a small number of values, for the mean to exceed the third quartile.

Percentages in some tables and some graphs may not sum to exactly 100% due to rounding.

Other definitions useful in understanding tabular information presented in this report are:

**Income:** Defined as *"total gross income in calendar year 2012 from your primary practice…including any partnership income, cash bonus, share of profits, and similar income you received, and any deferred compensation in which you vested in 2012."*

**Typical Charges:** Respondents were instructed to respond *"only if you have been personally responsible for a representative sample of the type of work to which the question pertains, either as a service provider (an attorney in private practice) or as a purchaser of such services (corporate counsel)."* In thinking of a typical charge, respondents were directed to assume *"a typical case with no unusual complications,"* and asked *"what did you charge (or would have charged) or what were you charged (or would have expected to be charged), in 2012, for legal services only (including search fees, but not including copy costs, drawing fees or government fees) in each of the following types of US matters?"* Respondents were also asked to indicate the type of fee primarily used in 2012 (i.e., fixed fee, hourly, other).

Case No. 1:12-cv-02663-WJM-KMT    Document 132-3    filed 06/11/15    USDC Colorado
Page 48 of 109
AIPLA Report of the Economic Survey 2013

Appellate Case: 13-1407    Document: 01019373678    Date Filed: 01/21/2015    Page: 8

**Estimated Litigation Costs:**  Respondents were instructed to respond to these questions *"only if you have personal knowledge either as a service provider (attorney in private practice) or as a purchaser of such services (corporate counsel) of the costs incurred within the relatively recent past, for the type of work to which the question pertains. In each of the questions, 'total cost' is all costs, including outside legal and paralegal services, local counsel, associates, paralegals, travel and living expenses, fees and costs for court reporters, photocopies, courier services, exhibit preparation, analytical testing, expert witnesses, translators, surveys, jury advisors, and similar expenses."*  Respondents were further instructed to estimate these based on a single IP asset, such as one patent at issue or one trademark.

**Location:**  The metropolitan areas of Boston, New York City, Philadelphia, Washington (DC-MD-VA), Chicago, and Minneapolis–St. Paul include all localities—central city and surrounding areas—within the primary metropolitan statistical area.  One state—Texas—had sufficiently large numbers of respondents to be reported separately.  There were sufficient responses to breakout Los Angeles and San Francisco separately; California firms outside of those metro areas were included in "Other West."  Other categories exclude those named metropolitan areas.

| LOCATION | | |
| --- | --- | --- |
| **METROPOLITAN AREAS** | **PERCENT** | **COUNT** |
| Boston CMSA* | 4.9% | 89 |
| New York City CMSA* | 8.4% | 151 |
| Philadelphia CMSA* | 2.9% | 53 |
| Washington, DC CMSA* | 16.5% | 296 |
| Other East: Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, and West Virginia | 5.9% | 107 |
| Metro Southeast: Raleigh–Durham, Greensboro–Winston-Salem, and Charlotte, NC; Atlanta, GA; and Miami–Ft. Lauderdale–West Palm Beach, FL | 4.2% | 75 |
| Other Southeast:  North Carolina, South Carolina, Georgia, and Florida | 3.0% | 54 |
| Chicago CMSA* | 5.4% | 97 |
| Minneapolis–St. Paul PMSA** | 4.4% | 79 |
| Other Central:  Minnesota, North Dakota, South Dakota, Wisconsin, Michigan, Ohio, Indiana, Illinois, Iowa, Nebraska, Kansas, Missouri, Kentucky, Oklahoma, Arkansas, Louisiana, Mississippi, Alabama, and Tennessee | 16.3% | 293 |
| Texas | 7.3% | 132 |
| Los Angeles CMSA* | 3.2% | 57 |
| San Francisco CMSA* | 5.4% | 97 |
| Other West:  Montana, Wyoming, Colorado, New Mexico, Idaho, Utah, Nevada, Arizona, Washington, Oregon, California, Alaska, and Hawaii | 12.2% | 219 |
| *CMSA: Consolidated Metropolitan Statistical Area– a metro area with a population of one million or more.  **PMSA: Primary Metropolitan Statistical Area– a component of a CMSA. | | |

## RESPONDENT BACKGROUND

- A total of 1,799 individuals participated in the survey.

- The majority of survey participants were male (80.9%) and white/caucasian (87.8%).

- Six in 10 respondents (60.7%) were under the age of 50, with nearly one-third ranging in age between 40 and 49. The proportion of respondents aged 60 or more was 15.9%, up from 8.5% in 2011.

- Other than a law degree, more than one-third of all respondents (37.2%) reported holding an advanced degree such as a Master's or Ph.D. A majority of respondents (58.1%) reported holding a Bachelor's degree.

- Over half (53.7%) of all respondents were Private Firm, Partner and Private Firm, Associate, followed by Corporate IP Department, Attorney (11.2%), Solo Practitioner (8.6%), and Corporate IP Department, Head (6.7%)—all very similar to 2011 and 2009.

- A great deal (88.3%) of all respondents had been admitted to the patent bar.

- About two-thirds of all respondents (68.8%) had fewer than 20 years' experience practicing Intellectual Property Law, compared with 70.3% reported in the 2011 Economic Survey. 16.0% reported having fewer than 5 years' of IP law experience in 2012, down slightly from 16.8% for 2010. In 2012, there were fewer respondents with 10-14 years of experience than in 2010 (18.1% vs. 20.8%, respectively).

- Respondents were asked to report their percent of time spent in various areas of technical specialization. The most common IP technical specialization, representing over 50% of respondents' time, was mechanical (28.4%), followed by computer software (17.5%), chemical (15.6%), and electrical (14.6%).

- Nearly four in 10 respondents (38.6%) practiced in the Mid-Atlantic or New England area, including 16.5% in the Washington, DC, Consolidated Metropolitan Statistical Area (CMSA). The Central region represented 26.1%, and one in five (20.8%) were located in the West—very similar to 2011.

- Similar to the previous two surveys, respondents reported that they were not very likely to have changed employment (87.8%). Of those who had changed employment in 2012 (12.2%), 5.0% had switched from one private firm to another private firm.



**GENDER (P. I-1, Q8)**

Male 80.9%

Female 19.1%



**ETHNICITY (P. I-1, Q9)**

White/Caucasian 87.8%

Other 1.3%

Blended 1.2%

N.A. Indian/ Native Canadian 0.3%

Asian/Pacific Islander 6.2%

Hispanic/Latino 1.8%

Black/African American 1.4%

### AGE (P. I-1, Q7)



### PRIMARY PRACTICE (P. I-1, Q2)
*Background of All Respondents*



### ADMITTED TO THE PATENT BAR (P. I-1, Q4)



### YEARS OF INTELLECTUAL PROPERTY LAW EXPERIENCE (P. I-2, Q10)



### LOCATION (P. I-2, Q1)



### CHANGED EMPLOYMENT IN 2012 (P. I-1, Q5)



Case No. 1:12-cv-02663-WJM-KMT    Document 132-3    filed 06/11/15    USDC Colorado
Page 51 of 109
AIPLA Report of the Economic Survey 2013

Appellate Case: 13-1407    Document: 01019373678    Date Filed: 01/21/2015    Page: 11

## IP BUDGET FOR CORPORATE PRACTITIONERS



**ANNUAL IP BUDGET FOR COMPANY (P. I-73, Q27)**
**CORPORATE IP, HEAD**
*By Technology Focus*



**CHANGE IN IP BUDGET FOR COMPANY:**
**2011-2012 (P. I-74, Q28)**
*Reported by Corporate IP, Head*

- As reported by Corporate IP Department Heads, six in 10 (60.0%) of the IP budgets for companies with 11–25 full-time IP lawyers and agents stayed the same from 2011 to 2012, more than the 42.7% who reported no change in IP budgets for all responding companies.

- Responding Corporate IP Heads at companies with 6–10 full-time IP lawyers and agents were much more likely to report an increase in their budget from 2011 to 2012 (54.5%) than was reported in 2011 for 2010 budgets compared to 2009, where only 18.8% of firms with 6–10 employees reported an increase in their IP budgets.

Case No. 1:12-cv-02663-WJM-KMT    Document 132-3    filed 06/11/15    USDC Colorado
Page 52 of 109
ABA Report of the Economic Survey 2013

Appellate Case: 13-1407    Document: 01019373678    Date Filed: 01/21/2015    Page: 12

## INCOME RECEIVED IN 2012 AND PROJECTED FOR 2013, BILLING RATES, AND BILLABLE HOURS

Compensation was measured broadly by gross income, which includes salary, partnership income, bonuses, shares of profits, and deferred compensation. Also covered were retirement and savings plans as well as expected total cash income for 2013. In addition, for private practitioners, data were collected for billable hours and rates and the amount billed for legal services.  Findings are summarized below:

- Primary practice median gross income for 2012 was $210,000 for all participants. This is slightly up from $205,000 reported for 2010. Among the highest earners was private firm partner with a median income of $400,000, up from $374,328 in 2010, but still below levels reported in 2008 ($415,000).

- Median income in 2012 for those in private practice was $225,000, 7.1% more than in 2010. On the other hand, corporate practitioners experienced a decrease in income over the past two years to a level of $211,000, down from $214,000—a 1.4% decline.

- For 2012, the median employer contribution to 401(k) and 403(b) retirement & savings plans was $8,500. The median reported by private firm partners was nearly twice the overall—$16,250—however, slightly lower than the figure reported for 2010.

- The median employer contribution to all other pensions (defined benefit, defined contribution & capital accumulation plans) was $16,000, based on 211 responses.

- Anticipated total cash income (median) for 2013 was $220,000, a 4.8% increase over the actual level reported for 2012. Private firm partners reported the highest median anticipated income in 2013, $400,000, reflecting no change from actual income for 2012.

- Non-cash income for 2012 from law practice stock options, stock sales, and in-kind compensation was $60,000 (median) for 219 respondents, up from the $45,000 reported for 2010.

- Median billable hours recorded for all individuals in 2012 was 1,650, exactly the same as median hours reported for 2010. Private firm associates billed the most hours, 1,805 (median), slightly higher than 2010. Private firm partners typically billed 1,650 hours during 2012, similar to 2010.

- The median billing rate for all attorneys was slightly higher in 2012 ($350 per hour) than in 2010 ($340). Median billing rate was the highest for private firm partners ($425) and the lowest for solo practitioners ($288).

- For 2012, the median dollar amount billed for legal services was $493,000, up slightly from two years earlier ($486,500). The highest median was generated by private firm partners ($610,000), followed by private firm associate ($455,000); the lowest median was generated by solo practitioners ($180,000).

- Hourly billing continues to be the predominant billing basis for 2012, used by 72.9% of all respondents, followed by predetermined fee (23.9%). However, solo practitioners bill on an hourly basis 55.7% of the time and use a fixed or predetermined fee 38.7% of the time, very similar to the pattern observed for 2010.

- The percent of billable hours actually billed to clients (hourly or any other basis) was 95% for 2012, unchanged from the median percent reported for 2010.

Case No. 1:12-cv-02663-WJM-KMT    Document 132-3    filed 06/11/15    USDC Colorado
Page 53 of 109
AIPLA Report of the Economic Survey 2013

Appellate Case: 13-1407    Document: 01019373678    Date Filed: 01/21/2015    Page: 13

## TYPICAL CHARGES FOR IP LAW SERVICES

Survey respondents were asked to report typical charges for 38 IP law services—*but only if they had been personally responsible for a representative sample of the work involved either as a service provider or as a service purchaser.* Charges were to be based on cases with no unusual complications and were to include legal services only (no copy, drawing, or government fees). The 38 services were grouped under four headings: Trademarks (including Service Marks) (11 services), US Utility Patents (18 services), Foreign Origin and Foreign Patents (six services), and US Design Patents, Plant Patents, and Copyrights (three services). The median charge for each service in 2004, 2006, 2008, 2010 and 2012 is provided below.

| MEDIAN CHARGES FOR SERVICES | 2004 | 2006 | 2008 | 2010 | 2012 |
|---|---|---|---|---|---|
| **TRADEMARKS** | | | | | |
| Clearance search | $950 | $1,000 | $1,000 | $1,000 | $1,000 |
| Registration application | 650 | 673 | 700 | 700 | 700 |
| Prosecution | 1,000 | 1,000 | 1,200 | 1,000 | 1,000 |
| Statement of use | 300 | 300 | 350 | 350 | 350 |
| Appeal to the Board | 3,000 | 3,000 | 3,500 | 3,000 | 2,500 |
| Section 8 and 15 declaration | 400 | 400 | 450 | 450 | 463 |
| Renewal application | 500 | 500 | 500 | 500 | 500 |
| Filing foreign origin registration application received ready for filing | 500 | 500 | 500 | 500 | 500 |
| Filing for an international trademark | 700 | 700 | 800 | 750 | 700 |
| Preparing for a UDRP petition | N/A | N/A | N/A | 2,400 | 2,400 |
| Responding to a UDRP petition | N/A | N/A | N/A | 2,000 | 1,500 |
| **US UTILITY PATENTS** | | | | | |
| Original (not divisional, continuation, or CIP) non-provisional application on invention of minimal complexity | $6,000 | $6,500 | $7,000 | $7,000 | $6,500 |
| Provisional application | 3,000 | 3,500 | 3,500 | 3,500 | 3,500 |
| Original application, relatively complex—biotech/chemical | 12,000 | 12,000 | 12,000 | 10,500 | 10,000 |
| Original application, relatively complex—electrical/computer | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Original application, relatively complex—mechanical | 8,000 | 8,600 | 9,000 | 9,000 | 8,500 |
| Application amendment/argument of minimal complexity | 1,500 | 1,600 | 1,850 | 1,800 | 1,800 |
| Application amendment/argument, relatively complex—biotech/chemical | 3,000 | 3,000 | 3,200 | 3,000 | 3,000 |
| Application amendment/argument, relatively complex—electrical/computer | 2,800 | 3,000 | 3,000 | 3,000 | 3,000 |
| Application amendment/argument, relatively complex—mechanical | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| Appeal to Board without oral argument | 3,600 | 4,000 | 4,500 | 4,000 | 4,000 |
| Appeal to Board with oral argument | 6,500 | 6,500 | 8,000 | 7,500 | 7,000 |
| Issuing an allowed application | 500 | 500 | 500 | 500 | 500 |
| Ex parte re-exam | 7,500 | 9,500 | 10,000 | 10,000 | 15,000 |
| Paying a maintenance fee | 200 | 250 | 250 | 250 | 250 |
| Novelty search | 1,500 | 2,000 | 2,000 | 2,000 | 2,000 |
| Validity/invalidity only opinion per patent | 10,000 | 13,000 | 12,000 | 10,000 | 10,000 |
| Infringement/non-infringement only opinion per patent | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Combination validity and infringement per patent | 15,000 | 20,000 | 18,000 | 15,000 | 15,000 |
| **FOREIGN ORIGIN AND FOREIGN PATENTS** | | | | | |
| Filing in USPTO, received ready for filing | $900 | $1,000 | $1,000 | $1,000 | $950 |
| Filing non-PCT application abroad, per country | 800 | 900 | 900 | 875 | 800 |
| Filing previously prepared US application as PCT application in US | 900 | 1,000 | 1,000 | 1,000 | 998 |
| Entering National Stage in US Receiving Office from foreign origin | 800 | 900 | 1,000 | 1,000 | 1,000 |
| Entering National Stage in each foreign receiving office from US origin | 606 | 750 | 800 | 800 | 760 |
| Paying an annuity or maintenance fee | 200 | 250 | 250 | 250 | 250 |
| **US DESIGN PATENTS, PLANT PATENTS, AND COPYRIGHTS** | | | | | |
| US design patent application | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 |
| US plant patent application | 2,000 | 2,000 | 2,000 | 2,300 | 1,500 |
| Copyright registration application | 300 | 300 | 350 | 395 | 350 |

## TYPICAL TYPE OF FEE FOR IP LAW SERVICE CHARGES

For a Trademark Prosecution (total, including amendments and interviews but not appeals), 83.1% of respondents primarily billed hourly. Additionally, the larger firms (60 or more attorneys) were more likely than the smaller firms (1-3 attorneys) to bill hourly, 84.4% compared to 74.5%, respectively. Regarding US Utility Patents charges, approximately one-third of respondents reported using a fixed fee for Original (not divisional, continuation, or CIP) non-provisional utility patent applications on inventions of minimal complexity, e.g., 10 page specification, 10 claims (Preparation and Filing). More specifically, respondents reporting in Philadelphia (20.0%) and San Francisco (29.0%) were less likely than the average respondent (36.3%) to primarily use fixed fees for this type of charge. For most Foreign Origin and Foreign Patent fees, respondents are split with approximately half using fixed fees and the other half using hourly fees. The smaller firms (1-3 attorneys) are less likely to be primarily charging hourly fees than the larger firms (60 or more attorneys) for these types of charges. US plant patent application preparation and filing was reported as being billed on an hourly basis by 67.2% of respondents.

