IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 1:12-cv-02663-WJM-KMT

STAN LEE MEDIA, INC.,

    Plaintiff,

v.

THE WALT DISNEY COMPANY,

    Defendant.

---

**MOTION TO QUASH AN INVASIVE NONPARTY SUBPOENA
SEEKING PRIVATE INFORMATION THAT IS IRRELEVANT
TO THE ISSUE OF PLAINTIFF'S EXECUTABLE ASSETS**

---

            Edward W. Millstein, Esq.
            Sacks Weston Millstein Diamond LLC
            1845 Walnut Street, Suite 1600
            Philadelphia, Pennsylvania 19103
            Tel: 215-925-8200
            Email: tmillstein@swpdlaw.com
            Attorneys for Nonparty TAP-SLMI, LLC

## TABLE OF CONTENTS

                                                                         **Page**

Introduction    1

POINT ONE    4

POST-JUDGMENT DISCOVERY UNDER FEDERAL RULE 69 (A) IS LIMITED TO THE ISSUE OF A JUDGMENT DEBTOR'S EXECUTABLE ASSETS AND (B) DOES NOT TYPICALLY EXTEND TO A NONDEBTOR'S ASSETS, OPERATIONS AND FINANCIAL AFFAIRS.

    A. Defendant Has Produced No Evidence That Any Judgment Debtor Assets Have Been Transferred To Nondebtor TAP.    6

    B. The Motion To Quash Should Be Granted For Categories 1, 3-4 And 6-15 In The Subpoena Because Such Categories Seek Information And Documents About Nondebtor TAP's Assets, Operations And Private Financial Affairs - - Items Which Are Plainly Irrelevant To The Separate Issue Of The Judgment Debtor Plaintiff's Executable Assets.    7

POINT TWO    11

SINCE DEFENDANT LACKS A MONEY JUDGMENT AGAINST TAP, DEFENDANT IS NOT ENTITLED TO PRE-JUDGMENT INFORMATION ABOUT TAP'S ASSETS, OPERATIONS AND FINANCIAL AFFAIRS.

POINT THREE    13

FINANCIAL DISCOVERY AGAINST TAP ALSO IS UNWARRANTED ON THE INDEPENDENT GROUND THAT DEFENDANT CANNOT ESTABLISH ANY RIGHT TO SHIFT ITS LEGAL FEES TO TAP, AS A NONPARTY OR LITIGATION FUNDER.

POINT FOUR    15

SINCE TAP IS A LITIGATION FUNDER, TAP'S LITIGATION-RELATED INFORMATION FOR THIS CASE IS PRIVILEGED FROM DISCLOSURE.

Conclusion and Certificate of Conferral    16

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Baker Botts, LLP v. Asarco LLC* .......................................................................... 14
  __ U.S. __ (slip. op., June 15, 2015)

*Bel Trading & Consulting, Ltd. v. KNM Worldwide Services, LLC* ................... 4
  __ WL __, No. 14-22313-MC (S.D. Fla. Aug. 6, 2014) (M.J. Goodman)

*Blaw Knox v. AMR Indus., Inc.* ............................................................................ 5
  130 F.R.D. 400 (E.D. Wis. 1990)

*Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health* ........ 14
  *and Human Resources*, 532 U.S. 598 (2001)

*Caisson Corp. v. County West Building Corp.* ..................................................... 5
  62 F.R.D. 331 (E.D. Pa. 1974)

*Carlyle Investment Management LLC v. Moonmouth Company, S.A.* ............. 15
  2015 WL 778846 (Del. Ch. Ct. Feb. 24, 2015)

*Credit Lyonnais, S.A. v. SGC Int'l, Inc.* ............................................................... 6
  160 F.3d 428 (8th Cir. 1998)

*Devon IT, Inc. v. IBM Corp.* ............................................................................... 15
  2012 WL 4748160 (E.D. Pa. Sept. 27, 2012)

*Doe v. Soc'y of Missionaries of Sacred Heart* .................................................... 15
  2014 WL 1715376 (N.D. Ill. May 1, 2014)

*Federal Trade Commission v. Turner* ................................................................ 12
  609 F.2d 743 (5th Cir. 1980)

*Miller UK Ltd. v. Caterpillar, Inc.* ..................................................................... 15
  17 F. Supp. 3d 711 (N.D. Ill. 2014)

*Price v. Cochran* ................................................................................................... 6
  66 Fed. Appx. 781, 786, 2003 WL 21054706 (10th Cir. May 12, 2003)

*Republic of Argentina v. NML Capital, Ltd.* ............................................. 4, 5, 7-10
  134 S.Ct. 2250 (2014)

