**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-02663-WJM-KMT

STAN LEE MEDIA, INC.

    Plaintiff,

v.

THE WALT DISNEY COMPANY,

    Defendant.

**DECLARATION OF MICHAEL B. WOLK IN SUPPORT OF
MOTION TO QUASH INVASIVE NONPARTY SUBPOENA**

    MICHAEL B. WOLK hereby declares under penalty of perjury as follows:

1. I am the managing member of TAP-SLMI, LLC ("TAP"), a nonparty and nondebtor in this case. I respectfully submit this declaration in support of TAP's motion to quash an invasive nonparty subpoena seeking private information about TAP's assets, operations and financial affairs - - items which are plainly irrelevant to the separate issue of the judgment debtor Plaintiff's executable assets.

2. TAP's owners and management are separate and distinct from Plaintiff's owners and management. I am not a shareholder, officer or director in Plaintiff.

3. Pursuant to an arms length and confidential commercial litigation funding agreement, TAP agreed to use TAP's investment funds (which are not Plaintiff's assets) to pay Plaintiff's litigation counsel (not to pay Plaintiff) for the legal fees incurred by such counsel during this case. TAP has never transferred any of its funds or assets to Plaintiff and, similarly, Plaintiff has

1

never transferred any of its funds or assets to TAP.  In return for paying the legal fees of Plaintiff's counsel, TAP acquired a contingent right to a percentage of any litigation proceeds that Plaintiff might recover during this case. Plaintiff's litigation counsel, however, was unsuccessful in the pursuit of Plaintiff's claims.  Thus, Plaintiff has received no litigation proceeds and, therefore, TAP has received nothing on account of its contingency interest.  Indeed, TAP has suffered a substantial investment loss by having paid Plaintiff's litigation counsel, without receiving any funds in return.

4. During the case, Plaintiff's board of directors authorized me to engage in some limited administrative duties.  Those limited administrative duties are set forth below.  Those limited administrative duties did not transform me into a "board member" with any legal power to control Plaintiff's litigation rights.

5. Plaintiff's board of directors authorized me to act in the administrative capacity of receiving legal papers on its behalf.  As a "service representative," my limited duty, if served with legal papers, would be to forward the same to Plaintiff's board of directors, and to Plaintiff's litigation counsel, so that they could respond to such legal papers in such fashion as they deemed appropriate.  Plaintiff did not compensate me for my status as a "service representative."  My limited status as a "service representative" did not transform me into a "board member" with any legal power to control Plaintiff's litigation rights.

6. Plaintiff's board of directors authorized me to act in the administrative capacity of attending a third-party deposition on Plaintiff's behalf.  As a "deposition attendance representative," my limited duty was to observe how the witness responded to questions from Plaintiff's litigation counsel and to report back to Plaintiff's board of directors about the same.

2

I am not Plaintiff's litigation counsel and I did not ask the witness any questions during the deposition. Plaintiff did not compensate me for my status as a "deposition attendance representative." My limited status as a "deposition attendance representative" did not transform me into a "board member" with any legal power to control Plaintiff's litigation rights.

7. During the case, Plaintiff's board of directors authorized me to send communications to various media outlets on the litigation status of the case. As part of those media communications, Plaintiff's board of directors authorized me to identify myself as a "general counsel" but solely for media purposes. I am not Plaintiff's litigation counsel. TAP, my litigation finance company, is a third-party payor of the legal fees incurred by Plaintiff's litigation counsel. My status as a media spokesperson did not transform me into a "board member" with any legal power to control Plaintiff's litigation rights.

8. Plaintiff has never transferred any of its money or executable assets to TAP. Outside nonparty investors (not Plaintiff) are the source of TAP's assets.

9. Previously, on May 8, 2015, Defendant served Plaintiff, the judgment debtor, with discovery requests about Plaintiff's executable assets (D.E. 138, Ex. 1). Plaintiff responded to such discovery through its president, who is also one of Plaintiff's board members (D.E. 130).

10. On June 17, 2015, Plaintiff took my deposition as a nonparty. At the deposition, I testified about my knowledge of Plaintiff's executable assets and, to protect nonparty rights, my counsel objected to deposition questions about nonparties that were irrelevant to the issue of Plaintiff's executable assets. On June 17, 2015, at the conclusion of the deposition, Defendant served me, on behalf of nonparty TAP, with a nonparty subpoena.

11. A copy of Defendant's nonparty subpoena, dated June 17, 2015, addressed to nonparty

TAP, is attached hereto as Exhibit 1.

12. Defendant's nonparty subpoena to TAP does not seek information and documents about Plaintiff's executable assets. Instead, in the nonparty subpoena, Defendant improperly seeks private information about nondebtor TAP's assets, operations and financial affairs.

13. The Court is respectfully referred to the Motion as to why Defendant's invasive subpoena to nondebtor TAP should be quashed for one or more independent reasons.

Dated: This 1st day of July, 2015.


_____/s/_____
Michael B. Wolk