**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-02663-WJM-KMT

STAN LEE MEDIA, INC.

    Plaintiff,

v.

THE WALT DISNEY COMPANY,

    Defendant.

_____

**THE WALT DISNEY COMPANY'S OPPOSITION TO
TAP-SLMI'S MOTION TO QUASH**
_____

Defendant The Walt Disney Company ("TWDC") submits this opposition to the Motion to Quash, Docket No. 140 (the "Motion to Quash").

**BACKGROUND**

Funded by non-party TAP-SLMI, LLC ("TAP-SLMI"), Stan Lee Media, Inc. ("SLMI") has been pursuing its objectively unreasonable claims for years; no court has ever found them meritorious.[1] Undaunted by repeated defeats, TAP-SLMI agreed to pay attorneys fees for SLMI to file this action, which Judge Martinez dismissed with prejudice, *Stan Lee Media, Inc. v. The Walt Disney Co.*, No. 12–cv–2663–WJM–KMT, 2013 WL 4776026, at *4 (D. Colo. Sept. 5, 2013). TAP-SLMI enabled SLMI to appeal this dismissal to the Tenth Circuit and another dismissal to the Ninth Circuit. Both of those Courts affirmed, holding that SLMI's ownership

---

[1] *See Abadin v. Marvel Entm't, Inc.*, No. 09 Civ. 0715 (PAC), 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010); *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d 440 (S.D.N.Y. 2011), *aff'd on other grounds*, 471 F. App'x 14 (2d Cir. 2012); *Stan Lee Media, Inc. v. Lee*, No. 2:07-cv-00225-SVW-SSx, 2012 WL 4048871 (C.D. Cal. Aug. 23, 2012); *Disney Enters., Inc. v. Entm't Theatre Grp.*, No. 13-CV-5570, 2014 WL 5483487 (E.D. Pa. Oct. 30, 2014).

claims were "simply implausible." *Stan Lee Media, Inc. v. Lee*, 585 F. App'x 597, 598 (9th Cir. 2014); *Stan Lee Media, Inc. v. The Walt Disney Co.*, 774 F.3d 1292, 1296 (10th Cir. 2014). The Supreme Court denied SLMI's petition for certiorari. *Stan Lee Media, Inc. v. Pow! Entm't Inc.*, 135 S. Ct. 1723 (2015).

Judge Martinez also ordered SLMI to pay $239,940.90 in attorneys' fees because it was "objectively unreasonable for [SLMI] to pursue its copyright claims." *Stan Lee Media, Inc. v. The Walt Disney Co.*, No. 12–cv–2663–WJM–KMT, 2014 WL 3767191, at *2 (D. Colo. July 31, 2014) (Docket No. 84 (the "Judgment")), *appeal dismissed for failure to prosecute*, Order, *Stan Lee Media, Inc. v. The Walt Disney Co.*, No. 14-1348 (10th Cir. Apr. 28, 2015). And the Tenth Circuit recently held that TWDC was entitled to its attorneys' fees for defending against SLMI's "unreasonable" appeal: "That every court faced with the question has rejected SLMI's claims of ownership made it factually unreasonable for SLMI to appeal yet another loss." Order, *Stan Lee Media, Inc. v. The Walt Disney Co.*, No. 13-1407, at 3 (10th Cir. May 26, 2015).[2]

TWDC has been trying to collect the Judgment for a year. TWDC's efforts have included obtaining a writ of execution, *see* Docket No. 91, and issuing a subpoena to SLMI pursuant to Rule 69 for information about its assets and amounts paid by or on its behalf to law firms in furtherance of litigation regarding the Marvel Characters. Neither SLMI nor Michael Wolk has produced any documents, *see* Docket Nos. 127, 129-130, but Mr. Wolk appeared for his deposition on June 17, 2015 pursuant to this Court's order. Mr. Wolk – the "managing member"

---

[2] The Tenth Circuit remanded for a determination of the amount. SLMI's time to oppose TWDC's motion to the District Court, Docket No. 132, has now passed without SLMI filing an opposition.

2

of TAP-SLMI ((*see* Declaration of Randi W. Singer ("Singer Decl.") Ex. 1 ("Wolk Dep.") at

10:3-10) – testified as follows:

- TAP-SLMI does nothing other than fund SLMI litigation. *See* Wolk Dep. at 37:5-9.

- TAP-SLMI paid all of SLMI's legal fees in the last five years. *Id.* at 118:22-119:2.[3]

- TAP-SLMI essentially had the ability to direct and control this litigation. *Id.* at 98:22-99:23.