### TYPE OF FEE PRIMARILY USED IN 2012 FOR TRADEMARKS:
### (P. I-126, Q37a-Q37k)



AIPLA Report of the Economic Survey 2013

## TYPICAL COSTS OF LITIGATION

Survey participants were asked to provide cost estimates, *but only for the types of litigation they had personal knowledge of, either as a service provider (attorney in private practice) or as a purchaser (corporate counsel), and were engaged in recently.*  "Total cost" was requested, including outside legal and paralegal services, local counsel, associates, paralegals, travel and living expenses, fees and costs for court reporters, photocopies, courier services, exhibit preparation, analytical testing, expert witnesses, translators, surveys, jury advisors, and similar expenses.

The following table reports median litigation costs for Patent Infringement, Trademark Infringement, Trademark Opposition/Cancellation, Copyright Infringement, Trade Secret Misappropriation, Two-Party Interference, and Inter Partes Reexamination. In this year's survey, more varieties were added under the patent infringement suit. In addition, the $1-$25 million at-risk option for estimating the total cost of litigation was divided into two new categories—$1-$10 million and $10-$25 million at risk. For historical comparisons, a combined risk category ($1-$25 million) was calculated using averages of the total costs for the newly created risk categories.

Median costs for Inter Partes Reexamination have experienced the most growth compared to 2011, while median costs for other types of suits have seen ups and downs.  Median litigation costs for patent infringement suits have not changed much since 2011, with the exception of cases with more than $25 million at risk inclusive, all costs, which has actually increased 10% when compared to 2011.

| MEDIAN LITIGATION COSTS | $000s | | | | |
|---|---|---|---|---|---|
| | 2005 | 2007 | 2009 | 2011 | 2013 |
| PATENT INFRINGEMENT SUIT, ALL VARIETIES | | | | | |
| LESS THAN $1 MILLION AT RISK | | | | | |
| End of discovery | $350 | $350 | $350 | $350 | $350 |
| Inclusive, all costs | 650 | 600 | 650 | 650 | 700 |
| $1-$10 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $1,000 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 2,000 |
| $10-$25 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $2,000 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 3,325 |
| $1-$25 MILLION AT RISK | | | | | |
| End of discovery | $1,250 | $1,250 | $1,500 | $1,500 | $1,400 |
| Inclusive, all costs | 2,000 | 2,500 | 2,500 | 2,500 | 2,600 |
| MORE THAN $25 MILLION AT RISK | | | | | |
| End of discovery | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 |
| Inclusive, all costs | 4,500 | 5,000 | 5,500 | 5,000 | 5,500 |
| | | | | | |
| PATENT INFRINGEMENT PURSUANT TO THE HATCH-WAXMAN ACT (I.E., "ANDA LITIGATION") | | | | | |
| LESS THAN $1 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $300 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 513 |
| $1-$10 Million at Risk | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $1,000 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 1,800 |
| $10-$25 Million at Risk | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $2,500 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 4,000 |
| $1-$25 Million at Risk | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $1,750 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 2,650 |
| More than $25 Million at Risk | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $3,250 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 6,000 |

| MEDIAN LITIGATION COSTS (CONTINUED) | $000s | | | | |
|---|---|---|---|---|---|
| | 2005 | 2007 | 2009 | 2011 | 2013 |
| **PATENT INFRINGEMENT SUIT, DEFENDING CLAIMS OF PATENT INFRINGEMENT BY NON-PRACTICING ENTITY** | | | | | |
| LESS THAN $1 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $300 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 600 |
| $1-$10 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $750 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 1,250 |
| $10-$25 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $1,500 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 2,400 |
| $1-$25 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $983 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 1,750 |
| MORE THAN $25 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $2,500 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 4,000 |
| | | | | | |
| **PATENT INFRINGEMENT SUIT, SECTION 337** | | | | | |
| LESS THAN $1 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $375 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 550 |
| $1-$10 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $750 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 1,800 |
| $10-$25 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $1,500 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 3,000 |
| $1-$25 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $1,250 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 2,400 |
| MORE THAN $25 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $3,000 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 5,000 |
| | | | | | |
| **TRADEMARK INFRINGEMENT SUIT** | | | | | |
| LESS THAN $1 MILLION AT RISK | | | | | |
| End of discovery | $200 | $150 | $175 | $200 | $150 |
| Inclusive, all costs | 300 | 255 | 300 | 350 | 300 |
| $1-$10 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $350 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 550 |
| $10-$25 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $500 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 1,000 |
| $1-$25 MILLION AT RISK | | | | | |
| End of discovery | $400 | $350 | $400 | $425 | $450 |
| Inclusive, all costs | 700 | 650 | 700 | 775 | 800 |
| MORE THAN $25 MILLION AT RISK | | | | | |
| End of discovery | $750 | $600 | $750 | $1,000 | $750 |
| Inclusive, all costs | 1,250 | 1,250 | 1,400 | 1,500 | 1,500 |
| | | | | | |
| **TRADEMARK OPPOSITION/CANCELLATION** | | | | | |
| End of discovery | $50 | $50 | $50 | $50 | $50 |
| Inclusive, all costs | 80 | 75 | 80 | 90 | 80 |

AIPLA Report of the Economic Survey 2013

| MEDIAN LITIGATION COSTS (CONTINUED) | $000s | | | | |
| --- | --- | --- | --- | --- | --- |
| | 2005 | 2007 | 2009 | 2011 | 2013 |
| **COPYRIGHT INFRINGEMENT SUIT** | | | | | |
| LESS THAN $1 MILLION AT RISK | | | | | |
| End of discovery | $138 | $150 | $150 | $200 | $150 |
| Inclusive, all costs | 250 | 290 | 300 | 350 | 300 |
| $1-$10 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $350 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 563 |
| $10-$25 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $600 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 1,000 |
| $1-$25 MILLION AT RISK | | | | | |
| End of discovery | $250 | $350 | $350 | $400 | $400 |
| Inclusive, all costs | 440 | 500 | 600 | 700 | 788 |
| MORE THAN $25 MILLION AT RISK | | | | | |
| End of discovery | $550 | $550 | $750 | $750 | $775 |
| Inclusive, all costs | 975 | 1,000 | 1,100 | 1,375 | 1,625 |
| | | | | | |
| **TRADE SECRET MISAPPROPRIATION SUIT** | | | | | |
| LESS THAN $1 MILLION AT RISK | | | | | |
| End of discovery | $200 | $200 | $250 | $250 | $250 |
| Inclusive, all costs | 300 | 350 | 400 | 425 | 425 |
| $1-$10 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $500 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 800 |
| $10-$25 MILLION AT RISK | | | | | |
| End of discovery | N/A | N/A | N/A | N/A | $850 |
| Inclusive, all costs | N/A | N/A | N/A | N/A | 1,400 |
| $1-$25 MILLION AT RISK | | | | | |
| End of discovery | $500 | $500 | $600 | $700 | $750 |
| Inclusive, all costs | 1,000 | 800 | 1,000 | 1,000 | 1,150 |
| MORE THAN $25 MILLION AT RISK | | | | | |
| End of discovery | $1,000 | $1,000 | $1,225 | $1,360 | $1,900 |
| Inclusive, all costs | 2,000 | 1,750 | 2,250 | 2,500 | 2,950 |
| | | | | | |
| **TWO-PARTY INTERFERENCE** | | | | | |
| End of discovery | $300 | $200 | $200 | $175 | $200 |
| Inclusive, all costs | 600 | 450 | 463 | 338 | 300 |
| | | | | | |
| **INTER PARTES REEXAMINATION** | | | | | |
| Through filing request | $20 | $15 | $25 | $35 | $50 |
| Inclusive of first patent owner response | 30 | 27 | 38 | 50 | 70 |
| Inclusive of all patent owner responses | 40 | 43 | 55 | 75 | 100 |
| Inclusive of an appeal to the board | 52 | 73 | 80 | 100 | 130 |
| Inclusive of an appeal to federal court | 95 | 150 | 188 | 200 | 250 |

Case No. 1:12-cv-02663-WJM-KMT    Document 132-3    filed 06/11/15    USDC Colorado
page 58 of 109
AIPLA Report of the Economic Survey 2013

Appellate Case: 13-1407    Document: 01019373678    Date Filed: 01/21/2015    Page: 18

## CHARACTERISTICS OF FIRMS

A separate questionnaire was used to obtain data on the characteristics of firms engaged in IP practice, including the number and type of attorneys, support staff employed, activities outsourced, billing rates and practices, and liability insurance issues. The source of this information was typically the managing partner/shareholder (56.6%). The information provided by 246 private firms is summarized and illustrated below.

### NUMBER AND TYPE OF ATTORNEYS

- Approximately three of 10 responding firms (29.3%) had five or fewer attorneys. Four in 10 responding firms (41.3%) reported having six to 30 attorneys, more than the portion (34.5%) reporting the same in 2011.

- Approximately three-quarters (73.5%) reported having only one major office location, more than the 61.5% reported in 2011.

- 83.2% reported that IP accounted for three-quarters or more of their practice, up slightly from the 80% reported in 2011.

- The median number of partners/shareholders for all firms in 2012 remained at the same level reported in 2010 (5.0), but is lower than the 6.5 reported in 2008. Nearly eight of 10 firms (78.8%) reported having associates in 2012, with a median number of 11.0, up from 9.0 reported for 2010, but down from the 13.0 reported for 2008.

- The typical fee paid to recruiters averaged 21.5% of the starting salary, down from the 25% reported in 2011.

- Nearly nine in 10 responding firms (87.1%) indicated that less than 25% of attorneys were hired through a recruiter.

**NUMBER OF ATTORNEYS IN FIRM IN 2012 (P. F-1, Q5)**



**POSITION OF PERSON RESPONDING TO FIRM SURVEY (P. F-2, Q1)**



**PERCENT OF PRACTICE THAT IS IP (P. F-1, Q21)**



Case No. 1:12-cv-02663-WJM-KMT    Document 132-3    filed 06/11/15    USDC Colorado
page 59 of 109
AIPLA Report of the Economic Survey 2013

Appellate Case: 13-1407    Document: 01019373678    Date Filed: 01/21/2015    Page: 19

### BILLING RATES AND PRACTICES

- For 2012, median firm billings for professional legal services were $3,272,000. The median amount billed by firms whose practice was 75% or more IP was $2,800,000. These figures are relatively similar to the ones reported for 2010 ($3,450,000 and $2,495,000, respectively), but are considerably lower than those reported for 2008 ($6,159,722 and $3,959,794, respectively). The median firm billings for professional legal services were 53.1% of the figure reported for 2008.

- The typical firm in 2012 reported total billings per attorney of $350,000, an amount 10.1% lower than in 2010 and 12.5% lower than in 2008. Firms with 101 or more attorneys reported a median value of $641,606, approximately two to three times the amount for the smaller firms (5 or fewer attorneys). Compared to 2010, the billings per attorney for the smallest firms was 1.8% lower for firms with one attorney but 49.1% higher for firms with two attorneys; the largest firms' billings per attorney was 9.8% higher.  Firms with 6-10 attorneys saw a decrease of 14.3% compared to 2010 billings per attorney.

- The median average billing rate for IP work was $330 in 2012, higher than the median of $320 in 2010 and $300 in 2008.  Respondents at the largest firms reported a median average billing rate for IP work of $450 for 2012, 5.9% higher than reported for 2010.

- For 2012, the median average billing rate for non-IP work was $339 for all respondents, but was $483 for those at the largest firms.

- The average ratio of firm collections in 2012 to the firm's billings in 2012 was 94.2%, up slightly from 2010.

- Overhead for all firms was 35.0% of total 2012 collections, unchanged from its level in 2010.

- The average percent change in billings for IP legal services, from 2011 to 2012, was 17.8%, and 14.3% from 2010 to 2011.

## TOTAL 2012 BILLINGS PER ATTORNEY (P. F-20, Q25)

*By Number of Attorneys in Firm in 2012*



## LIABILITY INSURANCE

- In 2012, the typical firm reported maximum total liability coverage of $4,350,000, down from the five million dollars reported in 2010.

- The maximum coverage per claim in 2012 was $3,000,000 (median), up from 2010 ($2,750,000) but lower than in 2008 when it was $3,500,000.

- The median total deductible in 2012 was $25,000, unchanged from the figure reported for 2010.

- The median per claim deductible was also $25,000, reflecting no change from 2010, 2008 and 2006.

- Liability insurance cost per attorney was a median of $4,427 in 2012, a little lower than reported in 2010 ($4,901).

- The typical firm had one liability claim for IP matters made in the past five years and .07 claims per IP attorney in the past 5 years.

## BUSINESS DEVELOPMENT

- Seven in 10 responding firms do not have dedicated business development personnel.

- One third (32.4%) of respondents indicated that 81-100% of firm lawyers actively engage in business development.

- Partners typically field "cold" inquiries at 58.5% of responding firms, 15.8% reported that Associates typically field "cold" inquiries regarding potential representation.

- Nearly three quarters (72.6%) of responding firms offer a free consultation with an attorney for "cold" inquiries.

- Most firms (82.6%) report that 0-20% of new business comes from "cold" inquiries, and 47.1% report that 81-100% of new business comes from referrals from colleagues and clients.

- Seven in 10 firms reward individuals for new business brought in through business development, and are most frequently rewarded with an origination credit (73.0%).

- Lawyers receiving an origination credit are credited most often with 5-10% of the billings (42.5%) followed by more than 30% of the billings (25.3%).

- The origination credit most often lasts as long as the client remains with the firm – this reported by 83.1% of responding firms.

# APPENDIX B

# AIPLA

## AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION

July 29, 2013

Dear AIPLA Member:

Do you question whether your fees are fair both to you and your clients? Do you ever wonder how your salary and benefits compare to those of your colleagues?

On behalf of the Law Practice Management Committee of the AIPLA, I am pleased to enclose a copy of the widely acclaimed *2013 Report of the Economic Survey* so you can find out answers to these questions, and more.

The 2013 edition of the Report of the Economic Survey provides an in-depth report on the annual incomes and demographics of intellectual property law attorneys, agents, and other IP law professionals. The Report also examines the economic aspects of intellectual property law practices, including individual billing rates and typical charges for representative IP law services such as litigation costs.  In addition, the report contains the costs in the different regions of the country for filing a patent application or registering a copyright or trademark.

The report contains enhanced color graphs linked to detailed data profiles for the varying practice types.  In addition to this report, each survey respondent will receive an electronic benchmarking tool, so you can compare your information to the data.

Many US District Courts and the US Court of Appeals for the Federal Circuit have cited AIPLA Economic Surveys.  Information taken from past surveys frequently appears in law journals and other publications.  Journal articles have cited the survey to help potential clients determine appropriate costs for procuring intellectual property as well as the costs associated with enforcing intellectual property rights.

I would like to thank Dave Divine, Chair of the Law Practice Management Committee, Rich Goldstein, Vice Chair of the Law Practice Management Committee and all of the members of the Committee for their hard work in putting this publication together.  We are pleased to continue bringing you this valuable member benefit.  Members may obtain additional copies of the survey for $45 each.  The survey is available to non-members at a cost of $495.

We hope that you find the Report a useful reference tool in your practice.

Sincerely,

Jeffrey I.D. Lewis
President

# AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION

## AIPLA 2013 ECONOMIC SURVEY — INDIVIDUALS

---

Association Research, Inc. (ARI), an independent survey research organization, is conducting this confidential survey for AIPLA. **All responses will be kept completely confidential.**

All questions and concerns about the survey or online content should be directed to ARI. Please e-mail ARI at info@associationresearch.com or call Megan Kirkegaard at 240-268-1262, ext. 100.

Please complete your questionnaire no later than **February 21, 2013,** either online or by fax to 240-268-1267.