*Resolution Trust Corp. v. Thornton* ................................................................... 12
  41 F.3d 1539 (D.C. Cir. 1994)

|  | Page |
|---|---|
| *Sanderson v. Winer*<br>507 F.2d 477 (10th Cir. 1974), cert. den. 421 U.S. 914 (1975) | 11 |
| *Sierrapine v. Refiner Products Mfg., Inc.*<br>275 F.R.D. 604 (E.D. Cal. 2011) | 12 |
| *Straily v. UBS Financial Services, Inc.*<br>__ WL __, No. 07-cv-00884-REB-KMT (D. Colo. Dec. 23, 2008) (M.J. Tafoya) | 5 |
| *YCB Int'l, Inc. v. UCF Trading Co. Ltd.*<br>__ WL __, No. 09-C-7221 (N.D. Ill. Jan. 13, 2014) (D.J. Holderman) | 4 |

**TREATISES**

| | |
|---|---|
| James William Moore, 6 *Moore's Federal Practice*, Section 26.41[8][a] (Matthew Bender 3d ed. 2011) | 12 |
| Wright & Miller, *Federal Practice and Procedure*, Section 3014 (2d ed.) | 5 |
| 81 Am. Jur. 2d *Witnesses*, Section 20 (2008) | 6 |

**STATUTES AND FEDERAL RULES**

| | |
|---|---|
| 17 U.S.C. 505 | 13-14 |
| Rule 45 of the Federal Rules of Civil Procedure | 4 |
| Rule 69 of the Federal Rules of Civil Procedure | *passim* |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02663-WJM-KMT

STAN LEE MEDIA, INC.

        Plaintiff,

v.

THE WALT DISNEY COMPANY,

        Defendant.

---

**MOTION TO QUASH AN INVASIVE NONPARTY SUBPOENA SEEKING PRIVATE FINANCIAL INFORMATION ABOUT A NONPARTY THAT IS IRRELEVANT TO THE ISSUE OF PLAINTIFF'S EXECUTABLE ASSETS**

---

### Introduction

Defendant, as judgment creditor, was awarded a legal fee judgment against Plaintiff, as judgment debtor (D.E. 84). Rule 69 of the Federal Rules of Civil Procedure authorizes a judgment creditor to discover information about a judgment debtor's assets so that the judgment creditor can execute on its judgment. However, Rule 69 of the Federal Rules of Civil Procedure does not authorize a judgment creditor to discover information that is irrelevant to the issue of the judgment debtor's executable assets. And, Rule 69 of the Federal Rules of Civil Procedure does not typically authorize a judgment creditor to proceed with a fishing expedition into a nonparty's assets, operations and financial affairs.

TAP-SLMI, LLC ("TAP") is a nonparty and nondebtor in this case. TAP's owners and management are separate and distinct from Plaintiff's owners and management. Pursuant to an arms length and confidential commercial litigation funding agreement, TAP agreed to use TAP's

1

investment funds (which are not Plaintiff's assets) to pay Plaintiff's litigation counsel (not to pay Plaintiff) for the legal fees incurred by such counsel during this case. TAP has never transferred any of its funds or assets to Plaintiff and, similarly, Plaintiff has never transferred any of its funds or assets to TAP. In return for paying the legal fees of Plaintiff's counsel, TAP acquired a contingent right to a percentage of any litigation proceeds that Plaintiff might recover during this case. Plaintiff's litigation counsel, however, was unsuccessful in the pursuit of Plaintiff's claims. Thus, Plaintiff has received no litigation proceeds and, therefore, TAP has received nothing on account of its contingency interest. Indeed, TAP has suffered a substantial investment loss by having paid Plaintiff's litigation counsel, without receiving any funds in return.[1]

Previously, on May 8, 2015, Defendant served Plaintiff, the judgment debtor, with discovery requests about Plaintiff's executable assets (D.E. 138, Ex. 1). Plaintiff responded to such discovery through its president (D.E. 130). On June 17, 2015, Plaintiff took a nonparty deposition of Michael B. Wolk. See Wolk Decl. Mr. Wolk testified about his knowledge of Plaintiff's executable assets and, to protect nonparty rights, Mr. Wolk's counsel objected to deposition questions that were irrelevant to the issue of Plaintiff's executable assets.[2] *Id.* On June 17, 2015, at the conclusion of the deposition, Defendant served Mr. Wolk, on behalf of nonparty TAP, with a nonparty subpoena.[3]

Significantly, Defendant's nonparty subpoena to TAP does not seek information and documents about Plaintiff's executable assets. Instead, in the nonparty subpoena, Defendant

---

[1] See the attached declaration of Michael B. Wolk dated July 1, 2015 ("Wolk Decl.")..
[2] See Wolk Decl.
[3] See Exhibit 1 to the Wolk Decl.