- TAP-SLMI continued to spend money on SLMI's behalf even after the Judgment was entered. *Id.* at 64:7-11.

- There is a litigation funding agreement between TAP-SLMI and SLMI and third-party payor agreements to which SLMI and TAP-SLMI are parties, but SLMI is refusing to produce any of them. *Id.* at 21:11-22:13; 58:23-59:25.

- He will not identify the number, identity of, or amounts invested by TAP-SLMI's investors. He will also not testify concerning the other terms of the funding agreements between TAP-SLMI and SLMI because of an alleged work product privilege and a confidentiality provision in an agreement SLMI is refusing to produce. *Id.* at 36:18-25; 51:16-24; 106:10-22.

Accordingly, at the conclusion of Mr. Wolk's deposition, TWDC personally served Mr. Wolk with a subpoena pursuant to Rule 45 for testimony and documents from TAP-SLMI. *See* Docket No. 139. TAP-SLMI moved to quash and TWDC offered to significantly narrow the scope of its subpoena to avoid motion practice. *See* Singer Decl. Ex. 2. Still, TAP-SLMI refused to withdraw its motion, even though TWDC was willing to limit its requests to just the

---

[3] TAP-SLMI paid SLMI's attorneys fees for SLMI's corporate governance proceeding in Colorado state court, Wolk Dep. at 15:9-16:20, for SLMI's shareholder derivative suit in the Southern District of New York, *id.* at 18:23-19:13, and for SLMI's litigation against Stan Lee and Marvel in the Central District of California, the Ninth Circuit and its petition for certiorari. *Id.* at 101:8-25; 103:9-104:5. TAP-SLMI has paid SLMI's legal fees in this proceeding and on appeal. *Id.* at 47:4-14; 63:19-64:6; 69:12-17. TAP-SLMI also paid the filing fee when SLMI filed its articles of reinstatement. *Id.* at 24:4-14.

3

agreement between TAP-SLMI and SLMI, copies of legal bills for this suit, correspondence concerning additional proceedings after entry of the Judgment, and the identity of TAP-SLMI's investors.

Rule 69 expressly provides for discovery from third parties in aid of enforcing a judgment, *see* Fed. R. Civ. P. 69(a)(2), and that is precisely what TWDC seeks. TAP-SLMI, on the other hand, has failed to make the requisite showing that any information called for by the subpoena is privileged, and it can produce any confidential information pursuant to the Protective Order already entered in this case. TAP-SLMI's motion should be denied.

## ARGUMENT

The Supreme Court recently confirmed that "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive." *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2254 (2014). TWDC is entitled to seek discovery from TAP-SLMI to aid in executing on its judgment against SLMI, particularly given that TAP-SLMI has acknowledged it has information and documents that may aid TWDC in doing so.

It is irrelevant that TWDC's *subpoena* "contains no particularized showing as to how nondebtor TAP's private information will lead to an executable asset, belonging to the judgment debtor Plaintiff." Motion to Quash at 5. Subpoenas typically do not contain particularized showings, and the record shows that:

1. TAP-SLMI knew at the outset of this litigation that SLMI had no assets (*see* Wolk Dep. at 48:9-20);

2. At least three previous courts had already rejected SLMI's copyright claims – before the Ninth and Tenth Circuits ruled that it was "objectively unreasonable" for SLMI to have brought this case (*see supra* p. 1 n. 1);

4

3. It would have been impossible for SLMI to pursue this objectively baseless litigation without TAP-SLMI funding (*see* Wolk Dep. at 48:9-20); and

4. TAP-SLMI does nothing other than fund SLMI litigation (*id.* at 37:5-9).

In view of these facts, TAP-SLMI cannot argue that information about its assets, operations and financial affairs is "irrelevant to the separate issue of the judgment debtor's executable assets." Motion to Quash at 3. Indeed, it is hard to imagine any source of information more relevant to that issue, particularly if discovery shows that the litigation has been funded by fraudulent transfers that TWDC is entitled to recover. Moreover, as discussed below, the Copyright Act does not define who a "party" is for purposes of its fee-shifting provision and litigation financiers may be liable for attorneys' fees awards. *See infra* p. 8.