---

### PART I. GENERAL QUESTIONS FOR ALL RESPONDENTS

**1.** **What is the ZIP code of your office location or primary work site?** (zip code) ___ ___ ___ ___ ___

**2.** **What is your primary practice?** (CHECK THE <u>ONE</u> CATEGORY THAT BEST DESCRIBES YOUR PRACTICE.)

**PRIVATE FIRM**
- ☐ Solo Practitioner
- ☐ Equity Partner, Shareholder (or equivalent)
- ☐ Associate, Non-equity Partner (or equivalent)
- ☐ Patent Agent
- ☐ Of Counsel (or equivalent)

**CORPORATE IP DEPARTMENT**
- ☐ Head of IP Department (for entire corporation or a division)
- ☐ Attorney
- ☐ Patent Agent

**CORPORATE LEGAL DEPARTMENT**
- ☐ Head of Legal Department (for entire corporation or a division)
- ☐ Attorney
- ☐ Patent Agent

**GOVERNMENT**
- ☐ PTO Examiner (up to and including SPE)
- ☐ PTO Administration, Management, Solicitor's Office
- ☐ Government IP Office, other than PTO

**OTHER**
- ☐ Other; please describe_____

**3.** **What percent of your time was devoted to IP practice during 2012?**
☐ Less than 50%    ☐ 50% - 79%    ☐ 80% or more

**4.** **Are you admitted to the Patent Bar?**
☐ Yes    ☐ No

**5.** **Did you change employment in 2012?** (CHECK ONLY ONE)
- ☐ No
- ☐ Yes, moved from a private firm to a private firm.
- ☐ Yes, moved from a private firm to a corporation, university or Government IP office.
- ☐ Yes, moved from a corporation, university or Government IP office to a different corporation, university or Government IP office.
- ☐ Yes, moved from a corporation, university or Government IP office to a private firm.
- ☐ Other (SPECIFY) _____

**6.** **Did your current employer have a change in status in the past year due to a merger, joint venture or other change in corporate structure?**    ☐ Yes    ☐ No

**7.** **In what year were you born?** 19 __ __

**8.** **What is your gender?**    ☐ Male    ☐ Female

**9.    How would you describe your ethnicity?**
- ☐ White/Caucasian
- ☐ Black/African American
- ☐ Hispanic/Latino
- ☐ Asian/Pacific Islander
- ☐ North American Indian/Native Canadian
- ☐ Blended
- ☐ Other (SPECIFY)
  _____

**10.   How many full years of IP law <u>attorney</u> experience do you have?** _____ years

**11.   What is your major technical undergraduate degree?**
- ☐ Biotechnology
- ☐ Chemical
- ☐ Computer Hardware
- ☐ Computer Software
- ☐ Electrical
- ☐ Mechanical
- ☐ General Science
- ☐ Other (SPECIFY) _____

**12.   Other than a law degree, what is your highest completed education?**
- ☐ None
- ☐ Bachelor's Degree
- ☐ Master's Degree
- ☐ Doctorate Degree
- ☐ Other (SPECIFY) _____

**13.   What was your total gross income in calendar year 2012 from your primary practice? (Include any partnership income, cash bonus, share of profits, and similar income you received, and any deferred compensation in which you vested in 2012.)** $ _____

**14.   What was your employer's 2012 contribution on your behalf to all 401(k)/403(b) retirement and savings plans?** $ _____

**15.   Excluding 401(k)/403(b) retirement and savings plans, what was your employer's 2012 contribution on your behalf to all pension and capital accumulation plans, including defined benefit or defined contribution pension plans?  If you are self-employed, what contribution did you make to your retirement plan?** $ _____    ☐ Employer made a contribution and the amount is unknown.

**16.   What is your expected total cash income for 2013? (As in Q. 13 above, includes expected cash income, including bonus and profit-sharing.)** $_____

**17.   How much gross income from the practice of law, not included in Q. 13 above (e.g., from exercises of stock options, sales of stock grants, in-kind compensation), did you receive:**  $_____

**18.   What percent of your time is devoted to each of the following types of work?** *Responses should total 100%.*
- ____%   Direct IP prosecution work (all patents, trade secrets, trademarks, copyrights) including selection, evaluation, application preparation and prosecution, including related counseling and ex parte appeals (not including supervision or management thereof)
- ____%   Supervision of IP prosecution work by other attorneys or agents
- ____%   Opinions, counseling or inter partes conflicts or prospective conflicts prior to litigation or formal ADR (not including actual litigation, ADR, negotiation or licensing)
- ____%   Licensing
- ____%   Non-licensing transactional work (e.g., mergers, acquisitions, joint ventures, obtaining financing and due diligence associated with such matters)
- ____%   IP Litigation
- ____%   Other dispute resolution (including all inter partes proceedings and ADR, but not ex parte appeals)
- ____%   Office management and administration
- ____%   Marketing
- ____%   Non-IP legal
- ____%   Managing outside counsel for IP prosecution work
- ____%   Managing outside counsel for IP litigation work
- ____%   Other (SPECIFY) _____
- **100%   TOTAL**

19.  **If you are admitted to the Patent Bar, what percent of your time is spent in each of the following areas of technical specialization?** *Response may total less than 100%.*

____%  Biotechnology
____%  Chemical
____%  Computer Hardware
____%  Computer Software
____%  Electrical
____%  Mechanical
____%  Medical/Health Care
____%  Pharmaceutical
____%  Other areas (SPECIFY) _____
**____%  TOTAL** *(may total less than 100%)*

20.  **What percent of your time is devoted to each of the following practice areas?** *Response may total less than 100%.*

____%  Business Law
____%  Copyrights
____%  Foreign (Non-US) IP Law
____%  General IP
____%  Patents
____%  Trade Secrets
____%  Trademarks
____%  Other areas (SPECIFY) _____
**____%  TOTAL** *(may total less than 100%)*

21.  **Estimate the amount of time spent per month training new associates or in-house counsel:** _____ (hours)

22.  **In all locations, how many full-time IP lawyers and patent agents are employed by your firm or corporation?**
_____

23.  **How many new priority (i.e., not continuation, CIP, or Divisional, but including provisional) US and PCT Patent applications were prepared and filed by you personally in 2012?** Include PCT only if not based on a prior application. **(Do not include applications prepared by another person which you reviewed, revised and filed.)**
_____

PART II. CORPORATE PRACTITIONERS

THESE QUESTIONS SHOULD BE ANSWERED BY CORPORATE PRACTITIONERS ONLY. PLEASE SKIP THIS SECTION IF YOU ARE NOT A CORPORATE PRACTITIONER.

24.  **How many IP lawyers and patent agents report to you, directly or indirectly?**
☐  0
☐  1 – 5
☐  6 – 10
☐  11 – 15
☐  16 or more

25.  **Other than as a liaison with outside counsel, what percent of the following activities is handled by in-house counsel?**

|  | | % by In-house Counsel |
|---|---|---|
| a. | Litigation | _____% |
| b. | Licensing | _____% |
| c. | Patent Preparation and Prosecution | _____% |
| d. | Trademark Registration, Prosecution and Enforcement | _____% |
| e. | Copyright Registration and Enforcement | _____% |

26.  **What was the annual gross revenue of your organization in 2012 (provide the gross revenue for your business unit if your company tracks gross revenue by business unit) in USD?** $_____

3

27.  **What was the annual corporate IP budget of your organization (excluding litigation) in 2012 (provide the IP budget for your business unit if your company allocates IP budget by business unit) in USD?**
$_____

28.  **How much did the annual corporate IP budget of your organization (excluding litigation) change from 2011 to 2012?**
☐ Increase _____%
☐ No change
☐ Decrease _____%

29.  **Which type of technology best describes your corporation? Other includes corporate having multiple technology types. Please specify types:**
☐ Biotech
☐ Chemical
☐ Electrical
☐ Computer Software
☐ Computer Hardware
☐ Mechanical
☐ Medical/Health Care
☐ Pharmaceutical
☐ Other (SPECIFY) _____

30.  **What is your estimate of the percentage of the annual corporate IP budget devoted to each of the following types of work?** *Responses should total 100%.*
____% Direct IP prosecution work (all patents, trade secrets, trademarks, copyrights) including selection, evaluation, application preparation and prosecution, including related counseling and ex parte appeals (not including supervision or management thereof)
____% Direct IP litigation work
____% Managing outside counsel for IP prosecution work
____% Managing outside counsel for IP litigation work
____% Opinions, counseling
____% Licensing
____% Non-licensing transactional work (mergers, acquisitions, joint ventures, obtaining financing and due diligence associated with such matters)
____% Other dispute resolution (including all inter partes proceedings and ADR, but not ex parte appeals)
____% Office management and administration
____% Other (SPECIFY) _____
**100% TOTAL**

| PART III. PRIVATE PRACTITIONERS |
| --- |

THESE QUESTIONS SHOULD BE ANSWERED BY PRIVATE PRACTITIONERS ONLY. PLEASE SKIP THIS SECTION IF YOU ARE NOT A PRIVATE PRACTITIONER.

31.  **What dollar amount was billed for the legal services you performed in 2012?** $_____

32.  **What percent of your services in 2012 were billed (or will be billed) on the following basis ?**
Hourly                _____%
Predetermined Fee        _____%
Contingent            _____%
Other                _____%
          **TOTAL        100%**

33.  **If you use billable hours, how many billable hours did you record in 2012?** _____ hours

34.  **What percent of these billable hours were actually billed to clients (hourly or any other basis)?** _____%

**35.** **What was your average hourly billing rate in 2012?** $_____

**36.** **What percentage of the total time you spend in business development is "your own time", i.e., not during business hours?**

☐ 0%
☐ 1-10%
☐ 11-25%
☐ 26-50%
☐ More than 50%

---

PART IV. TYPICAL CHARGES AND COSTS

---

PROSECUTION AND CLIENT COUNSELING

THESE QUESTIONS SHOULD BE ANSWERED BY BOTH CORPORATE AND PRIVATE PRACTITIONERS.

THE FOLLOWING QUESTIONS, COVERING TRADEMARKS, PATENTS, AND COPYRIGHTS, ASK FOR TYPICAL CHARGES. PLEASE RESPOND ONLY IF YOU HAVE BEEN PERSONALLY RESPONSIBLE FOR A REPRESENTATIVE SAMPLE OF THE TYPE OF WORK TO WHICH THE QUESTION PERTAINS, EITHER AS A SERVICE PROVIDER (I.E., AN ATTORNEY IN PRIVATE PRACTICE) OR AS A PURCHASER OF SUCH SERVICES (I.E., CORPORATE COUNSEL).

ASSUMING A TYPICAL CASE WITH NO UNUSUAL COMPLICATIONS, WHAT DID YOU CHARGE (OR WOULD HAVE CHARGED, E.G., BASED ON A FIXED FEE RATE SCHEDULE) OR WHAT WERE YOU CHARGED (OR WHAT YOU WOULD HAVE EXPECTED TO BE CHARGED, E.G., BASED ON A FIXED FEE RATE SCHEDULE), IN 2012, FOR LEGAL SERVICES ONLY (INCLUDING SEARCH FEES, BUT NOT INCLUDING COPY COSTS, DRAWING FEES OR GOVERNMENT FEES) IN EACH OF THE FOLLOWING TYPES OF US MATTERS? PLEASE ALSO INDICATE THE TYPE OF FEE PRIMARILY USED IN 2012.

| 37. TRADEMARKS (INCLUDING SERVICE MARKS) | | Fixed Fee | Hourly | Other | Charged in 2012 |
|---|---|---|---|---|---|
| a. | Trademark Clearance Search, Analysis, and Opinion | ☐ | ☐ | ☐ | $ |
| b. | Trademark Registration Application (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| c. | Trademark Prosecution (Total, including amendments and interviews but not appeals) | ☐ | ☐ | ☐ | $ |
| d. | Trademark Statement of Use (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| e. | Trademark Appeal to the Board (Briefed and Argued) | ☐ | ☐ | ☐ | $ |
| f. | Trademark Section 8 and 15 Declaration (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| g. | Trademark Renewal Application (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| h. | Filing of Foreign Origin Trademark Registration Application Received Ready for Filing | ☐ | ☐ | ☐ | $ |
| i. | Filing for an international trademark | ☐ | ☐ | ☐ | $ |
| j. | Preparing a UDRP Petition (Uniform Domain-Name Dispute-Resolution) | ☐ | ☐ | ☐ | $ |
| k. | Responding to a UDRP Petition | ☐ | ☐ | ☐ | $ |

**38. US UTILITY PATENTS**

| | | Fixed Fee | Hourly | Other | Charged in 2012 |
|---|---|---|---|---|---|
| a. | Original (not divisional, continuation, or CIP) non-provisional utility patent application on invention of minimal complexity, e.g., 10 page specification, 10 claims (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| b. | Provisional Patent Application (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| c. | Original utility application, relatively complex biotechnology/chemical (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| d. | Original utility application, relatively complex electrical/computer (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| e. | Original utility application, relatively complex mechanical (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| f. | Patent application amendment/argument of minimal complexity (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| g. | Patent application amendment/argument, relatively complex, biotechnology/chemical (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| h. | Patent application amendment/argument, relatively complex, electrical computer (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| i. | Patent application amendment/argument, relatively complex, mechanical (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| j. | Appeal to Board in utility patent application without oral argument. | ☐ | ☐ | ☐ | $ |
| k. | Appeal to Board in utility patent application with oral argument. | ☐ | ☐ | ☐ | $ |
| l. | Issuing an allowed application (All post-allowance activity) | ☐ | ☐ | ☐ | $ |
| m. | Ex parte re-exam | ☐ | ☐ | ☐ | $ |
| n. | Paying a Maintenance Fee | ☐ | ☐ | ☐ | $ |
| o. | Utility Patent Novelty Search, Analysis, and Opinion | ☐ | ☐ | ☐ | $ |
| p. | Validity/Invalidity Only Opinion, per patent | ☐ | ☐ | ☐ | $ |
| q. | Infringement/Non-Infringement Only Opinion, per patent | ☐ | ☐ | ☐ | $ |
| r. | Combination validity and Infringement, per patent | ☐ | ☐ | ☐ | $ |

**39. FOREIGN ORIGIN AND FOREIGN PATENTS**
*Exclude government, associate, drawing, and similar fees.*

| | | Fixed Fee | Hourly | Other | Charged in 2012 |
|---|---|---|---|---|---|
| a. | Filing foreign origin utility patent application in USPTO, received ready for filing with formal papers, assignment, and priority documents | ☐ | ☐ | ☐ | $ |
| b. | Filing non-PCT patent application abroad (per country, not including associate or government fees) | ☐ | ☐ | ☐ | $ |
| c. | Filing previously prepared US patent application as PCT application in US Receiving Office | ☐ | ☐ | ☐ | $ |
| d. | Entering National Stage in US Receiving Office from foreign origin PCT application | ☐ | ☐ | ☐ | $ |
| e. | Entering National Stage in each foreign Receiving Office from US origin PCT application | ☐ | ☐ | ☐ | $ |
| f. | Paying an annuity or maintenance fee | ☐ | ☐ | ☐ | $ |

| 40. OTHER US PATENTS AND COPYRIGHTS | Fixed Fee | Hourly | Other | Charged in 2012 |
|---|---|---|---|---|
| a.    US design patent application (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| b.    US plant patent application (Preparation and Filing) | ☐ | ☐ | ☐ | $ |
| c.    Copyright registration application (Preparation and Filing) | ☐ | ☐ | ☐ | $ |

## LITIGATION AND RELATED MATTERS
**THESE QUESTIONS SHOULD BE ANSWERED BY BOTH CORPORATE AND PRIVATE PRACTITIONERS.**

RESPOND TO EACH OF THE FOLLOWING QUESTIONS ONLY IF YOU HAVE PERSONAL KNOWLEDGE EITHER AS A SERVICE PROVIDER (ATTORNEY IN PRIVATE PRACTICE) OR AS A PURCHASER OF SUCH SERVICES (CORPORATE COUNSEL) OF THE COSTS INCURRED WITHIN THE RELATIVELY RECENT PAST, FOR THE TYPE OF WORK TO WHICH THE QUESTION PERTAINS. IN EACH OF THE QUESTIONS, "TOTAL COST" IS ALL COSTS, INCLUDING OUTSIDE LEGAL AND PARALEGAL SERVICES, LOCAL COUNSEL, ASSOCIATES, PARALEGALS, TRAVEL AND LIVING EXPENSES, FEES AND COSTS FOR COURT REPORTERS, PHOTOCOPIES, COURIER SERVICES, EXHIBIT PREPARATION, ANALYTICAL TESTING, EXPERT WITNESSES, TRANSLATORS, SURVEYS, JURY ADVISORS, AND SIMILAR EXPENSES. PLEASE ESTIMATE THESE BASED ON A SINGLE IP ASSET (I.E., ONE PATENT AT ISSUE, ONE TRADEMARK, ETC.).