2

improperly seeks private information about nondebtor TAP's assets, operations and financial affairs. See Exhibit 1 to Wolk Decl. Federal Rule 69 does not authorize a subpoena seeking private information from a nondebtor that is irrelevant to the separate issue of the judgment debtor's executable assets.

Defendant's invasive subpoena to nondebtor TAP should be quashed for one or more independent reasons: (a) post-judgment discovery under Rule 69 of the Federal Rules of Civil Procedure is limited to matters that are relevant to the issue of the judgment debtor's executable assets - - and Rule 69 discovery does not typically encompass the separate issue of a nondebtor's assets, operations and financial affairs; (b) under the Federal Rules of Civil Procedure, financial discovery is typically inappropriate where the target of the financial discovery (TAP) has not been held liable to the party seeking financial discovery (Defendant) - - and, here, Defendant has never obtained a money judgment against TAP; (c) financial discovery also is unwarranted because Defendant cannot establish any legal right to shift its legal fees to TAP, as a nonparty or litigation funder - - Supreme Court precedent prohibits legal fee shifting to another person except where a statute expressly so authorizes (and there is no statute that expressly authorizes the shifting of legal fee liability, in a copyright case, to a nonparty or litigation funder); and (d) since TAP is a litigation funder, TAP's litigation-related information for this case is privileged from disclosure under the work product privilege or common interest doctrine.

Defendant's invasive subpoena to nonparty TAP does not cite any case law (or produce any evidence) indicating how TAP's assets, operations and financial affairs can be "relevant" to the separate issue of the judgment debtor Plaintiff's executable assets. TAP's pre-motion effort to resolve the situation with Defendant, without litigation, was unsuccessful. See p. 16, *infra.*

3

### POINT ONE

**POST-JUDGMENT DISCOVERY UNDER FEDERAL RULE 69 (A) IS LIMITED TO THE ISSUE OF A JUDGMENT DEBTOR'S EXECUTABLE ASSETS AND (B) DOES NOT TYPICALLY EXTEND TO A NONDEBTOR'S ASSETS, OPERATIONS AND FINANCIAL AFFAIRS.**

The proper scope of post-judgment discovery is governed by Rules 45 and 69 of the Federal Rules of Civil Procedure. In *Republic of Argentina v. NML Capital, Ltd.*, 134 S.Ct. 2250, 2257 (2014), the Supreme Court observed that post-judgment discovery under Rule 69 is confined to information about a judgment debtor's executable assets: "[I]nformation that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place."

In the post-judgment context, courts have indicated that it is typically inappropriate for a judgment creditor to subpoena information regarding a nondebtor's assets, operations and financial affairs because such nondebtor information is typically irrelevant to the separate issue of the judgment debtor's executable assets. *Republic of Argentina*, 134 S.Ct. at 2257 (observing that post-judgment discovery under Rule 69 must be "relevant" to the judgment debtor's "executable assets" and "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place"); see also, e.g., *Bel Trading & Consulting, Ltd. v. KNM Worldwide Services, LLC*, __ WL __, No. 14-22313-MC, (S.D. Fla., Aug. 6, 2014) (M.J. Goodman) ("without a particularized showing of necessity and relevance, courts typically limit the examination of third parties to the judgment debtor's assets and third parties are generally not required to disclose their own assets [cits. om.]"); *YCB Int'l, Inc. v. UCF Trading Co., Ltd.*, __ WL __, No. 09-C-7221 (N.D. Ill. Jan. 13, 2014) (D.J. Holderman) where the court stated:

4

> "**The purpose of post-judgment discovery is to obtain information about the judgment debtor's assets; it is not to seek additional discovery to support claims against non-parties**... Ordinarily, post-judgment discovery sought from third parties is limited to information about the assets of the judgment debtor and must be balanced against the privacy interests of the third party. See Wright & Miller 2d, [Federal Practice and Procedure], [section] 3014; see also *Blaw Knox v. AMR Indus., Inc.*, 130 F.R.D. 400, 403-04 (E.D. Wis. 1990) (denying third-party discovery regarding certain assets because '**a judgment creditor must make a threshold showing of necessity and relevance when attempting to obtain discovery of a non-judgment debtor pursuant to Rule 69(a)**'; *Caisson Corp. v. County West Building Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974) ('the inquiry must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment of the debtor or third persons... **It has also been said that third persons can only be examined about assets of the judgment debtor and cannot be required to disclose their own assets**'.")." [emphasis added]