TAP-SLMI's position finds no support in the cases it cites either. For example, TAP-SLMI repeatedly cites *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014) for the proposition that post-judgment discovery under Rule 69 must be relevant to the judgment debtor's executable assets. But that case examined whether the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602 *et seq.*, limited the scope of discovery available to a judgment creditor against a foreign sovereign – an issue with no relevance here. 134 S. Ct. at 2253. Similarly, *Straily v. UBS Financial Services, Inc.*, No. 07-CV-00884(REB-KMT), 2008 WL 5378148 (D. Col. Dec. 23, 2008) (Tafoya, J.) addressed a Rule 45 pre-judgment subpoena seeking documents generated after the parties terminated their relationship that had "absolutely nothing to do with the claims asserted." *Id.* at *3.[4] To be clear, courts have recognized that

---

[4] The court in *Caisson Corp. v. County West Bldg. Corp.*, 62 F.R.D. 331 (E.D. Pa. 1974) actually ordered the sole stockholder of a debtor corporation to answer questions in an attempt to discover assets of the corporation, noting that, "[t]here is no doubt that third parties can be examined in relation to the financial affairs of the judgment debtor." *Id.* at 335. In quoting

5

litigation funding agreements are relevant and discoverable in cases like the one at bar. *See* Order, *Drummond Co., Inc. v. Collingsworth*, No. 11-cv-02695-RDP-TMP, at *2-3 (N.D. Ala. Oct. 15, 2013) (holding "requests for production about the financing of litigation" were "properly within the scope of discovery to the extent that the requests involve who financing was sought from, what payments were received, how the need for money was characterized, what the terms of the financing were, and information on actual money advanced or loaned or provided to prosecute the actions.").

TAP-SLMI's arguments that it should not be subject to discovery because there is no evidence that SLMI transferred assets to it and no money judgment against it are similarly unavailing. Motion to Quash at 6-7, 11-13. SLMI is simply wrong that non-party discovery in postjudgment execution proceedings is limited to cases involving transferred assets. Rule 69 provides that: "In aid of the judgment or execution, the judgment creditor … may obtain discovery *from any person*—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2) (emphasis added). Accordingly, Rule 69 expressly authorizes TWDC to seek discovery from TAP-SLMI in connection with its attempts to execute its judgment against SLMI. Similarly, TAP-SLMI cannot prevent discovery by citing cases in which courts concluded that *pre-judgment* financial discovery is inappropriate, Motion to Quash at 11-12, especially given that the Tenth Circuit expressly acknowledged that, "Defendant will have ample opportunity for [financial] discovery under Rule 69 F.R.Civ.P. if it obtains judgment." *Sanderson v. Winner*, 507 F.2d 477, 480 (10th

---

extensively from *YCB Int'l, Inc. v. UCF Trading Co., Ltd.*, No. 09-c-7221, 2014 WL 117353 (N.D. Ill. Jan. 13, 2014), *see* Motion to Quash at 4-5, TAP-SLMI fails to note that the third party in that case moved to quash only after it had produced the lawyer's retention agreement and accounting records showing payments to the attorneys. *Id*. at *2.

Cir. 1974); *see also Sierrapine v. Refiner Products Mfg., Inc.*, 275 F.R.D. 604, 610 (E.D. Cal. 2011) ("an appropriate means of obtaining such information is to conduct post-judgment discovery pursuant to Federal Rule of Civil Procedure 69(a)(2).").

With no record facts or law on its side, TAP-SLMI asserts that TWDC's subpoena "cited no case law allowing a judgment creditor to use a Rule 69 post-judgment subpoena to obtain private information about the assets, operations or financial affairs of a nonparty commercial litigation funder." Motion to Quash at 8 n.5. On that basis, TAP-SLMI urges the Court to conclude that this alleged absence of case law means the assets, operations and financial affairs of a nonparty commercial litigation funder "are plainly irrelevant to the separate issue of the judgment debtor's property rights." *Id.* But TAP-SLMI, which submitted an actual brief (rather than a subpoena, which traditionally does not cite case law), did not identify any cases indicating that a litigation financer *cannot* be held accountable for an attorneys' fee award.