41.  **What is your estimate of the total cost of <u>patent infringement</u> suits of the following varieties (i) through the end of discovery, and (ii) inclusive of discovery, motions, pretrial, trial, post-trial, and appeal?** *For purposes of this question, "at risk" refers to the financial impact of an adverse judgment. Q. 41D refers to the financial impact of an adverse judgment from imported goods, etc.*

| A. LITIGATION–PATENT INFRINGEMENT, ALL VARIETIES | |
|---|---|
| **Less than $1 million at risk** | |
| a.  End of Discovery | $ |
| b.  Inclusive, all costs | $ |
| **$1-$10 million at risk** | |
| c.  End of Discovery | $ |
| d.  Inclusive, all costs | $ |
| **$10-$25 million at risk** | |
| e.  End of Discovery | $ |
| f.  Inclusive, all costs | $ |
| **More than $25 million at risk** | |
| g.  End of Discovery | $ |
| h.  Inclusive, all costs | $ |

| B. LITIGATION–PATENT INFRINGEMENT PURSUANT TO THE HATCH-WAXMAN ACT (i.e., "ANDA LITIGATION") | |
|---|---|
| **Less than $1 million at risk** | |
| a.  End of Discovery | $ |
| b.  Inclusive, all costs | $ |
| **$1-$10 million at risk** | |
| c.  End of Discovery | $ |
| d.  Inclusive, all costs | $ |
| **$10-$25 million at risk** | |
| e.  End of Discovery | $ |
| f.  Inclusive, all costs | $ |
| **More than $25 million at risk** | |
| g.  End of Discovery | $ |
| h.  Inclusive, all costs | $ |

| C. LITIGATION– DEFENDING CLAIMS OF PATENT INFRINGEMENT BY NON-PRACTICING ENTITY | |
|---|---|
| **Less than $1 million at risk** | |
| a.  End of Discovery | $ |
| b.  Inclusive, all costs | $ |
| **$1-$10 million at risk** | |
| c.  End of Discovery | $ |
| d.  Inclusive, all costs | $ |
| **$10-$25 million at risk** | |
| e.  End of Discovery | $ |
| f.  Inclusive, all costs | $ |
| **More than $25 million at risk** | |
| g.  End of Discovery | $ |
| h.  Inclusive, all costs | $ |

| D. LITIGATION– SECTION 337 PATENT INFRINGEMENT ACTION IN THE INTERNATIONAL TRADE COMMISSION | |
|---|---|
| **Less than $1 million at risk** | |
| a.  End of Discovery | $ |
| b.  Inclusive, all costs | $ |
| **$1-$10 million at risk** | |
| c.  End of Discovery | $ |
| d.  Inclusive, all costs | $ |
| **$10-$25 million at risk** | |
| e.  End of Discovery | $ |
| f.  Inclusive, all costs | $ |
| **More than $25 million at risk** | |
| g.  End of Discovery | $ |
| h.  Inclusive, all costs | $ |

42.  **What is your estimate of the total cost of a trademark infringement suit (i) through the end of discovery, and (ii) inclusive of discovery, motions, pre-trial, trial, post-trial, and appeal?**

| LITIGATION–TRADEMARK INFRINGEMENT | |
|---|---|
| **Less than $1 million at risk** | |
| a.  End of Discovery | $ |
| b.  Inclusive, all costs | $ |
| **$1-$10 million at risk** | |
| c.  End of Discovery | $ |
| d.  Inclusive, all costs | $ |
| **$10-$25 million at risk** | |
| e.  End of Discovery | $ |
| f.  Inclusive, all costs | $ |
| **More than $25 million at risk** | |
| g.  End of Discovery | $ |
| h.  Inclusive, all costs | $ |

**43.** What is your estimate of the total cost of a <u>trademark opposition/cancellation</u> (i) through end of discovery, and (ii) inclusive of discovery, motions, hearing, and post-hearing?

| LITIGATION–TRADEMARK OPPOSITION/CANCELLATION | |
|---|---|
| a.  End of Discovery | $ |
| b.  Inclusive, all costs | $ |

**44.** What is your estimate of the total cost of a <u>copyright infringement</u> suit (i) through the end of discovery, and (ii) inclusive of discovery, motions, pre-trial, trial, post-trial, and appeal?

| LITIGATION–COPYRIGHT INFRINGEMENT | |
|---|---|
| **Less than $1 million at risk** | |
| a.  End of Discovery | $ |
| b.  Inclusive, all costs | $ |
| **$1-$10 million at risk** | |
| c.  End of Discovery | $ |
| d.  Inclusive, all costs | $ |
| **$10-$25 million at risk** | |
| e.  End of Discovery | $ |
| f.  Inclusive, all costs | $ |
| **More than $25 million at risk** | |
| g.  End of Discovery | $ |
| h.  Inclusive, all costs | $ |

**45.** What is your estimate of the total cost of a <u>trade secret misappropriation</u> suit: (i) through the end of discovery, and (ii) inclusive of discovery, motions, pre-trial, trial, post-trial, and appeal?

| LITIGATION– TRADE SECRET MISAPPROPRIATION | |
|---|---|
| **Less than $1 million at risk** | |
| a.  End of Discovery | $ |
| b.  Inclusive, all costs | $ |
| **$1-$10 million at risk** | |
| c.  End of Discovery | $ |
| d.  Inclusive, all costs | $ |
| **$10-$25 million at risk** | |
| e.  End of Discovery | $ |
| f.  Inclusive, all costs | $ |
| **More than $25 million at risk** | |
| g.  End of Discovery | $ |
| h.  Inclusive, all costs | $ |

**46.** What is your estimate of the total cost of a <u>two-party interference</u>: (i) through the end of the preliminary motion period, and (ii) inclusive of preliminary and other motions, testimony, briefs and arguments at final hearing, but not appeal.

| TWO-PARTY INTERFERENCE | |
|---|---|
| a.  End of Preliminary Motion | $ |
| b.  Inclusive, all costs | $ |

**47.  What is your estimate of the total cost of an <u>Inter Partes Reexamination</u>: (i) through filing the request, (ii) inclusive of a first patent owner response and 3rd party comments, (iii) inclusive of all patent owner responses, 3rd party comments, and closing of prosecution, (iv) inclusive of an appeal to the board, and (v) inclusive of an appeal to the federal court(s)?**

| INTER PARTES REEXAMINATION | |
|---|---|
| a.  Through filing the request | $ |
| b.  Inclusive of a first patent owner response and 3rd party comments | $ |
| c.  Inclusive of all patent owner responses, 3rd party comments, and closing of prosecution | $ |
| d.  Inclusive of an appeal to the board | $ |
| e.  Inclusive of an appeal to the federal court(s) | $ |

**48.  AIPLA is evaluating the format in which the Report of the Economic Survey is delivered to our members.  Given the choice, how would you prefer to receive the Report of the Economic Survey in future years?**  Please check only one.

☐  Hard copy of standard report (same as it is today)
☐  Electronic copy of standard report (same content as today, but delivered in PDF or other electronic format)
☐  Online only copy of expanded report (expanded report would include additional comparison and reporting options)
☐  Hard copy of summary of report, with expanded report available online (expanded report available online would include additional comparison and reporting options)

OPTIONAL: (TO RECEIVE THE BENCHMARK SPREADSHEET TOOL, PLEASE ENTER YOUR CONTACT INFORMATION BELOW)

NAME: _____

FIRM: _____

ADDRESS: _____

CITY: _____STATE: _____ZIP CODE: _____

TELEPHONE NUMBER: _____

E-MAIL ADDRESS: _____

### THANK YOU VERY MUCH FOR COMPLETING THIS SURVEY.

YOU MAY FAX YOUR COMPLETED QUESTIONNAIRE TO ARI AT **240-268-1267.**

# AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION

## AIPLA 2013 ECONOMIC SURVEY — FIRMS

Association Research, Inc. (ARI), an independent survey research organization, is conducting this confidential survey for AIPLA.
**All responses will be kept completely confidential.**

All questions and concerns about the survey or online content should be directed to ARI.  Please e-mail ARI at
info@associationresearch.com or call Megan Kirkegaard at 240-268-1262, ext. 100.

Please complete your questionnaire no later than **February 21, 2013** either online or by fax to 240-268-1267.

### PRIVATE FIRM DATA

1.  **What is the position in the firm of the person responding on behalf of the firm?**
    ☐ Managing Partner/Shareholder
    ☐ Administrator
    ☐ Other; please describe   _____

2.  **What is the ZIP code of the firm's principal office location?**   (zip code) ___ ___ ___ ___ ___

3.  **How many major office locations—staffed by two or more partners—did the firm have in 2012?**_____

4.  **How many minor (satellite or office location with less than two partners) office locations did the firm have in 2012?** _____

5.  **In each of the following categories, how many attorneys were in the firm in 2012? If the number in any category varied during the year, report the average.**
    _____ Partner/Shareholder
    _____ Associate/Non-equity Partner
    _____ Of Counsel
    _____ Contract/Part-time
    _____ **TOTAL attorneys**

6.  **How many attorneys whose practice is primarily IP law were in the firm in 2012? If the number in any category varied during the year, report the average.**
    _____ Partner/Shareholder
    _____ Associate/Non-equity Partner
    _____ Of Counsel
    _____ Contract/Part-time
    _____ **TOTAL IP attorneys**

7.  **How many of the following were involved primarily in the IP practice of the firm in 2012?**
    _____ USPTO-registered Patent Agents (not attorneys)
    _____ Technical Assistants, including Searchers
    _____ Paralegal/Legal Assistants

8.  **How many attorneys or agents whose practice is primarily IP law became associated with the firm in 2012? If the number in any category varied during the year, report the average.**
    _____ Partner/Shareholder
    _____ Associate/Non-equity Partner
    _____ Of Counsel
    _____ Contract/Part-time
    _____ Patent Agents or trainees
    _____ **TOTAL IP attorneys and agents**

9.   **Of all attorneys hired during 2012, what percentage were hired through a recruiter (head hunter)?**
☐ Less than 25%
☐ 25% – 50%
☐ 50% - 75%
☐ 75% or more

10.   **What was the average fee, as a percent of salary, paid to a recruiter (head hunter)?**   _____%

11.   **How many attorneys or agents whose practice is primarily IP law left the firm (including retired) in 2012?**
_____ Partner/Shareholder
_____ Associate/Non-equity Partner
_____ Of Counsel
_____ Contract/Part-time
_____ Patent Agents or trainees
_____ **TOTAL IP attorneys and agents**

12.   **Considering the number of attorneys and agents associated with the firm whose practice is primarily IP law, please indicate the number by gender.** *Please TOTAL at end.*
**Gender:**
_____    Male
_____    Female
_____    **TOTAL**

13.   **Considering the number of attorneys and agents associated with the firm whose practice is primarily IP law, please indicate the number by ethnicity.** *Please TOTAL at end.*
**Ethnicity:**
_____    White/Caucasian
_____    Black/African American
_____    Hispanic/Latino
_____    Asian/Pacific Islander
_____    North American Indian/Native Canadian
_____    Blended
_____    Other
_____    **TOTAL**

14.   **How many support staff (secretarial, clerical, and other non-billable staff) devoted primarily to the support of the IP practice were in the firm in 2012?** _____

15.   **How many summer associates did you have during 2012?** _____

16.   **How many of these summer associates identified in Q. 15 received full-time offers in 2012?** _____

17.   **How many summer associates identified in Q. 15 accepted the firm's offer in 2012?** _____

18.   **How much did you pay summer associates in 2012?** _____ per month

19.   **What percent of the firm's international filing is outsourced to an external provider in 2012?** _____%

20.   **What percent of the firm's annuity payments are outsourced to an external provider in 2012?** _____%

21.   **What percent of the firm's practice by billings is in IP law in 2012?** _____%

22.   **Approximately what percent of the firm's billable IP hours in 2012 were actually billed to clients (hourly or other basis)?** _____%

23.   **What percent of the firm's 2012 IP billings were for litigation?** _____%

24.  What percent of the firm's 2012 IP billings were for:
a.  Patent applications and prosecution? _____%
b.  Trademark registration and prosecution? _____%
c.  Copyright registration applications? _____%
d.  Licensing? _____%
e.  Other IP work? _____%

25.  **What were the firm's total 2012 billings for professional legal services?** $_____

26.  **What was the ratio of the firm's collections to the firm's billings for 2012?** _____%

27.  **As a percent of total 2012 collections (for services performed in any year), what was the firm's overhead in 2012? Overhead is all expenses other than client reimbursed expenses and compensation to attorneys and patent agents (including partner and shareholder profits).** _____%

28.  **What was the percent change in the firm's billings for IP legal services from 2011 to 2012? Calculate as (2012 billings – 2011 billings)/2011 billings) x 100.** _____%

29.  **What was the percent change in the firm's billings for IP legal services from 2010 to 2011? Calculate as (2011 billings – 2010 billings)/2010 billings) x 100.** _____%

30.  **What were the firm's minimum, maximum, and average 2012 attorney billing rates for non-IP work?**
$_____ per hour was minimum rate
$_____ per hour was maximum rate
$_____ per hour was the average rate
☐   Not Applicable (only perform IP work)

31.  **What were the firm's minimum, maximum, and average 2012 attorney billing rates for IP work?**
$_____ per hour was minimum rate
$_____ per hour was maximum rate
$_____ per hour was the average rate

32.  **What is the firm's current starting salary for a first year associate?** $_____ per year

33.  **What is the firm's average salary for a patent agent?** $_____ per year

---

**PROFESSIONAL LIABILITY INSURANCE**

---

34.  **What was the firm's maximum liability insurance coverage in 2012?**
$_____ each claim
$_____ total

35.  **What was the liability insurance deductible in 2012?**
$_____ each claim
$_____ total

36.  **What was the firm's liability insurance cost per attorney in 2012?** $_____

37.  **How many liability claims for IP matters have been made against the firm in the last five years (2008 – 2012)?** _____

38.  **What is the total dollar value of IP liability claims, including attorneys fees, paid in the last five years (2008 – 2012) by the insurer on behalf of the firm?** $_____

**39.** **What is the total dollar value of IP liability claims, including attorneys fees, paid in the last five years (2008 – 2012) by the firm directly?** $_____

**40.** **Who is the firm's professional liability insurance underwriter?**

☐ ALAS ☐ Kemper/Lumberman's
☐ ALPS ☐ Lloyd's of London
☐ American Home Assurance Company ☐ Minnesota Mutual Lawyers Insurance Co.
☐ CNA Insurance Companies ☐ Oregon Professional Liability Fund
☐ Columbia Casualty ☐ National Casualty
☐ General Star ☐ St. Paul
☐ Great American ☐ Westport
☐ Jamieson (New Jersey) ☐ Other insurer (SPECIFY) _____

## BUSINESS DEVELOPMENT

**41.** **What percentage of the lawyers at your firm actively engage in business development?**
☐ 0-20%
☐ 21-40%
☐ 41-60%
☐ 61-80%
☐ 81-100%

**42.** **Does your firm have dedicated business development personnel?** ☐ Yes ☐ No

**43.** **If so, how many?**
☐ 1
☐ 2-5
☐ 6-10
☐ 11+

**44.** **Who typically fields "cold" inquiries (non-referred, unknown callers) to your firm regarding potential representation?**
☐ Partners
☐ Associates
☐ Business Development staff
☐ Administrative/Secretarial staff
☐ Other: please describe: _____

**45.** **Does your firm provide training to its lawyers regarding business development?** ☐ Yes ☐ No

**46.** **Does your firm offer a free consultation with an attorney to cold inquiries?** ☐ Yes ☐ No

**47.** **What percentage of your new business comes from the following:**

| | 0-20% | 21-40% | 41-60% | 61-80% | 81-100% |
|---|---|---|---|---|---|
| a. Referrals from colleagues or clients | ☐ | ☐ | ☐ | ☐ | ☐ |
| b. Cold inquiries | ☐ | ☐ | ☐ | ☐ | ☐ |