Here, Defendant's invasive subpoena ignores the burden of showing that the assets, operations and financial affairs of nondebtor TAP are relevant to the separate issue of the judgment debtor Plaintiff's executable assets. See Exhibit 1 to Wolk Decl. Defendant's invasive subpoena contains no particularized showing as to how nondebtor TAP's private information will lead to an executable asset, belonging to the judgment debtor Plaintiff, against which Defendant can execute its judgment. *Republic of Argentina*, 134 S.Ct. at 2257 (observing that post-judgment discovery under Rule 69 must be "relevant" to the judgment debtor's "executable assets" and "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place.").

Like any other subpoena, a post-judgment discovery subpoena under Rule 69 should be quashed where the subpoena seeks irrelevant information. See, e.g., *Straily v. UBS Financial Services, Inc.*, __ WL __, Civil Action No. 07-cv-00884-REB-KMT (D. Colo. Dec. 23, 2008) where this Court stated:

5

> "The foremost fundamental principle regarding subpoenaed discovery is that a subpoena duces tecum to obtain materials. . . should be issued only when the party seeking the materials can show that the materials are evidentiary and relevant. 81 Am. Jur. 2d Witnesses [section] 20 (2008); *Price v. Cochran*, 66 Fed. Appx. 781, 786, 2003 WL 21054706, at *4 (10th Cir. May 12, 2003)."[4]

Accordingly, Defendant's invasive subpoena should be quashed because Defendant has not demonstrated that the assets, operations and financial affairs of nondebtor TAP are relevant to the separate issue of the judgment debtor Plaintiff's executable assets.

### A. Defendant Has Produced No Evidence That Any Judgment Debtor Assets Have Been Transferred To Nondebtor TAP.

In the post-judgment discovery context under Rule 69, there is a limited exception that (a) allows a judgment creditor to provide an evidentiary showing that specific assets were previously transferred by the judgment debtor to a nonparty under fraudulent circumstances and, upon such an evidentiary showing, (b) allows a nonparty subpoena to proceed with an investigation into the asset-transfer transaction to ascertain if the transferred assets should be returned to the judgment debtor for purposes of judgment execution. See, e.g., *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430-31 (8th Cir. 1998) (targeted discovery about transferred assets allowed where "the relationship between [the judgment debtor and nonparty transferee] is sufficient to raise a reasonable doubt about the bona fides of any transfer of assets between them"). Under this limited exception, nonparty discovery is allowed because the judgment creditor has adduced sufficient evidence about a judgment debtor's fraudulent asset transfer.

Here, however, Defendant has presented no evidence that Plaintiff ever transferred any money or executable asset to TAP. And TAP has confirmed that TAP has never received any

---

[4] In *Price v. Cochran*, the Tenth Circuit affirmed the District Court's order to quash a subpoena because the subpoenaing party "had failed to establish that the requested documents were relevant."

6

assets from the judgment debtor Plaintiff. See Wolk Decl. Since outside nonparty investors (not the judgment debtor Plaintiff) are the source of TAP's assets, the limited exception authorizing targeted nonparty discovery does not apply to this case.

### B. The Motion To Quash Should Be Granted For Categories 1, 3-4 And 6-15 In The Subpoena Because Such Categories Seek Information And Documents About Nondebtor TAP's Assets, Operations And Private Financial Affairs - - Items Which Are Plainly Irrelevant To The Separate Issue Of The Judgment Debtor Plaintiff's Executable Assets.

Pursuant to the case law set forth above, the proper scope of a post-judgment subpoena under Rule 69 (a) is limited to information about the judgment debtor's assets and (b) does not typically extend to the assets, operations and private financial affairs of nondebtors.

Here, categories 1, 3-4 and 6-15 in Defendant's subpoena seek information and documents about nondebtor TAP's assets, operations and private financial affairs - - items which are plainly irrelevant to the separate issue of the judgment debtor Plaintiff's executable assets. In other words, the requested information from nondebtor TAP does not lead to an executable asset, belonging to the Plaintiff, against which Defendant can execute its judgment. *Republic of Argentina*, 134 S.Ct. at 2257 (Supreme Court observed that post-judgment discovery under Rule 69 must be "relevant" to the judgment debtor's "executable assets" and "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place").