As Rule 69 contemplates discovery against parties other than the judgment debtor, the Court need not decide for purposes of the instant motion whether the Judgment could be enforced against TAP-SLMI. Notably, though, other than restricting an award against the United States or its officers, the Copyright Act does not provide a definition for the "party" against whom an award for costs and fees may be enforced. *See* 17 U.S.C. § 505 (costs and fees may be awarded against "any party other than the United States or an officer thereof"). And courts have looked to litigation financers for attorneys fees awards and bonds. *See, e.g., IA Labs CA, LLC v. Nintendo Co., Ltd.*, 946 F. Supp. 2d 429, 432 (D. Md. 2013) (refusing to waive bond where plaintiff "deliberately structured itself so that it could draw on sources of revenue from its financier when its litigation against [Defendant] looked profitable, but made itself effectively

judgment-proof – and supposedly incapable of posting bond – in the event of a successful counter-claim or award of attorneys' fees against it"); *Abu-Ghazaleh v. Chaul*, 36 So. 3d 691, 694 (Fla. Dist. Ct. App. 2009) (holding a litigation financer liable for an attorneys' fee award because "[t]he litigation costs were paid for pursuant to [the litigation financing] agreement", the litigation funder "had veto power over whether the litigation was filed, who would file it and how it would be pursue[d]" and "was to receive 18.33% of any sum awarded to the plaintiffs"); *see also Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 740 (N.D. Ill. 2014) (while finding no relevance in the pre-judgment phase, noting that the "relevance" of a "funding agreement goes to the question of whether the funder is the or a real party in interest [and] whether the funder has been accorded some measure of control over the case").[5]

TAP-SLMI also argues that it need not produce the commercial litigation funding agreement or related documents and communications because they are confidential and protected by the work product privilege. Motion to Quash at 15-16. To the extent that these documents contain any sensitive or confidential information, they may be produced under the confidentiality designations set forth in this Court's protective order. *See* Docket No. 60. As to the work product privilege, TAP-SLMI has not made a particularized showing that the documents at issue contain any attorney's mental impressions, opinions or legal theories, as required to claim this qualified immunity. *See Miller UK Ltd.*, 17 F. Supp. 3d at 734. Indeed, it is highly unlikely that the documents that TWDC has requested – funding agreements, financial documents that have

---

[5] Further, TAP-SLMI's and Mr. Wolk's admissions regarding the financing and coordination of this litigation suggest that TAP-SLMI and SLMI may be so intertwined as to support a corporate veil piercing argument. *See, e.g. Shamrock Oil & Gas Co. v. Ethridge*, 159 F. Supp. 693, 698 (D. Colo. 1958) (if corporation "is a mere dummy and the alter ego of a judgment debtor with no real existence apart from him, the fiction of the corporation as a separate legal entity will not be used to defeat the rights of the judgment creditor.").

8

no relation to any litigation strategy and communications regarding a fee award made *after* such an award was ordered – would contain any privileged information.

Finally, equity favors production of the requested documents. TAP-SLMI was created for the sole purpose of bankrolling litigation. There is no dispute that without TAP-SLMI's funding, SLMI, a bankrupt entity, could not have pursued its "objectively unreasonable" copyright ownership claims or wasted the resources of three separate district courts and two Circuit Courts over at least the last three years (after various other courts had already rejected the claims). Having enabled SLMI to pursue this flood of meritless litigation, TAP-SLMI now claims that it has no responsibility for the fee awards that resulted. But TAP-SLMI stands before this Court with unclean hands and should not be heard to seek protection from the consequences of its actions – particularly from one of the Courts it has burdened with them

## **CONCLUSION**

For all these reasons, TWDC respectfully requests that this Court deny the Motion to Quash and order TAP-SLMI to produce documents responsive to TWDC's Rule 69 subpoena and set a date for the deposition of TAP-SLMI's principal, Michael Wolk, within fourteen (14) days of this Court's order.

DATED this 27th day of July, 2015.   Respectfully submitted,

 */s/  Holly C. Ludwig*

WEIL, GOTSHAL & MANGES LLP
James W. Quinn
Randi W. Singer
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

9

Frederick J. Baumann
Holly C. Ludwig
LEWIS ROCA ROTHGERBER LLP
One Tabor Center, Suite 3000
1200 17th Street
Denver, CO 80202-5855
Tel: (303) 623-9000
Fax: (303) 623-9222
fbaumann@lrrlaw.com
hludwig@lrrlaw.com

*Attorneys for Defendant The Walt Disney Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2015, I filed electronically the foregoing **THE WALT DISNEY COMPANY'S BRIEF IN OPPOSITION TO MOTION TO QUASH AN INVASIVE NONPARTY SUBPOENA** with the Clerk of Court, using the CM/ECF system, which caused automatic electronic notification of such filing upon the following:

Ted Millstein
Sacks Weston Millstein Diamond
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
Telephone: (215) 925-8200
Email: tmillstein@swpdlaw.com

    /s/ Holly C. Ludwig