**48.** **Are individuals rewarded by your firm for new business brought in through business development?**
☐ Yes ☐ No

**49.** **If so, how?**
☐ "Billable" hours credit given for time spent in business development (or a portion thereof)
☐ Origination credit (a credit for some portion of the legal fees billed to that client)
☐ Other: please describe: _____

**50.** **If the lawyer receives an origination credit, what percentage of billings is he/she credited with?**
- ☐ Less than 5%
- ☐ 5-10%
- ☐ 10-20%
- ☐ 20-30%
- ☐ More than 30%

**51.** **If so, for how long does he/she receive credit?**
- ☐ Less than 1 year
- ☐ 1 year
- ☐ 2 years
- ☐ 3-5 years
- ☐ More than 5 years
- ☐ For as long as the client remains with the firm

---

**52.** **AIPLA is evaluating the format in which the Report of the Economic Survey is delivered to our members. Given the choice, how would you prefer to receive the Report of the Economic Survey in future years?** Please check only one.
- ☐ Hard copy of standard report (same as it is today)
- ☐ Electronic copy of standard report (same content as today, but delivered in PDF or other electronic format)
- ☐ Online only copy of expanded report (expanded report would include additional comparison and reporting options)
- ☐ Hard copy of summary of report, with expanded report available online (expanded report available online would include additional comparison and reporting options)

OPTIONAL: (TO RECEIVE THE BENCHMARK SPREADSHEET TOOL, PLEASE ENTER YOUR CONTACT INFORMATION BELOW)

NAME: _____

FIRM: _____

ADDRESS: _____

CITY: _____ STATE: _____ ZIP CODE: _____

TELEPHONE NUMBER: _____

E-MAIL ADDRESS: _____

---

**THANK YOU VERY MUCH FOR COMPLETING THIS SURVEY.**

**YOU MAY FAX YOUR COMPLETED QUESTIONNAIRE TO ARI AT 240-268-1267.**

# EXHIBIT 4



## 2014 NLJ Billing Survey

Copyright © ALM Media Properties, LLC. All rights reserved.

| Year | Firm Name | Location | Average FTE Attorneys | Partner Billing Rate High | Partner Billing Rate Low | Partner Billing Rate Avg | Associate Billing Rate High | Associate Billing Rate Low | Associate Billing Rate Avg | Counsel Avg | Counsel Low | Counsel High | NLJ Billing Source | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | Adams and Reese | New Orleans, LA | 318 | $700.00 | $305.00 | $420.00 | $315.00 | $220.00 | $270.00 | $500.00 | $425.00 | $575.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Akerman | Miami, FL | 523 | $880.00 | $360.00 | $535.00 | $465.00 | $205.00 | $305.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Akin Gump Strauss Hauer & Feld | Washington, DC | 809 | $1220.00 | $615.00 | $785.00 | $660.00 | $365.00 | $525.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Allen Matkins Leck Gamble Mallory & Natsis | Los Angeles, CA | 181 | $680.00 | $525.00 | $615.00 | | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Alston & Bird | Atlanta, GA | 789 | $875.00 | $495.00 | $675.00 | $575.00 | $280.00 | $425.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Andrews Kurth | Houston, TX | 337 | $1090.00 | $745.00 | $890.00 | $1090.00 | $265.00 | $670.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Archer & Greiner | Haddonfield, NJ | 194 | $460.00 | $330.00 | $400.00 | $295.00 | $200.00 | $245.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Arent Fox | Washington, DC | 330 | $860.00 | $500.00 | $650.00 | $595.00 | $275.00 | $395.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |



## 2014 NLJ Billing Survey

Copyright © ALM Media Properties, LLC. All rights reserved.

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | Arnall Golden Gregory | Atlanta, GA | 140 | $520.00 | $430.00 | $490.00 | | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 |
| 2014 | Arnold & Porter | Washington, DC | 720 | $950.00 | $670.00 | $815.00 | $610.00 | $345.00 | $500.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Arnstein & Lehr | Chicago, IL | 144 | $595.00 | $350.00 | $465.00 | $350.00 | $175.00 | $250.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Baker & Hostetler | Cleveland, OH | 798 | $670.00 | $275.00 | $449.00 | $350.00 | $210.00 | $272.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Baker & McKenzie | Chicago, IL | 4087 | $1130.00 | $260.00 | $755.00 | $925.00 | $100.00 | $395.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Baker, Donelson, Bearman, Caldwell & Berkowitz | Memphis, TN | 588 | $495.00 | $340.00 | $400.00 | $465.00 | $245.00 | $295.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Ballard Spahr | Philadelphia, PA | 483 | $650.00 | $395.00 | $475.00 | $495.00 | $235.00 | $315.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Barnes & Thornburg | Indianapolis, IN | 522 | $580.00 | $330.00 | $480.00 | $370.00 | $260.00 | $320.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Benesch, Friedlander, Coplan & Aronoff | Cleveland, OH | 150 | $635.00 | $360.00 | $455.00 | $475.00 | $155.00 | $280.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Best Best & Krieger | Riverside, CA | 176 | $655.00 | $340.00 | $455.00 | $385.00 | $235.00 | $280.00 | $439.83 | $340.00 | $595.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |



## 2014 NLJ Billing Survey

Copyright © ALM Media Properties, LLC. All rights reserved.

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | Bingham McCutchen | Boston, MA | 795 | $1080.00 | $220.00 | $795.00 | $605.00 | $185.00 | $450.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Blank Rome | Philadelphia, PA | 447 | $940.00 | $445.00 | $640.00 | $565.00 | $175.00 | $350.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Bond, Schoeneck & King | Syracuse, NY | 198 | $520.00 | $240.00 | $355.00 | $310.00 | $160.00 | $225.00 | $360.00 | $275.00 | $485.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Bowles Rice | Charleston, WV | 140 | $285.00 | $165.00 | $230.00 | $180.00 | $115.00 | $135.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Bracewell & Giuliani | Houston, TX | 441 | $1125.00 | $575.00 | $760.00 | $700.00 | $275.00 | $440.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Bradley Arant Boult Cummings | Birmingham, AL | 413 | $605.00 | $325.00 | $430.00 | $340.00 | $200.00 | $260.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Broad and Cassel | Orlando, FL | 150 | $465.00 | $295.00 | $380.00 | | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Brown Rudnick | Boston, MA | 187 | $1045.00 | $650.00 | $856.00 | | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Brownstein Hyatt Farber Schreck | Denver, CO | 214 | $700.00 | $310.00 | $520.00 | $345.00 | $265.00 | $305.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Bryan Cave | St. Louis, MO | 985 | $900.00 | $410.00 | $620.00 | $595.00 | $220.00 | $405.00 | $635.00 | $355.00 | $865.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |



**2014 NLJ Billing Survey**

Copyright © ALM Media Properties, LLC. All rights reserved.

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | Buchalter Nemer | Los Angeles, CA | 139 | $695.00 | $475.00 | $605.00 | $375.00 | $350.00 | $365.00 | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Burr & Forman | Birmingham, AL | 261 | $525.00 | $300.00 | $371.00 | $275.00 | $200.00 | $241.00 | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Butler Snow | Ridgeland, MS | 280 | $335.00 | $235.00 | $302.00 | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Cadwalader, Wickersham & Taft | New York, NY | 437 | $1050.00 | $800.00 | $930.00 | $750.00 | $395.00 | $605.00 | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Carlton Fields | Tampa, FL | 272 | $840.00 | $455.00 | $600.00 | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Cole, Schotz, Meisel, Forman & Leonard | Hackensack, NJ | 118 | $730.00 | $590.00 | $653.00 | $340.00 | $275.00 | $302.00 | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Connell Foley | Roseland, NJ | 129 | $575.00 | $275.00 | $425.00 | $325.00 | $200.00 | $265.00 | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Cooley | Palo Alto, CA | 673 | $990.00 | $660.00 | $820.00 | $640.00 | $335.00 | $515.00 | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Covington & Burling | Washington, DC | 760 | $890.00 | $605.00 | $780.00 | $565.00 | $320.00 | $415.00 | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Cozen O'Connor | Philadelphia, PA | 495 | $1135.00 | $275.00 | $570.00 | $640.00 | $180.00 | $355.00 | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |

Copyright 2014 ALM Media properties, LLC. All rights reserved.    4



## 2014 NLJ Billing Survey

Copyright © ALM Media Properties, LLC. All rights reserved.

| Year | Firm | City | Attorneys | Rate 1 | Rate 2 | Rate 3 | Rate 4 | Rate 5 | Rate 6 | Rate 7 | Rate 8 | Rate 9 | Source | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | Curtis, Mallet-Prevost, Colt & Mosle | New York, NY | 323 | $860.00 | $730.00 | $800.00 | $785.00 | $345.00 | $480.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Davis Graham & Stubbs | Denver, CO | 145 | $635.00 | $315.00 | $435.00 | $350.00 | $200.00 | $255.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Davis Polk & Wardwell | New York, NY | 810 | $985.00 | $850.00 | $975.00 | $975.00 | $130.00 | $615.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Debevoise & Plimpton | New York, NY | 595 | $1075.00 | $955.00 | $1055.00 | $760.00 | $120.00 | $490.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Dechert | New York, NY | 845 | $1095.00 | $670.00 | $900.00 | $735.00 | $395.00 | $530.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Dentons | New York, NY | 2503 | $1050.00 | $345.00 | $700.00 | $685.00 | $210.00 | $425.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Dickstein Shapiro | Washington, DC | 254 | $1250.00 | $590.00 | $750.00 | $585.00 | $310.00 | $475.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Dinsmore & Shohl | Cincinnati, OH | 415 | $850.00 | $250.00 | $411.00 | $365.00 | $160.00 | $238.00 | $360.00 | $150.00 | $615.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | DLA Piper | New York, NY | 3962 | $1025.00 | $450.00 | $765.00 | $750.00 | $250.00 | $510.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Dorsey & Whitney | Minneapolis, MN | 501 | $585.00 | $340.00 | $435.00 | $510.00 | $215.00 | $315.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |



## 2014 NLJ Billing Survey

Copyright © ALM Media Properties, LLC. All rights reserved.

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | Duane Morris | Philadelphia, PA | 613 | $960.00 | $415.00 | $589.00 | $585.00 | $280.00 | $373.00 | $638.00 | $460.00 | $1015.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Edwards Wildman Palmer | Boston, MA | 540 | $765.00 | $210.00 | $535.00 | $415.00 | $245.00 | $325.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Faegre Baker Daniels | Minneapolis, MN | 673 | $580.00 | $355.00 | $455.00 | $315.00 | $110.00 | $260.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Foley & Lardner | Milwaukee, WI | 844 | $860.00 | $405.00 | $600.00 | $470.00 | $210.00 | $335.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Foley Hoag | Boston, MA | 221 | $775.00 | $590.00 | $670.00 | $385.00 | $290.00 | $325.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Fox Rothschild | Philadelphia, PA | 531 | $750.00 | $335.00 | $530.00 | $500.00 | $245.00 | $310.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Fried, Frank, Harris, Shriver & Jacobson | New York, NY | 450 | $1100.00 | $930.00 | $1000.00 | $760.00 | $375.00 | $595.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Frost Brown Todd | Cincinnati, OH | 414 | $600.00 | $220.00 | $387.00 | $315.00 | $150.00 | $234.00 | $417.00 | $350.00 | $540.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Gardere Wynne Sewell | Dallas, TX | 218 | $775.00 | $430.00 | $635.00 | $330.00 | $290.00 | $303.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Gibbons | Newark, NJ | 201 | $865.00 | $440.00 | $560.00 | $475.00 | $295.00 | $360.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |



## 2014 NLJ Billing Survey

Copyright © ALM Media Properties, LLC. All rights reserved.

| 2014 | Gibson, Dunn & Crutcher | New York, NY | 1154 | $1800.00 | $765.00 | $980.00 | $930.00 | $175.00 | $590.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Gordon Rees Scully Mansukhani | San Diego, CA | 478 | $475.00 | $375.00 | $420.00 | $325.00 | $285.00 | $300.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Greenberg Traurig | New York, NY | 1690 | $955.00 | $535.00 | $763.00 | $570.00 | $325.00 | $470.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Harris Beach | Rochester, NY | 198 | $400.00 | $298.00 | $348.00 | $285.00 | $175.00 | $230.00 | $287.50 | $175.00 | $400.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Harter Secrest & Emery | Rochester, NY | 132 | $465.00 | $300.00 | $385.00 | $290.00 | $195.00 | $250.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Haynes and Boone | Dallas, TX | 483 | $1020.00 | $450.00 | $670.00 | $580.00 | $310.00 | $405.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Hogan Lovells | Washington, DC | 2313 | $1000.00 | $705.00 | $835.00 | | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Holland & Hart | Denver, CO | 423 | $725.00 | $305.00 | $442.00 | $425.00 | $175.00 | $277.00 | $363.00 | $225.00 | $535.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Holland & Knight | Washington, DC | 956 | $1085.00 | $355.00 | $625.00 | $595.00 | $210.00 | $340.00 | $575.00 | $420.00 | $910.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Honigman Miller Schwartz and Cohn | Detroit, MI | 231 | $560.00 | $290.00 | $390.00 | $225.00 | $205.00 | $220.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |



**2014 NLJ Billing Survey**

Copyright © ALM Media Properties, LLC. All rights reserved.

| 2014 | Hughes Hubbard & Reed | New York, NY | 351 | $995.00 | $725.00 | $890.00 | $675.00 | $365.00 | $555.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Husch Blackwell | St. Louis, MO | 539 | $785.00 | $250.00 | $449.00 | $440.00 | $190.00 | $275.00 | $418.00 | $240.00 | $625.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Ice Miller | Indianapolis, IN | 291 | $530.00 | $335.00 | $450.00 | $305.00 | $245.00 | $270.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Irell & Manella | Los Angeles, CA | 166 | $975.00 | $800.00 | $890.00 | $750.00 | $395.00 | $535.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Jackson Kelly | Charleston, WV | 179 | $535.00 | $270.00 | $345.00 | $315.00 | $200.00 | $243.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Jackson Lewis | Los Angeles, CA | 724 | $440.00 | $310.00 | $380.00 | $315.00 | $275.00 | $290.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Jackson Walker | Dallas, TX | 333 | $675.00 | $575.00 | $622.00 | $385.00 | $255.00 | $335.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Jeffer, Mangels, Butler & Mitchell | Los Angeles, CA | 125 | $875.00 | $560.00 | $690.00 | | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Jenner & Block | Chicago, IL | 434 | $925.00 | $565.00 | $745.00 | $550.00 | $380.00 | $465.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Jones Day | New York, NY | 2464 | $975.00 | $445.00 | $745.00 | $775.00 | $205.00 | $435.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |


**2014 NLJ Billing Survey**

Copyright © ALM Media Properties, LLC. All rights reserved.

| 2014 | Jones Walker | New Orleans, LA | 363 | $425.00 | $275.00 | $385.00 | $240.00 | $200.00 | $225.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Kasowitz, Benson, Torres & Friedman | New York, NY | 372 | $1195.00 | $600.00 | $835.00 | $625.00 | $200.00 | $340.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Katten Muchin Rosenman | Chicago, IL | 612 | $745.00 | $500.00 | $615.00 | $595.00 | $340.00 | $455.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Kaye Scholer | New York, NY | 392 | $1250.00 | $725.00 | $860.00 | $795.00 | $370.00 | $597.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Kelley Drye & Warren | New York, NY | 293 | $815.00 | $435.00 | $640.00 | $600.00 | $305.00 | $430.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Kilpatrick Townsend & Stockton | Atlanta, GA | 561 | $775.00 | $400.00 | $550.00 | $475.00 | $315.00 | $385.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | King & Spalding | Atlanta, GA | 874 | $995.00 | $545.00 | $775.00 | $735.00 | $125.00 | $460.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Kirkland & Ellis | Chicago, IL | 1554 | $995.00 | $590.00 | $825.00 | $715.00 | $235.00 | $540.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Knobbe Martens Olson & Bear | Irvine, CA | 260 | $810.00 | $450.00 | $575.00 | $455.00 | $305.00 | $360.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Kramer Levin Naftalis & Frankel | New York, NY | 313 | $1100.00 | $745.00 | $921.00 | $815.00 | $515.00 | $675.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |



## 2014 NLJ Billing Survey

Copyright © ALM Media Properties, LLC. All rights reserved.