Moreover, Defendant's subpoena makes no effort to fulfill its burden of demonstrating how information about nondebtor TAP's assets, operations and financial affairs can purportedly be "relevant" to the separate issue of the judgment debtor Plaintiff's executable assets. *Id.*

For the Court's ease of reference, set forth below are each one of the improper category demands in the subpoena (see Exhibit 1 to Wolk Decl.):

7

> "1. [TAP's] authorization and/or involvement in [Plaintiff's] filing of any lawsuits, including without limitation any appeals of lawsuits, involving any of the Marvel Characters from January 1, 2012 to the present;[5]
>
> 3. All amounts paid by or on behalf of [TAP] and/or [Plaintiff] to law firms for cases involving any of the Marvel Characters from January 1, 2012 to the present;[6]
>
> 4. All contracts or agreements to which [TAP] is a party that allow(s)

---

[5] TAP's operations in monitoring the status of this case, pursuant to TAP's commercial litigation funding agreement, have nothing to do with the separate issue of the judgment debtor Plaintiff's executable assets. Indeed, TAP used TAP's assets (not Plaintiff's assets) to pay Plaintiff's litigation counsel in return for a contingency percentage of any litigation proceeds that Plaintiff might recover in this case (which turned out to be none). Since the requested operational information from nondebtor TAP does not lead to an executable asset, belonging to Plaintiff, against which Defendant can execute its judgment, the requested operational information from nondebtor TAP is plainly irrelevant to the separate issue of Plaintiff's executable assets. *Republic of Argentina*, 134 S.Ct. at 2257 (Supreme Court observed that post-judgment discovery under Rule 69 must be "relevant" to the judgment debtor's "executable assets" and "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place").

Significantly, Defendant has cited no case law allowing a judgment creditor to use a Rule 69 post-judgment subpoena to obtain private information about the assets, operations or financial affairs of a nonparty commercial litigation funder. Presumably, that is because the assets, operations and financial affairs of a nonparty commercial litigation funder (a) relate to the property rights of the nonparty commercial litigation funder and (b) are plainly irrelevant to the separate issue of the judgment debtor's property rights.

Moreover, in Point II of this Memorandum, nondebtor TAP cites Tenth Circuit authority indicating that it is typically inappropriate for financial discovery to proceed where, as here, the discovery party (Defendant) does not have a money judgment against the discovery target (TAP). In other words, financial discovery is typically unwarranted where, as here, the discovery party has not succeeded in obtaining a liability determination against the discovery target.

Defendant has also cited no case law under which a nonparty commercial litigation funder was held liable for the legal fees owed by the financed party to its adversary in the underlying lawsuit. Indeed, as set forth in Point III of this Memorandum, financial discovery is unwarranted on the independent ground that Defendant cannot establish any legal right to shift its legal fees to TAP, as a nonparty or litigation funder - - Supreme Court precedent prohibits legal fee shifting to another person except where a statute expressly so authorizes (and there is no statute that expressly authorizes the shifting of legal fee liability, in a copyright case, to a nonparty or litigation funder). Neither the arms length commercial litigation funding agreement between TAP and Plaintiff, nor any statute, transforms a commercial litigation funder into a purported "guarantor" or "insurer" of the financed party.

[6] See footnote 5, *infra*. Also, under the commercial litigation funding agreement, TAP (not Plaintiff) used TAP's assets (not Plaintiff's assets) to pay Plaintiff's litigation counsel in return for a contingency percentage of any litigation proceeds that Plaintiff might recover in this case (which turned out to be none). Since the requested information pertains to the use of TAP's assets (not Plaintiff's assets), the requested information from nondebtor TAP does not lead to an executable asset, belonging to Plaintiff, against which Defendant can execute its judgment.

8

[Plaintiff] and/or TAP to receive advancement of legal or professional fees or reimbursement of legal or professional fees;[7]

6. All agreements concerning the funding of litigation by or on behalf of [TAP] and/or [Plaintiff];[8]

8. All of the investors in [TAP];[9]

9. All persons acting on [TAP's] behalf in any capacity with respect to any lawsuits involving any of the Marvel Characters;[10]

10. All communications by or on behalf of [TAP] and/or [Plaintiff] made to any media outlets, including, but not limited to Law360 regarding cases involving any of the Marvel Characters from January 1, 2012 to the present;[11]

11. All assets in which [TAP] has any legal or beneficial interest, including without limitation, real estate, stocks or bonds, promissory notes receivable, bank accounts, insurance policies, cash, accounts receivable and contract rights, patents, inventions, trade names, trademarks, copyrights, warehouse receipts, bills of lading, or other documents of title, money due to [TAP] from any city, state, or federal government or agency or department

---

[7] See footnotes 5-6, *infra*. Also, only TAP's assets (not Plaintiff's assets) were used to pay litigation counsel under the commercial litigation funding agreement. Since the requested information pertains to the use of TAP's assets (not Plaintiff's assets), the requested information from nondebtor TAP does not lead to an executable asset, belonging to Plaintiff, against which Defendant can execute its judgment.