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | Lane Powell | Seattle, WA | 170 | $675.00 | $375.00 | $516.00 | $425.00 | $260.00 | $331.00 | $477.00 | $300.00 | $650.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Latham & Watkins | New York, NY | 2060 | $1110.00 | $895.00 | $990.00 | $725.00 | $465.00 | $605.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Lathrop & Gage | Kansas City, MO | 283 | $700.00 | $285.00 | $420.00 | $375.00 | $195.00 | $250.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Lewis Roca Rothgerber | Phoenix, AZ | 228 | $695.00 | $380.00 | $505.00 | $525.00 | $205.00 | $400.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Lindquist & Vennum | Minneapolis, MN | 178 | $600.00 | $460.00 | $520.00 | $470.00 | $275.00 | $365.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Littler Mendelson | San Francisco, CA | 1002 | $615.00 | $395.00 | $550.00 | $420.00 | $245.00 | $290.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Lowenstein Sandler | Roseland, NJ | 261 | $990.00 | $600.00 | $765.00 | $650.00 | $300.00 | $450.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Manatt, Phelps & Phillips | Los Angeles, CA | 329 | $795.00 | $640.00 | $740.00 | | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | McCarter & English | Newark, NJ | 371 | $625.00 | $450.00 | $530.00 | $370.00 | $220.00 | $300.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | McDermott Will & Emery | Chicago, IL | 1021 | $835.00 | $525.00 | $710.00 | | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |



**2014 NLJ Billing Survey**

Copyright © ALM Media Properties, LLC. All rights reserved.

| 2014 | McElroy, Deutsch, Mulvaney & Carpenter | Morristown, NJ | 274 | $560.00 | $325.00 | $445.00 | $335.00 | $200.00 | $295.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | McGuireWoods | Richmond, VA | 931 | $725.00 | $450.00 | $595.00 | $525.00 | $285.00 | $360.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | McKenna Long & Aldridge | Atlanta, GA | 518 | $650.00 | $480.00 | $530.00 | $425.00 | $375.00 | $395.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Michael, Best & Friedrich | Milwaukee, WI | 189 | $650.00 | $235.00 | $445.00 | $425.00 | $200.00 | $283.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Miles & Stockbridge | Baltimore, MD | 226 | $740.00 | $340.00 | $478.00 | $425.00 | $230.00 | $290.00 | $419.00 | $225.00 | $695.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Moore & Van Allen | Charlotte, NC | 274 | $870.00 | $315.00 | $490.00 | $430.00 | $190.00 | $280.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Morgan, Lewis & Bockius | Philadelphia, PA | 1363 | $765.00 | $430.00 | $620.00 | $585.00 | $270.00 | $390.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Morris, Manning & Martin | Atlanta, GA | 148 | $575.00 | $400.00 | $480.00 | | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Morrison & Foerster | San Francisco, CA | 1020 | $1195.00 | $595.00 | $865.00 | $725.00 | $230.00 | $525.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Nelson Mullins | Columbia, SC | 466 | $800.00 | $250.00 | $444.00 | $395.00 | $215.00 | $271.00 | $376.00 | $195.00 | $600.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |



## 2014 NLJ Billing Survey

Copyright © ALM Media Properties, LLC. All rights reserved.

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | Nixon Peabody | Boston, MA | 584 | $850.00 | $295.00 | $520.00 | $550.00 | $180.00 | $300.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Norris McLaughlin & Marcus | Bridgewater, NJ | 128 | $505.00 | $485.00 | $495.00 | $365.00 | $185.00 | $275.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Norton Rose Fulbright | Houston, TX | 3537 | $900.00 | $525.00 | $775.00 | $515.00 | $300.00 | $400.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Nossaman | Los Angeles, CA | 148 | $800.00 | $370.00 | $579.00 | $490.00 | $255.00 | $340.00 | $495.00 | $440.00 | $550.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Nutter McClennen & Fish | Boston, MA | 146 | $715.00 | $470.00 | $575.00 | $460.00 | $295.00 | $375.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Ogletree Deakins | Atlanta, GA | 668 | $650.00 | $250.00 | $360.00 | $365.00 | $200.00 | $260.00 | $315.00 | $230.00 | $555.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | O'Melveny & Myers | Los Angeles, CA | 721 | $950.00 | $615.00 | $715.00 | | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Orrick Herrington & Sutcliffe | New York, NY | 954 | $1095.00 | $715.00 | $845.00 | $375.00 | $710.00 | $560.00 | $735.00 | $685.00 | $850.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Parker Poe Adams & Bernstein | Charlotte, NC | 185 | $500.00 | $425.00 | $450.00 | | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Paul Hastings | New York, NY | 889 | $900.00 | $750.00 | $815.00 | $755.00 | $335.00 | $540.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |



## 2014 NLJ Billing Survey

Copyright © ALM Media Properties, LLC. All rights reserved.

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | Paul, Weiss, Rifkind, Wharton & Garrison | New York, NY | 854 | $1120.00 | $760.00 | $1040.00 | $735.00 | $595.00 | $678.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Pepper Hamilton | Philadelphia, PA | 510 | $950.00 | $465.00 | $645.00 | $525.00 | $280.00 | $390.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Perkins Coie | Seattle, WA | 861 | $1000.00 | $330.00 | $615.00 | $610.00 | $215.00 | $425.00 | $635.00 | $280.00 | $800.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Pillsbury Winthrop Shaw Pittman | Washington, DC | 591 | $1070.00 | $615.00 | $865.00 | $860.00 | $375.00 | $520.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Polsinelli | Kansas City, MO | 616 | $775.00 | $325.00 | $435.00 | $350.00 | $235.00 | $279.00 | $376.00 | $300.00 | $450.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Proskauer Rose | New York, NY | 712 | $950.00 | $725.00 | $880.00 | $675.00 | $295.00 | $465.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Quarles & Brady | Milwaukee, WI | 422 | $625.00 | $425.00 | $519.00 | $600.00 | $210.00 | $335.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Quinn Emanuel Urquhart & Sullivan | New York, NY | 673 | $1075.00 | $810.00 | $915.00 | $675.00 | $320.00 | $410.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Reed Smith | Pittsburgh, PA | 1555 | $890.00 | $605.00 | $737.00 | $530.00 | $295.00 | $420.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Richards, Layton & Finger | Wilmington, DE | 124 | $800.00 | $600.00 | $678.00 | $465.00 | $350.00 | $414.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |



**2014 NLJ Billing Survey**

Copyright © ALM Media Properties, LLC. All rights reserved.

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | Riker Danzig Scherer Hyland & Perretti | Morristown, NJ | 146 | $495.00 | $430.00 | $455.00 | $295.00 | $210.00 | $250.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Robinson & Cole | Hartford, CT | 201 | $700.00 | $295.00 | $500.00 | $445.00 | $215.00 | $300.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Rutan & Tucker | Costa Mesa, CA | 147 | $675.00 | $345.00 | $490.00 | $500.00 | $230.00 | $320.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Saul Ewing | Philadelphia, PA | 240 | $875.00 | $375.00 | $546.00 | $590.00 | $225.00 | $344.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Schiff Hardin | Chicago, IL | 317 | | | | $415.00 | $250.00 | $333.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Sedgwick | San Francisco, CA | 342 | $615.00 | $305.00 | $425.00 | $475.00 | $250.00 | $325.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Seward & Kissel | New York, NY | 143 | $850.00 | $625.00 | $735.00 | $600.00 | $290.00 | $400.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Seyfarth Shaw | Chicago, IL | 779 | $860.00 | $375.00 | $610.00 | $505.00 | $225.00 | $365.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Sheppard Mullin Richter & Hampton | Los Angeles, CA | 549 | $875.00 | $490.00 | $685.00 | $535.00 | $275.00 | $415.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Shumaker Loop & Kendrick | Toledo, OH | 224 | $595.00 | $305.00 | $413.00 | $330.00 | $160.00 | $256.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |

Copyright 2014 ALM Media properties, LLC. All rights reserved.   14



# 2014 NLJ Billing Survey

Copyright © ALM Media Properties, LLC. All rights reserved.

| Year | Firm | Location | Attorneys | | | | | | | | | | Source | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | Shutts & Bowen | Miami, FL | 230 | $660.00 | $250.00 | $430.00 | $345.00 | $195.00 | $260.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Skadden, Arps, Slate, Meagher & Flom | New York, NY | 1664 | $1150.00 | $845.00 | $1035.00 | $845.00 | $340.00 | $620.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Snell & Wilmer | Phoenix, AZ | 411 | $845.00 | $325.00 | $525.00 | $470.00 | $180.00 | $280.00 | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Spilman Thomas & Battle | Charleston, WV | 131 | | | | | | | $280.00 | $215.00 | $350.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Squire Patton Boggs | | | $950.00 | $350.00 | $655.00 | $530.00 | $250.00 | $355.00 | | | | National Law Journal, December 2014 | Location data not available due to merger in 2014. Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Sterne, Kessler, Goldstein & Fox | Washington, DC | 122 | $795.00 | $450.00 | $577.00 | $470.00 | $265.00 | $346.00 | $483.57 | $450.00 | $520.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Stevens & Lee | Reading, PA | 154 | $800.00 | $525.00 | $625.00 | | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Stoel Rives | Portland, OR | 365 | $800.00 | $300.00 | $492.00 | $465.00 | $205.00 | $287.00 | $312.00 | $280.00 | $510.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Strasburger & Price | Dallas, TX | 217 | $690.00 | $290.00 | $435.00 | $365.00 | $210.00 | $270.00 | $475.00 | $300.00 | $690.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Stroock & Stroock & Lavan | New York, NY | 285 | $1125.00 | $675.00 | $960.00 | $840.00 | $350.00 | $549.00 | $979.00 | $745.00 | $1095.00 | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |



**2014 NLJ Billing Survey**

Copyright © ALM Media Properties, LLC. All rights reserved.

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | Taft Stettinius & Hollister | Cincinnati, OH | 357 | $535.00 | $285.00 | $415.00 | $475.00 | $200.00 | $285.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Thompson & Knight | Dallas, TX | 290 | $740.00 | $425.00 | $535.00 | $610.00 | $240.00 | $370.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Thompson Coburn | St. Louis, MO | 317 | $510.00 | $330.00 | $440.00 | $350.00 | $220.00 | $270.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Troutman Sanders | Atlanta, GA | 567 | $975.00 | $400.00 | $620.00 | $570.00 | $245.00 | $340.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Ulmer & Berne | Cleveland, OH | 178 | $415.00 | $315.00 | $380.00 | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Varnum | Grand Rapids, MI | 133 | $465.00 | $290.00 | $390.00 | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Venable | Washington, DC | 533 | $1075.00 | $470.00 | $660.00 | $575.00 | $295.00 | $430.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Vinson & Elkins | Houston, TX | 650 | $770.00 | $475.00 | $600.00 | $565.00 | $275.00 | $390.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Waller Lansden Dortch & Davis | Nashville, TN | 178 | $600.00 | $350.00 | $460.00 | $335.00 | $190.00 | $245.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Weil, Gotshal & Manges | New York, NY | 1157 | $1075.00 | $625.00 | $930.00 | $790.00 | $300.00 | $600.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |



## 2014 NLJ Billing Survey

Copyright © ALM Media Properties, LLC. All rights reserved.

| 2014 | White & Case | New York, NY | 1895 | $1050.00 | $700.00 | $875.00 | $1050.00 | $220.00 | $525.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Wiley Rein | Washington, DC | 277 | $950.00 | $550.00 | $665.00 | $535.00 | $320.00 | $445.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Williams Mullen | Richmond, VA | 233 | $410.00 | $360.00 | $385.00 | $350.00 | $260.00 | $295.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Willkie Farr & Gallagher | New York, NY | 526 | $1090.00 | $790.00 | $950.00 | $790.00 | $350.00 | $580.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Wilmer Cutler Pickering Hale and Dorr | Washington, DC | 988 | $1250.00 | $735.00 | $905.00 | $695.00 | $75.00 | $290.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Winston & Strawn | Chicago, IL | 822 | $995.00 | $650.00 | $800.00 | $590.00 | $425.00 | $520.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Wolff & Samson | West Orange, NJ | 125 | $450.00 | $325.00 | $400.00 | $450.00 | $225.00 | $340.00 | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Womble Carlyle Sandridge & Rice | Winston-Salem, NC | 492 | $640.00 | $470.00 | $554.00 | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |
| 2014 | Wyatt Tarrant & Combs | Louisville, KY | 202 | $500.00 | $280.00 | $418.00 | | | | | | National Law Journal, December 2014 | Full-time equivalent (FTE) attorneys at the firm and the city of the firm's largest U.S. office as listed in the 2014 NLJ 350 report |

## 2014 Associate Class Billing Survey

# EXHIBIT 5



# James W. Quinn

| **Partner** New York | +1 (212) 310-8385 | james.quinn@weil.com |



**James Quinn is an accomplished trial lawyer who, until 2013, served for many years as co-head of Weil's litigation department. Mr. Quinn specializes in high stakes commercial disputes. He has practiced in all areas of complex litigation and alternative dispute resolution, with particular emphasis on antitrust, securities, false advertising, sports, entertainment, patent, and related complex intellectual property litigation.**

Known for his judgment, thorough preparation, and mastery of detail, Mr. Quinn is able to take command of the courtroom with penetrating cross-examination of witnesses and logically compelling arguments. Clients call upon him in matters that are high-profile, high-stakes, and often international in scope.

Mr. Quinn's most recent successes include winning for CBS Corporation the dismissal, affirmed on appeal, of a putative securities fraud class action relating to a $14 billion impairment; obtaining a complete dismissal for ESPN, Inc. and certain Walt Disney Co. companies in a $130 million suit brought by Echostar concerning alleged contract breaches relating to rights to ESPN and Disney's high-definition television networks; securing a complete dismissal for CBS Corporation in a $70 million breach of contract, fraud, and breach of fiduciary duty suit filed by its former anchorman and correspondent Dan Rather stemming from his departure from the network in 2006; on behalf of ExxonMobil, defeating class certification of a purported national class alleging that major petroleum companies conspired to restrict the supply of gasoline; and securing summary judgment for ESPN, Inc. in litigation against boxing promoter Don King who alleged defamation and false light invasion of privacy and sought $2.5 billion in damages.

In another recent and high-profile matter, he served as lead trial counsel for ExxonMobil during a three-month trial in New Hampshire state court of claims brought by the State of New Hampshire relating to the use of the chemical MTBE as a gasoline additive. Earlier, he served as co-lead counsel for Vivendi in *In re Vivendi Universal, S.A. Securities Litigation*, the largest shareholder class action ever to go to trial.

Throughout the past decade and beyond, Mr. Quinn has established himself as a leading commercial litigator with a string of impressive wins, including a $417 million verdict for ExxonMobil (*Exxon Mobil v. SABIC*) which was among the largest verdicts in the United States in 2003 and remains the largest in a commercial case in Delaware's history; a complete defense verdict for Procter & Gamble Co. on an $80 million false advertising claim brought by the Colgate-Palmolive Co., relating to home teeth-whitening products; and representation of the Arthur Andersen Worldwide Member Firms in the largest International Chamber of Commerce arbitration in history, which involved nearly 300 parties and almost $15 billion in claims. During this time, Mr. Quinn also scored significant wins for UnitedHealth Group, Johnson & Johnson, and Disney, among others.

Additionally, Mr. Quinn has earned a reputation with his clients for his unmatched experience in sports and entertainment litigation.