[8] See footnotes 5-7, *infra*. Also, under the commercial litigation funding agreement, TAP is responsible for using TAP's assets (not Plaintiff's assets) to pay litigation counsel in return for a contingency percentage (which turned out to be none). Since the requested information pertains to the use of TAP's assets (not Plaintiff's assets), the requested information from nondebtor TAP does not lead to an executable asset, belonging to Plaintiff, against which Defendant can execute its judgment.

[9] See footnotes 5-8, *infra*. Plainly, the identity of TAP's nonparty investors does not constitute information that leads to an executable asset, belonging to Plaintiff, against which Defendant can execute its judgment. *Republic of Argentina*, 134 S.Ct. at 2257 (2014) (Supreme Court observed that post-judgment discovery under Rule 69 must be "relevant" to the judgment debtor's "executable assets" and "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place").

[10] See footnotes 5-9, *infra*. Plainly, the identity of TAP's management does not constitute information that leads to an executable asset, belonging to Plaintiff, against which Defendant can execute its judgment.

[11] See footnotes 5-10, *infra*. Plainly, media communications presenting a litigation position, just like a court filing presenting a litigation position, do not constitute information that leads to an executable asset, belonging to Plaintiff, against which Defendant can execute its judgment.

9

thereof, and property in the possession, custody or control of persons other than [TAP];[12]

12. All income receivable by [TAP] derived from sources other than those above listed;[13]

13. [TAP's] federal and state business income tax returns for the years 2009, 2010, 2011, 2012, 2013 and 2014;[14]

14. Any and all loan applications by [TAP] since 2009;[15]

15. All payments or other transfer of assets or funds within the last four years between [TAP] and any present or former owner, director or officer of [TAP], or any other entities owned by said owners, directors and officers."[16]

Again, Defendant's subpoena makes no effort to fulfill its burden of demonstrating how the requested information about nondebtor TAP's assets, operations and financial affairs will lead to an executable asset, belonging to the Plaintiff, against which Defendant can execute its judgment. *Republic of Argentina*, 134 S.Ct. at 2257 (Supreme Court observed that post-judgment discovery under Rule 69 must be "relevant" to the judgment debtor's "executable

---

[12] See footnotes 5-11, *infra*. This category involves TAP's assets. Plainly, TAP's nondebtor assets are separate and distinct from the judgment debtor Plaintiff's assets. Since the requested information pertains to TAP's assets (not Plaintiff's assets), the requested information from nondebtor TAP does not lead to an executable asset, belonging to the Plaintiff, against which Defendant can execute its judgment. *Republic of Argentina*, 134 S.Ct. at 2257 (2014) (Supreme Court observed that post-judgment discovery under Rule 69 must be "relevant" to the judgment debtor's "executable assets" and "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place").

[13] See footnotes 5-12, *infra*. Since this category seeks information about TAP's assets, this category seeks information that is plainly irrelevant to the issue of Plaintiff's executable assets.

[14] See footnotes 5-13, *infra*. Since this category seeks information about TAP's assets, this category seeks information that is plainly irrelevant to the issue of Plaintiff's executable assets.

[15] See footnotes 5-14, *infra*. Since this category seeks information about TAP's assets, this category seeks information that is plainly irrelevant to the issue of Plaintiff's executable assets.

[16] See footnotes 5-15, *infra*. Since this category seeks information about TAP's assets, this category seeks information that is plainly irrelevant to the issue of Plaintiff's executable assets.

10

assets" and "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place").

Accordingly, categories 1, 3-4 and 6-15 in Defendant's subpoena should be quashed, in their entirety, as improperly seeking information and documents that are plainly irrelevant to the issue of the judgment debtor Plaintiff's executable assets.[17]

## POINT TWO

**SINCE DEFENDANT LACKS A MONEY JUDGMENT AGAINST TAP, DEFENDANT IS NOT ENTITLED TO PRE-JUDGMENT INFORMATION ABOUT TAP'S ASSETS, OPERATIONS AND FINANCIAL AFFAIRS.**

Nondebtor TAP, a commercial litigation finance company, is not the Plaintiff. TAP did not sue Defendant in this case. Defendant has also not sued TAP. And, most importantly, there is no money judgment in this case holding TAP liable to Defendant.