**Practice Areas:**

› Complex Commercial Litigation

**Sectors:**

› Energy
› Retail & Consumer Products
› Media and Entertainment

**Admissions:**

› New York State
› US Court of Appeals 2nd Cir.
› US Supreme Court
› US Court of Appeals 8th Cir.
› Southern District New York
› US Ct App Federal Circuit
› US Court of Appeals 3rd Cir.
› US Court of Appeals 7th Cir.
› US Court of Appeals 9th Cir.
› Eastern District New York
› Notary Public

**Education:**

› University of Notre Dame (Bachelor of Arts (B.A.), cum laude, 1967)
› Fordham University (Bachelor of Laws (LLB), 1971)

 He is the most successful and influential litigator of sports antitrust cases in the quarter-century that these cases have been played out in the national arena. He is known for his strategic personal assessment of each client and his keen execution of the facts in the courtroom. Mr. Quinn has counseled and represented players associations in Major League Baseball, the National Football League, the National Basketball Association, the National Hockey League and Major League Soccer. Mr. Quinn served as the lead counsel for the NFL players in their successful antitrust challenge to the player restrictions in the League (*McNeil v. NFL*). In this three month jury trial, Mr. Quinn ensured that a fair jury was chosen for his clients, and his winning strategy secured for his clients a multi-million dollar treble damage verdict as well as the right to free agency. He is able to make juries understand complicated cases by presenting his client's points in a readily comprehensible and persuasive manner. *The New York Times* labeled Mr. Quinn's participation at trial as "instrumental in helping change the face of major professional sports."

His precedent-setting success extends beyond sports to include all manner of contract disputes, antitrust litigation, and novel, evolving areas of law and business. Mr. Quinn represented Westinghouse in a series of multi-billion dollar lawsuits concerning nuclear power plants. Over a dozen lawsuits of RICO, fraud, and breach of contract were brought against Westinghouse, and Mr. Quinn used judgment and tenacity to win every single one. Mr. Quinn also represented a group of local television stations in an antitrust case against music licensing societies. The results of this litigation led to a complete change in the manner in which music licensing rights in television and radio industries are handled nationwide.

Among many honors and awards, Mr. Quinn was selected in 1993 and 2004 by *The National Law Journal* as one of the ten top trial lawyers in the United States in its annual feature, "Winning: Successful Strategies From 10 of the Nation's Top Litigators" (only a handful of lawyers have ever been selected twice for this prestigious award).

Mr. Quinn was also ranked as a leader in New York commercial litigation and nationwide sports law in 2005-2014, and as a top US trial lawyer in 2010-2014, by *Chambers USA: America's Leading Lawyers for Business*. In 2013, he received the Chambers USA "Award for Excellence" in the category of "Litigation: Business Trial Lawyer" after being shortlisted for the award since 2009; he subsequently has been named to the shortlist for the inaugural, 2014 edition of "The Chambers 100," a list of the top 100 business lawyers in the United States. He has also been recognized as a Leading Trial Lawyer by *Legal 500 US* (2011-2014). He was also listed as highly recommended in *PLC Which Lawyer?* Yearbook 2006-2009 for Dispute Resolution, and was included in *Euromoney's 2004 Guide to the World's Leading Experts In Commercial Arbitration*, *The International Who's Who of Commercial Litigators* 2006, 2008, 2009, and 2013 and *Chambers Global: The World's Leading Lawyers* 2004/2005 and 2009-2013. Mr. Quinn has been selected by his peers for inclusion in the 2009-2013 editions of *The Best Lawyers in America* in the specialties of Bet-the-Company Litigation, Commercial Litigation, International Arbitration, and Sports Law, and recognized by *Benchmark Litigation* since 2010 as a national "Litigation Star" for General Commercial Litigation. In 2013, Mr. Quinn was recognized as a "Client Service All-Star" in BTI Consulting Group's annual survey of corporate counsel. In 2014, Mr. Quinn was selected by vote of his peers as one of the Top 100 Lawyers in the Metro New York area by *Super Lawyers.*

Mr. Quinn is a Fellow of the International Academy of Trial Lawyers and the American College of Trial Lawyers and a member of the International Society of Barristers. He is also a Fellow of The New York Bar Foundation. He has chaired a variety of committees of both The American Bar Association and The Bar Association of The City of New York. He is a member of the Advisory Board of The National Judicial College and the Panel of Distinguished Neutrals of the Center for Public Resources.

Until last year, Mr. Quinn served for over 20 years on the Firm's Management Committee.

Mr. Quinn lives in Armonk, New York with his wife. They have four children and five grandchildren. Outside of the Firm, he enjoys golf, running, and reading. Mr. Quinn serves as a Board Member of the American Diabetes Association, the Landmark Foundation, and The Respect For Law Alliance, among many others.

**Notable Representations**

> **State of New Hampshire v. Hess Corp.**

› Lead trial lawyer for ExxonMobil in three-month trial of claims relating to the use of the chemical MTBE as a gasoline additive

› **City of Omaha v. CBS Corp.**

› Obtained dismissal, affirmed by the Second Circuit, of putative securities fraud class action concerning a $14 billion impairment.

› **EchoStar, Inc. v. ESPN, Inc. et al.**

› Lead trial lawyer in a multiweek jury trial in New York State Supreme Court representing defendants ESPN, Inc. and related Walt Disney Companies. Plaintiff EchoStar sought over $130 million in damages for alleged contract breaches relating to rights to ESPN and Disney's high-definition television networks. The jury rejected all of plaintiff's claims and rendered a complete defense verdict on behalf of ESPN and Disney.

› **Eventim LLP v. Live Nation, Inc.**

› Lead lawyer for claimant Eventim seeking nearly a billion dollars in damages for breach of contract and breach of the covenant good faith and fair dealing in connection with a long term licensing agreement involving Eventim's world renowned ticketing system. The claims were litigated before a single arbitrator from the International Chamber of Commerce in Paris.

› **Dan Rather v CBS Corporation., et al**

› Obtained a complete dismissal for CBS Corporation in a $70 million breach of contract, fraud, and breach of fiduciary duty suit filed by its former anchorman and correspondent Dan Rather stemming from his departure from the network in 2006.

› **In re Vivendi Universal, S.A. Securities Litigation**

› Co-lead trial counsel representing Vivendi, S.A. in the largest shareholder class action ever to go to trial, in which the plaintiffs alleged that Vivendi violated federal securities laws by misrepresenting or concealing material information about its financial condition.

› **In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation**

› Lead counsel for ExxonMobil in this litigation for which Weil handled a consolidated multidistrict federal class action, 13 state class actions, and two opt-out cases brought by major purchasers of EPDM, alleging that ExxonMobil and co-defendants unlawfully conspired to fix prices in the market for EPDM, which, historically, has exhibited the greatest growth rate among major types of rubber since it was first manufactured in the 1960s. Unlike other defendants in similar actions – who paid in total over $80 million in settlements - ExxonMobil paid nothing in damages or settlement in any of the 16 separate EPDM suits that Weil handled.

› **Siegel et al v. Shell Oil Company et al.**

› Successfully defeated certification of a national class on behalf of Exxon Mobil Corporation and co-defendants BP, Citgo Petroleum Corp., Marathon Oil Corp., and Shell Oil Company in a litigation alleging conspiracy among major integrated oil companies to restrict the supply of gasoline and thus increase gas prices. The plaintiff had asked for over $1 billion in damages.

› **Applied Medical v. Johnson & Johnson Co.**

› Lead counsel in a successful defense of a $54 million antitrust claim brought by a smaller competitor. The suit involved allegations of monopolization via the so-called "bundling" of discounts across a variety of different medical and surgical product markets. The jury of nine, sitting in federal court in Southern California listened to seven weeks of complex medical and economic testimony before it rejected plaintiff's claims finding for J&J on all counts.

› **In re Managed Care Multidistrict Litigation**

› Lead counsel for UnitedHealth Group in defense of multi-billion dollar RICO and related conspiracy claims brought by a nationwide class of 700,000 doctors. All but one of the other 10 defendants settled out for more than a billion dollars. After three separate hearings, the federal court in Miami granted summary judgment in toto finding insufficient evidence of either conspiracy or fraud.

› **In the Matter of Madison Square Garden, L.P. v. New York Metropolitan Transportation Authority and Jets Development, LLC**

› Lead counsel in defense of the MTA in a lawsuit brought by MSG and several community groups seeking to overturn the MTA's Board's decision to proceed with negotiations with the New York Jets football team to allow the Jets to build a new football stadium over the Long Island Rail Road railyards on Manhattan's West Side.

› **Colgate-Palmolive Co. v. Procter & Gamble Co.**

› Lead counsel in successful defense of a $80 million claim brought against Procter & Gamble by competitor Colgate-Palmolive in federal court in the Southern District of New York. The suit stemmed from Colgate's allegations that P&G's advertising for its highly successful at-home tooth-whitening products, Crest Whitestrips and Crest Night Effects, were false under the federal Lanham Act. Following a three-week trial, the jury wholly rejected Colgate's claims and awarded no damages, resulting in a complete victory for P&G.

› **Modi Enterprises v. ESPN**

› Lead counsel in successful defense of a $231 million claim brought against various ESPN entities arising out of the launch of the ESPN channel in India. After a two-week trial in the Commercial Division of the Supreme Court of New York, the jury rendered a complete defense verdict for ESPN in the case in which MEN asserted claims for breach of contract, misappropriation of trade secrets, unfair competition and breach of fiduciary duty. ESPN also won $1.8 million on its counterclaim, based on MEN's failure to make payments during the last four months of the parties' contract. (*The Lawyer*, a UK legal publication, has cited this case as one of New York's biggest cases in 2004.)

› **Exxon Mobil v. SABIC**

› Co-lead counsel for Exxon Mobil in this breach-of-contract suit against Saudi Basic Industries Corporation. Exxon claimed that SABIC had overcharged Exxon in two joint venture agreements concerning the technology responsible for petrochemical products used in a variety of plastics products sold worldwide. After Mr. Quinn's careful jury selection due to the international nature of the case, the trial was complicated by the fact that the two contracts in question were both governed by unique Saudi law principles, and therefore Saudi law would be applied to the case. Mr. Quinn won every single

count against SABIC, and the jury awarded Exxon with $416.8 million in compensatory damages. This is one of the largest verdicts in the United States in 2003 and the largest verdict in a commercial case in the history of Delaware. Every challenge that SABIC has exercised through post-trial motions has been defeated.

> **Duquesne Co. v. Westinghouse Electric Corporation**

>  A large Pennsylvania utility brought suit against Westinghouse alleging breach of contract and fraud, among other claims. Mr. Quinn represented the defendant in this four-month jury trial and obtained a complete defense verdict on a billion dollar claim. The verdict was upheld on appeal by the Third Circuit. More than a dozen lawsuits and arbitration of this kind were filed against Westinghouse in the United States and Europe, and Mr. Quinn successfully resolved every one of them.

> **Furnas SA v. Westinghouse**

>  Mr. Quinn handled this international arbitration brought by a Brazilian utility asserting a multi-billion dollar claim against Westinghouse before a panel of three arbitrators in the International Chamber of Commerce (ICC) in Paris. After extensive evidentiary hearings and voluminous submissions by both sides over several years, the panel dismissed all claims against Westinghouse and instead awarded Westinghouse millions of dollars in costs and expenses related to the arbitration.

> **McNeil v. NFL**

>  Lead counsel for the NFL players in this historic dispute concerning the players' challenge to the antitrust player restrictions in the National Football League. Mr. Quinn guaranteed that a fair jury was chosen for his client after he cited a psychologist expert in sports fans who had concluded that avid sports fans were unable to be convinced that athletes had the right to sue for free agency or higher salaries. Mr. Quinn was just as resourceful during pretrial strategy as he was during jury selection. Due to the dismissal of a previous antitrust suit, Mr. Quinn had the players' association disband, in order to thwart the defendants' accusations that the players already had a union for a labor solution. After lengthy cross-examination of witnesses and a three-month jury trial, Mr. Quinn persuaded the jury to grant his eight players millions in damages which led to a $200 million damage settlement to the players in the NFL and true free agency for NFL players for the first time in the history of the NFL.

> **Buffalo Broadcasting v. American Society of Composers, Authors and Publishers**

>  As Class Counsel for Buffalo Broadcasting and 600 other television stations nationwide in this antitrust class-action concerning blanket licensing,. Mr. Quinn led a three month bench trial after which the Court held that so-called "blanket" licensing of music performing rights was an impermissible restraint on trade. While the case was later reversed on other grounds, this landmark ruling led to a complete reconstruction of music licensing rights in television and radio industries across the United States.

> **Girl Friends Productions Inc. et al. v. ABC Inc. et al**

>  Lead counsel for ABC in a case involving the original idea for ABC's television show, "The View." Plaintiff Sandra Furton Gabriel, who had developed an idea for a show entitled "Girl Friends" in 1994, alleged breach of contract and breach of implied covenant of good faith, among other complaints. On summary judgment, the Judge dismissed the lawsuit, reasoning that not only were the shows fundamentally different from one another, but that Mr. Quinn had proven the defendants had independently created "The View." The Second Circuit recently affirmed this decision.

> **LILCO v. Imo Industries Inc.**

>  Serving as lead counsel for the defendant, Mr. Quinn represented Imo Industries when an electric utility sued IMO alleging defects in diesel generators they had sold to LILCO for use at the Shoreham Nuclear Power Plant. LILCO asserted a dozen claims, including RICO, and sought nearly a billion dollars in damages as a result of the diesel failures which prevented the plant from operating. After two jury trials, Mr. Quinn eliminated all but a single warranty claim and was able to bring in a verdict at less than $8 million dollars, all of which was covered by insurance.

> **Houston Light & Power v. Westinghouse**

>  Mr. Quinn represented Westinghouse in this six-month trial involving yet another multi-billion dollar claim. This time a group of utilities sued for breach of contract and fraud involving corroding steam generating equipment supplied to the largest nuclear power plant in the United States. Ultimately, Mr. Quinn used his resourceful ability to settle cases for Westinghouse immediately before jury deliberations to obtain an extraordinarily favorable settlement for Westinghouse.

> **North American Soccer League v. NFL**

>  As lead counsel for the North American Soccer League and its teams in this suit against the NFL, Mr. Quinn successfully attacked an NFL regulation prohibiting NFL team owners from owning other professional sports teams. After an eight-week trial and an appeal to the Second Circuit, Mr. Quinn established the law that allows professional sports owners today to participate in the cross-ownership of major league teams.

> **Oscar Robertson et al. v. NBA**

>  This antitrust class action was filed by 14 NBA players union against team owners in search of free agency in professional basketball. After completing 200 depositions in five cities over the course of six months, the players and owners settled, and Mr. Quinn won in the biggest case in basketball history, establishing that basketball players were free agents. In the early 1980s, Mr. Quinn won again, this time with a new collective bargaining agreement guaranteeing players 53 percent of gross revenues in exchange for a league-wide salary cap.



# Randi W. Singer

**Partner** New York    +1 (212) 310-8152    randi.singer@weil.com



**Randi Singer is a litigation partner in the New York office. Ms. Singer's practice focuses on copyright, Lanham Act false advertising and trademark litigation, and privacy, as well as social media, music licensing, First Amendment, right of publicity and other intellectual property issues.**

In addition to complex commercial litigation matters and bankruptcy proceedings, Ms. Singer has successfully represented and counseled clients on a wide variety of copyright and trademark issues. Her advertising, trademark and state unfair trade practices cases have spanned a broad spectrum of consumer products and services, from over-the-counter drugs, razors, toothpaste, paint, food and cosmetics, to financial services, luxury goods and consumer electronics.

She is a certified information privacy professional (CIPP/US) and has represented clients in connection with privacy and intellectual property issues on a wide variety of corporate matters, including such high-profile deals as Facebook's acquisition of Whatsapp, Inc., Yahoo!'s acquisition of Tumblr and Signet Jewelers Limited's acquisition of Zale Corporation.

Her experience includes:

› Numerous victories for The Walt Disney Company and Marvel Comics in copyright ownership cases involving numerous iconic Marvel characters.

› Successfully defending eBay against a suit in which Tiffany had claimed that eBay was responsible for policing counterfeit merchandise offered on its site. Weil represented eBay – through trial in the US District Court for the Southern District of New York, on appeal in the US Court of Appeals for the Second Circuit and through the denial of Tiffany's petition for a writ of certiorari with the US Supreme Court.

› Defending Procter & Gamble against an $80 million claim brought by Colgate-Palmolive. The suit stemmed from Colgate's allegations that P&G's advertising for its highly successful at-home tooth-whitening products, Crest Whitestrips and Crest Night Effects, were false under the federal Lanham Act. Obtained a complete defense verdict for Procter & Gamble after a three-week jury trial.

› Representing Facebook in its $16 billion acquisition of WhatsApp, a provider of a cross-platform mobile messaging application that allows a client to exchange messages without having to pay for short messaging service (SMS).