The law is well-settled that an invasive intrusion into another person's private affairs is typically improper where, as here, the party seeking financial discovery lacks a money judgment against the targeted person. See, e.g., *Sanderson v. Winer*, 507 F.2d 477 (10th Cir. 1974), *cert. den.* 421 U.S. 914 (1975). There, the Tenth Circuit vacated discovery orders directing the pre-judgment production of financial statements, tax returns and documents "pertaining to (a) the financing of the costs of this litigation, and (b) the payment of attorney's fees that might be incurred." *Id.*, at 478. The Tenth Circuit concluded that such pre-judgment financial discovery is inappropriate where liability has not been established: "Ordinarily courts do not inquire into

---

[17] Categories 2 and 5 of the subpoena should be quashed as moot. Defendant has already received documents identified in these categories from Plaintiff's "licensee" (Category 2) and from the Colorado Secretary of State (Category 5). Indeed, at a prior deposition of Mr. Wolk on June 17, 2015, Defendant referred to these documents when questioning Mr. Wolk about them, and Mr. Wolk has already provided his testimony about the same. See Wolk Decl. To the extent Defendant believes there is a need to address any other component of Categories 2 and 5, TAP adopts the same reasons, identified above, for seeking to quash such components. See footnotes 5-16, *infra*.

11

the financial responsibility of litigants. We generally eschew the question of whether litigants are rich or poor. Instead, we address ourselves to the merits of the litigation. . . Tax returns are not generally discoverable. It is only when the plaintiff's income is directly in issue. Otherwise there is a public policy against exposure." *Id.*, at 479-80.

See also, e.g., *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1547 (D.C. Cir. 1994) ("The RTC's asserted power also conflicts with well-established limits on a litigant's ability to discover an adversary's financial and insurance information. The federal discovery rules generally prohibit a litigant from discovering an opponent's assets 'until after a judgment against the opponent has been rendered.' [cit.om.]"); *Federal Trade Commission v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980) ("Information about the financial status of a putative defendant would be interesting to any person or agency considering a civil suit for damages. Under most circumstances, however, a private plaintiff may not discover an opponent's assets until after a judgment against the opponent has been rendered [cits. om.]. Turner's financial status, like the financial status of most putative defendants, is not relevant to any issue that will be raised in the contemplated lawsuit."); *Sierrapine v. Refiner Products Mfg., Inc.*, 275 F.R.D. 604, 609 (E.D. Cal. 2011) (collecting cases) ("district courts across the country generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment…on the grounds that such discovery is not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence"); James William Moore, 6 Moore's Federal Practice, Section 26.41[8][a] (Matthew Bender 3d ed. 2011) ("the relevancy requirement is not met when a party wants to know the opposing party's assets prejudgment to determine what assets are available for attachment should that party succeed in

obtaining a favorable judgment").

Accordingly, since Defendant lacks a money judgment against nondebtor TAP, Defendant is not entitled to invasive discovery into TAP's assets, operations and financial affairs, and TAP's motion to quash that invasive subpoena should be granted.

## POINT III

**FINANCIAL DISCOVERY AGAINST TAP ALSO IS UNWARRANTED ON THE INDEPENDENT GROUND THAT DEFENDANT CANNOT ESTABLISH ANY RIGHT TO SHIFT ITS LEGAL FEES TO TAP, AS A NONPARTY OR LITIGATION FUNDER.**

Under the federal fee-shifting statute in this copyright case (17 U.S.C. 505), the Court has directed the losing party (Plaintiff) to pay an amount of legal fees to the prevailing party (Defendant). (D.E. 84) Significantly, the federal fee-shifting statute in this copyright case does *not* authorize a court to impose legal fees on a *nonparty*. Also, the federal fee-shifting statute in this copyright case does *not* authorize a court to impose legal fees on a *litigation funder* (whether in the context of attorney contingency financing or commercial litigation financing).

Indeed, the Supreme Court has recently reaffirmed the continuing vitality of the "American Rule" under which (a) legal fees cannot be imposed against another person in the absence of a statutory directive expressly so authorizing and (b) "policy reasons" or "equity arguments" cannot be used to impose legal fees against a person where, as here, the fee-shifting statute lacks a fee-shifting directive expressly imposing legal fee liability on that person:

> "Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise [cit. om.]. The American Rule has its roots in our common law relating back to at least the 18th century [cit. om.]. . . We consequently will not deviate from the American Rule 'absent explicit statutory authority' [cits. om.]. . . **Whether or not the Government's theory is desirable as a**