› Successfully representing the publisher of the "Chicken Soup for the Soul" series of inspirational self-help books and Daymon Worldwide in trademark and trade dress litigation brought by Campbell Soup Company (CSC) in New Jersey federal court. CSC alleged that the publisher's then-forthcoming line of soups came in packaging that infringed on Campbell's protected designs and trade dress. The parties stipulated to a dismissal of the claims without costs.

› Defending GlaxoSmithKline (GSK) against a preliminary injunction motion based on allegations by Pharmacia Corporation that GSK commercials for Nicorette gum and NicoDerm CQ patches were false and violated the Lanham Act. Successfully obtained a motion on GSK's behalf to preliminarily enjoin Pharmacia's "Trying to Quit" commercial for Nicotrol due to violations of Section 43(a) of the Lanham Act.

› Defeated plaintiffs' motion for preliminary injunction in Lanham Act false advertising case brought against a Leucadia subsidiary challenging prepaid phone card advertising.

**Practice Areas:**

› Complex Commercial Litigation
› Intellectual Property/Media

**Sectors:**

› Retail & Consumer Products
› Media and Entertainment
› Technology

**Admissions:**

› New York State
› US Court of Appeals 10th Cir.
› US Court of Appeals 11th Cir.
› US Court of Appeals 2nd Cir.
› US Court of Appeals 3rd Cir.
› District of Colorado
› Eastern District New York
› US Ct App Federal Circuit
› Southern District New York

**Education:**

› Harvard University (Bachelor of Arts (B.A.), 1994)
› Columbia Law School (Juris Doctor (J.D.), 1998)

›    On the merits, obtained summary judgment for Leucadia resulting in the dismissal of all claims
     against Leucadia's subsidiary. In a related case, we obtained the dismissal of a complaint asserting
     similar claims against Leucadia.

Ms. Singer has been repeatedly recognized in the *Legal 500*, *Chambers USA*, and *Benchmark Litigation*,
and selected as a New York *Super Lawyer*. She also has been named a "Rising Star" in Media and Enter-
tainment by *Law360*. She has taught Trademarks and Unfair Competition Law as an adjunct professor
at St. John's University School of Law and is a popular speaker whose speaking engagements include
panels and discussions concerning copyright, advertising and other intellectual property issues for var-
ious organizations such as the Copyright Society, the National Advertising Division, the Practising Law
Institute, the American Conference Institute, and the New York State Bar Association Section on Intellec-
tual Property. Other professional affiliations include the International Trademark Association (INTA), The
International Association of Privacy Professionals (IAPP), the New York State Bar Association, the Private
Advertising Litigation subcommittee of the ABA, and the Association of the Bar of the City of New York,
where she currently serves on the Trademarks Committee after four years as Secretary of the Consumer
Affairs Committee.

She is on the global steering committee for Women@Weil, Weil's women's affinity group, the winner of
Weil's first-ever mentoring award, and was inducted into the YWCA's Academy of Women Leaders. Her
pro bono efforts include successes for the Hebrew Immigrant Aid Society and Sanctuary for Families, as
well as extensive legal support and counseling concerning ambush marketing for NYC2012, New York
City's bid for the 2012 Olympics.

Ms. Singer graduated *magna cum laude* from Harvard University. After receiving her J.D. from Columbia
Law School, where she was a Harlan Fiske Stone Scholar, Ms. Singer clerked for the Honorable Richard
Owen, US District Judge for the Southern District of New York.



# Gregory Silbert

| **Partner** New York | +1 (212) 310-8846 | gregory.silbert@weil.com |



**Greg Silbert is a partner in the firm's Appellate practice group. He has extensive experience litigating in both federal and state appellate courts. He has argued dozens of appeals and briefed many more, successfully representing clients in courts of last resort and intermediate appellate courts.**

His recent experience includes:

> Represented Marvel Characters in a successful Second Circuit appeal concerning copyright ownership of the Marvel superheroes.

› Submitted an *amicus* brief to the Supreme Court on behalf of the European Union in a case involving the construction of international law.

› Represented Vivendi S.A. as *amicus* in the Supreme Court in a case examining the presumption of reliance in securities fraud class actions.

› Represented the National Restaurant Association in a successful constitutional challenge to New York City's "soda ban," which prohibited certain establishments from selling sugar-sweetened drinks in containers that hold more than 16 ounces.

› Represented Simon & Schuster in an appeal challenging modifications to a consent decree concerning the sale of e-books.

› Successfully appealed to the United States Supreme Court on behalf of Schindler Elevator Corporation, winning an important victory for the company in a case that interpreted the public disclosure bar of the False Claims Act.

› Briefed and argued an appeal on behalf of UnitedHealth Group that led to one of the first appellate decisions under New York State's False Claims Act, and which resulted in the complete dismissal of a complaint asserting hundreds of millions of dollars in damages.

› Represented the Port Authority of New York and New Jersey in a high-profile appeal to the Court of Appeals of the State of New York that led to the reversal of an intermediate appellate court's decision finding the Port Authority liable for damages caused by the 1993 terrorist attack at New York's World Trade Center.

› Secured a victory for CBS and several current and former executives before the Second Circuit, which affirmed a district court order granting the defendants' motion to dismiss a federal securities fraud class action that arose out of CBS's disclosure of a $14 impairment charge in 2008. In its ruling, the Second Circuit expanded the application of its 2011 ruling in *Fait v. Regions Fin. Corp.* to claims concerning goodwill brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.

Additional clients for which he has litigated appeals include Avaya, Dow Chemical, eBay, Farmers Insurance, General Electric, Lehman Brothers, L'Oreal, Morgan Stanley, Nuance Communications, S&P Dow Jones Indices, Sotheby's, Tyco, and The Walt Disney Company, among others.

Mr. Silbert is widely recognized for his expertise in appellate advocacy.

**Practice Areas:**

› Complex Commercial Litigation

› Appellate

› False Claims Act & Qui Tam

**Admissions:**

› California

› New York State

› US Court of Appeals 2nd Cir.

› US Court of Appeals 9th Cir.

› Southern District New York

› US Supreme Court

› US Court of Appeals 10th Cir.

› US Court of Appeals 3rd Cir.

› US Court of Appeals 5th Cir.

› US Court of Appeals 7th Cir.

› US Court of Appeals DC Cir.

**Education:**

› Hampshire College (Bachelor of Arts (B.A.), 1992)

› Yale Law School (Juris Doctor (J.D.), 1999)

› Yale University (Master of Arts (M.A.), 1999)

 From 2010 to 2011, he served on California Attorney General Kamala Harris' transition committee, advising on issues relating to appellate litigation. In 2014, he was recognized by *The Legal 500 US* as a "Recommended" lawyer for Supreme Court and Appellate. He has also been recognized for his work in the Appellate space by *New York Super Lawyers*.

Mr. Silbert maintains an active pro bono practice, providing legal assistance to organizations such as the Asian American Legal Defense and Education Fund, Center for Constitutional Rights, Citizens Union of the City of New York, the Innocence Project, the Legal Aid Society, Muslim Advocates, the National Association of Criminal Defense Lawyers, and New York Lawyers for the Public Interest, among others. He serves on the board of directors of Citizens Union and of the Delancey Street Foundation.

Mr. Silbert clerked for two federal appellate judges: David S. Tatel, of the US Court of Appeals for the DC Circuit, and Marsha S. Berzon, of the US Court of Appeals for the Ninth Circuit. He graduated from Yale Law School in 1999, where he was Symposium Editor of the *Yale Law Journal*. He joined Weil in 2007, after serving as Assistant Solicitor General of the State of New York.



# Sabrina A. Perelman

| **Associate** New York | +1 (212) 310-8752 | sabrina.perelman@weil. |
|---|---|---|



**Sabrina A. Perelman is an associate in the Intellectual Property & Media and Complex Commercial Litigation practice groups in the New York office of Weil, Gotshal & Manges LLP.**

In addition to complex commercial litigation matters, Ms. Perelman has significant experience representing and counseling clients in a wide variety of matters concerning copyright, trademark, false advertising and unfair competition, music licensing, First Amendment and privacy and publicity issues. Ms. Perelman represents clients in a range of industries, including media and entertainment, social networking, broadcasting, publishing, and consumer products and services.

Ms. Perelman has successfully represented clients in high-profile and landmark intellectual property cases, including The Walt Disney Company and Marvel Entertainment in a multi-billion dollar copyright ownership dispute concerning the rights to iconic Marvel comic book characters such as The Fantastic Four, Spider-Man, The Incredible Hulk, Iron Man, Thor, The Avengers and The X-Men. Ms. Perelman also worked on the successful defense of eBay in a landmark trademark infringement bench trial and appeal.

Ms. Perelman graduated *magna cum laude* from New York University and graduated with honors from the Emory University School of Law, where she served as Managing Editor of the Emory Law Journal. In 2009, Ms. Perelman served as a law clerk to the Honorable Harold Baer, Jr. in the United States District Court for the Southern District of New York.

**Practice Areas:**

› Complex Commercial Litigation

**Admissions:**

› New York State
› District of New Jersey
› Eastern District New York
› New Jersey State
› Southern District New York

**Education:**

› New York University (Bachelor of Arts (B.A.), magna cum laude, 2003)
› Emory University Law (Juris Doctor (J.D.), with honors, 2006)



# Jessica Lynn Falk

| **Associate** New York | +1 (212) 310-8511 | jessica.falk@weil.com |
|---|---|---|



**Jessica L. Falk is an associate in the Complex Commercial Litigation and Intellectual Property & Media practice groups in the New York office of Weil, Gotshal & Manges LLP. In addition to complex commercial litigation matters based on breach of contract and fraud allegations, Ms. Falk's practice also focuses on intellectual property, including copyright, trademark, false advertising and unfair competition, and privacy and publicity issues. She has represented clients in a broad range of industries, including media and entertainment, technology, fashion, investment services, publishing and energy services.**

Ms. Falk has been recognized for her *pro bono* work and has represented pro bono clients in asylum proceedings and New York City Housing Authority proceedings. She is also actively involved in mentoring and diversity initiatives at the Firm and serves as a member of the New York Women@Weil Planning Committee.

Ms. Falk has appeared as a panelist for the American Bar Association's Consumer Protection Update and the Wall Street Exchange's panel on Powerful Networking and Social Media Tools. She co-authored the State Bar of Texas Suing and Defending Governmental Entities Course from 2010-2013 and is the author of *Unwinding the Deals that Fell Victim to the Credit Crunch*, 27 Ann. Rev. Banking & Fin. L. 261 (2008).

 Ms. Falk graduated *magna cum laude* from Boston University's College of Arts and Sciences and graduated *cum laude* from Boston University School of Law, where she received the Dean's Award for Unfair Competition & Trademark Law and was an Edward F. Hennessey Scholar.

**Practice Areas:**

› Complex Commercial Litigation

**Admissions:**

› Eastern District New York
› New York State
› Southern District New York

**Education:**

› Boston University (Bachelor of Arts (B.A.), magna cum laude, 2006)
› Boston University Law (Juris Doctor (J.D.), cum laude, 2009)

# LEWIS ROCA
# ROTHGERBER



## FREDERICK J. BAUMANN

**Partner**
FBaumann@LRRLaw.com

Denver
1200 Seventeenth Street
Suite 3000
Denver, Colorado 80202

**Phone**   303.628.9542
**Fax**   303.623.9222

▸ MAIN BIO
NEWS

**RELATED PRACTICES**
- Corporate Governance
- Securities Litigation
- Appeals
- Complex Litigation
- Professional Liability Litigation

**EDUCATION**
- J.D., New York University School of Law, 1979
- B.A., Williams College, 1976

**BAR ADMISSIONS**
- Colorado, 1980
- New York, 1980

Mr. Baumann's practice focuses on a variety of complex corporate and business litigation, including representation of individual and corporate defendants in class and derivative actions (including claims under federal and state securities laws), and in connection with government investigations, and representation of local and national corporate entities in contract, fraud, and other business litigation. He also represents attorneys and law firms in a variety of disputes, including claims for negligence and breach of other professional responsibilities. He has extensive experience in federal and state courts, as well as in arbitration and mediation of business disputes.

Mr. Baumann is the Chairman of the Executive Committee at Lewis Roca Rothgerber LLP.

### REPRESENTATIVE CASES/MATTERS

- Lead Colorado counsel for GSE in connection with ongoing government investigation of foreclosure law firm practices.
- Lead counsel for regional law firm in connection with seven suits arising from conservation easement projects; all cases resolved in 2013.
- Lead counsel for foreign natural resource company in connection with claims arising from potential diamond mining project; state claims resolved following appeal in 2011, motion to dismiss federal claims pending.
- Lead counsel for national law firm in connection with suit alleging aiding and abetting of client fraud; four week bench trial on a portion of claims, including breach of contract, negligence and breach of fiduciary duties, concluded in 2008.
- Co-lead counsel for individual members of the board of directors of public telecommunications company in connection with securities, derivative and other suits arising from restatements of financial statements; derivative, ERISA and securities class action suits settled.

- Lead counsel for regional law firm in connection with a variety of claims and suits, including state court suit alleging violations of foreign law relating to derivative investment program; suit tried to successful result in 2011.
- Lead counsel for former director charged with securities fraud, insider trading and perjury arising from accounting irregularities at electronics manufacturing company; no-jail misdemeanor plea entered and case dismissed.
- Lead counsel for former CFO of public software development company in connection with class actions under federal securities laws, derivative claims and SEC civil action arising from restatements of financial statements; derivative claims settled in 2006, securities claims settled in 2007, and SEC action settled in 2008.
- Lead trial counsel for broker-dealer in connection with unsuitability claims brought in federal court in New Mexico by county that invested in long-term "stripped" bonds; judgment entered for client at close of plaintiff's case.
- Lead trial counsel for bank in connection with claims arising from secured credit card marketing program; $1 million jury verdict in favor of client on counterclaim returned, affirmed on appeal, and paid.
- Lead trial counsel for software development company in connection with breach-of-contract and related claims involving transfer of software publishing agreement; $1.8 million jury verdict in favor of client returned, amended judgment affirmed on appeal and paid.

*Prior results do not guarantee or predict a similar outcome on future legal matters.

### MEMBERSHIPS AND AFFILIATIONS

- American College of Trial Lawyers, Fellow
  - ACTL Colorado State Committee, (Chair, 2014-2015; Vice Chair, 2013-2014)
- American, Colorado, and Denver Bar Associations, Member
- American Bar Foundation, Member
- Colorado Bar Foundation, Member
- Legal Aid Foundation of Colorado, Board of Directors 1996-2002; Chair, 2000-2001
- Colorado Access to Justice Commission, Member, (Vice Chair, 2007; Chair, 2008-present)
- U.S. District Court, District of Colorado, Committee on Conduct, Member, 1995-2005
- William E. Doyle American Inn of Court, Master Barrister

### SPEAKING ENGAGEMENTS

- Panelist, "Should Attorneys Collaborate During the Discovery Process?," *Faculty of Federal Advocates Annual CLE*, December 2010

## COURT ADMISSIONS

- U.S. District Court, Eastern District of New York, 1980
- U.S. District Court, Southern District of New York, 1980
- U.S. Court of Appeals, Second Circuit, 1980
- Colorado State Judicial District Courts, 1980
- Colorado Court of Appeals, 1980
- Colorado Supreme Court, 1982
- U.S. District Court, Colorado, 1982
- U.S. Court of Appeals, Tenth Circuit, 1982

## OTHER DISTINCTIONS

Mr. Baumann has been named a 2015 "Lawyer of the Year" in *The Best Lawyers in America©* in the area of Bet-the-Company Litigation. He has been listed in *Chambers USA Annual Client's Guide to Business Lawyers* since 2004, and in *The Best Lawyers in America©* since 2005 in the areas of Bet-the-Company Litigation, Commercial Litigation, Litigation-Regulatory Enforcement (SEC, Telecom, Energy), and Litigation-Securities. He has also been listed in *Colorado Super Lawyers®* since 2006, and earned the Top Ten Ranking in 2012-2014. He was named by *5280* magazine to its inaugural "Top Lawyers 2015" list.

In 2011, Mr. Baumann was honored with an award by *The Legal Aid Foundation of Colorado* for exemplary support and outstanding leadership.

## PROFESSIONAL EXPERIENCE

- Lewis Roca Rothgerber LLP (legacy firm Rothgerber Johnson & Lyons LLP), 1982-Present
- Patterson, Belknap, Webb & Tyler, Associate (New York City), 1979-1982