13

<blockquote>
<u>matter of policy, Congress has not granted us 'roving authority'. . . to allow counsel fees. . . whenever [we] might deem them warranted [cit. om.].</u> Our job is to follow the text even if doing so will supposedly 'undercut a basic objective of the statute' [cit. om.]. <u>The [statute] itself does not authorize the award of fees for defending a fee application, and that is the end of the matter</u>. . . Because [the statute] does not explicitly override the American Rule with respect to fee-defense litigation, it does not permit [federal] courts to award compensation for such litigation." [emphasis added]
</blockquote>

*Baker Botts, LLP v. Asarco LLC*, __ U.S. __ (slip. op., June 15, 2015, pages 3-4; 12-13); see also *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 610 (2001) (rejecting policy reasons and equity arguments seeking to impose legal fee-shifting under the "catalyst theory" and stating: "In *Alyeska*, 421 U.S. at 260, we said that Congress had not 'extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted.' To disregard the clear legislative language and the holdings of our prior cases on the basis of such policy arguments would be a similar assumption of a 'roving authority'.").

Here, the federal fee-shifting statute in this copyright case (17 U.S.C. 505) does *not* expressly authorize a prevailing party to shift its legal fees to a nonparty or a commercial litigation funder. And, Defendant has not provided any reported decision authorizing legal fee-shifting against a nonparty or a commercial litigation funder, in a copyright case or otherwise.

Accordingly, since there is no explicit statutory authority in this copyright case that shifts Defendant's legal fees to TAP, as a nonparty or litigation funder, there is no basis for imposing any legal fee liability on TAP - - and, thus, there is no legal foundation to support Defendant's invasive subpoena into nondebtor TAP's assets, operations and financial affairs.

14

## POINT FOUR

### SINCE TAP IS A LITIGATION FUNDER, TAP'S LITIGATION-RELATED INFORMATION FOR THIS CASE IS PRIVILEGED FROM DISCLOSURE.

Courts have ruled that a commercial litigation funding agreement, and "documents and communications relating to third-party funding," constitute litigation-related information that is privileged from disclosure under the work product privilege or common interest doctrine. See *Carlyle Investment Management LLC v. Moonmouth Company, S.A.*, 2015 WL 778846, No. 7841-VCP (Del. Ch. Ct. Feb. 24, 2015):

> "In those instances where a claim cannot proceed without third-party financing, one element of preparing a client's case. . .will be securing the requisite funding, which probably will require discussions of a case's merits in an effort to convince the third-party to supply the needed funds. No persuasive reason has been advanced in this case why litigants should lose work product protection simply because they lack the financial means to press their claims on their own dime. **Allowing work product protection for documents and communications relating to third-party funding places those parties that require outside funding on the same footing as those who do not and maintains a level playing field among adversaries in litigation**. Thus, even though claim funding is the business of financing lawsuits, which means the Discovery Documents serve a business purpose, those documents simultaneously also are litigation documents and work product protection is appropriate. . ."[18] [emphasis added]

Thus, TAP's litigation-related information for this case (its commercial litigation funding agreement, the identity of TAP's investors for this litigation, and TAP's litigation-related communications with Plaintiff and Plaintiff's counsel) are privileged from disclosure - - and Defendant is not entitled to invade that litigation privilege. *Id.;* fn. 18, *infra*.

---

[18] *Id.*, at fn. 48 (collecting cases); *Doe v. Soc'y of Missionaries of Sacred Heart*, 2014 WL 1715376, at *3-4 (N.D. Ill. May 1, 2014) (work product privilege protected the plaintiffs' communications with litigation finance company and related documents); *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 731-38 (N.D. Ill. 2014) (thorough analysis that documents plaintiffs shared with litigation funder are protected work product); *Devon IT, Inc. v. IBM Corp.*, 2012 WL 4748160, at *1 (E.D. Pa. Sept. 27, 2012) (determining that communications with funders and funding agreement drafts were protected as work product and protected by the attorney-client privilege under the common interest exception).

15

## CONCLUSION

Nonparty TAP's motion to quash Defendant's nonparty subpoena should be granted based upon one or more of the independent reasons set forth herein.

## CERTIFICATE OF CONFERRAL

Pursuant to the Local Civil Rules of the United States District Court for the District of Colorado, counsel for TAP and counsel for Defendant conferred in good faith on June 30, 2015 about the subject matter of this motion. Defendant opposes TAP's motion.

Dated: This 1st day of July, 2015.

_____/s/_____
Edward W. Millstein
Sacks Weston Millstein Diamond LLC
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
Tel: 215-925-8200
Email: tmillstein@swpdlaw.com
Attorneys for Nonparty TAP-SLMI, LLC